Brian R. Nester, (*pro hac vice*)
bnester@sidley.com
Anna M. Weinberg, (*pro hac vice*)
aweinberg@sidley.com
Brian P. Johnson, (*pro hac vice*)
bpjohnson@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

Michael J. Bettinger SBN 122196
Mbettinger@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

Richard A. Cederoth, (*pro hac vice*)
rcederoth@sidley.com
David C. Giardina, (*pro hac vice*)
dgiardina@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Attorneys for Plaintiffs
ASUS COMPUTER INTERNATIONAL, ASUSTEK
COMPUTER INCORPORATED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ASUS COMPUTER INTERNATIONAL; and ASUSTEK COMPUTER INCORPORATED , <br><br> Plaintiffs, <br><br> v. <br><br> INTERDIGITAL, INC.; INTERDIGITAL COMMUNICATIONS, INC.; INTERDIGITAL TECHNOLOGY CORPORATION; IPR LICENSING, INC., and INTERDIGITAL PATENT HOLDINGS, INC. <br><br> Defendants. | Case No. 15-cv-1716 BLF <br><br> **ASUS'S OPPOSITION TO DEFENDANTS' MOTION TO AMEND SCHEDULING ORDER AND FOR LEAVE TO FILE FIRST AMENDED COUNTERCLAIMS** <br><br> **PUBLIC VERSION** |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................... 1

II.  FACTUAL BACKGROUND ............................................................................. 2

    A.   IDC's PLAs with ASUS and Quanta ..................................................... 2

    B.   IDC Knew of All the Relevant Facts ██████████████████ ..... 3

    C.   ██████████████████████ on the Same Factual Premise of IDC's
       Current Motion .......................................................................................... 4

    D.   Events Leading Up to the Deadline to Amend Provided the Same Factual
       Basis That IDC Claims Justify Its Tardy Motion ................................... 5

III. PROCEDURAL BACKGROUND ...................................................................... 6

IV.  ARGUMENT ..................................................................................................... 7

    A.   No Good Cause Exists Under Rule 16 Because IDC Was Not Diligent In
       Amending Its Counterclaims ................................................................... 7

         i.   IDC Did Not Act Diligently Because It ████████████
              ████████████ Based on the Same
              Allegations It Asserts Now. ............................................................ 8

         ii.  IDC Did Not Act Diligently to Assist the Court in Creating a
              Workable Rule 16 Order or to Assert its Counterclaim before
              the Court's Deadline ...................................................................... 11

         iii. IDC Did Not Act Diligently In Seeking to Amend its
              Pleadings After the Events Purportedly Triggering its Motion ..... 12

    B.   IDC's Counterclaim Should Be Denied Under Rule 15 Because It Is Futile,
       Prejudicial, and Produces Undue Delay in Litigation ............................. 13

         a.   IDC's Counterclaim is Futile ......................................................... 14

         b.   IDC's Counterclaim Is Unduly Delayed and Prejudicial ............... 16

         c.   IDC's Counterclaim Is Delayed in Bad Faith ............................... 18

V.   CONCLUSION .................................................................................................. 19

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Amcor Flexibles Inc. v. Fresh Express Inc.*,
  2015 WL 890360 (N.D. Cal. Mar. 2, 2015)...............................................................................8

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
  465 F.3d 946 (9th Cir. 2006) ................................................................................................14

*Duarte Nursery, Inc. v. U.S. Army Corp. of Eng'rs*,
  2015 WL 5173741 (E.D. Cal. Sept. 3, 2015) .......................................................................13

*Dunbar v. Google, Inc.*,
  2012 WL 6202797 (N.D. Cal. Dec. 12, 2012) ......................................................................18

*EEOC v. Bakery*,
  2016 WL 1301173 (N.D. Cal. Apr. 4, 2016) ...................................................................14, 18

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ..............................................................................................16

*Faulks v. Wells Fargo & Co.*,
  2015 WL 4914986 (N.D. Cal. Aug. 17, 2015) ......................................................................18

*Finjan, Inc. v. Blue Coat Sys. Inc.*,
  2014 WL 6626227 (N.D. Cal. Nov. 20, 2014) ......................................................................12

*Fru-Con Construction Corp. v. Sacramento Municipality*,
  2006 WL 3733815 (E.D. Cal. Dec. 15, 2006) ......................................................................13

*Griggs v. Pace Am. Grp, Inc.*,
  170 F.3d 877 (9th Cir. 1999) ................................................................................................19

*GSI Tech. v. United Memories Inc.*,
  2015 WL 4463742 (N.D. Cal. July 21, 2015)..............................................................8, 12, 17

*Gutierrez v. Mofid*,
  39 Cal. 3d 892 (1985) ...........................................................................................................15

*Hamilton v. Marx*,
  2012 WL 12882947 (C.D. Cal. July 24, 2012) .....................................................................17

*Heath v. Google Inc.*,
  2016 WL 4070135 (N.D. Cal. July 29, 2016)........................................................................14

*Jackson v. Laureate, Inc.*,
  186 F.R.D. 605 (E.D. Cal. 1999) .....................................................................................11, 12

*Johnson v. Mammoth Recreations Inc.*,
　975 F.2d 604 (9th Cir. 1992) ................................................................ 7, 13

*Kaplan v. Rose*,
　49 F.3d 1363 (9th Cir. 1994) .................................................................... 8

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
　194 F.3d 980 (9th Cir. 1999) .................................................................. 17

*M.H. v. Cty. of Almeda*,
　2012 WL 5835732 (N.D. Cal. Nov. 16, 2012) ........................................ 13

*Maritz Inc. v. Carlson Mktg. Grp.*,
　2009 WL 3561521 (N.D. Cal. Oct. 30, 2009) ......................................... 14

*Mosley v. Groupon, Inc.*,
　2016 WL 4702680 (N.D. Cal. Sept. 10, 2016) ........................................ 18

*Muench Photography, Inc. v. Pearson Educ., Inc.*,
　2013 WL 4426493 (N.D. Cal. Aug. 15, 2013) ......................................... 18

*Music Grp. Macao Commercial Offshore Ltd. v. Foote*,
　2015 WL 3882448 (N.D. Cal. June 23, 2015) ......................................... 19

*Navarro v. Eskanos & Adler*,
　No. C 06-02231, 2006 WL 3533039 (N.D. Cal. Dec. 7, 2016) ................ 13

*Omoregie v. Boardwalk Auto Ctr., Inc.*,
　2008 WL 4857942 (N.D. Cal. Nov. 10, 2008) ........................................ 11

*Popescu v. Apple Inc.*,
　1 Cal. App. 5th 39 (2016) ...................................................................... 14

*Ray Bourhis Assocs. v. Principal Life Ins. Co.*,
　2015 WL 7180621 (N.D. Cal. Nov. 16, 2015) .................................... 14, 15

*U.S. v. Safran Grp., S.A*,
　2017 WL 1862508 (N.D. Cal. May 9, 2017) ........................................... 11

*Van Slyke v. Capital One Bank*,
　2007 WL 3435095 (N.D. Cal. Nov. 13, 2007) ........................................ 13

*In re W. Wholesale Natural Gas Antitrust Litig.*,
　715 F.3d 716 (9th Cir. 2013), *aff'd in part and rev'd in part sub nom. Oneok,
　Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015) ....................................... 8, 9

**Other Authorities**

Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1488 & nn.14-15 (3d ed. 2018)................................. 17

Fed. R. Civ. P. 16(b)(4)................................................................................. 7

Rule 15 ................................................................................................................... 13, 16, 17

Rule 15(a) .................................................................................................................. 7, 11, 14

Rule 16 ...................................................................................................................... *passim*

ASUS'S OPPOSITION TO DEFENDANTS' MOTION TO AMEND SCHEDULING ORDER - CASE NO. 15-CV-1716 BLF

1    Plaintiffs ASUS Computer International and ASUSTeK Computer Inc. (collectively

2  "ASUS") oppose InterDigital, Inc., InterDigital Communications, Inc., InterDigital Technology

3  Corporation, IPR Licensing, Inc., and InterDigital Patent Holdings, Inc.'s ("IDC's") Motion to

4  Amend Scheduling Order and For Leave to File First Amended Counterclaims ("Motion").

5  **I.    INTRODUCTION**

6    IDC's attempt to add a counterclaim to this litigation at this belated stage fails to satisfy

7  either Federal Rule of Civil Procedure ("Rule") 16's or Rule 15(a)'s requirements. More than three

8  years before IDC filed this Motion ███████████████████████████████

9  ████████████████████████████████████████████

10 ████████████████████████████████████████████

11 ███████████████████████████████████ is one piece of

12 evidence among many that IDC has *not* acted diligently, as required under Rule 16, and its Motion

13 is futile, unduly delayed, and prejudicial under Rule 15's rubric.

14    IDC never once mentions ████████ to the Court in its Motion, nor did IDC ever again

15 mention ████████ to ASUS after ████████. Now, *years after* ████████, *sixteen months after*

16 the deadline for amending pleadings, *two months after* it discovered the "new facts," *a month after*

17 fact discovery closed, and the day before opening expert reports were exchanged, IDC filed the

18 instant Motion. IDC bootstraps its late amendment to documents that merely reinforce facts that

19 were within IDC's knowledge as far back as ██████. And, IDC attempts to handicap ASUS by trying

20 to force ASUS to litigate its counterclaim without *any* discovery targeted at exploring IDC's

21 contentions or ASUS's defenses. The only alternative—reopening discovery after ASUS has spent

22 two and a half years and large sums of money on discovery—prejudices ASUS by delaying trial

23 while ASUS continues to pay non-FRAND rates to IDC.

24    ASUS respectfully requests this Court deny IDC's Motion. Notably, resolution of the

25 timely-pled claims will obviate IDC's counterclaim because once the court sets a FRAND-

26 ───────────────────

27    [1] "ASUS Ex." hereinafter refers to Exhibits attached to the Declaration of Anna M.
Weinberg in Support of this Opposition. "IDC Ex." hereinafter refers to Exhibits attached to the

28 Declaration of Lucy Yen in Support of IDC's Motion.

1    complaint rate for 3G-4G mixed use devices, ███████████████████████████

2    ████████████████████████████.

3

4    **II.    FACTUAL BACKGROUND**

5            **A.  IDC's PLAs with ASUS and Quanta**

6            IDC's Motion implicates its Patent License Agreements ("PLAs") with both ASUS and

7    Quanta. 

8            In 2008, ASUS and IDC entered into a PLA ("ASUS PLA"). ████████████████

9    █████████████████████████████████████████████████████ *See*

10   Dkt No. 107-1, § 2.1 (emphasis added). ███████████████████████████

11   ██████████████████████ *See id.*, §§ 1.3, 3.1 █████████████████

12   ████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████

19   ██████████

20           Quanta manufactures certain 3G and 4G devices for ASUS. In 2005, Quanta entered into a

21   confidential Patent License Agreement with IDC ("Quanta PLA"), █████████████████

22   ████████████████████████████████ IDC Ex. 3, § 1.11, 1.13, 3.1. In 2012,

23   Quanta amended its PLA to cover 4G devices, ████████████████████. *See* IDC Ex. 4.

24           Since Quanta began producing devices for ASUS, ████████████████████

25

26           _____

       [2] Of course, if the court's determination results in ASUS having overcompensated IDC by
27   paying high non-FRAND rates for 3G—████████████████████████████████
     ████—then it will be IDC, not ASUS, that owes money ████████████████████

28   ██████.



**B.  IDC Knew of All the Relevant Facts**

The factual premise of IDC's Motion arises from

ASUS Ex. 3, IDC-ASUS-1716-0155749.

ASUS Ex. 4, IDC-ASUS-1716-0155767-770

ASUS Ex. 5,

IDC-ASUS-1716-0155780

ASUS Ex. 6, IDC-ASUS-1716-0111643-44

[3]

ASUS Ex. 10 IDC-ASUS-1716-0140210-14, at 0140211

[4]

. *See* ASUS Exs. 9, 11-17.

IDC Ex. 7, at ASUS_0149274

*Id.* at ASUS_0149273

*Id.*

*See* IDC Exs. 7-8.

IDC Ex.

9 at ASUS_0149958-61.

*Id.* at ASUS_0149969-70.

**C.** on the Same Factual Premise of IDC's Current Motion

IDC omits a fatal fact that undermines its entire Motion. In a

5



ASUS Ex. 7, IDC-ASUS-1716-0117579-80.

*Id.*

*Id.*

ASUS Ex. 1, ASUS_0001462.

*Id.* at ASUS_0001463 (emphasis added).

*Id.*

*Id.* (emphasis added).

**D. Events Leading Up to the Deadline to Amend Provided the Same Factual Basis That IDC Claims Justify Its Tardy Motion**

IDC Ex. 21, IDC-ASUS-1716-0140044-61.

IDC Ex. 21 at IDC-ASUS-1716-0140053 (emphasis added).

ASUS Ex. 8, IDC-ASUS-1716-0136730-34.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.   PROCEDURAL BACKGROUND

ASUS filed this suit on April 15, 2015, and its amended complaint on August 18, 2016. Dkt. Nos. 1, 107. IDC filed its Answer and Counterclaim on September 8, 2016. Dkt. No. 112.

On October 10, 2016, the parties submitted a Joint Case Management Statement in which IDC affirmed it was "unaware of any" additional counterclaims or affirmative defenses. Dkt No. 116 at 8:1-5. Following the Case Management Conference, on October 27, 2016, the Court issued a Case Management Order setting the "Last Day to Amend Pleadings or Add Parties" as December 26, 2016. Dkt. No. 122.

On October 31, 2016, IDC served its first set of RFPs to ASUS. ASUS Ex. 19. None of its requests sought documents related to Quanta, nor did IDC serve any interrogatories, requests for admission, or 30(b)(6) topics relating to Quanta before the deadline to amend pleadings (or at any point during discovery). On December 20, 2017, IDC served the first and only discovery (RFPs) regarding ASUS's relationship with Quanta. *See* IDC Ex. 19. Then, during the depositions of ASUS's witnesses in February 2018, ███████████████████ as part of its hidden agenda to amend its counterclaims.

During fact discovery, IDC never once mentioned its intention to add a counterclaim for contractual interference. As a result, ASUS did not seek any written discovery to explore IDC's contentions with respect to its new counterclaim or ASUS's affirmative defenses. And, in March 2018, ASUS deposed all of IDC's witnesses without any reason to select witnesses most knowledgeable about IDC's proposed counterclaim, explore the issues pertinent to the counterclaim, or build a record to support affirmative defenses to IDC's counterclaim.[6]

Subsequent to the close of fact discovery on March 16, 2018, the parties met and conferred several times to address competing motions to compel. As a result of those meet and confers, on April 5, 2018, the parties stipulated to modify the schedule to extend expert report deadlines as a

---

[6] ASUS served subpoenas on Quanta's U.S. subsidiary as part of discovery aimed at obtaining information regarding third party royalty payments IDC was withholding at the time. IDC Exs. 17-18. The subpoenas were not direct to IDC's counterclaim. *See id.* In response, Quanta's subsidiary indicated it did not have any documents. ASUS did not pursue an international subpoena because IDC agreed to produce certain documents and there was no counterclaim involving Quanta at the time.

result of IDC's late production of certain critical documents. Dkt Nos. 187-88. IDC never mentioned its intent to seek leave and add a counterclaim even though it was mere days before IDC filed its Motion.

On Friday, April 13, 2018, IDC notified ASUS for the first time that it would seek to amend its counterclaims out of time. *See* ASUS Ex. 18. Finally, on Monday, April 16, 2018, immediately before the parties exchanged opening expert reports, IDC filed the instant Motion.

## IV.   ARGUMENT

IDC has two legal hurdles to overcome before the Federal Rules permit it to amend its counterclaims at this late stage in this case. First, it must establish good cause by showing diligence in moving after the Rule 16 deadline for amending pleadings. Second, even if it is able to meet Rule 16's stringent standard, it must then also establish no prejudice, undue delay, bad faith or futility in bringing its amendment under Rule 15(a). As explained below, IDC fails to clear either hurdle.

### A.  No Good Cause Exists Under Rule 16 Because IDC Was Not Diligent In Amending Its Counterclaims

Initially, Rule 16 governs because IDC filed its Motion sixteen months after the deadline for amending pleadings. *Johnson v. Mammoth Recreations Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992) ("Once the district court ha[s] filed a pretrial scheduling order pursuant to [FRCP] 16 which established a timetable for amending pleadings[,] that rule's standards control[].").

"A [Rule 16] scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril' . . . Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Id.* at 610 (internal citations omitted). Under Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

"Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment" and only allows amendment if the pretrial schedule "cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609 (citing Fed. R. Civ. P. 16 advisory committee's notes (1993 amendment)). If IDC "was not diligent, the inquiry should end." *Id.*

1    "Courts often find diligence where new facts underlying the proposed amendment occurred

2    or became known to the moving party after the scheduling order's deadline for amendment." *Amcor*

3    *Flexibles Inc. v. Fresh Express Inc.*, 2015 WL 890360, at *5 (N.D. Cal. Mar. 2, 2015) (internal

4    citation omitted). By contrast, "[l]ate amendments to assert new theories are not reviewed favorably

5    when the facts and the theory have been known to the party seeking amendment since the inception

6    of the cause of action." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994); *In re W. Wholesale*

7    *Natural Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013), *aff'd in part and rev'd in part sub*

8    *nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015) ("The good cause standard typically will

9    not be met where the party seeking to modify the scheduling order has been aware of the facts and

10   theories supporting [the] amendment since the inception of the action."). The latter is the case here.

11   IDC's motion cannot clear the first hurdle of Rule 16 because IDC did not act diligently to add a

12   counterclaim for tortious interference—an allegation ████████████████████—based on facts

13   in IDC's possession ██████████████████████████████

14                    **i.    IDC Did Not Act Diligently Because It** ███████████

15                    ████████████████████████ **Based on the Same**

                      **Allegations It Asserts Now.**

16   "Delay is especially damaging to [IDC's] motion where the facts were previously available

17   and no reason is given for their exclusion from antecedent [pleadings]." *GSI Tech. v. United*

18   *Memories Inc.*, 2015 WL 4463742, at *2-3 (N.D. Cal. July 21, 2015) (citing *In re Fritz Cos. Secs.*

19   *Litig.*, 282 F. Supp. 2d 1105, 1110 (N.D. Cal. 2007)). IDC did not develop any new theories or

20   learn any new facts in discovery in 2018 that it did not already know prior to this litigation. *See In*

21   *re W. Wholesale*, 715 F.3d at 737.

22   First, the theory underlying IDC's new counterclaim for intentional interference is at least

23   ████████████████████████████████████████████████████████

24   ████████████████████████████████████████████

25   ██████ ASUS Ex. 1, at ASUS_0001463. IDC conveniently ignores ███████ in its Motion even

26   though ████████████████████ IDC's counterclaim. ███████ alone should undermine

27   any assertion of diligence in the intervening three years between ████████ and April 2018.

28   Second, the allegations underlying IDC's counterclaim are based ███████████ of

1   which IDC was well aware. IDC made these same factual allegations ███████████████.

2   Now, as it did then, IDC alleges: ████████████████████████████████████

3   ████" (*compare* ASUS Ex. 1, ASUS_0001462, *with* Mot. at 2-3 *and* IDC Ex. 1 at 24-25); that

4   Quanta is licensed to 4G patents ██████████████ (*compare* ASUS Ex. 1, ASUS_0001462 *with*

5   IDC Ex. 1 at 29:21-30:14); ██████████████████████████████

6   ████████████████████ (*compare* ASUS Ex. 1, ASUS_0001463, *with* Mot. at 4-5 *and* IDC

7   Ex. 1 at 30:3-7); ██████████████████████ (*compare* ASUS Ex. 1,

8   ASUS_0001463 *with* Mot. at 5:21-24, *and* IDC Ex. 1 at 30:15-17). In fact, IDC's Motion concedes

9   ██████████, IDC has known all but one allegation alleged in its counterclaim. *See* IDC Ex. 1 at

10   29:17-30:17; Mot. at 8:8-16.[7]

11        IDC hangs its entire Motion on the assertion that it did not know and could not have

12   discovered, prior to 2018, ████████████████████████████████

13   ████████. Mot. at 4:3-5, 8:11-16. IDC claims that not until February 2018—"[w]eeks before

14   the close of fact discovery" on March 16, 2018—did it "████████████████████████

15   ████████████████." Mot. at 4:3-5. This assertion is incorrect and

16   demonstrates a lack of diligence on many levels.

17        Ample documentary evidence within IDC's possession for years belies IDC's assertion. *See*

18   *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d at 737 (affirming district court's

19   denial of motion to amend to add claims where plaintiffs had knowledge of claims two years prior

20   to the scheduling order deadline). ████████████████████████████

21   ████████████████████████████████████████████

22   ████████████████████████████████. *See* IDC Ex. 12 at

23   ASUS_0149180 (████████████████████████████████

24   ████████████████████████████████████████

25   ████████████████████████████████████))[8]

26   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [7] Documents ████████ o ████████ and produced by both parties corroborate IDC's pre-
27   existing knowledge of these allegations. *See* § II.B. *supra*.
     [8] ████████████████████████████████
28   ████████████████ *See supra* footnote 3 and ASUS Exs. 9, 11-17.



1   IDC Ex. 7 at ASUS_0149273 (

2

3                                                                  Indeed, Quanta made

4

5

6                                                         IDC Ex. 21 at IDC-ASUS-1716-

7   0140053-54.

8                                    all of which pre-date IDC's pleadings in this case, are substantively the

9   same as the evidence IDC asserts it only discovered in 2018. For example, IDC states the new-

10  found evidence demonstrates that

11                                                                    . Mot. at 4:11-22.[9] Yet,

12                                    repeatedly made that exact same point. *See* ASUS Exs. 9, 11-17. IDC

13  also states that depositions revealed that

14

15                                    . Mot. at 4:18-5:2. But certain information about Quanta's PLA was public and

16

17

18

19                                                . *See, e.g.,* IDC Exs. J and K. Finally, IDC

20  asserts that a single document produced after discovery "

21                                                                    ," *id.* at 5:3-11,

22  but Quanta

23                              . *See* ASUS Exs. 7, 11-17.

24        In addition, IDC was not diligent in seeking discovery related to its belated counterclaim.  In

25        [9] IDC harps on certain

26        . Mtn. at 4:4-5. But,                    . *See* ASUS Ex. 4, IDC-ASUS-1716-0155767-770; ASUS Ex. 5, IDC-
      ASUS-1716-0155780. Moreover,

27

                                                            ASUS Exs. 9, 11-17.

28

1 ███████████████████████████. Yet, IDC did not issue a single

2 document request or take a single deposition relating to Quanta until a year after the deadline for

3 amending the pleadings. IDC waited until December 20, 2017 to serve the first and only discovery

4 (RFPs) regarding ASUS's relationship with Quanta. *See* IDC Ex. 19.

5       Because IDC had hatched the theory underlying its counterclaim and been aware of all the

6 underlying factual assertions ███████████, IDC cannot show "it acted diligently to comply

7 with the Court's deadline but was unable to comply 'because of the development of matters which

8 could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling

9 conference.'" *U.S. v. Safran Grp., S.A*, 2017 WL 1862508, at *4 (N.D. Cal. May 9, 2017) (citations

10 omitted). For this reason alone, IDC's motion should be denied under Rule 16.

11         **ii. IDC Did Not Act Diligently to Assist the Court in Creating a**
             **Workable Rule 16 Order or to Assert its Counterclaim before the**

12              **Court's Deadline**

13       Even if IDC was unaware of all the fact allegations necessary to assert its amended

14 counterclaim at the time of the CMC (which is not the case), it still did not act "diligent[ly] in

15 assisting the Court in creating a workable Rule 16 order" that accounted for the proposed

16 amendment. *See Omoregie v. Boardwalk Auto Ctr., Inc.*, 2008 WL 4857942, at *1 (N.D. Cal. Nov.

17 10, 2008). "Parties anticipating possible amendments to their pleadings have an 'unflagging

18 obligation' to alert the Rule 16 scheduling judge of the nature and timing of such amendments in

19 their status reports so that the judge can consider whether such amendments may properly be sought

20 solely under the Rule 15(a) standard, and whether structuring discovery pertinent to the parties'

21 decision whether to amend is feasible." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal.

22 1999) (quoting *Veranda Beach Club Ltd. P'ship v. W. Sur. Co.*, 936 F.2d 1364, 1371 (1st Cir.

23 1991); 3 Moore's Federal Practice at § 16.36[3][c]). IDC remained silent in the Joint Case

24 Management Statement and during the CMC about this potential amendment despite having

25 ████████████████████. *See* Dkt No. 116 at 8:1-5.

26       Nor can IDC establish that "noncompliance with the [Rule 16] deadline occurred [despite]

27 diligent efforts to comply." *See Omoregie*, 2008 WL 4857942, at *1. IDC failed to issue any

28 discovery it purportedly needed to make its counterclaim viable in a timely manner prior to the

December 16, 2016 deadline for amending pleadings. This failure appears to be an intentional, strategic decision by IDC. IDC issued several requests for document production (and obtained responses) weeks prior to the December 16 deadline. ASUS Ex. 19. But it did not issue any document production, interrogatories, or requests for admission seeking discovery of information purportedly needed for it counterclaim within that same timeframe. *See id.* Such a failure demonstrates lack of diligence. *See GSI Tech.*, 2015 WL 4463742, at *3 (finding no diligence where movant could have but chose not to pursue discovery that could have resulted in timely amendment).

### iii. IDC Did Not Act Diligently In Seeking to Amend its Pleadings After the Events Purportedly Triggering its Motion

Finally, even if ███████████████████████████████████████, IDC still did not act diligently in seeking an amendment. *See Jackson*, 186 F.R.D. at 608. IDC's motion admits that it "first learned" of these facts "[w]eeks before the close of fact discovery" "in mid-February 2018" after ASUS's production of documents and the depositions of several of ASUS's witnesses. Mot. at 4:3-7, 8:3. Yet, IDC waited until April 16, 2018—*after* ASUS deposed all of IDC's witnesses, *after* the close of fact discovery, *after* motions to compel, and the day before opening expert reports were due—to file this counterclaim. It did not even raise the possibility of this Motion on April 5, 2018, when the parties stipulated to amend the Scheduling Order as the result of belated document production from IDC. *See* Dkt. No. 187. IDC is unapologetic about its delay; it provides no excuse for why it sat on its hands while all these deadlines passed.

Instead, IDC relies on case law to justify its two-month delay. But the cited cases are inapposite. For example, IDC relies on *Finjan, Inc. v. Blue Coat Sys. Inc.*, to support it proposition that "moving party was diligent in filing motion for leave two months after non-moving party's document production." Mot. at 7:24-27 (citing 2014 WL 6626227, at *1 (N.D. Cal. Nov. 20, 2014)). In *Finjan*, the moving party promptly approached the opposing counsel about amending the moving party's pleadings when it discovered the new evidence in July, and the opposing counsel waited until September to indicate that it would oppose the motion. 2014 WL 6626227, at *2. The moving

party then filed its motion a week later. *Id*. Whereas in *Finjan* the delay was due to opposing counsel, here it was entirely of IDC's own making. Unlike in *Finjan*, IDC did not promptly notify ASUS about amending its pleadings after discovering "new" evidence—it did not give notice to ASUS until four days before filing and weeks after the purported "discovery". *See* ASUS Ex. 18. IDC does not provide any other explanation for the two-month delay. Thus, unlike in *Finjan*, IDC's inexplicable two month delay undermines, rather than supports, any claim of diligence.

Other cases IDC cites are similarly distinguishable because they involve motions filed before the close of fact discovery. For example, in *Fru-Con Construction Corp. v. Sacramento Municipality*, the motion was filed two months before the close of fact discovery and there had been no motion practice, whereas IDC filed its motion a month after fact discovery closed and after the deadline for motions to compel. 2006 WL 3733815, at *4 (E.D. Cal. Dec. 15, 2006) (the motion to amend was filed "prior to the close of fact discovery [and] there [was] no substantive law and motion practice to date"); *see also Duarte Nursery, Inc. v. U.S. Army Corp. of Eng'rs*, 2015 WL 5173741, at *2-3 (E.D. Cal. Sept. 3, 2015) (unlike this case, motion to amend was filed three months before close of fact discovery); *M.H. v. Cty. of Almeda*, 2012 WL 5835732, at *3 (N.D. Cal. Nov. 16, 2012) (granting motion in part because extended discovery provided "ample time to investigate and respond to the amended claims and allegations"); *Navarro v. Eskanos & Adler*, No. C 06-02231, 2006 WL 3533039 (N.D. Cal. Dec. 7, 2016) (motion filed 22 days before fact discovery closed). Indeed, this Court has held that even if a delay is not lengthy, the Court disfavors allowing leave to amend in view of past and pending deadlines. *Van Slyke v. Capital One Bank*, 2007 WL 3435095, at *3 (N.D. Cal. Nov. 13, 2007).

In sum, IDC cannot establish diligence regardless of whether IDC knew (or should have known) all the factual allegations underlying its amendment in 2013-2014, 2015, 2016, or as late as February 2018. Because IDC "was not diligent, the inquiry should end," and its motion should be denied. *Johnson*, 975 F.2d at 609.

**B.   IDC's Counterclaim Should Be Denied Under Rule 15 Because It Is Futile, Prejudicial, and Produces Undue Delay in Litigation**

"Only if the moving party establishes good cause to modify the scheduling order under Rule

16 should the Court consider whether the moving party also has demonstrated that amendment is appropriate under Rule 15(a)." *EEOC v. Bakery*, 2016 WL 1301173, at *2 (N.D. Cal. Apr. 4, 2016) (citing *Johnson*, 975 F.2d at 608; *Rodarte v. Alameda Cty*, 2015 WL 5440788, at *2 (N.D. Cal. Sept. 15, 2015)). Although leave should be freely granted under Rule 15(a) when "justice so requires," "a district court need not grant leave to amend where the amendment: (1) prejudices the opposing part[ies]; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citation omitted). IDC's motion is futile, prejudices ASUS, and was unduly delayed in bad faith.

### a.   IDC's Counterclaim is Futile

Even if, *arguendo*, this Court finds that good cause exists, futility still warrants denial of IDC's motion. *See Heath v. Google Inc.*, 2016 WL 4070135, at *2 (N.D. Cal. July 29, 2016).

IDC's counterclaim is futile because it is time-barred by the statute of limitations. Under California law, the statute of limitations on an action for intentional interference with contractual relationship is two years. *See Maritz Inc. v. Carlson Mktg. Grp.*, 2009 WL 3561521, at *2 (N.D. Cal. Oct. 30, 2009) (*citing* Cal. Code Civ. P. § 339). The two-year limitations period "starts running when the cause of action accrues . . . Generally speaking, a cause of action accrues at the time when the cause of action is complete with all of its elements." *Ray Bourhis Assocs. v. Principal Life Ins. Co.*, 2015 WL 7180621, at *3 (N.D. Cal. Nov. 16, 2015) (internal quotation marks omitted).

An intentional interference with contractual claim requires five elements: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Popescu v. Apple Inc.*, 1 Cal. App. 5th 39, 51 (2016).

IDC's proposed pleading makes clear that its counterclaim was complete with all of its elements well before April 2016, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. IDC's counterclaim alleges that (1) IDC and Quanta entered into a Patent License Agreement in 2005 and the agreement was amended in 2012 (IDC Ex. 1, § 32); (2) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (IDC Ex. 1, § 68); (3) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14

1 ████████████████████████████████████

2 ██████████ (*id.*, § 68); (4) ████████████

3 ████████████████████████████ (*id.*, § 72); and (5) IDC was damaged as

4 a result of the allegations for previous elements (*Id.*, § 77).

5       In California, the discovery rule "postpones accrual of a cause of action until the plaintiff

6 discovers, or has reason to discover, the cause of action." *Ray Bourhis Assocs.*, 2015 WL 7180621,

7 at *4 (citations omitted). The discovery rule in California does not toll the statute of limitations in

8 this situation. Under the discovery rule, "suspicion of one or more of the elements of a cause of

9 action, coupled with knowledge of any remaining elements, will generally trigger the statute of

10 limitation period." *Id*. As set forth above in §§ II.B-C and IV.A.i, ASUS demonstrated that ████

11 ████, IDC has been aware of the allegations that IDC now claims to be recently discovered; in fact,

12 ████████████████████████████████. ASUS Ex. 01,

13 ASUS_0001463. Therefore, under the discovery rule, the two-year period of limitations has passed

14 and IDC's counterclaim should be timely barred.

15       Furthermore, even taking all of the factual allegations in the Motion and the counterclaim as

16 true, IDC's counterclaim is still barred by the statute of limitations. Given that IDC is a party to the

17 Quanta PLA, that ████████████████████████, and that the existence of

18 the Quanta PLA has been in public domain since January 2013, it is evident that IDC has always

19 been aware that (1) there is a contract between IDC and Quanta, and (2) ████████████

20 ████████████████. IDC also stated in the Motion that "

21 ████████████████████████████████████

22 ████████████████████." Mot. at 8:9-11. Therefore, based on the

23 allegations, IDC was aware of four out of the five elements of the claim ████████.

24       Based on the allegations alone, IDC also should have at least suspected ASUS's alleged

25 ████████████████ when it "took action to investigate and address this issue" because

26 "████████████████████████████████████

27 ████████████████████████████████." IDC Ex.

28 1, § 51. *See Gutierrez v. Mofid*, 39 Cal. 3d 892, 897 (1985) (in a medical malpractice lawsuit, the

statute of limitation period began when the patient "bec[ame] alerted to the necessity for investigation and pursuit of her remedies.").

Therefore, IDC's amended pleadings alone show that IDC's counterclaim has been barred by the statute of limitations. As such, those pleadings are futile and warrant denial of IDC's motion.

### b.  IDC's Counterclaim Is Unduly Delayed and Prejudicial

Prejudice to the opposing party must be given the greatest weight under the Rule 15 analysis. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). IDC cannot satisfy Rule 15 because its counterclaim is unduly delayed and prejudicial. As set forth in § III.A, above, IDC improperly waited months, if not years, to bring its counterclaim when it could have and should have brought it sooner. These same facts support undue delay.

This undue delay prejudices ASUS because it has not had an opportunity to seek discovery in response to IDC's counterclaim. IDC claims no further discovery is necessary because the facts are in ASUS's possession and the parties have already sought relevant discovery. Mot. at 9:10-26. IDC is wrong. Additional discovery is necessary, and regardless of whether or not there is additional discovery in this case, ASUS will be prejudiced by IDC's late amendment.

Denying ASUS its right to conduct discovery on IDC's counterclaim will unfairly handicapp its ability to defend against the counterclaim and present affirmative defenses at trial. IDC may have all the discovery it believes it needs to prosecute its counterclaim because it subverted the litigation process by engaging in extensive fact discovery before asserting its counterclaim in this case. But, ASUS has not had the opportunity to conduct the necessary factual discovery due to IDC's complete silence regarding its counterclaim throughout discovery.[10] ASUS has not served any written or document discovery on IDC that explores IDC's contentions in its counterclaim, the factual premises of its counterclaim, or possible affirmative defenses ASUS could assert in response.[11] Without properly exploring the contours of these and many other issues

---

[10] A passing few questions during a single deposition does not constitute an opportunity for discovery, especially when at the time of the deposition, ASUS's counsel was unaware of the counterclaim. *See* Mot. at 9:15-17 (citing IDC Ex. 20 at 98:12-99:24).

[11] IDC points to a single ASUS RFP seeking documents relating to all of IDC's licensees, and thereby implicating Quanta. Mot. at 9:15-18. IDC has not identified any written discovery ASUS served on IDC specific to IDC's proposed counterclaim. ASUS would at least want the

stemming from IDC's amended counterclaim in fact discovery, ASUS would be forced to blindly rebut IDC's counterclaim and present its defenses at trial.

The alternative is no less prejudicial to ASUS. Reopening fact discovery to allow ASUS to engage in the discovery to which it is entitled in response to IDC's counterclaims similarly prejudices ASUS. "Prejudice may be found where substantial discovery has already taken place and the amendment would require a defendant to revisit that discovery." *Hamilton v. Marx*, 2012 WL 12882947, at *6 (C.D. Cal. July 24, 2012) (citations omitted); *see also* Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1488 & nn.14-15 (3d ed. 2018) (collecting case law nationwide where courts denied amendments in nearly identical circumstances because of prejudice).

Courts considering analogous scenarios have rejected similar arguments and found prejudice in reopening discovery due to a delayed motion to amend. For example, in *Lockheed Martin Corp. v. Network Solutions, Inc.*, the motion to amend came several months after the deadline for amendments and after discovery, even though the movant had been considering the amendment several months prior. 194 F.3d 980, 986 (9th Cir. 1999). The Ninth Circuit affirmed the district court's finding that the amendments would be prejudicial, explaining "[a] need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend…" *Id.* (citation omitted). In *Hamilton*, the district court similarly found prejudice and denied the plaintiff's motion to amend under Rule 15 because, *inter alia*, defendants would "have to reopen discovery." 2012 WL 12882947, at *6. Like IDC, in *Hamilton*, the movant argued "no new discovery is needed because counsel for Defendants has already questioned Plaintiff extensively on the topics related to the new, proposed claims." *Id.* The court rejected that argument; it reasoned that "Deponents will have to be re-deposed as Defendants seek to gather complete information necessary to the defense of the proposed claims. Conducting depositions and written discovery will add expenses and impose delay, which itself will increase costs." *Id.*; *see also GSI*, 2015 WL 4463742, at *3 ("Putting [the nonmoving party] through the time and expense of

---

ability to serve contention interrogatories and take other written and deposition discovery related to several factual assertions IDC makes. *See, e.g.*, Ex. 1 at 23:15-28:14, 29:19-30:21. ASUS would also want to depose at least ███████████████████████████████, and take a 30(b)(6) deposition. *See, e.g.*, § II.B, *supra*.

continued litigation on a new theory, with the possibility of additional discovery, is manifestly unfair and unduly prejudicial.") (quoting *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (citing *Lockheed* and other Ninth Circuit precedent)). Discovery in this case was long (spanning two and a half years), contentious, and expensive—reopening it would prejudice ASUS by causing it to incur further time and expense due solely to IDC's dilatory filing of its amendment.

Reopening discovery will delay trial, further prejudicing ASUS. Delayed trials naturally prejudice plaintiffs, who seek resolution of their claims. *See Mosley v. Groupon, Inc.*, 2016 WL 4702680, *2 (N.D. Cal. Sept. 10, 2016). But, here that prejudice is particularly pronounced and expensive to ASUS—and beneficial for IDC—because ASUS continues to pay a high, non-FRAND royalty rate to IDC under the ASUS PLA until the court declares a FRAND rate. This additional tax imposed by IDC's delayed Motion is another reason to find prejudice and deny the Motion. *See, e.g., Bakery*, 2016 WL 1301172, at *3 (denying motion to amend because it "would require continuance of the trial date… and Defendant would be required to pay Ms. Ramirez's wages for that entire period."); *Muench Photography, Inc. v. Pearson Educ., Inc.*, 2013 WL 4426493, at *3 (N.D. Cal. Aug. 15, 2013) ("the need to reopen discovery to explore new causes of action for even six weeks would delay the trial and prejudice Pearson").

The Court should deny IDC's Motion as prejudicial.

### c.   IDC's Counterclaim Is Delayed in Bad Faith

IDC could have ameliorated at least some, if not all, of the prejudice and harm caused by its amended counterclaim if it had acted in good faith.[12] Even if it was not ready to file the counterclaim in 2016, 2017 or even February 2018,[13] it could have informed ASUS of its intent to do so to minimize prejudice. *Cf. Faulks v. Wells Fargo & Co.*, 2015 WL 4914986, at *3 (N.D. Cal. Aug. 17, 2015) (no bad faith where non-movant put on notice of intent to amend); *Music Grp.*

---

[12] IDC's failure to even cite ████████████████ written by the same counsel who submitted this Motion is in itself disconcerting regarding IDC's intentions.

[13] Which it should have been. As this court has explained,"[t]he fact that additional discovery may be needed to 'fully flush out' [IDC's] allegations will not excuse [IDC's] failure to include the allegations in an earlier pleading where the additional discovery provides no new facts or theories." *Dunbar v. Google, Inc.*, 2012 WL 6202797, at *12 (N.D. Cal. Dec. 12, 2012) (quoting *Jackson*, 902 F.2d at 1388).

1
2
3
4
5
6
7
8

*Macao Commercial Offshore Ltd. v. Foote*, 2015 WL 3882448, at *20 (N.D. Cal. June 23, 2015) (no bad faith where movant altered party and Court of possibility of amendment). Its motion all but admits that IDC intended to file this counterclaim as of February 2018. *See* Mot. at 4:3-10; 8:3-5; 9:19-24. Had IDC informed ASUS before February 14, 2018, ASUS could have sought written discovery. Had IDC informed ASUS before March, ASUS could have deposed IDC's witnesses on issues related to the counterclaim. And, had it informed ASUS in March, ASUS could have had the opportunity to prepare opening expert reports addressing possible affirmative defenses. But, IDC denied ASUS of all these opportunities.

9
10
11
12
13
14
15
16
17
18

But IDC made a tactical decision. IDC waited to bring this counterclaim until long *after* IDC was aware of the factual allegations underlying its amendment, *after* ASUS deposed all of IDC's witnesses, *after* the close of fact discovery, *after* motions to compel, and the day before opening expert reports. Worst, it provides no justification for why it secretly sat on its Motion from mid-February until mid-April in light of these deadlines. IDC gained a litigation advantage by hiding its amendment from ASUS throughout February and March, until April 16. The reasonable implication is IDC did so in bad faith to preclude ASUS from obtaining necessary discovery to sandbag ASUS at trial or to unnecessarily prolong litigation on a stale, futile claim. *See Griggs v. Pace Am. Grp, Inc.*, 170 F.3d 877, 881 (9th Cir. 1999) (bad faith exists where party "is seeking to prolong the litigation by adding new but baseless theories").

19

**V.    CONCLUSION**

20
21
22

For the reasons discussed above, ASUS respectfully requests that the Court denies IDC's Motion for Leave to Amend Scheduling Order and For Leave to File First Amended Counterclaims. Dated: April 30, 2018

23

SIDLEY AUSTIN LLP

24
25
26
27

By: */s/ Michael J. Bettinger*
    Michael J. Bettinger
    Attorneys for Plaintiffs
    ASUS COMPUTER INTERNATIONAL, and
    ASUSTEK COMPUTER INCORPORATED

28