1   DAVID S. STEUER, State Bar No. 127059
    dsteuer@wsgr.com
2   MICHAEL B. LEVIN, State Bar No. 172329
    mlevin@wsgr.com
3   MAURA L. REES, State Bar No. 191698
    mrees@wsgr.com
4   MATTHEW R. REED, State Bar No. 196305
    mreed@wsgr.com
5   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
6   650 Page Mill Road
    Palo Alto, CA 94304-1050
7   Telephone:  (650) 493-9300
    Facsimile:   (650) 565-5100
8
    LUCY YEN, State Bar No. 224559
9   lyen@wsgr.com
    WILSON SONSINI GOODRICH & ROSATI
10  Professional Corporation
    1301 Avenue of the Americas, 40th Floor
11  New York, NY 10019-6022
    Telephone:  (212) 999-5800
12  Facsimile:   (212) 999-5899

13  Attorneys for Defendants
    *InterDigital, Inc.; InterDigital Communications,*
14  *Inc.; InterDigital Technology Corporation; IPR*
    *Licensing, Inc.; and InterDigital Patent*
15  *Holdings, Inc.*

16                  UNITED STATES DISTRICT COURT

17                  NORTHERN DISTRICT OF CALIFORNIA

18                         SAN JOSE DIVISION

19

20  ASUS COMPUTER INTERNATIONAL; and          )   Case No.: 15-cv-1716 (BLF)
    ASUSTEK COMPUTER INCORPORATED,            )
21                                            )   **DEFENDANTS' NOTICE OF**
                                              )   **MOTION AND MOTION FOR**
22             Plaintiffs,                    )   **SUMMARY JUDGMENT**
                                              )
23        v.                                  )   **JURY TRIAL DEMANDED**
                                              )
24  INTERDIGITAL, INC.; INTERDIGITAL          )   Hearing Date:  October 11, 2018
    COMMUNICATIONS, INC.; INTERDIGITAL        )   Time:  9:00 a.m.
25  TECHNOLOGY CORPORATION ; IPR              )   Judge:  Hon. Beth Labson Freeman
    LICENSING, INC. ; and INTERDIGITAL        )
26  PATENT HOLDINGS, INC.,                    )
                                              )
27             Defendants.                    )
                                              )
28                          **PUBLIC**

                  **REDACTED VERSION OF DOCUMENT**

DEFENDANTS' MOT. FOR SUMMARY JUDGMENT                    CASE NO.: 15-CV-1716 (BLF)

1

## TABLE OF CONTENTS

2
**Page**

3   I.      INTRODUCTION ................................................................................................ 1

     II.     STATEMENT OF FACTS .................................................................................. 2
4
     III.    ARGUMENT ....................................................................................................... 6
5
             A.     ASUS Is Judicially Estopped from Arguing the PLA is "Non-FRAND" .............. 6
6            B.     ASUS Cannot Re-Litigate Issues Decided Against It in Arbitration ................. 10

7            C.     There is No Basis in Contract Law for ASUS to Avoid Compliance With
                    the 2008 PLA ................................................................................................ 14
8
                    1.     ASUS Cannot Undo the PLA on a Theory That it Was "Non-
                           FRAND" When Entered Into ............................................................. 14
9
                    2.     ASUS Cannot Undo the PLA Based on a Theory That Events
10                          Subsequent to Signing Render it "Non-FRAND" ............................. 15

11           D.     ASUS's Sherman Act Claim Fails As a Matter of Law ................................. 18

                    1.     ASUS Has Not Identified Any Distinct Relevant Market ................. 18
12
                    2.     There Is No Evidence of Anticompetitive Conduct .......................... 20
13                   3.     ASUS Cannot Demonstrate Injury-In-Fact or Antitrust Injury ........ 22

14           E.     Summary Judgment Should Be Granted as to Promissory Estoppel ............. 24

             F.     Summary Judgment Should Be Granted as to the UCL Claim ...................... 25
15
     IV.     CONCLUSION ................................................................................................. 25
16
17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alaska Air., Inc. v. United Air., Inc.*,
    948 F.2d 536 (9th Cir. 1991) ................................................................................24

*Allen v. Nw. Permanente, P.C.*,
    No. 3:12-CV-0402, 2012 WL 2564953 (D. Or. May 30, 2012) ..........................7

*Apple Inc. v. Samsung Elecs. Co.*,
    No. 11-CV-01846-LHK, 2011 WL 4948567 (N.D. Cal. Oct. 18, 2011) ......................19, 20

*Apple v. Motorola Mobility, Inc.*,
    886 F. Supp. 2d 1061 (W.D. Wis. 2012) ............................................................23

*Apple v. Samsung*,
    No. 11-CV-1846, 2012 WL 1672493 (N.D. Cal. May 14, 2012) .........................24

*Benihana of Tokyo, Inc. v. Benihana, Inc.*,
    891 A.2d 150 (Del. Ch. 2005) .............................................................................15

*Berger v. DIRECTV, Inc.*,
    No. 3:14-cv-01661, 2015 WL 5686894 (D. Or. Sept. 22, 2015) .........................9

*Broadcom Corp. v. Qualcomm Inc.*,
    501 F.3d 297 (3d Cir. 2007) ....................................................................19, 20, 21

*Burgess v. Mfg. Hous. Concepts*,
    No. 96-02-025, 1997 Del. Super. LEXIS 162 (June 17, 1997) ...........................15

*Cal. Comput. Prods., Inc. v. IBM Corp.*,
    613 F.2d 727 (9th Cir. 1979) ...............................................................................18

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...............................................................................................6

*Certain 3G Mobile Handsets*,
    Inv. No. 337-TA- 613, 2015 WL 6561709 (Apr. 27, 2015)..................................6

*Certain Wireless Devices With 3G Capabilities*,
    Inv. No. 337-TA-800, 2013 WL 3961230 (June 28, 2013).....................................5

*Certain Wireless Devices With 3G and/or 4G Capabilities*,
    Inv. No. 337-TA-868, 2014 WL 2965327 (June 13, 2014)...............................5, 6

*ChriMar Sys. v. Cisco Sys.*,
    72 F. Supp. 3d 1012 (N.D. Cal. 2014) .......................................................19, 25

*Clark v. Bear Stearns & Co.*,
    966 F.2d 1318 (9th Cir. 1992)..............................................................................10

*Coca-Cola Bottling v. Coca-Cola Co.*,
    769 F. Supp. 599 (D. Del. 1991) .........................................................................17

*Fanucchi & Limi Farms v. United Agri Prods.,*
    414 F.3d 1075 (9th Cir. 2005).............................................................................20

*Gerlinger v. Amazon.com, Inc.,*
    No. 02-5238 MHP, 2005 U.S. Dist. LEXIS 26019 (N.D. Cal. Oct. 31,
    2005), *aff'd*, 526 F.3d 1253 (9th Cir. 2008) ....................................................23

*Godo Kaisha IP Bridge 1 v. TCL,*
    No. 15-634-JFB-SRF, ECF No. 367 (D. Del. Feb. 28, 2018) ..........................18, 19, 21, 23

*Godo Kaisha IP Bridge 1 v. TCL,*
    No. 15-634-JFB-SRF, 2018 U.S. Dist. LEXIS 38506 (D. Del. Mar. 8, 2018) ...................18

*Gorlick Dist. Ctrs., LLC v. Car Sound Exhaust Sys. Inc.,*
    723 F.3d 1019 (9th Cir. 2013)...........................................................................23

*Greenwich Ins. Co. v. Media Breakaway, LLC,*
    No. CV08-937, 2009 U.S. Dist. LEXIS 63454 (C.D. Cal. July 22, 2009)........................11

*Hamilton v. State Farm Fire & Cas. Co.,*
    270 F.3d 778 (9th Cir. 2001) ..............................................................................7

*Image Tech. Servs. v. Eastman Kodak Co.,*
    125 F.3d 1195 (9th Cir. 1997)............................................................................18

*In re Innovatio,*
    921 F. Supp. 2d 903 (N.D. Ill. 2013) ..................................................................23

*In re Online DVD-Rental Antitrust Litig.,*
    779 F.3d 914 (9th Cir. 2015)..............................................................................22

*Indus. Opp. Partners v. Kendrion FAS Controls Hldg.,*
    No. 13-cv-6622, 2015 U.S. Dist. LEXIS 4032 (N.D. Ill. Jan. 14, 2015) .........................11

*InfoStream Grp., Inc. v. PayPal, Inc.,*
    No. C 12–748 SI, 2012 WL 3731517 (N.D. Cal. Aug. 28, 2012)..............................24

*InterDigital Commc'ns, Inc. v. Nokia Corp.,*
    No. 13-cv-00009-RGA, Order, ECF No. 51 (D. Del. Jul. 12, 2013...........................24

*J.A. Moore Constr. Co. v. Sussex Assocs. Ltd. P'ship,*
    688 F. Supp. 982 (D. Del. 1988) ....................................................................14, 15

*Janda v. T-Mobile, USA, Inc.,*
    No. C 05-03729 JSW, 2009 U.S. Dist. LEXIS 24395 (N.D. Cal. Mar. 13,
    2009)..............................................................................................................25

*Kwikset Corp. v. Superior Court,*
    51 Cal. 4th 310 (2011)......................................................................................25

*Magpali v. Farmers Grp., Inc.,*
    48 Cal. App. 4th 471 (1996)..............................................................................20

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC,*
    692 F.3d 983 (9th Cir. 2012) .......................................................................6, 7, 8

*Mora v. Chem-Tronics, Inc.*,
  16 F. Supp. 2d 1192 (S.D. Cal. 1998) ................................................................6

*NACCO Indus., Inc. v. Applica Inc.*,
  997 A.2d 1 (Del. Ch. 2009) ...............................................................................15

*Nat'l Soc'y of Prof'l Eng'rs. v. U.S.*,
  435 US 679 (1978) .............................................................................................20

*NYNEX Corp. v. Discon, Inc.*,
  525 U.S. 128 (1998) ...........................................................................................21

*PowerAgent Inc. v. Elec. Data Sys. Corp.*,
  358 F.3d 1187 (9th Cir. 2004) .............................................................................7

*Rambus Inc. v. FTC*,
  522 F.3d 456 (D.C. Cir. 2008) ...........................................................................21

*Roderick v. Mazzetti & Assocs.*,
  No. C 04-2436 MHP, 2006 U.S. Dist. LEXIS 46034 (N.D. Cal. July 7,
  2006).............................................................................................................10, 11

*Simplexity, LLC v. Zeinfeld*,
  No. 8171-VCG, 2013 Del. Ch. LEXIS 95 (Apr. 5, 2013)..................................15

*Smith v. Facebook, Inc.*,
  262 F. Supp. 3d 943 (N.D. Cal. 2017) ...............................................................25

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013)..............................................................................22

*Spiegler v. Home Depot U.S.A., Inc.*,
  552 F. Supp. 2d 1036 (C.D. Cal. 2008) .............................................................25

*Sullivan v. Oracle Corp.*,
  51 Cal. 4th 1191 (2011).....................................................................................25

*TCL v. Ericsson*,
  No. 14-0341, 2016 U.S. Dist. LEXIS 140566 (C.D. Cal. Aug. 9, 2016) ...........21

*TCL v. Ericsson*,
  No. 14-341, 2017 U.S. Dist. LEXIS 214003 (C.D. Cal. Nov. 8, 2017) .............17

*TrueBlue, Inc. v. Leeds Equity Partners IV, LP*,
  No. N14C-12-112 WCC CCLD, 2015 WL 5968726 (Del. Super. Ct. Sept.
  25, 2015)............................................................................................................24

*U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*,
  822 F.3d 650 (2d Cir. 2016) ..............................................................................20

*U.S. v. Grinnell Corp.*,
  384 U.S. 563 (1966) ...........................................................................................18

*Verizon v. Trinko*,
  540 U.S. 398 (2004) ...........................................................................................20

1

**STATUTES**

6 Del. C. § 2513(a) ...................................................................................................10

2

Bus. & Prof. Code § 17200 .........................................................................................5

3

4

**RULES**

Fed. R. Civ. P. 56(a) ...................................................................................................6

5

6

**MISCELLANEOUS**

7

1 Williston on Contracts § 1:1 (4th ed. May 2018).......................................................14

8

18 Moore's Fed. Prac. § 132.03 (2018)........................................................................10

9

Restatement (Second) of Contracts § 213 ....................................................................15

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

Table of Abbreviations

| | |
|---|---|
| InterDigital | Defendants InterDigital, Inc., InterDigital Communications, Inc., InterDigital Technology Corporation, IPR Licensing, Inc., and InterDigital Patent Holdings, Inc. |
| ASUS | Plaintiffs ASUS Computer International and Asustek Computer Incorporated |
| IPR | Intellectual Property Rights |
| ETSI | European Telecommunications Standards Institute, a standards development organization |
| SDO | Standards Development Organization (used interchangeably with SSO) |
| SSO | Standards Setting Organization (used interchangeably with SDO) |
| 2G | Second Generation (of cellular technology) |
| 3G | Third Generation (of cellular technology) |
| 4G | Fourth Generation (of cellular technology) |
| GSM | A 2G cellular standard (Global System for Mobile communications) |
| UMTS | A 3G cellular standard (Universal Mobile Telecommunications System), used interchangeably with WCDMA |
| WCDMA | A 3G cellular standard (Wideband Code Division Multiple Access), used interchangeably with UMTS |
| LTE | A 4G cellular standard (Long Term Evolution) |
| USITC | United States International Trade Commission |
| ALJ | Administrative Law Judge |
| FRAND | Fair, Reasonable and Non-Discriminatory |
| PLA | Patent License Agreement |
| FAC | First Amended Complaint, Dkt. 108-6 |
| DCFA | Delaware Consumer Fraud Act |
| UCL | (California) Unfair Competition Law |
| MFL | Most-Favored Licensee |
| SEP | Standards-Essential Patent |
| IDC | InterDigital |

**Note**: all emphasis in quotations is added unless otherwise stated.

Exhibits cited as "Ex. __" are exhibits to the Declaration of Lena Wong, filed herewith.

1    PLEASE TAKE NOTICE that on October 11, 2018 in the U.S. District Court for the

2  Northern District of California, Courtroom 3, 280 South First Street, San Jose, InterDigital shall

3  and hereby does move for an order granting partial summary judgment in favor of InterDigital.

4    Issues to be decided: (1) Whether ASUS is judicially estopped from arguing that the PLA

5  is "non-FRAND"; (2) whether issue preclusion prevents ASUS from re-litigating issues that were

6  decided against ASUS in arbitration; (3) whether ASUS can void the binding and enforceable

7  2008 PLA under applicable contract law; (4) whether ASUS's Sherman Act claim fails as a matter

8  of law; (5) whether ASUS's promissory estoppel and UCL claims fail as a matter of law.

9  **I.      INTRODUCTION**

10    ASUS seeks to undo the parties' 2008 patent license agreement (PLA) for 2G/3G cellular

11  products because ASUS no longer likes its terms.  ASUS asks the Court to drastically lower the

12  agreed-upon 3G royalties, both going forward and as a refund of past royalties.  ASUS's claims

13  based on the assertion that the 3G royalties ASUS agreed to in 2008 are "non-FRAND" fail

14  because: (1) ASUS is judicially estopped from arguing the PLA is "non-FRAND" based on its

15  representations to the Arbitration Tribunal; (2) issue preclusion bars ASUS from asserting the

16  PLA was "non-FRAND" when signed, as the Tribunal decided the underlying issues against

17  ASUS; (3) there is no legal basis to void a binding contract to which ASUS gave valid consent;

18  and (4) there is no legal basis on which to void or modify a license based on a theory that it

19  became "non-FRAND" due to events after the license was granted.  ASUS's bait-and-switch

20  tactic of agreeing to "non-refundable" royalty terms, and then later seeking to avoid compliance

21  with its agreement and claiming that different terms should apply (and should even apply

22  retroactively), is inconsistent with the very foundation of contract law.  While ASUS also seeks

23  to assert claims relating to InterDigital's later offers to license 4G patents (which were not

24  included in the PLA), ASUS has offered no evidence of injury or damages with respect to such a

25  theory, as ASUS has not paid any 4G royalties.  This is fatal to ASUS's Sherman Act claim as to

26  4G offers because there is no injury-in-fact or antitrust injury.  There is also no evidence to

27  support multiple other required elements of ASUS's Sherman Act claim.  And ASUS's claims

28  for promissory estoppel and under the California unfair competition law fail as a matter of law.

## II.    STATEMENT OF FACTS

InterDigital is a publicly-traded American technology company that is a pioneer in developing wireless telecommunications technologies.  Founded in 1972, InterDigital is listed on NASDAQ and is included in the S&P MidCap 400 index.  McElvaine Decl. ¶ 2.  As of December 31, 2017, InterDigital had approximately 350 employees, most of whom are engineers.  *Id*.  Over its history, InterDigital has invested over $1 billion in research and development.  *Id*.  InterDigital does not manufacture cell phone products.  *Id*.  Most of its revenue is derived from licensing its portfolio of thousands of U.S. and foreign patents and patent applications, including those relating to 2G, 3G, and 4G cellular systems.  *Id*.  InterDigital's dozens of current and past licensees include major companies such as Apple, Samsung, Huawei, Panasonic, RIM/Blackberry, LG Electronics, HTC, Sharp, and Sony.  *Id*.

ASUS is a large multinational corporation based in Taiwan that sells a variety of products including computers, displays, cell phones, and tablets.  Ex. 1.  ASUS employs over 11,000 people globally, and sells products in more than seventy countries.  Ex. 2.  ASUS's annual revenues in 2017 totaled NT$434 billion (over US$14 billion).  Ex. 3.  By comparison, InterDigital's reported revenue in 2017 was $533 million.  Ex. 4.

Beginning in 2004, ASUS and InterDigital engaged in lengthy negotiations that culminated four years later in a Patent License Agreement ("PLA") signed in April 2008 covering 2G and 3G cell phone products.  In the PLA, ASUS promised to pay the "non-refundable" royalties mutually agreed to by the parties.  Dkt. 2-2 § 3.1.  Not surprisingly in light of ASUS's far greater resources and bargaining power, the final PLA ████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████████  *Id*.; Ex. 5.  Although InterDigital had initially offered ████████████████████████, ASUS rejected that offer.  Ex. 6.  The PLA is governed by Delaware law, and it represents "the complete and final agreement between the Parties, and supersedes all previous understandings, relating to the subject matter hereof . . ."  Dkt. 2-2 §§ 6.1, 6.22.

For the first five years of the agreement, ASUS expressed no dissatisfaction with the rates

set forth in the PLA. However, by 2014, ASUS changed its business model.  While it had

previously focused on selling █████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ Exs. 7-11; Dkt. 135-4 ¶ 69.  ASUS

apparently decided that the royalty terms it had agreed to in the PLA did not comport with its

new approach of selling low-priced phones and it began to complain, for the first time, that those

terms were allegedly "non-FRAND."  Ex. 12.   By 2014, InterDigital had also asked ASUS to

license its patents for the new 4G generation of cell phone technology that ASUS had begun

using, without license, in its phones.  Ex. 13. ASUS rebuffed InterDigital's efforts, including ███

██████████████████████████████████████████████████████████████████

███████   Exs. 14-15.  To this day, ASUS has rejected all of InterDigital's offers for a 4G

license; it remains unlicensed and has paid no royalties for use of InterDigital's 4G patents.

In 2015, after several years of refusing to engage substantively with InterDigital's efforts

to negotiate a 4G license, ASUS filed this lawsuit.  The Court granted InterDigital's motion to

compel arbitration pursuant to the PLA's arbitration clause, except with respect to ASUS's claim

regarding ongoing negotiation of a 4G license.  Dkt. 90.  In the arbitration, ASUS filed an

application to dismiss on grounds of non-arbitrability, arguing that its claims did not "arise

under" the PLA.  Ex. 16.  In its Interim Award, the Tribunal granted the motion except as to

ASUS's fraudulent inducement claim, relying on ASUS's argument that its other claims did not

arise under the PLA.  Dkt. 94-3.  █████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████ *Id*.; FAC ¶ 100.  The Interim Award specifically

referenced and relied on ASUS's representations that its causes of action ███████████████

████████████████████████████ Dkt. 94-3 ¶ 45(a); *see also* ¶¶ 13g, 46.

ASUS apparently regretted its disclaimers of ██████████████████████████████

██████████████████████████████████████████ Immediately upon receiving the

arbitrability decision, ASUS ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

1    ████████████████████████████████████████████████████████████████

2    ███████████████████ Ex. 17.  InterDigital objected █████████████████████

3    ███████████████████ Ex. 18.  The Tribunal ██████████████████████████

4    █████████████ Ex. 17.  ASUS did not seek to vacate the award based on this finding.

5           After substantial fact discovery and submission of fact and expert witness statements, the

6    Tribunal held a four-day hearing on fraudulent inducement.  ASUS asserted that InterDigital had

7    made "false" statements that █████████████████████████████████

8    ██████████████████████████████ Ex. 19.  In particular, ASUS argued it was

9    defrauded because ███████████████████████████████████████

10   ████████████████████████████████████████████████████████████

11   *Id.*  In the Final Award, the arbitrators unanimously rejected ASUS's fraudulent inducement

12   claim as meritless.  Dkt. 135-4.  The Tribunal found █████████████████████

13   ████████████████████████████████████████████████████████████

14   █████████████████████████ *Id.* ¶ 71.  The Tribunal credited the analysis of

15   ████████████████████████████████████████████████████████████

16   ███████████████████████████████████████████████

17   ███████████████████████. *Id.* ¶¶ 64-66.  The

18   Tribunal rejected the testimony of ██████████████████████████████

19   ███████████████████████████████████████ *Id.*  In addition,

20   there was no intent to deceive on the part of InterDigital (████████████████████

21   ████████████████. *Id.* ¶¶ 72-75.  The Tribunal also found that █████████

22   ███████████████████████████ *Id.* ¶ 85, citing Ex.7 (Putnam WS ¶

23   218).  In rejecting ASUS's fraud claim, the Tribunal █████████████████████

24   ████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████

26   ██████████████ Pursuant to stipulation, the Court confirmed the Interim Award and Final

27   Award and entered judgment. Dkt. 137.

28          Now that it has been conclusively determined that no fraud by InterDigital occurred in

1    the negotiation of the PLA, and that the PLA's 3G royalty terms were ███████████████████

2    ASUS is proceeding to assert seven claims in this action: (I) Sherman Act § 2 Monopolization;

3    (II) violation of California UCL (Bus. & Prof. Code § 17200); (III) Breach of Contract Resulting

4    from Ongoing Negotiations; (IV) Breach of Contract Leading to and Resulting from 2008 PLA;

5    (V) Promissory Estoppel; (VI) Waiver; and (VIII) violation of Delaware Consumer Fraud Act.

6         All of ASUS's remaining claims are based on the assertion that InterDigital breached

7    FRAND commitments made in licensing declarations as to patents disclosed to ETSI as

8    potentially essential to 2G, 3G or 4G standards. The FRAND commitments are reflected in the

9    written declaration forms InterDigital submitted to ETSI.  The forms have two parts: (1) the IPR

10   Information Statement, which includes a list of patents as to which it is the patent owner's

11   "present belief" that the patents "may be or may become ESSENTIAL" to a standard; and (2) the

12   Licensing Declaration, which states:  "*To the extent* that the IPR(s) disclosed in the attached IPR

13   Information Statement Annex *are or become, and remain ESSENTIAL* . . .  the Declarant

14   and/or its AFFILIATES are (1) *prepared to grant* irrevocable licences under this/these IPR(s) on

15   terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy. . . ."  Ex.

16   20.  Clause 6.1 provides for an "undertaking in writing that [the declarant] is *prepared to grant*

17   irrevocable licences on fair, reasonable and non-discriminatory ("FRAND") terms and

18   conditions." *Id*.  The licensing declaration and the ETSI IPR Policy are governed by French law.

19   *Id*. § 12 & Decl. Form. The objectives of the ETSI IPR Policy are expressly stated in Section 3 of

20   the Policy:  it "seeks a balance between the needs of standardization for public use in the field of

21   telecommunications and the rights of the owners of IPRs." *Id*. § 3.1. In addition, IPR holders

22   "should be adequately and fairly rewarded for the use of their IPRs." *Id*. § 3.2.

23         InterDigital has been involved in previous litigation in the USITC where other parties

24   have made similar claims that InterDigital breached FRAND obligations, and all of those claims

25   were rejected. *Certain Wireless Devices With 3G Capabilities*, Inv. No. 337-TA-800, 2013 WL

26   3961230, at *235 (June 28, 2013) ("The FRAND nondiscrimination requirement prohibits

27   'unfair discrimination,' but it does not require uniform treatment across licensees, nor does it

28   require the same terms for every manufacturer or competitor."); *Certain Wireless Devices With*

1    *3G and/or 4G Capabilities*, Inv. No. 337-TA-868, 2014 WL 2965327, at *81 (June 13, 2014)

2    ("The evidence presented does not support the Respondents' position that InterDigital has

3    violated a FRAND obligation . . ."); *Certain 3G Mobile Handsets*, Inv. No. 337-TA- 613, 2015

4    WL 6561709, at *23 (Apr. 27, 2015) (finding that "there is no evidence of holdup" and "[t]he

5    [FRAND] obligation that InterDigital has taken has been fulfilled.").

6    **III.    ARGUMENT**

7             Summary judgment is appropriate "if the movant shows that there is no genuine dispute

8    as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

9    56(a). To prevail, the moving party must show the absence of a genuine issue of material fact

10   with respect to an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*,

11   477 U.S. 317, 324 (1986).  The burden then shifts to the opposing party to identify "specific facts

12   showing that there is a genuine issue for trial."  *Id.*  The same standard applies to summary

13   adjudication.  *Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

14           **A.    ASUS Is Judicially Estopped from Arguing the PLA is "Non-FRAND"**

15           ASUS is estopped from advancing arguments that the PLA contains non-FRAND terms

16   and conditions.  In opposing arbitrability, ASUS argued that its claims do not "arise under" the

17   2008 PLA because ███████████████████████████████████████ Dkt. 94-3 ¶

18   13j (████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████).  ASUS thereby successfully persuaded the Tribunal to

21   dismiss most of ASUS's claims from arbitration, returning them to this Court for litigation.  *Id.*

22   at 25.  However, it is now clear that ASUS seeks a determination that the 2008 PLA is not

23   FRAND-compliant.  *See, e.g.*, Ex. 21 (Scott  Morton Dep. Tr. 19:3-9) ███████████

24   ██████████████████████████████████████████████████████████████████.

25   Because ASUS prevailed in moving its claims to this Court based on a directly opposite

26   characterization of the scope of those claims, it should be estopped from taking this clearly

27   inconsistent position.

28           "Federal law governs the application of judicial estoppel in federal courts."  *Milton H.*

1    *Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 992 (9th Cir. 2012).  The doctrine

2    "precludes a party from gaining an advantage by asserting one position, and then later seeking an

3    advantage by taking a clearly inconsistent position."  *Hamilton v. State Farm Fire & Cas. Co.*,

4    270 F.3d 778, 782 (9th Cir. 2001).  Judicial estoppel applies with respect to statements made in

5    arbitration.  *Allen v. Nw. Permanente, P.C.*, No. 3:12-CV-0402, 2012 WL 2564953, at *6 (D. Or.

6    May 30, 2012) (precluding plaintiff from asserting position contrary to position taken in

7    arbitration); *see also PowerAgent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1191-93 (9th Cir.

8    2004).  Judicial estoppel has three factors: (1) whether a party's later position is "clearly

9    inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court

10   to accept that party's earlier position"; and (3) "whether the party seeking to assert an

11   inconsistent position would derive an unfair advantage or impose an unfair detriment on the

12   opposing party if not estopped."  *Milton*, 692 F.3d at 994.  "[C]hicanery or knowing

13   misrepresentation by the party to be estopped is [also] a factor to be considered," although it is

14   not required.  *Id.* at 995.  Each of these factors supports the application of judicial estoppel here.

15       **First**, ASUS's previous and current positions are "clearly inconsistent."  In the

16   arbitration, ASUS filed an application to dismiss for lack of jurisdiction ("Application"), seeking

17   to send its counterclaims back to this Court.  Dkt. 94-3 ¶¶ 1, 4.  In support of its Application,

18   ASUS maintained that, despite the clause in the PLA requiring that claims "arising under" the

19   PLA be arbitrated, its claims against InterDigital ████████████████████████████

20   ████████  *Id.* at 5.  ASUS further argued ████████████████████████████

21   ████████████████████████████████████████████████

22   *Id.* at 12.  During the hearing, when the Tribunal expressly asked ASUS ████████████

23   ████████████████████████████████████████████████

24   ████████████████████████████████  *Id.*  The

25   Tribunal's decision reflected, and was based on, ████████████████████

26   ████████████████████  *Id.* ¶ 45(a).

27       Contrary to ASUS's ████████████, it is now apparent that FRAND compliance **is**

28   the essence of ASUS's claims, which are firmly rooted in the PLA.  ASUS's Mr. Lu testified that

1     ████████████████████████████████████████████████ *See* Ex. 6

2     (Lu Dep. Tr. 148:10-149:10).  The operative FAC seeks a "[j]udgment that the 2008 PLA and

3     the offers IDC made to ASUS are not fair, reasonable and non-discriminatory."  FAC at 33 ¶ K.

4     ASUS's expert witnesses make the same assertions as the basis for their opinions:  ████████

5     ████████████████████████████████████████████████████████████

6     ████████████████████████████████████████████████████████████

7     ████████████████████████████████████████████████████████

8     ████████████████████████████████████████████████████

9     ████████████████████████████████████████████████████

10    ████████████████████████████████████████████████████

11    ████████████████████████████████████  Indeed, ASUS's

12    entire damages claim in this case is premised on ████████████████████████

13    ████████████████████████████████████████████████████

14    ████████████████████████████████████████████████████████

15    ████████████████████████████████████████████████████████

16    ████████████████████████████████████████████████; Ex.

17    24 (Leonard Dep. 54:6-24).  ASUS's previous representations to the Tribunal ████████████

18    ██████████████████████████████ simply cannot be reconciled with

19    its current position directly challenging the 2008 PLA as non-FRAND compliant.

20           Further, ASUS's conduct amounts to a knowing misrepresentation.  *Milton*, 692 F.3d at

21    994.  ASUS's blatant and unsuccessful effort ████████████████████████

22    ████████████████████████████████████████

23    ████  is ample evidence of the type of "chicanery" (*id*. at 995) that the judicial estoppel

24    doctrine seeks to prevent.  Exs. 17-18.  ASUS's transparent excuse of ████████████████

25    ████████████████████████████████████████████████████████████

26    ████████████████████████████████████  *Id*. ASUS could have

27    presented all claims – including FRAND claims – in arbitration, but chose instead to avoid that

28    forum by convincing the Tribunal that its action is unrelated to claims of PLA-based FRAND

1    violations.

2           **Second**, there can be no dispute that ASUS successfully persuaded the Tribunal to accept

3    its arguments concerning the nature of its claims against InterDigital.  Relying on ASUS's

4    representations, the Tribunal concluded that ASUS's claims did not ███████████████████

5    ██████████████████████████████ and granted ASUS's Application with respect to six of

6    seven claims.  Dkt. 94-3 ¶ 45(a).

7           **Third**, allowing ASUS to challenge the PLA as non-FRAND compliant would give

8    ASUS an unfair advantage and severely prejudice InterDigital.  ASUS benefited from asserting

9    its previous position that ██████████████████████████████████████████████████

10   It avoided arbitration on nearly all claims, and successfully moved them to this venue.  It would

11   be inherently unfair if ASUS were permitted to backtrack and litigate its claims with complete

12   disregard for the scope it previously articulated to the Tribunal.  To the extent ASUS now seeks

13   to litigate here whether the terms of the PLA comply with FRAND, such claims were properly

14   subject to arbitration under the PLA's arbitration clause, which covers claims "arising under" the

15   agreement.  Dkt. 2-2 § 5.2.  InterDigital would be deprived of its contractual rights under the

16   PLA with no remedy if ASUS were permitted to evade the arbitration clause with impunity.

17   *Berger v. DIRECTV, Inc.*, No. 3:14-cv-01661, 2015 WL 5686894, at *5 (D. Or. Sept. 22, 2015)

18   (allowing plaintiff to take inconsistent position would have "wrongly denied [defendant's] right

19   to arbitration").  This record presents a textbook example of conduct warranting judicial

20   estoppel.  The Court should not hesitate to apply it here.[1]

21          Accordingly, the Court should grant judgment in InterDigital's favor on Counts I-II, IV-

22   VI, and VIII of ASUS's Amended Complaint, to the extent they are based on ASUS's allegation

23   that the PLA contains non-FRAND terms and conditions, and preclude ASUS from relying on

24   any arguments that the PLA is "non-FRAND" in establishing any of its claims.

25

26   ─────────────────

27      [1] The Court previously noted potential judicial estoppel because ASUS achieved its desired
     result based on representations to the Tribunal.  Ex. 25 (CMC Hr'g Tr. at 7:19-23) ("You're
     certainly arguing a judicial estoppel principle, because, in fact, . . . Asus actually achieved its
28   desired result based on those representations.  So that's the bare bones of judicial estoppel.").

### B.    ASUS Cannot Re-Litigate Issues Decided Against It in Arbitration

Issue preclusion prevents ASUS from re-litigating in this case the issues that were

decided against it in the arbitration.  For issue preclusion to apply:

> (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

*Roderick v. Mazzetti & Assocs.*, No. C 04-2436 MHP, 2006 U.S. Dist. LEXIS 46034, at *10-11

(N.D. Cal. July 7, 2006), quoting *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir.

1992).  It is well-settled that the doctrine of issue preclusion is applicable to issues resolved by

an earlier arbitration. 18 Moore's Fed. Prac. § 132.03 (2018).  The Court has also confirmed the

award as a judgment.  Dkt. 137.  As set forth below, and as reflected in the award, the issues at

stake here are identical and were necessary to the judgment in the arbitration.  There is also

extensive evidence that the issues on which ASUS should be precluded were actually litigated in

the arbitration, as reflected in the lengthy reasoned award (Dkt. 135-4), ASUS's counterclaims in

arbitration (Ex. 19), the briefing (Exs. 1, 26-29), the witness statements (Ex. 7, 31), and the

hearing transcript (Ex. 30).

*First*, ASUS's claims based on purported "false" statements under the California UCL

and the Delaware Consumer Fraud Act ("DCFA") are barred by issue preclusion.  The DCFA

requires many of the same elements as fraudulent inducement, including false statements or

deception "in connection with the sale, lease or advertisement of any merchandise."  6 Del. C. §

2513(a).  The FAC specifically alleges fraud in "negotiating to obtain and entering into the 2008

PLA" for this claim.  FAC ¶ 125.  ASUS made the same allegation as to the UCL claim.  *Id*. ¶

89.  The Court should enter summary judgment that there was no fraud in the inducement of the

PLA, and that the UCL and DCFA claims based on such fraud fail as a matter of law.

*Second*, ASUS's other claims based on FRAND compliance of the PLA turn on the same

issues that were determined against ASUS in the arbitration.  ASUS now claims that the PLA

was "discriminatory" when signed, because other licensees allegedly had more favorable 3G

royalty terms.  *Id*. ¶ 77; Ex. 22 at Ex. 4C.  However, that issue was decided against ASUS in the

arbitration, where ASUS claimed it was defrauded because ██████████████████████

1    ██████████████████████████████████████ Ex. 19.  As a necessary step in adjudicating

2    that claim, the Tribunal found that ████████████████████████████████████████

3    ██████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████

7    ██████████████████████████████████████████████████

8    ████████████████████████████████ The Tribunal thus held that the ████████

9    ████████████████████████████████████████████████████

10   ██████████████████████████████████████████████████████████

11   ████████████████████████ *See id.* ¶ 64 ("████████████████████████

12   ████████████████████████████████████████████████

13   ██████████████████████████████) (emphasis in original); ¶ 67.  ASUS cannot now re-

14   litigate the issue of whether InterDigital "discriminated" against ASUS based on a theory that

15   InterDigital had licensed others at more favorable 3G rates than ASUS obtained in the PLA.

16         For purposes of issue preclusion, it does not matter that ASUS is raising these issues in

17   support of different legal theories or causes of action (such as breach of FRAND contract or the

18   Sherman Act).  Where "the factual issues behind the claims are identical, issue preclusion may

19   apply even if a plaintiff brings an action under a different legal theory than what was presented

20   to an arbitration panel." *Indus. Opp. Partners v. Kendrion FAS Controls Hldg.*, No. 13-cv-6622,

21   2015 U.S. Dist. LEXIS 4032, at *12-13 (N.D. Ill. Jan. 14, 2015) (barring claim for breach of

22   good faith when arbitrators had decided underlying issues against plaintiff); *see also Roderick,*

23   2006 U.S. Dist. LEXIS 46034, at *16–20 (arbitrator's decision that defendants had not violated

24   fiduciary duties barred plaintiff from re-litigating the same issue under different legal theory);

25   *Greenwich Ins. Co. v. Media Breakaway, LLC*, No. CV08-937, 2009 U.S. Dist. LEXIS 63454, at

26   *22 (C.D. Cal. July 22, 2009) (issue preclusion applied to arbitration finding even though

27   arbitration adjudicated tort claims and subsequent action addressed breach of insurance contract).

28         Accordingly, while ASUS may argue that the Tribunal's decision did not address breach

1   of FRAND or antitrust violations, that is irrelevant for issue preclusion purposes.  The Tribunal

2   decided underlying issues that ASUS now seeks to re-litigate in support of claims for breach of

3   FRAND and antitrust in this case.  ASUS's claims in this action turn on "████████████████

4   ██████████████████████████████████████████████████████████████████

5   ██████████████████████████████████████████████████████████████████

6   ████████████████████" Ex. 22 ¶ 16.  In the arbitration, ASUS framed the issues

7   underlying fraudulent inducement in the same manner:

8       • ███████████████████████████████████████████████████

9         ████████████ Ex. 19 ¶ 40.

10      • ███████████████████████████████████████████████████

11        █████████████████████████████████████████████████████

12        ████████████ *Id.* ¶ 57.

13      • ███████████████████████████████████████████████████████

14        ███████████████████████████████████████████████████

15        ███████████████████████████████████████████████████

16      *Id.* ¶ 55.

17          The issue of whether the PLA's 3G royalty terms were less favorable than other existing

18   licenses at the time the PLA was signed has now been conclusively decided against ASUS.

19   ASUS cannot now re-litigate that issue simply by recasting it as a component of its "breach of

20   FRAND" theory.  Yet the FAC, under the heading of "IDC's Effort To Exploit Market Power By

21   Refusing To Provide FRAND License," alleges:

22        ██████████████████████████████████████████████████ [Of

23        significance, IDC stated that ██████████ ***IDC offered ASUS was*** ████████

24        ███████████████████████████████████████████████████

25        ███████████████████████████████████████████████████"

26   FAC ¶ 52.[2]  ASUS has thus admitted that the very issues adjudicated in the arbitration – ████████

27   ───────────────────────

28        [2] *See also* Ex. 22 ¶ 14 ("████████████████████████████████████████
     ████████████████████████████████").

1  █████████████████████████████████████████████████████████

2  ████████████ – are issues that demonstrate ████████████████████

3  ████████████████████ And, in fact, ASUS's experts offer opinions that "████████

4  █████████████████████████████████████████████████████████

5  ███████████████████████████████. Ex. 22 ¶¶ 201-207

6  (concluding that █████████████████████████████████

7  █████████████████████████████████████████

8  ████████████████████"); Ex. 22 at Ex 4C (████████████████████

9  ███████████████); Ex. 23 ¶¶ 182- 208 (opining ████████████████

10 █████████████████████████████████████████

11 ████████████████████████). But that issue has already been decided against ASUS, as

12 ASUS's expert in the arbitration, Dr. Lynde, ████████████████████████████

13 ████████ Ex. 31 at 49 & Tbl. 10 (████████████████████████

14 ████████). Accordingly, the Court should grant summary judgment that InterDigital did not

15 discriminate against ASUS by entering into the PLA on less favorable terms than other licensees.

16     **Third**, the Court should grant summary judgment that ASUS was not harmed by entering

17 into the PLA. In the arbitration, ASUS admitted that "████████████████████████

18 ████████████████████ Ex. 1 at 53. ASUS thus argued that "████████████

19 ████████████████████████████████████████

20 ███████████████████████████████████████" *Id*. at 53-54. The

21 Tribunal rejected ASUS's argument and decided the issue in InterDigital's favor. It held that

22 ████████████████████████████████ (Dkt. 135-4 ¶ 85), citing ████████████

23 █████████████████████████████████████████████████████████

24 █████████████████████████████████████████████

25 ███████████████████████████ Ex. 7 ¶ 218. The Tribunal has already rejected

26 ASUS's theory of harm. ASUS is barred by issue preclusion from now asserting harm based on

27 royalty terms allegedly "████████████████████" paid.

28

**C.      There is No Basis in Contract Law for ASUS to Avoid Compliance With the 2008 PLA**

ASUS has two theories on which it seeks to invalidate the PLA: (1) the PLA was non-FRAND when signed; and (2) even if FRAND when signed, the PLA became non-FRAND thereafter because InterDigital "discriminated" against ASUS by later entering into more favorable licenses with third parties.  Both theories fail under the most basic and foundational principles of contract law:

> Contract law is designed to protect the expectations of the contracting parties. It is intended to enforce the expectancy interests created by the parties' promises so that they can allocate risks and costs during their bargaining. The goal of contract law is to hold parties to their agreements so that they receive the benefits of their bargains. It is not the function of the court to relieve a party to a freely negotiated contract of the burdens of a provision which becomes more onerous than had originally been anticipated.

1 Williston on Contracts § 1:1 (4th ed. May 2018).

**1.      ASUS Cannot Undo the PLA on a Theory That it Was "Non-FRAND" When Entered Into**

ASUS has articulated no valid legal basis on which a written, integrated contract like the PLA can be voided or reformed under Delaware law.[3]  ASUS argues the PLA should be invalidated due to the operation of a prior contract.  It claims that the PLA is inconsistent with InterDigital's ETSI commitment to be prepared to grant licenses on FRAND terms because the PLA is allegedly "non-FRAND," such that the prior "ETSI contract" should be enforced to invalidate and/or modify the PLA.  FAC ¶¶ 101-04.  According to ASUS, other licensees at the time of the PLA's signing had more favorable terms, in violation of "non-discrimination." *Id*.

This claim does not comport with applicable contract law.  The PLA's integration/merger clause provides that it is "the complete and final agreement between the Parties, and supersedes all previous understandings, relating to the subject matter hereof whether oral or written." Dkt. 2-2 § 6.22. "The existence of such a clause in a formal written contract between sophisticated parties is, in the absence of unconscionable or other extraordinary circumstances, conclusive evidence that the parties intended the written contract to be their complete agreement." *J.A.*

---

[3] ASUS has admitted that its FRAND-based claims in this case require "voiding the PLA" and changing its terms.  Dkt. 46-9 at 13.

1   *Moore Constr. Co. v. Sussex Assocs. Ltd. P'ship*, 688 F. Supp. 982, 987 (D. Del. 1988).  A

2   merger clause prevents a party from varying an agreement based on prior, superseded

3   understandings.  *E.g., Burgess v. Mfg. Hous. Concepts*, No. 96-02-025, 1997 Del. Super. LEXIS

4   162, at *2–3 (June 17, 1997); *Simplexity, LLC v. Zeinfeld*, No. 8171-VCG, 2013 Del. Ch. LEXIS

5   95, at *18–22 (Apr. 5, 2013); *see also* Restatement (Second) of Contracts § 213.  ASUS

6   therefore cannot seek to enforce a prior ETSI contract to change the terms of the PLA.

7          While "even with a completely integrated agreement, parole evidence may be introduced

8   to show fraud, accident or mistake as a ground for recission," those grounds are not applicable

9   here.  *J.A. Moore*, 688 F. Supp. at 987.  ASUS is a sophisticated multinational corporation that

10  voluntarily assented to the PLA, which included its agreement to pay the "non-refundable"

11  royalties set forth therein.  Dkt. 2-2 § 3.1.  The Tribunal has already determined that there was no

12  fraud, and ASUS has not alleged other grounds such as accident, mistake, or duress that could

13  negate its consent to the PLA.[4]  ASUS has no legal basis to undo a validly formed, enforceable

14  contract. "Delaware . . . enforces as a matter of fundamental public policy the voluntary

15  agreements of sophisticated parties."  *NACCO Indus., Inc. v. Applica Inc*., 997 A.2d 1 (Del. Ch.

16  2009); *Benihana of Tokyo, Inc. v. Benihana, Inc*., 891 A.2d 150, 172 (Del. Ch. 2005) (noting

17  "fundamental principle that parties should have the freedom to contract and that their contracts

18  should not easily be invalidated").  The agreed-upon PLA should be enforced as written.

19                  **2.      ASUS Cannot Undo the PLA Based on a Theory That Events
                            Subsequent to Signing Render it "Non-FRAND"**

20          The ETSI FRAND declaration provides that the patent owner is prepared to grant a

21  license on FRAND terms.  Ex. 20.  Accordingly, a determination of whether a concluded license

22  has been entered into on FRAND terms is determined at the time the license is "granted."  The

23  ETSI commitment does not impose any subsequent, ongoing obligation that would allow the

24  licensee to demand continual modifications to a concluded agreement every time the licensor

25  enters into a new license, or to engage in constant re-evaluation of whether a license remains

26

27          [4] Even if ASUS had done so, any such claims would have been arbitrable for the same
28  reasons as the fraudulent inducement claim, and thus cannot be raised here.

1  "FRAND."  In particular, with respect to claims that the PLA is "discriminatory," one can

2  consider only InterDigital's other 3G license agreements entered into before the 2008 PLA, as

3  only these agreements could be relevant to whether InterDigital engaged in any unfair

4  discrimination at the time the license in the PLA was granted.  Yet ASUS's sole damages claim

5  is ███████████████████████████████████████████████████████████

6  █████████████████████████ Ex. 23 at ¶¶ 242-44.  ASUS's expert ███████████████

7  ████████████████████████████████████████████████████████████████████

8  █████████████████████████████████████████████████████████████████████

9  ██████████████████████████████ However, even if █████████████████████

10  ███████ were accepted (and it should not be),[5] there is no legal basis on which ASUS can change

11  its previously-concluded license to reflect terms obtained years later by a subsequent licensee.

12      In effect, ASUS is arguing that the "non-discrimination" prong of FRAND includes an

13  implied Most Favored Licensee (MFL) clause, which would allow it to rely on InterDigital's

14  subsequently-concluded licenses as a basis to later change the terms of the PLA.[6]  But the ETSI

15  IPR Policy's FRAND commitment cannot be so interpreted.  ████████████████████ the

16  ETSI FRAND commitment does not include MFL rights, including because the initial 1993

17  version of the ETSI IPR Policy required an MFL clause to be included in licenses, and that

18  provision was deliberately removed from the 1994 version of the policy that is operative in this

19  case.  Ex. 32-34.  Courts have also rejected such an interpretation:

20      There is at least some guidance in ETSI's consideration and ultimate rejection of
        the "most favored nations (or here licensee) concept."  The 1993 version of ETSI's
21      IPR Policy contained a "most-favored licensee" provision . . . ***ETSI's members
        ultimately approved an ETSI IPR Policy that did not require such re-opening
22      and re-negotiation of prior licenses***.

23  _____

24  [5] While ████████████████████████████████████████████████████████████████

25  ██████████████████████████████████████████████████████, this dispute is immaterial
    for summary judgment purposes because the claim should be rejected as a matter of law.

26

27  [6] In fact, ASUS's claim is far more extreme than a standard MFL clause that allows a
    licensee to elect a complete license agreement entered into with a later licensee on a going
    forward basis.  ASUS wants to elect just the supposed royalty rates of a later license (divorced
28  from all other terms), and then to apply that royalty rate ***retroactively***.  Ex. 34 ¶¶ 378-404.

1  *TCL v. Ericsson,* No. 14-341, 2017 U.S. Dist. LEXIS 214003, at *25 (C.D. Cal. Nov. 8, 2017).[7]

2  In addition, ASUS █████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████

4  As the arbitration Tribunal found, "████████████████████████████████████

5  ████████████████████████████████" Dkt. 135-4 ¶ 78.  ASUS's ████████████

6  ████████████████████████████ demonstrates that ████████████████████

7  ████████████████████████████████████████████████████, as there would have

8  been no need to include ██████████████████████████████████████ via the

9  FRAND commitment.

10        The existence of FRAND commitments does not require constant re-evaluation of

11  royalties in concluded licenses.  In this case, it defies logic to suggest ███████████

12  ████████████████████████████ could be used to evaluate whether the PLA was

13  FRAND when signed in 2008.  *See Coca-Cola Bottling v. Coca-Cola Co.*, 769 F. Supp. 599 (D.

14  Del. 1991) ("The Court should give effect to the mutual intention of the parties at the time the

15  contract is executed. . . . . The Court should not view the contract from a position of

16  hindsight.").  Indeed, ASUS's view—that a licensee can demand new license terms at any time

17  based on an argument that some subsequent event has changed whether the terms are FRAND—

18  would render the license agreement illusory and without any binding force.  Such a rule would

19  make it impossible for parties to negotiate contracts providing for any degree of predictability or

20  stability—something that is particularly important to public companies like InterDigital and

21  ASUS that need a solid basis for predicting costs and revenue to operate their businesses.  Ex. 37

22  (R. Brooks & D. Geradin, *Interpreting and Enforcing the Voluntary FRAND Commitment*).

23  Accordingly, the Court should grant summary judgment for InterDigital on Count IV Breach of

24  Contract relating to the PLA.

25  _____

26  [7] A court in the UK has likewise rejected the notion that the same ETSI FRAND commitment
could be the basis to undo or modify a license.  Ex. 36 (*Unwired Planet* ¶ 168: "For concluded

27  agreements . . . the importance of the FRAND undertaking will be historic. . . . [O]nce the
agreement has been reached the contract must be the thing which governs the rights and

28  obligations of the two parties with respect to each other while it is in force.").

1

**D.**    **ASUS's Sherman Act Claim Fails As a Matter of Law**

2

Monopolization under § 2 requires: 1) the possession of monopoly power (also called

3

market power) in a relevant market; 2) willful acquisition or maintenance of that power as

4

distinguished from growth or development as a consequence of a superior product, business

5

acumen, or historic accident, and 3) causal "antitrust" injury. *Cal. Comput. Prods., Inc. v. IBM*

6

*Corp.*, 613 F.2d 727, 735 (9th Cir. 1979); *U.S. v. Grinnell Corp.*, 384 U.S. 563, 571 (1966).

7

**1.**    **ASUS Has Not Identified Any Distinct Relevant Market**

8

"Without a proper definition of the relevant market, it is impossible to determine a

9

party's influence over that market." *Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195,

10

1203 (9th Cir. 1997); *see also Godo Kaisha IP Bridge 1 v. TCL*, No. 15-634-JFB-SRF, ECF No.

11

367 at 10-12 (D. Del. Feb. 28, 2018) ("Because [Plaintiff] has failed to define the relevant

12

market, which precludes an assessment of market share and the ability to affect competition, [its]

13

Sherman Act claims are fatally deficient.") ("*IP Bridge*").[8]

14

ASUS defines the relevant markets as "technologies covered by IDC patents incorporated

15

into the 2G, 3G, and 4G cellular network by SSOs—such as ETSI—together with all other

16

technologies that SSOs could have used in alternative 2G, 3G and 4G cellular network standards

17

to provide the same or reasonably interchangeable functionalities." FAC ¶ 67; Ex. 22 n.5.

18

InterDigital asked ASUS to identify each "IDC patent" ASUS contends to be included in this

19

definition, as well as the other alternative, interchangeable technologies considered by the SSO

20

that would have been used in the standard instead. Ex. 38. ASUS failed to ████████████

21

████████████ ████████████████████████████████

22

████████████████████████████[10] *Id*. ASUS also failed to disclose

23

─────────────────────────

24

[8] The district court adopted the magistrate's order, 2018 U.S. Dist. LEXIS 38506, at *2.

25

[9] ASUS stated nonresponsively and without support that "████████████████████████
disclose whether ASUS contends that ████████████████ are part of the defined relevant

26

markets and did not identify interchangeable substitute technologies for each. *See IP Bridge* at

27

13 (rejecting market definition based on "conclusory assertion that [defendant] automatically has
market power with respect to entire standards comprising thousands of technologies based on
ownership of three SEPs").

28

[10] ASUS's expert agreed that the ETSI IPR Policy provides for broad disclosure of all patents
(continued...)

1  interchangeable technologies corresponding to each patented technology for each relevant

2  market.  *Id.*

3        Accordingly, there is no evidence of a distinct relevant market in which to evaluate the

4  existence of monopoly power.  Simply claiming generally that it is likely that InterDigital has

5  essential patents somewhere among all of its patents that were disclosed as potentially essential

6  to an SSO is clearly not sufficient.  *IP Bridge* at 10-12 (rejecting argument that "defining the

7  relevant market in a standard essential patent context does not require anything more than

8  showing that the patent was declared essential by an SSO").  ASUS also "improperly aggregates

9  all three telecommunication standards [2G, 3G, and 4G] together" in its market definition."  *Id.*

10 In the SEP context, a relevant market definition is legally deficient when it does not explain "the

11 specific connection between the alleged market and [defendant's] SEPs, or indicate how

12 [defendant's] SEPs relate to any other products within the alleged market."  *Id.*; *see also*

13 *ChriMar Sys. v. Cisco Sys.*, 72 F. Supp. 3d 1012, 1017 (N.D. Cal. 2014) (dismissing antitrust

14 claim where no relevant market defined concerning SEPs and substitutable technology) ; *cf.*

15 *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2011 WL 4948567, at *6 (N.D. Cal.

16 Oct. 18, 2011) (requiring identification of "viable alternative technology performing the same

17 functionality [that] would have been incorporated into the UMTS standard").  In *Apple v.*

18 *Samsung*, Apple amended its complaint to include lengthy, detailed identifications of specific

19 patents and corresponding substitutable technologies for each one of multiple relevant markets.

20 Ex. 39.  Here, ASUS did not plead an adequate relevant market, much less prove one.  ASUS's

21 expert reports included no patent-specific relevant markets identifying substitutable alternative

22 technologies.[11]  ASUS's antitrust claim cannot proceed to trial in the absence of any evidence

23 _____

          (...continued from previous page)
24 that may be potentially essential; assertion of possible essentiality by a patent owner not establish
   that a patent is actually essential to a standard, which can "only be determined by a patent court."
25 Ex. 40.

26 [11] ASUS's expert also opined that "███████████████████████████████████████

27 ███████████████████████████████████████████████████████

          Ex. 41.  According to Dr. Kakaes, then, InterDigital can have no market power
28 conferred by inclusion of its patented technology in a standard, because ██████████████
   ████████████████ – the direct opposite of *Broadcom*.  *Broadcom Corp. v. Qualcomm*
          (continued...)

1   establishing a clearly defined relevant market.

2   **2.      There Is No Evidence of Anticompetitive Conduct**

3   "Mere possession of monopoly power, and the concomitant charging of monopoly prices,

4   is not only not unlawful; it is an important element of the free-market system." *Verizon v.*

5   *Trinko*, 540 U.S. 398, 407 (2004). "To safeguard the incentive to innovate, the possession of

6   monopoly power will not be found unlawful unless it is accompanied by an element of

7   anticompetitive conduct." *Id.* As its theory of anticompetitive conduct, ASUS alleges, based on

8   *Broadcom*, that InterDigital made intentionally false licensing declarations to ETSI. FAC ¶¶ 72-

9   74. Under *Broadcom*,

10      (1) in a consensus-oriented private standard-setting environment, (2) a patent
        holder's intentionally false promise to license essential proprietary technology on
11      FRAND terms, (3) coupled with an SDO's reliance on that promise when including
        the technology in a standard, and (4) the patent holder's subsequent breach of that
12      promise, is actionable anticompetitive conduct.

13   *Broadcom*, 501 F.3d at 314. A *Broadcom* theory "sounds in fraud."[12] *Apple*, 2011 WL 4948567,

14   at *4 n.5. "[W]here allegedly fraudulent misrepresentations are promises made in a contract, a

15   party claiming fraud must prove fraudulent intent at the time of contract execution; evidence of a

16   subsequent, willful breach cannot sustain the claim." *U.S. ex rel. O'Donnell v. Countrywide*

17   *Home Loans, Inc.*, 822 F.3d 650, 658 (2d Cir. 2016); *see also Fanucchi & Limi Farms v. United*

18   *Agri Prods.*, 414 F.3d 1075, 1088 (9th Cir. 2005) ("Affirmative evidence is necessary to avoid

19   summary judgment because mere nonperformance is not enough to show intent to defraud.");

20   *Magpali v. Farmers Grp., Inc.*, 48 Cal. App. 4th 471, 481 (1996) (if plaintiff "adduces no further

21   evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never

22   reach a jury").

23   *Broadcom* is a Third Circuit case that is not binding precedent on this Court, and it has

24

25   _____

    (...continued from previous page)
26   *Inc.*, 501 F.3d 297, 515 (3d Cir. 2007) (market power is conferred when firms "become locked in
     to a standard requiring the use of a competitor's patented technology").

27   [12] The Sherman Act borrows common law principles to aid in its interpretation. *Nat'l Soc'y*
28   *of Prof'l Eng'rs. v. U.S.*, 435 US 679, 688 (1978).

1   been criticized by the D.C. Circuit as inconsistent with Supreme Court precedent.[13]  However,

2   even if *Broadcom* is applied, ASUS cannot prove such a theory here.  Because there is no

3   evidence InterDigital made statements to ETSI that were intentionally false when made, this

4   failure of proof alone disposes of the claim.  InterDigital believed the declarations to be true, and

5   had no intention to deceive ETSI. Ditty Decl. ¶¶ 2-3.  When asked to identify all facts supporting

6   the allegation of intentionally false statements to ETSI, ASUS provided only a blanket reference

7   to InterDigital's ███████████████████████████████████████████████████

8   ██████████ Ex. 38.  While ASUS's economic expert claims that InterDigital ██████

9   ████████████████████ (Ex. 22 ¶ 201-06), that is at most an allegation of a breach of a

10  FRAND commitment – but subsequent nonperformance does not demonstrate that a promise was

11  false *when made*.  ASUS's theory thus amounts to improper "bootstrapping of a breach of

12  contract case" into an antitrust claim.  *TCL v. Ericsson,* No. 14-0341, 2016 U.S. Dist. LEXIS

13  140566, at *16 (C.D. Cal. Aug. 9, 2016) (granting summary judgment to defendant on unfair

14  competition claim where no intentionally false promise to ETSI was shown).  As the court noted:

15          Instead, as the *Broadcom* court made the "intentionally false promise" and
        subsequent "breach of that promise" two separate elements, it is clear that there
16      needs to be some other conduct by [Defendant] than mere breach of its FRAND
        obligations.  501 F.3d at 314.  In short, [Plaintiff] fails to satisfy the test under
17      *Broadcom* . . . . [Plaintiff] has not shown, by any evidence, an intentionally false
        promise to license essential proprietary technology on FRAND terms.

18  *Id.* at *16-17; *see also IP Bridge* at 14 (rejecting antitrust claim for lack of anticompetitive

19  conduct because "*Broadcom* cannot be expanded to reach FRAND violations after the standard's

20  adoption.").  It is thus not sufficient to rely solely on alleged breaches of FRAND to claim that

21  the defendant therefore must have "known" that its FRAND declarations were false.

22          Further, *Broadcom* requires an intentionally false declaration that occurs *before* the SSO

23  relies on it to include technology in a standard, and "subsequent" breach of FRAND

24  commitments by the patent owner.  *Broadcom*, 501 F.3d at 314.  Accordingly, the sequence of

25

26  ─────────────────────

27      [13] *Rambus Inc. v. FTC*, 522 F.3d 456, 466 (D.C. Cir. 2008) ("to the extent that [*Broadcom*]
    may have rested on a supposition that there is a cognizable violation of the Sherman Act when a
28  lawful monopolist's deceit has the effect of raising prices (without an effect on competitive
    structure), it conflicts with *NYNEX*"), citing *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128 (1998).

1    events as to when knowledge of falsity was present is indispensable for this element, and

2    ASUS's failure to provide any evidence as to which declarations InterDigital allegedly knew to

3    be false (and when) further undermines its claim.  ASUS's failure of proof is compounded by its

4    failure to adequately define a relevant market, making it impossible to link any individual ETSI

5    declaration to an alleged anticompetitive act resulting in monopolization of a relevant market.

6    ASUS cannot simply rely on vague references to the entire history of InterDigital's ETSI

7    participation.  Separately examining each category of declarations clearly reveals the failures of

8    proof.  For 3G technology, the standards were largely "frozen" by early 2009 or earlier (Pani

9    Decl. ¶¶ 5-7), and ASUS has offered no evidence as to how any subsequent declarations could

10   have "induced" ETSI to standardize upon any of InterDigital's 3G patented technologies.

11   Further, ASUS's claims of "false declarations" relating to 3G technology are based on a theory

12   that was rejected by the Tribunal and that ASUS is therefore barred from asserting: that

13   InterDigital "discriminated" against ASUS in the PLA by providing more favorable 3G rates to

14   other licensees.  *See supra* Section III.B; Ex. 22 ¶ 206.  With respect to 4G, ASUS has not

15   provided evidence of which InterDigital 4G patented technologies were allegedly selected by

16   ETSI over identified viable alternatives, in reliance on a declaration that was false when made.

17   Further, ASUS has not taken a license to InterDigital's 4G patents and has paid no royalties, so

18   an antitrust claim premised on this theory would fail due to lack of injury in any event.  *See infra*

19   Section IV.D.3.  ASUS cannot articulate any coherent theory of anticompetitive conduct in a

20   relevant market based on the record evidence.

21             **3.      ASUS Cannot Demonstrate Injury-In-Fact or Antitrust Injury**

22             A Sherman Act plaintiff must demonstrate both injury-in-fact and causal antitrust injury.

23   *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914 (9th Cir. 2015).  Injury-in-fact requires

24   the plaintiff itself to have suffered an injury causally connected to the antitrust violation.  *Id.*  To

25   show antitrust injury, the plaintiff must prove: "(1) unlawful conduct, (2) causing an injury to the

26   plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type

27   the antitrust laws were intended to prevent."  *Somers v. Apple, Inc*., 729 F.3d 953, 963 (9th Cir.

28   2013).  Antitrust injury requires demonstration of harm to competition in the market as a whole,

1  not merely harm to a competitor.  *Gorlick Dist. Ctrs., LLC v. Car Sound Exhaust Sys. Inc.*, 723

2  F.3d 1019, 1024 (9th Cir. 2013).

3      ***First***, there is no injury-in-fact or antitrust injury with respect to InterDigital's 4G license

4  offers.  ASUS has refused InterDigital's so-called "royalty demands" and has not paid any

5  royalties for use of InterDigital's 4G patents.  ASUS therefore has no has no evidence of any

6  actual injury incurred with respect to 4G.  *See IP Bridge* at 22 (rejecting Sherman Act claim on

7  grounds of no injury-in-fact where plaintiff had not paid any "greater than FRAND" royalties);

8  *Apple v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1076 (W.D. Wis. 2012) (granting

9  summary judgment of no antitrust injury where "Apple refused to pay the 2.25% royalty rate that

10  Motorola demanded and continued to manufacture and market its products despite Motorola's

11  demands."); *see also Gerlinger v. Amazon.com, Inc.*, No. 02-5238 MHP, 2005 U.S. Dist. LEXIS

12  26019, at *7 (N.D. Cal. Oct. 31, 2005) (no injury-in-fact where plaintiff failed to show "actual

13  economic damage"), *aff'd*, 526 F.3d 1253, 1255 (9th Cir. 2008).  ASUS's economic expert did

14  not offer ████████████████████████████████.  Ex. 24 (Leonard Dep. 54:6-24).

15  InterDigital's proposed 4G royalties, therefore, cannot have caused any harm to ASUS or to

16  consumers.[14]  Moreover, ASUS cannot show injury attributable to 4G offers because making

17  royalty demands is protected conduct under the *Noerr-Pennington* doctrine.  *In re Innovatio*, 921

18  F. Supp. 2d 903, 913 (N.D. Ill. 2013) (dismissing unfair competition, RICO, conspiracy claims

19  based on patentee's "offer[s] to negotiate a license" as protected under *Noerr-Pennington*

20  doctrine); *see also Motorola*, 886 F. Supp. 2d at 1076.

21      To the extent ASUS seeks to rely instead on alleged harm to competition in a 4G device

22  market, that effort would be unavailing.  ASUS has not defined a 4G (or any other) device

23  market as a relevant market, and it is undisputed that InterDigital does not sell devices, and thus

24  that InterDigital is not competing in, much less monopolizing, a device market.  "[I]n the two-

25  _____

26      [14] ASUS's only damages claim is based on ████████████████████████████

   ████████████████████████████████████████████  Ex. 23 ¶¶ 242-44.  But as set forth above, it

27  has already been determined in arbitration that ███████████████████████████████████████

   ████████████████████  ASUS is also judicially estopped from arguing that the PLA is

28  "not FRAND."  ASUS thus cannot show antitrust injury based on 3G royalties.

1    market situation, a plaintiff cannot establish a violation of Section 2 without proving that the

2    defendant used its monopoly power in one market to obtain, or attempt to attain, a monopoly in

3    the downstream, or leveraged, market." *Alaska Air., Inc. v. United Air., Inc.*, 948 F.2d 536, 546-

4    47 (9th Cir. 1991).  Accordingly, ASUS cannot base a Sherman Act claim on a downstream

5    device market.  *InfoStream Grp., Inc. v. PayPal, Inc.*, No. C 12–748 SI, 2012 WL 3731517, at

6    *4-6 (N.D. Cal. Aug. 28, 2012) (allegation that defendant was "a monopolist in one market" that

7    "exercise[d] its market power to injure downstream markets" does not violate Section 2 absent

8    achieving, or attempting to achieve, a monopoly downstream).

9           ***Second***, because ASUS has not adduced evidence showing there were substitutes for

10   technologies protected by InterDigital SEPs that ETSI would have chosen instead, ASUS cannot

11   demonstrate harm to competition.  With respect to any relevant markets where InterDigital's

12   technology was the only one available for a particular feature, even if there were a false FRAND

13   promise, "there is no antitrust problem" because "there was no competitive market constraint for

14   the technology owner to harm."  Ex. 42, Maureen K. Olhausen (former FTC Commissioner), *The*

15   *Elusive Role of Competition in the Standard-Setting Antitrust Debate*, 20 Stan. Tech. L. Rev. 93

16   (2017); Ex. 24 at 105:14-107:14.  ASUS has not defined any relevant markets including

17   InterDigital standards-essential patented technology adopted over other identified viable

18   substitutes, so it cannot show competitive harm.

19          **E.      Summary Judgment Should Be Granted as to Promissory Estoppel**

20          ASUS's promissory estoppel claim is based on a "promise" in the ETSI FRAND

21   declaration that is governed by French law.  Under French law, promissory estoppel is not a valid

22   cause of action.  Ex. 43; *Apple v. Samsung*, No. 11-CV-1846, 2012 WL 1672493, at *15 (N.D.

23   Cal. May 14, 2012) ("French law does not recognize a substantive claim for promissory

24   estoppel"); *InterDigital Commc'ns, Inc. v. Nokia Corp.*, No. 13-cv-00009-RGA, Order, ECF No.

25   51 (D. Del. Jul. 12, 2013) (dismissing Counterclaim IV for promissory estoppel against

26   InterDigital based on alleged breach of ETSI FRAND commitment).  Alternatively, the PLA

27   bars this claim.  *TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, 2015 WL 5968726, at *5 (Del.

28   Super. Ct. Sept. 25, 2015) ("Promissory estoppel does not apply . . . where a fully integrated,

1    enforceable contract governs the promise at issue.”).

2           **F.      Summary Judgment Should Be Granted as to the UCL Claim**

3           In the absence of a viable antitrust claim, a California UCL claim based on the same facts

4    fails as well.  *ChriMar*, 72 F. Supp. 3d at 1019-20.  The UCL claim also fails because there is no

5    evidence of conduct in California, and the UCL has no extraterritorial effect.  *Sullivan v. Oracle*

6    *Corp.*, 51 Cal. 4th 1191 (2011).  InterDigital’s headquarters were in Pennsylvania until 2012 and

7    thereafter in Delaware.  McElvaine Decl. ¶ 3.  There is no evidence of conduct in California

8    giving rise to a UCL claim.  In addition, ASUS cannot employ the UCL to attack the PLA under

9    settled law that conduct consented to in a contract cannot form the basis of a UCL violation.

10   *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955-56 (N.D. Cal. 2017) (otherwise lawful

11   conduct expressly permitted by governing contract cannot form basis of UCL claim).  UCL

12   claims are impermissible where they contradict the terms of the parties’ agreement because “the

13   UCL cannot be used to rewrite [plaintiffs’] contracts or to determine whether the terms of their

14   contracts are fair.”  *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1046 (C.D. Cal.

15   2008); *see also Janda v. T-Mobile, USA, Inc.*, No. C 05-03729 JSW, 2009 U.S. Dist. LEXIS

16   24395, at *26-28 (N.D. Cal. Mar. 13, 2009).  Finally, ASUS cannot prove injury-in-fact, as

17   discussed above.  A UCL claim requires demonstration of “economic injury” caused by the

18   challenged business practice, of which there is no evidence here.  *Kwikset Corp. v. Superior*

19   *Court*, 51 Cal. 4th 310, 323 (2011).

20   **IV.    CONCLUSION**

21          In this case, ASUS seeks a “do-over” on claims it has lost, and to backtrack on the

22   position it successfully asserted to avoid arbitration.  Neither is permissible.  Further, ASUS’s

23   effort to assert a treble-damages antitrust claim based on a purported “fraud” against ETSI is no

24   more plausible than its prior, meritless claim that InterDigital committed fraud to induce ASUS

25   into signing the PLA.  Accordingly, for the reasons stated herein, the Court should grant

26   InterDigital’s motion for summary judgment on Counts I, II, IV, V, VI, and VIII in the FAC as

27   set forth in the accompanying Proposed Order.

28

1  Dated: August 16, 2018                    Respectfully submitted,

2                                            WILSON SONSINI GOODRICH & ROSATI
                                             Professional Corporation
3

4                                            By:  /s/ David S. Steuer
                                                      David S. Steuer
5
                                             David S. Steuer
6                                            Michael B. Levin
                                             Maura L. Rees
7                                            Matthew R. Reed
                                             WILSON SONSINI GOODRICH &
8                                            ROSATI
                                             650 Page Mill Road
9                                            Palo Alto, California 94304-1050
                                             Telephone: (650) 493-9300
10                                           Facsimile: (650) 493-6811

11
                                             Lucy Yen
12                                           WILSON SONSINI GOODRICH & ROSATI
                                             1301 Avenue of the Americas, 40th Floor
13                                           New York, NY 10019-6022
                                             Telephone:  (212) 999-5800
14                                           Facsimile:   (212) 999-5899

15
                                             *Counsel for Defendants InterDigital*
16                                           *Communications, Inc., InterDigital Technology*
                                             *Corporation, IPR Licensing, Inc., and InterDigital*
17                                           *Holdings, Inc.*

18

19

20

21

22

23

24

25

26

27

28