1  Brian Nester (*pro hac vice*)                   Richard A. Cederoth (*pro hac vice*)
   bnester@sidley.com                              rcederoth@sidley.com
2  Michael R. Franzinger (SBN 222155)              David C. Giardina (*pro hac vice*)
   mfranzinger@sidley.com                          dgiardina@sidley.com
3  Anna M. Weinberg (*pro hac vice*)               SIDLEY AUSTIN LLP
   aweinberg@sidley.com                            One South Dearborn Street
4  SIDLEY AUSTIN LLP                               Chicago, Illinois 60603
   1501 K Street, N.W.                             Telephone (312) 853-7000
5  Washington, D.C. 20005                          Facsimile: (312) 853-7036
   Telephone: (202) 736-8000
6  Facsimile: (202) 736-8711

7
   Mike Bettinger (SBN 122196)
8  mbettinger@sidley.com
   SIDLEY AUSTIN LLP
9  555 California Street
   Suite 2000
10 San Francisco, CA 94104
   Telephone: (415) 772-1200
11 Facsimile: (415) 772-7400

12 Attorneys for Plaintiffs
   ASUS COMPUTER INTERNATIONAL,
13 ASUSTEK COMPUTER INCORPORATED

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16                          SAN JOSE DIVISION

17
   ASUS COMPUTER INTERNATIONAL; and        Case No. 15-cv-01716-BLF
18 ASUSTEK COMPUTER INCORPORATED,
                                           **ASUS'S OPPOSITION TO
19              Plaintiffs,                 INTERDIGITAL'S MOTION FOR
                                           SUMMARY JUDGMENT**
20              vs.
                                           Hearing Date: October 11, 2018
21 INTERDIGITAL, INC.; INTERDIGITAL        Time: 9:00 a.m.
   COMMUNICATIONS, INC.; INTERDIGITAL      Location: Courtroom 3, 5th Floor
22 TECHNOLOGY CORPORATION; IPR             Judge: Hon. Beth Labson Freeman
   LICENSING, INC. and INTERDIGITAL
23 PATENT HOLDING, INC.,                   **REDACTED VERSION OF
                                           DOCUMENT SOUGHT TO BE SEALED**
24              Defendants.

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION. ................................................................................................ 1

II.     ARGUMENT. ...................................................................................................... 1

     A.   IDC Fails To Establish Judicial Estoppel Applies ............................................ 1

     B.   ASUS Is Not Precluded from Relying on the PLA To Prove IDC Violated
        FRAND ................................................................................................................ 6

        1.   The Parties Did Not "Actually Litigate" FRAND Discrimination or
            Damages ................................................................................................ 6

        2.   The Final Award Did Not Address "Identical Issues" ......................... 7

        3.   California UCL and Delaware Consumer Fraud Act Counts ............. 12

     C.   The Parties' 2008 PLA Does Not Vitiate IDC's FRAND Commitment ........ 12

        1.   The PLA's Integration Clause Does Not Release IDC's Separate,
            Binding Contractual FRAND Obligations .......................................... 12

        2.   The PLA's Lack of a Most-Favored-Licensee Clause Does Not
            Permit IDC to Avoid its FRAND Commitment ................................ 14

     D.   IDC Cannot Show the Absence of Necessary Evidence for Antitrust
        Violations ......................................................................................................... 16

        1.   Market Definition Is Not Required, but ASUS Has Provided It
            Anyway ................................................................................................ 16

        2.   The Evidence Plainly Demonstrates IDC's Anticompetitive
            Conduct ................................................................................................ 19

        3.   IDC's Actions Have Caused Injury-in-Fact and Antitrust Injury ....... 22

     E.   Neither French Law nor the PLA Bars Promissory Estoppel ........................ 24

     F.   IDC's Attempts to Avoid ASUS's Unfair Competition Claim Are
        Ineffective ........................................................................................................ 25

III.    CONCLUSION ................................................................................................ 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. McCurry,*
449 U.S. 90 (1980) ..................................................................................................7

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,*
486 U.S. 492 (1988)..............................................................................................14

*Apple Inc. v. Samsung Elecs. Co.,*
No. 11-CV-01846, 2012 WL 1672493 (N.D. Cal. May 14, 2012)..........................18, 19

*Apple Inc. v. Motorola, Inc.,*
No. 11-cv-178-bbc, 2011 WL 7324582 (W.D. Wis. June 7, 2011)............................17

*Apple, Inc. v. Motorola Mobility, Inc.,*
886 F. Supp. 2d 1061 (W.D. Wis. 2012) ...............................................................24

*Balfour Beatty Infrastructure, Inc. v. PB&A, Inc.,*
No. 16-cv-01152-WHO, 2017 WL 1739101 (N.D. Cal. May 4, 2017).........................2

*Broadcom Corp. v. Qualcomm Inc.,*
501 F.3d 297 (3d Cir. 2007)........................................................................ *passim*

*Carole H v. Kim C.,*
1990 WL 64750 (Del. Fam. Ct. Mar. 26, 1990) ..................................................13, 15

*Central Delta Water Agency v. U.S.,*
306 F.3d 938 (9th Cir. 2002) ..................................................................................8

*Chrysler Corp. (Del.) v. Chaplake Holdings, Ltd.,*
822 A.2d 1024 (Del. 2003) ...................................................................................25

*Conwood Co., L.P. v. U.S. Tobacco Co.,*
290 F.3d 768 (6th Cir. 2002) ................................................................................17

*De Cecchis v. Evers,*
54 Del. 99 (1961) ................................................................................................13

*Donnelly v. Donnelly,*
1989 WL 85944 (Del. Fam. Ct. July 25, 1989) .......................................................13

*F.T.C. v. Qualcomm Inc.,*
No. 17-CV-00220-LHK, 2017 WL 2774406 (N.D. Cal. June 26, 2017) .....................24

*Godo Kaisha IP Bridge 1 v. TCL,*
No. 15-634-JFB-SRF, slip op. (D. Del. Feb. 28, 2018)............................................18

ii

*Grunstein v. Silva*,
   No. 3932-VCN, 2009 WL 4698541 (Del. Ch. Dec. 8, 2009) ................................25

*Gutierrez v. Wells Fargo & Co.*,
   622 F. Supp. 2d 946 (N.D. Cal. 2009) ................................20

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   Nos. CV-00-20905 RMW, C-05-00334 RMW, C-05-02298 RMW, C-06-00244
   RMS, 2008 WL 73689 (N.D. Cal. Jan. 5, 2008)................................17, 18

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   527 F. Supp. 2d 1084 (N.D. Cal. 2007) ................................24

*In re Innovatio IP Ventures, LLC Patent Litig.*,
   921 F. Supp. 2d 903 (N.D. Ill. 2013) ................................24

*J.A. Moore Constr. Co. v. Sussex Assocs. Ltd. P'ship*,
   688 F. Supp. 982 (D. Del. 1988)................................13

*Josloff v. Falbourn*,
   125 A. 349 (Del. 1924) ................................13, 15

*Littlejohn v. United States*,
   321 F.3d 915 (9th Cir. 2003) ................................7

*Merchantwired, LLC v. Transaction Network Servs.*,
   No. 02C-08-244FSS, 2003 WL 21689647 (Del. Super. Ct. July 16, 2003) ................................24

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)................................1

*Optional Cap., Inc. v. Kim*,
   2008 WL 2986660 (C.D. Cal. Aug. 1, 2008), *aff'd*, 414 F. App'x 12 (9th Cir.
   2011) ................................8

*In re Papst Licensing, GmbH Patent Litig.*,
   No. Civ. A. 99-3118, 2000 WL 1145725 (E.D. La. Aug. 11, 2000) ................................18

*PepsiCo, Inc. v. Coca-Cola Co.*,
   315 F.3d 101 (2d Cir. 2002)................................17

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*,
   508 U.S. 49 (1993)................................24

*Provenz v. Miller*,
   102 F.3d 1478 (9th Cir. 1996) ................................20

*In the Matter of Qualcomm, Inc.*,
   File No. 141-0199 (Jan. 17, 2017) ................................23

iii

*Radiant Burners, Inc. v. People's Gas Light & Coke Co.*,
364 U.S. 656 (1961)..................................................................................................1

*Rebel Oil Co. v. Atl. Richfield Co.*,
51 F.3d 1421 (9th Cir. 1995) .................................................................................16

*Research In Motion, Ltd. v. Motorola, Inc.*,
644 F. Supp. 2d 788 (N.D. Tex. 2008) ...............................................17, 19, 23, 24

*Resolution Tr. Corp. v. Keating*,
186 F.3d 1110 (9th Cir. 1999) ....................................................................8, 10, 11

*SeeChriMar Sys. v. Cisco Sys.*,
72 F. Supp. 3d 1012 (N.D. Cal. 2014) ..................................................................18

*In re SonicBlue Inc.*,
Nos. C-07-02553 RMW, C-07-06025 RMW, 2008 WL 191025 (N.D. Cal. Jan.
20, 2008) .................................................................................................................7

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) .......................................................................................25

*TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*,
2017 WL 6611635 (C.D. Cal. Dec. 21, 2017) ..............................................9, 10, 14

**Statutes**

15 U.S.C. § 26...............................................................................................................23

Delaware Consumer Fraud Act.......................................................................................12

Sherman Act § 2.............................................................................................................17

**Other Authorities**

18 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 4417 (3d ed.) .......................7

1

**Table of Abbreviations**

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

| IDC | Defendants InterDigital, Inc., InterDigital Communications, Inc., InterDigital Technology Corporation, IPR Licensing, Inc., and InterDigital Patent Holdings, Inc. |
|-----|-----|
| ASUS | Plaintiffs ASUS Computer International and Asustek Computer Incorporated |
| IPR | Intellectual Property Right(s) |
| ETSI | European Telecommunications Standards Institute, a standards development organization |
| SDO | Standards Development Organization (used interchangeably with SSO) |
| SSO | Standards Setting Organization (used interchangeably with SDO) |
| 2G | Second Generation (of cellular technology) |
| 3G | Third Generation (of cellular technology) |
| 4G | Fourth Generation (of cellular technology) |
| GSM | A 2G cellular standard (Global System for Mobile communications) |
| UMTS | A 3G cellular standard (Universal Mobile Telecommunications System), used interchangeably with WCDMA |
| WCDMA | A 3G cellular standard (Wideband Code Division Multiple Access), used interchangeably with UMTS |
| FRAND | Fair, Reasonable and Non-Discriminatory |
| PLA | Patent License Agreement |
| FAC | First Amended Complaint |
| DCFA | Delaware Consumer Fraud Act |
| UCL | (California) Unfair Competition Law |
| MFL | Most-Favored Licensee |
| SEP | Standards-Essential Patent |
| IA | Interim Award in IDC-ASUS arbitration, Dkt. No. 94-3 |
| FA | Final Award in IDC-ASUS arbitration, Dkt. No. 135-4 |
| IDC Br. | Defendants' Motion for Summary Judgment, Dkt. No. 234 |

19
20

Exhibits cited as "Ex. " are exhibits to the Declaration of Michael R. Franzinger, filed herewith.

21
22
23
24
25
26
27
28

## I.   INTRODUCTION

For more than half a century, the Supreme Court has recognized in standard-setting organizations the risk of antitrust harm. *See Radiant Burners, Inc. v. People's Gas Light & Coke Co.*, 364 U.S. 656 (1961). To compensate for their anticompetitive potential while bringing about the benefits of interoperability, modern technical standard-setting organizations such as ETSI require members to commit to licensing their essential patents on FRAND terms and conditions. The aims of this policy are to ensure a level playing field for implementers of the standard and to prevent individual firms from capturing the value of standardization beyond the value of their technology. Contract, antitrust, and unfair competition law offer remedies when an SEP owner subverts this obligation by engaging in unfair or discriminatory licensing practices.

IDC has violated its FRAND obligations by demanding that ASUS pay multiples of what it charges larger players in the global cellular device market. Through its motion for summary judgment, IDC seeks to escape any consequences for this conduct. But IDC's motion is fraught with distortions and contradictions. IDC takes "sound bites" from an arbitration panel wildly out of context in an effort to keep this Court from deciding the FRAND issues in dispute. The full picture demonstrates that neither judicial estoppel nor issue preclusion applies. IDC claims an implementer cannot challenge a signed license agreement but also cannot raise a claim until it has paid royalties. But this damned-if-you-do, damned-if-you-don't scenario is untenable in view of the widespread enforcement of FRAND policies by courts across the country and the world. IDC tries to avoid antitrust enforcement, promissory estoppel, and California unfair competition law by raising various technicalities. ███████████████████████████████ █████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████ IDC's nine cursory motions should all be denied.

## II.   ARGUMENT

### A.   IDC Fails to Establish Judicial Estoppel Applies

Remarkably, IDC's motion for judicial estoppel rests on statements that ASUS *never* made. Judicial estoppel requires ASUS make "clearly inconsistent" statements. *New Hampshire v. Maine*,

1

532 U.S. 742, 750 (2001). IDC alleges ASUS made "disclaimers of reliance on the PLA" during arbitration, and thus should be "estopped from advancing arguments that the PLA contains non-FRAND terms and conditions." IDC Br. 3:25, 6:15-16. IDC is wrong.

ASUS never disclaimed reliance on the parties' 2008 PLA as evidence that IDC violated its FRAND commitment. Tacitly admitting no such statements actually exist, IDC's motion does not quote a single statement from ASUS, let alone provide this Court with the transcript where the "statements" were allegedly made. Instead, IDC mischaracterizes ASUS's statements through paraphrasing and cropped excerpts of the tribunal's Interim Award. *See Balfour Beatty Infrastructure, Inc. v. PB&A, Inc.*, No. 16-cv-01152-WHO, 2017 WL 1739101, at *5-6 (N.D. Cal. May 4, 2017) (denying summary judgment of judicial estoppel based on misleading cropped quotes).

The transcript establishes that ASUS's actual statements are entirely consistent with ASUS's position before this Court. For context, during the arbitrability hearing, the arbitral tribunal explored

. Ex. 23 § 5.1. ASUS has consistently maintained that the PLA is one piece of evidence supporting ASUS's antitrust and breach of ETSI commitment claims, and that ASUS is not advancing a stand-alone claim that the PLA is not FRAND-compliant. Although IDC's motion is not clear, it appears to rely on four "statements" it attributes to ASUS. None is from ASUS or says what IDC claims.

***First,*** IDC paraphrases the Interim Award to argue ASUS denied its claims would "require a determination of whether the 2008 PLA was FRAND-compliant." IDC Br. 7:22-24. That is not what the Interim Award actually states. IA ¶ 13(j). More importantly, that is not what ASUS stated during the portion of the hearing the Interim Award cites. *Id.* (citing Ex. 1 at 78-81).[1] During the hearing,

---

[1] All "Ex." citations herein refer to the exhibits attached to the Declaration of Michael R. Franzinger in Support of ASUS's Opposition to IDC's Motion for Summary Judgment.

ASUS'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:15-cv-01716-BLF



1    ██████████████████████████████████████. *See* Ex. 1 at 17:24-19:13, 62:5-20, 79:7-

2    82:3; *see also* Ex. 2, ¶ 7(viii). For example, ██████████████████████████████████

3    █████████████████████████████████████████████

4    ████████████████████████████████████████████████

5    ██████████████████████████████████████████████████

6    █████████████████████████████████████████████████" Ex. 1 at 74:10-22

7    (emphasis added), 76:3-5 ("██████████████████████████████████████████

8    ██████████████"), 76:19-25 ("Is ████████████████████████████████████████

9    █████████████████████████████  He asked:

10   ████████████████████████████████████████████████

11   ████████████████████████

12   ██████████████████████████

*Id.* at 78:17-23 (emphasis added). IDC *indirectly* points to this response as clearly inconsistent with

ASUS's position before this Court. *See* IDC Br. at 6:15-27, 7:22-26, 8:17-19, 9:3-9. But ASUS's

response merely confirmed there is no stand-alone claim that the PLA is not FRAND compliant.

ASUS *never* disclaimed—in this answer, at that hearing, or at any point in arbitration—that the

PLA's terms and conditions are facts supporting its claims. *See, e.g.*, Ex. 3 at 20-23.

The tribunal's subsequent exchanges with ASUS and IDC confirm that ASUS's statement

was directed to its claims *per se* and not the factual allegations that support those claims. For

example, ████████████████████████████████████

In relation to what you just asked – or just answered…this is the breach of contract based on

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Ex. 1 at 81:13-82:4 (emphasis added). In response to similar questions from ████████████████

██████████████████████████████████████████t." *Id.* at 84:7-15;

*see also id.* at 84:7-87:9. ████████████████████████████

█████████████████████████████████████████████████

**Second**, IDC relies on a cropped portion of the *tribunal's* statement that "████████████████

3

1    ███████████████████████████████████ to suggest ASUS disclaimed the PLA as

2    evidence of FRAND compliance. IDC Br. 7:24-26 (quoting IA ¶ 45(a)). Read in context, the Interim

3    Award states the opposite—███████████████████████████████████████

4    ████████████████

5    ███████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████

7    IA ¶ 45(a) (emphasis added). Moreover, this is the tribunal's statement, not ASUS's. ASUS admitted

8    it was not advancing a stand-alone claim that the PLA is not FRAND-compliant, but rather that the

9    PLA is evidence supporting its antitrust and other claims.

10           **Third**, IDC crops the *tribunal's* description of ████████████████████

11   ███████████████ to argue ASUS disclaimed reliance on the PLA as evidence to support its claims.

12   IDC Br. at 7:17-20. However, ASUS's statements the tribunal cites are ████████████

13   ████████████████████████████████████████████████████████████

14   ████████████████████████████████ " and "███████████████████

15   ████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████

17   ████████████ " Ex. 3, at 20-23. ASUS did not disclaim reliance on the PLA as evidence to support its

18   claim, as IDC mischaracterizes.

19           **Finally**, IDC alleges ASUS (engaging in "chicanery" no less) stated to the tribunal that

20   ████████████████████████████████████████. IDC Br. 8:21-26, 3:25-4. IDC again relies

21   exclusively on the tribunal's statements and inexplicably ignores the plain language and context of

22   ASUS's statements. ASUS's actual statements refute IDC's mischaracterization. During the hearing,

23   ████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████

26   █ " Ex. 1 at 18:5-13. ███████████████████████████████████

27   ██████████████████████████████████████████

28   ███████████████████████████████████████████



*Id.* at 18:20-19:10. ASUS's response plainly states that the PLA is not the essence of ASUS's causes of action. This statement is made in the same context described above—where ASUS was arguing that its claims are rooted in the SSO declarations. In its Interim Award, the *tribunal* ██████████ ███████████████████████████████████████████ IA, ¶ 13(g) (citing Ex. 1 at 18-19). ASUS immediately notified the tribunal that there ████████████████████████ ██████████████████████████████████████████ IDC Br. Ex. 17. IDC understood from ███ ██████████████████████████████████████████ ASUS *never* stated that IDC's SSO declarations, from which its FRAND obligation stems, is not the essence of its claims; ASUS repeatedly stated the opposite.

IDC cites no evidence—and there is none—that ASUS has taken any positions contrary to its *actual* statements. ASUS has not asserted a stand-alone claim that the PLA is not FRAND compliant. ASUS's First Amended Complaint, filed after the Interim Award, sets forth seven claims, all of which cite the PLA as factual evidence and all of which IDC admits are "based on the assertion that [IDC] breached FRAND commitments made in licensing declarations as to patents disclosed to ETSI as potentially essential to 2G, 3G or 4G standards." IDC Br. 5:2-8; Ex. 21 ("FAC") ¶¶ 79, 89-90, 104, 124-125. Nor does IDC's motion cite any of the evidence that is inconsistent with ASUS's actual statements in arbitration. *See* IDC Br. Ex. 22, ¶¶ 11-14, 23; IDC Br. Ex. 23, ¶¶ 182, 219; Ex. 4, ¶¶ 100-109 (ASUS's experts reiterating factual basis for ASUS's claims, PLA as FRAND is "one of the issues" and explaining ASUS is a willing licensee); Ex. 5 at 7:12-19 (Jacky Lu testifying on the "factual basis for AsusTek's allegation that InterDigital made false promises to SSOs to license standard essential patents on FRAND terms."). Thus, IDC fails to

1    demonstrate "clearly inconsistent statements," which judicial estoppel requires.

2        Nor can IDC establish the other two factors of judicial estoppel. ASUS never persuaded the

3    tribunal that its claims did not involve allegations regarding the PLA's FRAND compliance. Rather,

4    the tribunal acknowledged ████████████████████████████████

5    ████████████████████████████████████████████████████

6    ████████████████████████████████." IA, ¶ 45; *id.* ¶ 45(a). IDC cannot

7    assert prejudice based on ASUS's statements because IDC has fully litigated, in both fact and expert

8    discovery, whether the PLA complies with its FRAND obligations and knows full well that is a

9    dispute before this Court. *See, e.g.*, IDC Br. 14-16. IDC lacks credibility in claiming prejudice.

10       The Court should deny IDC's motion for judicial estoppel.

11   **B.    ASUS is Not Precluded from Relying on the PLA to Prove IDC Violated FRAND**

12       IDC would have this Court rule that "issue preclusion bars ASUS from asserting the PLA

13   was non-FRAND" because the arbitrators decided FRAND. IDC Br. 1:4-5. But the tribunal, in its

14   Interim Award, ████████████████████████████████████████

15   ████████████████ IA at 26-7, 30. IDC's motion is thus improperly premised on the arbitration

16   deciding issues in claims it does not have jurisdiction over.[2]

17       Regardless, IDC's assertion that issue preclusion applies because the Final Award decided

18   the PLA satisfied the non-discrimination prong or harm prong of IDC's FRAND obligation is

19   patently false, for multiple independent bases. First, non-discrimination and FRAND-based damages

20   were not "actually litigated" in arbitration. The tribunal ████████████████████████

21   ████████████████████████████████████████████████

22   ████████████████ As detailed below, the tribunal's analysis of the ████████████

23   ████████████████████████████████ is untethered to the

24   FRAND analysis both factually and legally.

25   **1.    The Parties Did Not "Actually Litigate" FRAND Discrimination or Damages**

26       IDC cannot establish that FRAND compliance and associated harm were "actually litigated,"

27   _____

28   [2] IDC's motion amounts to an indirect challenge of the Interim Award, which IDC is precluded from
     making. IDC did not challenge the Interim Award and cannot do so indirectly through its motion.

as issue preclusion requires. *Littlejohn v. United States*, 321 F.3d 915, 923 (9th Cir. 2003). An issue

is not "actually litigated" where the first court expressly reserved an issue as undecided. *See* 18

Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 4417 (3d ed.) (collecting cases);

*In re SonicBlue Inc.*, Nos. C-07-02553 RMW, C-07-06025 RMW, 2008 WL 191025, at *5 (N.D.

Cal. Jan. 20, 2008). IDC chooses not to address that the Final Award expressly ███████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

FA ¶ 109.

Nor can IDC claim that the parties "had a full and fair opportunity to litigate the merits of an

issue[,]" FRAND. *Littlejohn*, 321 F.3d at 923 (citing *Allen v. McCurry,* 449 U.S. 90, 94–95, (1980)).

After the Interim Award, ██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████ During the arbitration hearing, ████████████████████████████████████████████

████████████████████████████████████████. Ex. 6 at 924:25-927:9 (IDC:

███████████████████████████████████████████████████████), 1011:23-

1012:10; Ex. 7 at 84:3-17 (IDC: "████████████████████████████████████████████████

████████████████████████████."). ASUS and IDC's expert similarly

acknowledged ████████████████████████████████████████████████████████████████

████████████████ *See, e.g.*, Ex. 7 at 40:4-23 (ASUS: ██████████████████████████

██████████████; Ex. 8 at 837:25-838:3 (IDC's expert

████). Still further, all these statements are consistent with the tribunal's dismissal of ASUS's

FRAND-based claims as not arbitrable, which preserved the FRAND-based issues for this Court to

decide in the first instance.

The Court should deny IDC's motion because no FRAND issue was "actually litigated."

### 2.   The Final Award Did Not Address "Identical Issues"

Even setting aside the express reservation of FRAND issues for this Court, IDC cannot

7

1

2   establish issue preclusion because it has not identified "identical issues" between the arbitration and

3   this litigation. *Central Delta Water Agency v. U.S.*, 306 F.3d 938, 953 (9th Cir. 2002) (citation

4   omitted) ("the issues litigated must not be 'merely similar,' but must be 'identical.'"). IDC ignores

5   the factors the Ninth Circuit evaluates to determine "identical issues": "(1) is there a substantial

6   overlap between the evidence or argument to be advanced in the second proceeding and that

7   advanced in the first? (2) does the new evidence or argument involve the application of the same rule

8   of law as that involved in the prior proceeding? (3) could pretrial preparation and discovery related

9   to the matter presented in the first action reasonably be expected to have embraced the matter sought

10  to be presented in the second? (4) how closely related are the claims involved in the two

11  proceedings?" *Resolution Tr. Corp. v. Keating*, 186 F.3d 1110, 1116 (9th Cir. 1999) (citation

12  omitted). IDC's failure to affirmatively establish these factors is reason alone to deny IDC's motion.

13  *See Optional Cap., Inc. v. Kim*, 2008 WL 2986660, at *5–6 (C.D. Cal. Aug. 1, 2008), *aff'd*, 414 F.

14  App'x 12 (9th Cir. 2011) (denying motion for failing to address these factors). Nor can IDC establish

    any of these factors if it tried.

15          IDC relies on the Final Award's ███████████████████████████████

16  ████████████████████████████████████████████████████████████████

17  ██████████████████████████████████████████████████████. IDC Br.

18  11; FA ¶ 9.[3] This statement says nothing about IDC's FRAND compliance. An evaluation of its

19  veracity does not involve a substantial overlap of facts or arguments involving in evaluating the

20  whether IDC complied with its FRAND obligations by entering the PLA.

21          Yet, IDC summarily equates the evaluation █████████████████████████

22  ███████ an evaluation, pursuant to IDC's FRAND obligations, of whether "the PLA was

23  'discriminatory' when signed." IDC Br. 10:25-11:1. IDC's FRAND obligations stem from its

24  declarations to ETSI that it would be "prepared to grant irrevocable licenses on fair, reasonable and

25  non-discriminatory ('FRAND') terms and conditions." The parties agree this obligation means IDC

26

27  [3] IDC fails to acknowledge the tribunal's adoption of its own argument that the "very, very
    competitive" statement is "too vague to be reasonably relied on." FA ¶ 61. IDC asks this Court to
28  accept that this "too vague to be reasonably relied on" statement constitutes a finding that the PLA is
    FRAND compliant.

ASUS'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:15-cv-01716-BLF

must license the implicated patents to "similarly situated" licensees on, *inter alia*, non-discriminatory terms and conditions. *See TCL*, 2017 WL 6611635, *29. But the parties dispute what "similarly situated," "non-discriminatory," and "terms and conditions" entail. The Final Award does not ████████████████████████████████████████████████████████████████ ██████████████████████████████ The Final Award simply does not ████████████ ██████████████████████████████████████████████████████████t. Instead, the tribunal determined █████████████████████████████████████████████████████████████

First, the tribunal's analysis of █████████████████████████ no substantial factual or legal overlap with the FRAND issues before this Court because ████████████████████ ███████████████ The Final Award found ██████████████████████████████████ ████████████████████████████████████████████████████ ████ FA ¶ 66 ██████████████████████████████████████████████). The tribunal limited its analysis to ████████████████████████████████████████████ ███████████████████████████████." *See id.* ¶¶ 12, 17(f)(iv). This is a critical distinction. The FRAND analysis necessarily requires consideration of licenses' terms and conditions. Courts use effective rates to unpack licenses to account for and compare terms and conditions.[4] *TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, 2017 WL 6611635, at *33-48 (C.D. Cal. Dec. 21, 2017) (using effective rates to unpack licenses' term and conditions to evaluate non-discrimination prong of FRAND). Indeed, to evaluate its compliance with its FRAND obligations, ████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████). *See* Ex. 11 at 89:6-13; Ex. 12 at 96:22-97:7; Ex. 13 p.2. The fact that the tribunal's analysis ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████

---

[4] If IDC is now arguing "██████████████████████████████████, such a position would be inconsistent with the law ██████████████████████. *E.g.*, Ex. 10, ¶ 155; Ex. 50 at 67:22-68:13.

ASUS'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:15-cv-01716-BLF

1   ██████ . Without that, it could not have determined whether the PLA complies with FRAND.

2   For that reason, the issues cannot be identical.

3       Additionally, there is no substantial overlap of facts or arguments because the tribunal's

4   analysis of ████████████████████████████████████████████

5   ████████████████████ . The tribunal limited its analysis to ████████████

6   ████████████████████ FA ¶ 67; *see also id.* ¶ 84. By doing so, it did not

7   consider ████████████████████████████████

8   ████████ . *See* Ex. 10, ¶¶ 222, 226, 228. Exclusion of such licenses is improper under the

9   FRAND analysis because the FRAND obligation does not cabin "similarly situated" licensees to

10  those with licenses of the same financial structure. *See TCL*, 2017 WL 6611635, at *29 (after

11  identifying similarly situated licensees, court used "[u]npacking…to derive a one-way royalty rate so

12  that licenses can be compared on a common basis….to account for cross-licenses, lump sum

13  payments…"). The "issues" IDC's motion identifies cannot be identical and their factual predicates

14  do not substantially overlap because the tr████████████████████████

15  ████████ of FRAND compliance.

16      As to *Resolution* factors 2 and 4, IDC cannot dispute that the two issues are evaluated under

17  entirely different rules of law and are instead unrelated. *See Resolution*, 186 F.3d at 1116; IDC Br.

18  11:16-18. IDC's FRAND obligations are governed by French contract law. *TCL*, 2017 WL 6611635,

19  *5. By comparison, the tribunal ████████████████████████

20  ████████████ . FA ¶ 8. Fraudulent Inducement requires a showing that IDC made false

21  statements, ASUS relied on those statements and would not have entered the PLA but for the

22  statements. *See generally id.* Whether IDC breached its commitment to license on FRAND terms

23  requires none of these elements and the fraudulent inducement analysis is unrelated to ETSI or

24  FRAND. The Interim Award, finding that ████████████████████████████

25  ████████████ , provides the best evidence. *See generally* IA. The tribunal held the claims

26  before this Court ████████████████████████████████

27  ████████████████████████ . *Id.* at 5.

28

ASUS'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:15-cv-01716-BLF

1

2          As to *Resolution* factor 3, IDC cannot possibly argue that the pretrial preparation and

3   discovery related to the arbitration was expected to embrace the issue of FRAND compliance—

4   specifically, non-discrimination. *See Resolution*, 186 F.3d at 1116. In the arbitration, ███████

5   ███████████████████████████████████████████████████████████████████████████████

6   ███████████████████████████████████████████████████████████████████████████████

7   ██████████████████████████████████████████. *See, e.g.*, Ex. 6 at 924:25-927:9,

8   1011:23-1012:10. Unlike in the arbitration, IDC recently produced a limited subset of internal

9   models (and underlying data) ████████████████████████████████████████████████

10  obligations in this litigation. Ex. 11 at 89:6-13; Ex. 12 at 96:22-97:7. ███████████████

11  ███████████████████████████████████████████████████████████████████████████████

12  ██████████████████████. *See, e.g.*, Ex. 13 p.2; Ex. 14. This evidence undermines

13  IDC's arguments before the tribunal ████████████████████████████████████████████

14  ███████████. *Compare* Ex. 9 ¶¶ 33-36, 48, 83 *and* Ex. 15 ¶ 1510, *with* Ex. 13 p.2. Critically, discovery in

15  this case, including these and other documents, as well as extensive depositions not available in

16  arbitration highlight █████████████████████████████████████████████████████████

17  ███████████ without basis and in violation of its FRAND obligation. Thus, under the Ninth's Circuit

18  four-prong test, the issue decided by the tribunal is not identical to whether "the PLA was

19  discriminatory when signed."

20         Related, IDC also requests that ASUS be precluded from arguing it suffered harm from

21  entering a PLA due to IDC's FRAND violation because that issue was decided in the arbitration.

22  IDC Br. at 13:16-27. As detailed above, the Final Award ██████████████████████████

23  ██████████████████████████████ The only evidence IDC identifies to support its naked

24  assertions confirms that the harm stemming from FRAND is not identical to that before the tribunal.

25  IDC cites a ███████████████████████████████████████████████████████████████████

26  ██████████████████████████████████████████, Instead, it focused ███████████████

27  ████████████████████████████████████████████████████████████████████████████

28  █████████████████████████████████████████████████████████ (whereas FRAND is

---

11

1    not based on the averaging of a subset of licenses). *See* IDC Br. Ex. 7 ¶ 218.

2         The Court should rule the Final Award has no preclusive effect on ASUS's FRAND claims.

3         **3.   California UCL and Delaware Consumer Fraud Act Counts**

4         IDC argues that ASUS's claims under California's UCL and the Delaware Consumer Fraud

5    Act ("DCFA") are precluded as to allegations of fraudulent inducement that the parties arbitrated.

6    ASUS withdraws its allegation "(2) inducing ASUS to enter the 2008 PLA based on false statements

7    that other licensees ███████████████████████ that offered to ASUS" of paragraphs

8    124 and 125 of DCFA, Count VIII. In addition, ASUS withdraws its similar allegations that appear

9    in paragraphs 89 and 90 of California UCL Count II. Thus, ASUS agrees that it cannot rely on the

10   withdrawn assertions to support these claims. But, to be clear, that concession does not eliminate

11   these claims in their entirety. ASUS does not withdraw and IDC does not challenge the two other

12   independent allegations ASUS asserts as basis for IDC's violation of the UCL or DCFA. *See* FAC

13   ¶¶ 89-90, 124-125. ASUS having withdrawn the statements IDC identified, IDC's motion is moot.

14        **C.   The Parties' 2008 PLA Does Not Vitiate IDC's FRAND Commitment**

15        The parties' 2008 PLA does not permit IDC to breach its FRAND obligations, as IDC

16   ultimately posits. By way of background, Count IV seeks relief for IDC's breach of its FRAND

17   contract with ETSI. IDC characterizes the breach of FRAND contract claim as one to "invalidate"

18   the PLA, but that is not the claim asserted. Count IV is not even limited to the non-FRAND nature of

19   the PLA, but includes other conduct by IDC. For instance, IDC's offers leading to the 2008 PLA, its

20   █████████████████, and its threat to seek injunctive relief are additional evidence that IDC

21   violated its FRAND obligations. IDC misapprehends the very nature of Count IV, and thus the Court

22   should reject IDC's motion on that basis alone. As detailed below, neither the PLA's integration

23   clause nor its lack of MFL clause relieves IDC of its separate FRAND obligations.

24        **1.   The PLA's Integration Clause Does Not Release IDC's Separate, Binding
             Contractual FRAND Obligations**

25

26        The PLA's integration clause does not relieve IDC of its separate, FRAND commitment.

27   First, IDC reads far too much into an integration clause. An integration clause ensures the parties'

28   written agreement is complete, and completeness of the PLA is not an issue here. ASUS does not

ASUS'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:15-cv-01716-BLF

1   contend the agreement is somehow incomplete, but that it is evidence of IDC's violation of its

2   FRAND contract. IDC's FRAND obligation is simply a different set of obligations than the parties'

3   license agreement. Second, IDC and ASUS cannot agree to modify a second contract between ETSI

4   and IDC; ETSI, as a party, must agree to modify the FRAND contract. Third, IDC has re-affirmed

5   its FRAND commitment after the parties entered their PLA, defeating any claim that the PLA's

6   integration clause somehow subsumes IDC's FRAND commitments made prior to execution of the

7   PLA.

8           IDC's application of the integration clause attempts to fit the proverbial square peg into a

9   round hole. ASUS does not dispute that the PLA contains the terms and conditions the parties

10  negotiated Integration clauses are "in the absence of unconscionable or other extraordinary

11  circumstances, conclusive evidence that the parties intended the written contract to be their complete

12  agreement." *J.A. Moore Constr. Co. v. Sussex Assocs. Ltd. P'ship*, 688 F. Supp. 982, 987 (D. Del.

13  1988). This is the very point of the case law on which IDC relies. IDC Br. at 15. Count IV does not

14  claim the PLA is somehow incomplete. Instead, Count IV contends that the PLA (and, *inter alia*, the

15  offers leading to the PLA) are evidence that IDC violates its obligation to license FRAND terms.

16          Further, IDC is wrong to contend that an integrated agreement with ASUS can modify the

17  FRAND agreement between IDC and ETSI as a matter of basic contract principles. ETSI must

18  consent to modification of the FRAND contract, which IDC has never sought since that was not its

19  intention with the PLA. "It is well settled, that one of the parties to a contract cannot modify such

20  contract or terminate it lawfully ***unless the other party assents thereto.***" *Josloff v. Falbourn*, 125 A.

21  349 (Del. 1924) (emphasis added); *De Cecchis v. Evers*, 54 Del. 99, 100-101 (1961). Delaware

22  courts hold that "[a] contract cannot be modified by the unilateral act of one party thereto." *Donnelly*

23  *v. Donnelly*, 1989 WL 85944 at *4 (Del. Fam. Ct. July 25, 1989). Nor can IDC and ASUS together

24  change IDC's FRAND contract with ETSI, because a third party beneficiary and only one of the

25  parties to a contract cannot modify that contract. *Carole H v. Kim C.*, 1990 WL 64750, at *4 (Del.

26  Fam. Ct. Mar. 26, 1990) (citing *Rosenberg v. Lawrence*, 541 S.2d 1204 (Fla. 1988)). "In short, the

27  Court held that, unless both parties to the original agreement entered into a proper modification,

28  either party to the contract or the adult beneficiary of the contract could enforce it." *Id.* at *4.

1  Ultimately, if IDC seeks to modify its FRAND contract, ETSI must consent to such a modification,

2  which it did not.

3  ETSI's IPR policy implements the FRAND commitment to compensate for the

4  anticompetitive nature of a group of members (including patentees) choosing the technology that an

5  implementer must use. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500-01

6  (1988); *TCL*, 2017 WL 6611635, at *6-7 ("ETSI was concerned, among other things, with

7  addressing the problem of 'hold up.' … ETSI was also concerned with price discrimination among

8  potential licensees."). ETSI thus would not release IDC from its FRAND commitment, and, of

9  course, IDC makes no showing that such a release was obtained.

10  Still further, even assuming an integration clause were to somehow supersede FRAND

11  commitments IDC made prior to entering the PLA (which it does not for the reasons discussed

12  above), IDC's subsequent FRAND commitments to ETSI are not subject to the prior, 2008 PLA's

13  integration clause. Nowhere does the PLA indicate that IDC's subsequent FRAND commitments are

14  vitiated by the 2008 PLA. IDC provided FRAND commitments in September 2008 and at least once

15  every year from 2009-2013, after IDC entered the January 2008 PLA. ECF No. 107-11 through 107-

16  21. IDC commits to FRAND with each declaration. IDC has no claim that its post-2008 declarations

17  are somehow subject to Section 6.22 of the PLA.

18  **2. The PLA's Lack of a Most-Favored-Licensee Clause Does Not Permit IDC

19  to Avoid Its FRAND Commitment**

20  That the PLA does not include an MFL clause does not somehow alter IDC's FRAND

21  commitment to ETSI. IDC appears to contend that the relief ASUS seeks with Count IV is

22  tantamount to an MFL clause that IDC rejected from the PLA, and that ASUS is improperly

23  "imposing" an MFL into the PLA. IDC Br. at 15-16. ASUS is not enforcing the PLA; ASUS is

24  enforcing IDC's FRAND obligation. The absence of an MFL in the PLA does not somehow alter

25  IDC's FRAND commitment. At bottom, IDC has no basis for its broad demand—"the Court should

26  grant summary judgement for [IDC] on Count IV Breach of Contract." *Id*. at 17.

27  As an initial matter, InterDigital's argument lacks coherency and fails to provide basis for

28  dismissing Count IV. For that reason alone the Court should reject the Motion.

1     It is improper for IDC to use the PLA to somehow limit its FRAND obligations. As

2   discussed in Section C.1 above, whether IDC and ASUS agreed to an MFL or not in the PLA does

3   not alter IDC's FRAND obligation. ETSI must consent to any modification of the RAND

4   commitment as a party to that agreement. *Carole H.*, 1990 WL 64750, at *4; *see also Josloff*, 125 A.

5   at 349 ("It is well settled, that one of the parties to a contract cannot modify such contract or

6   terminate it lawfully unless the other party assents thereto.").  Moreover, whether the PLA contains

7   an MFL does not bear on the FRAND commitment, for all the reasons discussed in Section C.1

8   above. The PLA is simply a different agreement than IDC's FRAND obligation.

9     Separately, IDC's motion appears to argue that "with respect to claims that the PLA is

10  'discriminatory,' one can consider only InterDigital's other 3G license agreements entered into

11  before the 2008 PLA." But Count IV is not limited to "discrimination" or the PLA, and this is the

12  Count IDC seeks dismissed. Count IV seeks to enforce IDC's obligation to license on *fair*,

13  *reasonable* and non-discriminatory terms. Count IV is not solely limited to the non-discriminatory

14  prong.  In the end, IDC provides no justification for limiting the FRAND analysis to licenses entered

15  into before the 2008 PLA. On this basis alone, the Court should reject IDC's motion. Moreover, IDC

16  is just factually incorrect that ASUS's "sole damages claim is [based on] the 2014 license between

17  [IDC] and Samsung – signed six years after the PLA." IDC Br. at 16 (citing only a 3-paragraph

18  excerpt of a 116-page damages expert report). ASUS's damages claim is based on other IDC

19  licenses, entered both before and after the PLA, evaluation of IDC's patent portfolio and Dr.

20  Leonard's top-down analysis, among other things.

21    Still further, this case is not limited to evaluating 3G rates on or before PLA execution. IDC

22  made post-PLA 3G offers to ASUS and that conduct is subject to IDC's FRAND commitment. For

23  instance, in 2011, ███████████████████████████ Ex. 16 (IDC-ASUS-1716-

24  0276525) at pp. 1-2 ███████████████████ Since then, IDC has

25  ████████████████████████████████████████

26  ███████████████ *See, e.g.*, Ex. 17 at 3 & Ex. 35 (███████

27  ████████████████████████████████████████

28  ████████████████████████████████

15



1    a███████████; Ex. 18 at 75:25-77:15 (discussing same); *id.* at 89:8-90:8, 96:18-23 (███████

2    ████████████████████████████████████████████████████████; Ex. 19 at 2

3    ██████████████████████████████████████████████. IDC has

4    explicitly acknowledged that these negotiations are subject to its FRAND obligations. For example,

5    ██████████████████████████████████████████

6    ████████████████████████████████████████████████

7    ████████████████████████████████████████████████

8    ███████████████████████████████████████████

9    ████████████████████████████████████████████

10   ████████████████████ Ex. 20 at 1-2; Ex. 11 at 76:13-77:10 (discussing same and explaining █

11   ███████████████████████████████████████

12   ████████████████.Thus, it is undisputed that the parties have been negotiating an amendment to

13   the 2008 PLA since 2011, and that amendment impacts ASUS's rights to both 3G and 4G patents.

14           Neither the integration clause nor the lack of an MFL in the PLA extinguishes ASUS's Count

15   IV for breach of IDC's separate FRAND obligations.

16           **D.      IDC Cannot Show the Absence of Necessary Evidence for Antitrust Violations**

17           IDC exploited the lock-in effect of ETSI's cellular standards to capture the value of

18   standardization over and above the value of its patented technologies. IDC repeatedly promised it

19   would license its SEPs on FRAND terms and conditions, even as it continued to deny ASUS

20   anything even close to the effective royalty rates its own internal documents show it was providing

21   to ASUS's competitors. Viewing the evidence in the light most favorable to ASUS, as required on a

22   motion for summary judgment, a reasonable fact finder could readily infer that IDC was making

23   false FRAND promises to ETSI while knowingly discriminating against ASUS. Additionally, IDC's

24   Motion does not fully or fairly address the legal and evidentiary bases for ASUS's antitrust claims.

25   For at least these reasons, IDC fails to establish entitlement to summary judgment.

26           **1.  Market Definition Is Not Required, but ASUS Has Provided It Anyway**

27           The existence of monopoly power may be proven by direct or indirect evidence. *Rebel Oil*

28   *Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). Where there is direct evidence of

1   monopoly power, a Sherman Act § 2 plaintiff is not obligated to define the relevant

2   market. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 107-08 (2d Cir. 2002). Direct proof of

3   monopoly power includes, e.g., evidence of the control of prices or the exclusion of

4   competition. *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 783 n.2 (6th Cir. 2002).

5          In this case, IDC's success in having its technology incorporated into the standards is direct

6   evidence of exclusion of competition. Once that technology is incorporated, it eliminates alternatives

7   (including at least the alternative of not standardizing the feature at all). *See Broadcom Corp. v.*

8   *Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007). Because there is direct evidence of exclusion of

9   competition, market definition is not a requirement of ASUS's § 2 claim.

10         Nevertheless, contrary to IDC's argument, ASUS has in fact identified the markets relevant

11  to its antitrust claim. ASUS's expert, Dr. Fiona Scott Morton, provides an economic analysis of

12  "Cellular Technology Markets," which are the technologies competing to provide the functionalities

13  of the relevant standards, including "technologies covered by patents incorporated into the 2G, 3G,

14  and 4G cellular standards by SSOs, together with all other technologies that SSOs could have used

15  in alternative cellular standards to perform the same or reasonably interchangeable functionalities."

16  Ex. 36 ¶¶ 8, 11. The viability of such relevant markets has been recognized by the courts and by the

17  U.S. antitrust agencies. *See, e.g.*, *Apple Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-bbc, 2011 WL

18  7324582, at *13 (W.D. Wis. June 7, 2011); *Research In Motion Ltd. v. Motorola*, Inc., 644 F. Supp.

19  2d 788, 794 (N.D. Tex. 2008); *Antitrust Guidelines for the Licensing of Intellectual Property*, U.S.

20  Dep't of Justice and Fed. Trade Comm'n (Jan. 12, 2017), at 9 (describing technology markets and

21  citing cases).

22         There is no requirement that technology markets of this type be defined as a list of individual

23  patents. IDC cites no authority to support its demand for this level of specificity. *See* IDC Br. at 18-

24  19. To the contrary, numerous antitrust claims of this type have been found viable even in the

25  absence of the kind of specific patent listing that IDC claims is required. *See Broadcom*, 501 F.3d at

26  315 (reversing dismissal where the market was defined as "the market for Qualcomm's proprietary

27  WCDMA technology"); *Hynix Semiconductor Inc. v. Rambus Inc.*, Nos. CV-00-20905 RMW, C-05-

28  00334 RMW, C-05-02298 RMW, C-06-00244 RMW, 2008 WL 73689, at *2-8 (N.D. Cal. Jan. 5,

17

1   2008) (denying summary judgment to defendant where markets had qualitative descriptions such as

2   "the technology markets that are compliant with the adopted standards"); *In re Papst Licensing,*

3   *GmbH Patent Litig.*, No. Civ. A. 99-3118, 2000 WL 1145725, at *5-7 (E.D. La. Aug. 11, 2000)

4   (declining to dismiss claim based on "the market for technology directed to HDD motors"). It was

5   not even required in *IP Bridge*, the unpublished District of Delaware opinion on which IDC bases its

6   argument. *See Godo Kaisha IP Bridge 1 v. TCL Commnc'n Tech. Holdings, Ltd.*, No. 15-634-JFB-

7   SRF, slip op. at 10-13 (D. Del. Feb. 28, 2018).[5] Even where antitrust plaintiffs have identified

8   specific patents constituting a technology market, an omnibus identification of all patents declared

9   essential to a standard has been considered sufficient. *See Apple Inc. v. Samsung Elecs. Co.*, No. 11-

10  CV-01846, 2012 WL 1672493, at *5 (N.D. Cal. May 14, 2012) (defining relevant markets based on

11  "each of Samsung's purported essential patents for UMTS").

12          IDC's claim that ASUS has aggregated patents essential to the 2G, 3G, and 4G standards into

13  a single relevant technology market together is incorrect. Dr. Scott Morton treats them separately.

14  Ex. 36 ¶ 11 ("Each of the functionalities included in the standard that required the selection of a

15  particular technology is an individual Cellular Technology Market."); *id.* ¶¶ 10-11 (describing

16  technological goals for each standard).

17          IDC next claims that ASUS did not present evidence of competing technologies that were

18  excluded from a standard, but this too is incorrect. Dr. Kakaes provides such examples. Ex. 37 ¶¶ 6-

19  23. Regardless, identifying alternative technologies is not a prerequisite to a monopolization claim.

20  *See Hynix*, 2008 WL 73689, at *4-5, *8 (denying summary judgment for defendant even though

21  plaintiff's expert merely "assumed" the existence of substitutes). Consistent with *Hynix*, neither case

22  cited by IDC requires that substitutes for the defendant's patents must be identified with specificity

23  with respect to all FRAND-based antitrust claims.  *See ChriMar Sys. v. Cisco Sys.*, 72 F. Supp. 3d

24  1012, 10118 (N.D. Cal. 2014) (dismissing counterclaim because of failure to allege that the market

25  comprised technologies that competed to perform the patented functions in the standard, which

26

27  ───────────────

    [5] *IP Bridge* is also inapposite for other reasons. It relies on the absence of evidence of substitutability
    of *one standard for another* and rejects the assertion that an SEP holder "automatically has market
28  power with respect to *entire standards* comprising thousands of technologies"—neither of which is
    an issue here. *IP Bridge* at 12-13 (emphasis added).

1    ASUS *has* alleged); *Apple Inc.*, 2012 WL 1672493, at *5 (finding definition based on "the various

2    functions covered by each of Samsung's purported essential patents for UMTS" sufficient to "define

3    the bounds of the relevant markets" before reaching the allegation regarding substitutes).

4         Finally, even if it were the case that there were no technical alternatives that could have

5    replaced IDC's patents in the relevant standards, ETSI could have opted not to standardize the

6    relevant feature at all if it had known that IDC would renege on its FRAND commitments and abuse

7    its monopoly position. *See Broadcom*, 501 F.3d at 316 ("even if Qualcomm's WCDMA technology

8    was the only candidate for inclusion in the standard, it still would not have been selected by the

9    relevant SDOs absent a FRAND commitment"). Standardization inherently eliminates alternatives,

10   thereby conferring market power on incorporated patents over and above the statutory right to

11   exclude. *Id.* at 314 ("A standard, by definition, eliminates alternative technologies. When a patented

12   technology is incorporated in a standard, adoption of the standard eliminates alternatives to the

13   patented technology.... [The value of a patent] becomes significantly enhanced ... after the patent is

14   incorporated in a standard.") (citing *Am. Soc. of Mech. Engrs., Inc. v. Hydrolevel Corp.*, 456 U.S.

15   556, 559 (1982)); *see also Research In Motion*, 644 F. Supp. 2d 788 at 793.[6] Because alternatives—

16   including at least the alternative of non-standardization—are eliminated when a patented technology

17   is included in a standard, an essential patent restricts competition between technologies.

18        In summary, the evidence in this case does not trigger a market definition requirement. Even

19   if it did, none of the case law imposes the unduly stringent formalities IDC seeks to graft onto the

20   requirement. Summary judgment is therefore unwarranted.

21              **2.  The Evidence Plainly Demonstrates IDC's Anticompetitive Conduct**

22        There is ample evidence creating a genuine issue for trial regarding IDC's anticompetitive

23   conduct. IDC promised to license its SEPs on FRAND terms and conditions, both before and after it

24   demanded non-FRAND royalties from ASUS. IDC tries to hide behind the timing of its declarations,

25   claiming that any later-occurring FRAND violations cannot show "a promise was false ***when made***"

26   (IDC Br. at 21). But the timing does not help IDC, because it kept making FRAND promises over

27

28   _____

[6] IDC's reference to a statement by Dr. Kakaes (Mot. at 19 n.11) is irrelevant to the issue at hand. Multiple experts opine that there are some IDC patents that must be practiced. See Ex. 10 ¶ 291.

19

1   and over again even as it doled out chronically non-FRAND offers. IDC also cannot avoid the

2   genuine factual issues created by the ██████████████████████████████

3   ███████████████████   These discrepancies—as reflected in, *inter alia*, ████████

4   ██████████████   —are sufficient by themselves for the fact finder to infer intentional deception in

5   IDC's FRAND declarations.

6          Contrary to the premise of IDC's argument, ASUS's antitrust claim is not limited to the type

7   of false FRAND declaration alleged in *Broadcom*.[7] ASUS has introduced evidence of a broader set

8   of anticompetitive actions by IDC designed to increase and exploit its monopoly power, ████

9   ████████████████████████████████████████████████

10  ████████████████████████████████████████

11  ████████████████████████████████████████████

12  ████████████████████████████████████████████████

13  ██████████████   Ex. 36 ¶ 13. Nonetheless, there is no question here that there is at least a triable

14  issue as to each and every element of a *Broadcom* false FRAND claim. *See Broadcom*, 501 F.3d at

15  314 ("We hold that (1) in a consensus-oriented private standard-setting environment, (2) a patent

16  holder's intentionally false promise to license essential proprietary technology on FRAND terms, (3)

17  coupled with an SDO's reliance on that promise when including the technology in a standard, and

18  (4) the patent holder's subsequent breach of that promise, is actionable anticompetitive conduct.").

19         The first element is undisputed in IDC's Motion; ETSI is a consensus-based private SSO.

20         The second element, intent, is almost always a factual question, and thus ill-suited for

21  summary judgment. *Provenz v. Miller*, 102 F.3d 1478, 1489 (9th Cir. 1996) ("Generally, scienter

22  should *not* be resolved by summary judgment."); *Guttierez v. Wells Fargo & Co.*, 622 F. Supp. 2d

23  946, 958 (N.D. Cal. 2009) ("determination of fraudulent intent is a fact question"). The evidence of

24  IDC's intent includes the sequence of its offers and declarations, from which a reasonable fact finder

25  could easily infer intentionally false FRAND promises.

26  ████████████████████████████████████████████

27

28  _____
[7] *Broadcom* does not suggest the court was reciting an exclusive test; the court was merely ruling
upon the effectiveness of the allegations that were before it. *Broadcom*, 501 F.3d at 313-14.

1 ████████████████████████████████████████████████████

2 ██████ Ex. 36, Appendix C. Over the course of the more than four-year long negotiations that

3 followed, ████████████████████████████████████████████████. *Id.* All

4 the while, IDC was making declarations of 3G essential patents. *See, e.g.*, Ex. 21 (Apr. 8, 2004), Ex.

5 22 (Mar. 21, 2007). Ultimately, on April 18, 2008, the parties entered into the 2008 PLA. ████

6 ████████████████████████████████████████████████

7 ████ Ex. 23 at 105-106 (Section 3.1). ████████████████████████

8 ████████████████ Ex. 11 at 62:19-63:15, 65:1-66:3.

9 As time went by, IDC continued to make more FRAND declarations to ETSI, citing 3G and

10 4G standards and committing to FRAND licensing of its identified patents. *See, e.g.*, Ex. 24 and 25

11 (Sept. 19, 2008), Ex. 26 and 27 (Sept. 14, 2009), Ex. 28 (Sept. 16, 2010), Ex. 29 and 30 (Oct. 31,

12 2011), Ex. 31 and 32 (Nov. 30, 2012), Ex. 33 and 34 (Nov. 26, 2013).

13 In November 2011, ████████████████████████████████

14 ████████████████████████. Ex. 36, Appendix D. ████████████

15 ████████████████████████████████████████████████

16 ████████████████████████████████████████. *Id.* Over the

17 course of the more than four-year long negotiations that followed, ██████████████████

18 ████████████████████████████. *Id.* ████████████████

19 ████████████████████████████████████████████████

20 ████████████████ Ex. 10, line 13.

21 Throughout the negotiation period, IDC had been granting favorable treatment ████████

22 ████████████████ to ASUS's competitors in the global cellular device market, putting ASUS at an

23 undeserved disadvantage. Other IDC licensees are paying rates that are ████████████████

24 ████████████████████████████████████████████████

25 ████████████████████████████████████████████████

26 ████████████. Ex. 38, p. 2 (Samsung, December 2013); Ex. 39, p. 2 (Apple,

27 December 2013); Ex. 40, p. 2 (Huawei, January 2014).  Thus, for example, within the span of a few

28 months IDC declared it would license 4G SEPs on a FRAND basis, ██████████████████

1    ███████████████████████████████████████████. Even IDC's expert

2    calculates that ██████████████████████████████████. Ex. 10

3    (Putnam Report Ex. 9). This contemporaneous combination of a FRAND declaration and grossly

4    disparate licensing treatment, viewed in the light most favorable to ASUS, is a basis on which the

5    finder of fact could infer the declaration was intentionally deceptive.[8]

6    　　　　On the third *Broadcom* element, ETSI's reliance on IDC's declarations is evident from the

7    fact that it standardized the relevant features instead of working to invent around the patents.

8    *Broadcom*, 501 F.3d at 316. IDC's contention that 3G standards were "largely frozen" by early 2009

9    does not matter, because IDC made multiple 3G FRAND declarations prior to that date (Ex. 11-12 &

10   21-22) and because it also subsequently made FRAND declarations relating to the 4G standard (Ex.

11   28-34). IDC cannot dismiss ETSI's reliance on these declarations by insisting the patents must have

12   been "selected by ETSI over identified viable alternatives" (IDC Br. at 22) because the law does not

13   require that, as addressed above.

14   　　　　For the fourth element, breach of a FRAND promise, IDC's Motion does not appear to

15   contest that there are factual disputes over whether FRAND commitments were breached.

16   Regardless, there is clearly sufficient evidence to create a triable issue that they were. Indeed, the

17   evidence is strong enough to support summary judgment in *favor* of ASUS on the issue of

18   discrimination. *See* ECF No. 231. For example, ████████████████████████████████

19   ████████████████████████████████████████████

20   ████. Ex. 10 (Putnam Report Exhibit 23 – Apple and Samsung, Exhibit 14.1 – Huawei). ████

21   ████████████████████████████████████████████

22   █████████████████████ as explained above.

23   　　　　**3.  IDC's Actions Have Caused Injury-in-Fact and Antitrust Injury**

24   　　　　With respect to injury for the 4G standard, IDC's characterization of both the applicable law

25   and the relevant facts is incomplete. On the law, it is not necessary to show that ASUS has made

26   excessive payments to establish standing; liability may be premised on "threatened loss or damage"

27   due to an antitrust violation. 15 U.S.C. § 26. IDC's actions threaten to force ASUS to pay excessive,

28   ────────────────
[8] The issue of discriminatory licensing was not decided by the arbitration tribunal. *See* § II.B, *supra*.

1   non-FRAND royalties. On the facts, IDC ignores that ████████████████████████████

2   ███████████████████████████████ Under the PLA, ██████████████████████████████████

3   ██████████████████████████████████████████████████████████████

4   ████████ Ex. 50 at 27:19-28:2; Ex. 49 at 107:20-23. IDC and ASUS have been negotiating over

5   ████████████████████████████████ and a critical factual dispute in this case is over whether

6   IDC's offers regarding such a license are FRAND. For the few 4G devices that are not mixed-mode,

7   ████████████████████████████████████████████████████████████████████████████████████

8   *See, e.g.*, Exs. 53-54 (Quanta royalty reports, ████████████████████████████

9          IDC's allegation of a lack of substitute technologies cannot dispose of the injury requirement

10   for the same reasons it does not control the market definition issue. *See* § II.D.1, *supra*. At a

11   minimum, the incorporation of an IDC patent into a standard eliminates the alternative of not

12   standardizing the feature at all. *Id.* Moreover, factual disputes exist over technical substitutes. *Id.*

13   Still further, IDC's argument lacks legal support. IDC's only cited authority for the proposition that

14   substitutes are a prerequisite for injury is an academic article by a former FTC Commissioner, whose

15   views on FRAND were in the minority at the Commission. *See, e.g.*, Dissenting Statement of

16   Commissioner Maureen K. Ohlhausen, *In the Matter of Qualcomm, Inc.*, File No. 141-0199 (Jan. 17,

17   2017). Again, IDC's premise that harm can only occur where defined substitutes are available is

18   contrary to precedent holding that standardization always eliminates alternatives. *Broadcom*, 501

19   F.3d at 314; *Research In Motion*, 644 F. Supp. 2d at 793.

20          IDC's reference to the *Noerr-Pennington* doctrine is inapposite because ASUS's claims are

21   based on IDC's false FRAND declarations and excessive royalty demands, not its petitioning of

22   governmental entities for redress. *See Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*,

23   508 U.S. 49, 56 (1993). The *Noerr-Pennington* doctrine does not protect discriminatory licensing

24   demands or insincere FRAND declarations from the antitrust laws. *See, e.g.*, *FTC v. Qualcomm Inc.*,

25   No. 17-CV-00220-LHK, at *10-12 (N.D. Cal. June 26, 2017) (permitting antitrust cause of action

26   based on non-FRAND licensing practices); *Broadcom*, 501 F.3d at 317-19 (reversing dismissal of

27   antitrust claim asserting false FRAND theory). And none of the cases cited by IDC provides blanket

28   antitrust immunity for "offer[s] to negotiate a license". *See* IDC Br. at 23; *In re Innovatio IP*

1  *Ventures LLC*, 921 F. Supp. 2d 903, 911-12 (N.D. Ill. 2013); *Apple, Inc. v. Motorola Mobility, Inc.*,

2  886 F. Supp. 2d 1061, 1076 (W.D. Wis. 2012). Even if IDC's licensing demands were deemed

3  potentially protected petitioning activity, *Noerr-Pennington* would not prevent imposition of

4  antitrust liability based on those if those demands if they were part of a larger anticompetitive

5  scheme. *See Hynix Semiconductor Inc. v. Rambus Inc.*, 527 F. Supp. 2d 1084, 1095-97 (N.D. Cal.

6  2007).

7       IDC's injury argument is almost entirely confined to 4G technology. It only addresses 3G in

8  a single conclusory footnote repeating its procedural estoppel arguments (which are rebutted in

9  Sections A and B, *supra*). *See* IDC Br. at 23 n.14. Clearly, antitrust injury arises out of IDC's

10  conduct around the 3G standard, just as it does with 4G. That injury is to competition, specifically to

11  the competitive market for licenses needed to practice a standard. Standards implementers have

12  antitrust standing because they are the direct purchasers of licenses to SEPs. *Research In Motion*,

13  644 F. Supp. 2d at 796. IDC's anticompetitive conduct causes both injury-in-fact and antitrust injury,

14  because it precludes implementers from opting for alternative technologies and it enables IDC to

15  demand supracompetitive prices for its SEPs.

16       **E.    Neither French Law nor the PLA Bars Promissory Estoppel**

17       IDC's motion inaptly cites both French law and the PLA in addressing promissory estoppel.

18  To the extent IDC disputes that its promises to ETSI are written contracts enforceable by ASUS,

19  those commitments are nonetheless subject to promissory estoppel. *See Merchantwired, LLC v.*

20  *Transaction Network Servs.*, No. 02C-08-244FSS, 2003 WL 21689647, at *2 (Del. Super. Ct. July

21  16, 2003) (permitting alternative causes of action for breach of contract and promissory estoppel).

22  IDC's Motion presents no choice of law analysis suggesting French law would apply absent a

23  binding written contract. *See* IDC Br. at 24-25. Even if it did apply, French law does in fact have

24  concepts equivalent to promissory estoppel. Ex. 42 ¶¶ 10-15. IDC is further mistaken to contend that

25  the PLA defeats promissory estoppel. ASUS's promissory estoppel claim is not based on a breach of

26  the promises IDC made in the PLA, but rather those it made to ETSI and its members. FAC ¶¶ 109-

27  110; *Grunstein v. Silva*, No. 3932-VCN, 2009 WL 4698541 (Del. Ch. Dec. 8, 2009), at *8 (rejecting

28  argument that a contract barred promissory estoppel because the contract did not "directly involve[]

24

1  the subsequently-litigating parties"). The PLA is therefore not an integrated contract that "governs

2  the promise at issue." IDC Br. at 25; *see also Chrysler Corp. (Del.) v. Chaplake Holdings, Ltd.*, 822

3  A.2d 1024, 1033-34 (Del. 2003) (finding "contracts governing other aspects of the business

4  relationship" did not defeat promissory estoppel).

5      **F.    IDC's Attempts to Avoid ASUS's Unfair Competition Claim Are Ineffective**

6          IDC contends that there is no evidence of acts in California relevant to the unfair competition

7  claim. But the very case IDC cites for § 17200's lack of extraterritorial effect focuses the analysis on

8  where the harm occurred, not (as IDC's Motion does) on where the defendant is located. *Sullivan v.*

9  *Oracle Corp.*, 51 Cal. 4th 1191, 1206, 1209 (2011) (finding jurisdiction over workers' claims against

10 a California defendant for work they performed in California, but not elsewhere). IDC's relevant

11 acts, including the denial of FRAND licenses and the collection of non-FRAND royalties, have been

12 directed against plaintiff ASUS Computer International, which is based in Fremont, California (as

13 well as against co-plaintiff ASUSTeK Computer Inc.). FAC ¶ 11. Furthermore, IDC arranged

14 meetings in California as part of the negotiations that are the subject of this lawsuit. *See, e.g.*, Ex. 51

15 at 4; Ex. 52. And ASUS has suffered increased costs, hindering its ability to compete on price for its

16 sales of 2G, 3G, and 4G devices in California, as well as elsewhere. *See* Ex. 35 at 54:13-16, 68:20-

17 69:9, 69:21-70:10, 107:7-16.

18         IDC further alleges that the PLA immunizes it from unfair competition claims, but it

19 overlooks the myriad of accused activities that are inarguably not "permitted" by the PLA. *See* IDC

20 Br. 25. These include inducing adoption of standards embodying its patents via disingenuous

21 FRAND commitments, exploiting that adoption to obtain supra-competitive royalty rates, and

22 refusing to offer licenses compliant with FRAND commitments with respect to declared essential

23 patents. *See* § II.D, *supra*; Ex. 36 ¶¶ 13-16. IDC also repeats its arguments regarding antitrust and

24 injury, and they fail for the same reasons addressed above.

25 **III.    CONCLUSION**

26         IDC's Motion rests on an indefensible caricature of what was actually decided in the

27 arbitration, a cropped reading of the antitrust laws and evidence, and an inadequate understanding of

28 the contract and unfair competition claims at issue. Each of IDC's motions should be denied.

1

2   DATED: September 13, 2018

3                                    By: */s/ Brian R. Nester*
                                         Brian Nester (*pro hac vice*)
4                                        Michael R. Franzinger
                                         Anna M. Weinberg (*pro hac vice*)
5                                        Mike Bettinger
                                         Richard A. Cederoth (*pro hac vice*)
6                                        David C. Giardina (*pro hac vice*)

7

8                                        *Attorneys for Plaintiffs*
                                         ASUS COMPUTER INTERNATIONAL, and
9                                        ASUSTEK COMPUTER INCORPORATED

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ASUS'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:15-cv-01716-BLF