1   DAVID S. STEUER, State Bar No. 127059
    dsteuer@wsgr.com
2   MICHAEL B. LEVIN, State Bar No. 172329
    mlevin@wsgr.com
3   MAURA L. REES, State Bar No. 191698
    mrees@wsgr.com
4   MATTHEW R. REED, State Bar No. 196305
    mreed@wsgr.com
5   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
6   650 Page Mill Road
    Palo Alto, CA 94304-1050
7   Telephone:  (650) 493-9300
    Facsimile:   (650) 565-5100
8
    LUCY YEN, State Bar No. 224559
9   lyen@wsgr.com
    WILSON SONSINI GOODRICH & ROSATI
10  Professional Corporation
    1301 Avenue of the Americas, 40th Floor
11  New York, NY 10019-6022
    Telephone:  (212) 999-5800
12  Facsimile:   (212) 999-5899

13  Attorneys for Defendants
    *InterDigital, Inc.; InterDigital Communications,*
14  *Inc.; InterDigital Technology Corporation; IPR*
    *Licensing, Inc.; and InterDigital Patent*
15  *Holdings, Inc.*

16                  UNITED STATES DISTRICT COURT

17                  NORTHERN DISTRICT OF CALIFORNIA

18                       SAN JOSE DIVISION

19

20  ASUS COMPUTER INTERNATIONAL; and          )   Case No.: 15-cv-1716 (BLF)
    ASUSTEK COMPUTER INCORPORATED,            )
21                                            )   **DEFENDANTS' REPLY IN**
                 Plaintiffs,                  )   **SUPPORT OF MOTION FOR**
22                                            )   **SUMMARY JUDGMENT**
            v.                                )
23                                            )   **JURY TRIAL DEMANDED**
    INTERDIGITAL, INC.; INTERDIGITAL          )
24  COMMUNICATIONS, INC.; INTERDIGITAL        )   Hearing Date:  October 11, 2018
    TECHNOLOGY CORPORATION ; IPR              )   Time:  9:00 a.m.
25  LICENSING, INC. ; and INTERDIGITAL        )   Judge:  Hon. Beth Labson Freeman
    PATENT HOLDINGS, INC.,                    )
26                                            )
                 Defendants.                  )
27  _____ )

                              **PUBLIC**
28
            **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**TABLE OF CONTENTS**

<u>**Page**</u>

I.    INTRODUCTION ................................................................................................... 1

II.   ARGUMENT ......................................................................................................... 1

      A.    The Court Should Apply Judicial Estoppel ................................................ 1

      B.    Issue Preclusion Bars ASUS From Re-Litigating Issues Decided Against It ......... 3

      C.    There Is No Legal Basis to Invalidate the 2008 PLA ............................... 8

      D.    There Is No Genuine Issue of Fact for Trial on the Sherman Act Claim ............ 11

      E.    The Promissory Estoppel and UCL Claims Fail .................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adtrader v Google, Inc.*, Case No. 17-cv-07082-BLF, 2018 U.S. Dist. LEXIS 67180 (N.D. Cal. Apr. 19, 2018)..................................................................14

*Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir. 1988) ..................................................6

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) ...........................................................................7

*Boardman v. Pac. Seafood Grp.*, No. 1:15-cv-108-MC, 2018 U.S. Dist. LEXIS 81611 (D. Or. May 15, 2018)..................................................................14

*Fanucchi & Limi Farms v. United Agri Prods.*, 414 F.3d 1075 (9th Cir. 2005) ............................13

*Gen. Bus. Sys. v. N. Am. Philips Corp.*, 699 F.2d 965 (9th Cir. 1983) ...........................................11

*Gerlinger v. Amazon.com*, No. C 02-05238 MHP, 2005 U.S. Dist. LEXIS 26019 (N.D. Cal. Oct. 31, 2005), *aff'd*, 526 F.3d 1253 (9th Cir. 2008) .......................................14

*Godo Kaisha IP Bridge 1 v. TCL*, No. 15-634-JFB-SRF, ECF No. 367 (D. Del. Feb. 28, 2018).......................................................................11, 12

*Howard v. City of Coos Bay*, 871 F.3d 1032 (9th Cir. 2017)..............................................4, 5, 6, 7

*Hynix Semiconductor Inc. v. Rambus Inc.*, No CV-00-20905 RMW, 2008 WL 73689 (N.D. Cal Jan. 5, 2008)..................................................................11, 12

*Ill. Brick v. Ill.*, 431 U.S. 720 (1977)............................................................................................15

*Indus. Opp. Partners v. Kendrion FAS Controls Hldg.*, No. 13-cv-6622, 2015 U.S. Dist. LEXIS 4032 (N.D. Ill. Jan. 14, 2015)..........................................................5

*Io Grp., Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132 (N.D. Cal. 2008) ...............................10

*Katz v. Fin. Clearing & Servs. Corp.*, 794 F. Supp. 88 (S.D.N.Y 1992) .........................................7

*Ohio v. Am. Express*, 138 S.Ct. 2274 (2018) ...........................................................................11, 12

*Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995) ........................................11

*Roderick v. Mazzetti & Assocs.*, No. C 04-2436 MHP, 2006 U.S. Dist. LEXIS 46034 (N.D. Cal. July 7, 2006).......................................................................5

*Sajfr v. BBG Commc'ns, Inc.*, No. 10cv2341 AJB (NLS), 2012 U.S. Dist. LEXIS 15198 (S.D. Cal. Jan 10, 2012)..................................................................15

*Samson v. Nama Holdings, LLC*, No. CV 09-01433 MMM (PJWx), 2009 WL 9150841 (C.D. Cal. May 20, 2009)..................................................................3

*Sexual Minorities Uganda v. Lively*, 899 F.3d 24 (1st Cir. 2018) .................................................3

*TCL v. Ericsson*, Case No. SACV 14-0341 JVS (DFMx), 2016 U.S. Dist. LEXIS 140566 (C.D. Cal. Aug. 9, 2016)..................................................................13

*Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036 (9th Cir. 2004) .........................................1, 2

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,* 382 U. S. 172, 177
    (1965). ...............................................................................................................................................11

**RULES**

Fed. R. Civ. P. 26(a)(1)(A)(iii)..................................................................................................................10

Fed. R. Civ. P. 37(c)(1) ...............................................................................................................................10

Table of Abbreviations

| | |
|---|---|
| InterDigital | Defendants InterDigital, Inc., InterDigital Communications, Inc., InterDigital Technology Corporation, IPR Licensing, Inc., and InterDigital Patent Holdings, Inc. |
| ASUS | Plaintiffs ASUS Computer International and Asustek Computer Incorporated |
| IPRs | Intellectual Property Rights |
| ETSI | European Telecommunications Standards Institute, a standards development organization |
| SDO | Standards Development Organization (used interchangeably with SSO) |
| SSO | Standards Setting Organization (used interchangeably with SDO) |
| 2G | Second Generation (of cellular technology) |
| 3G | Third Generation (of cellular technology) |
| 4G | Fourth Generation (of cellular technology) |
| LTE | A 4G cellular standard (Long Term Evolution) |
| FRAND | Fair, Reasonable and Non-Discriminatory |
| PLA | Patent License Agreement |
| FAC | First Amended Complaint, Dkt. 108-6 |
| MFL | Most-Favored Licensee |
| SEP | Standards-Essential Patent |
| IDC | InterDigital |
| DCFA | Delaware Consumer Fraud Act |
| UCL | (California) Unfair Competition Law |
| Opp. | ASUS's Opposition to InterDigital's Motion for Summary Judgment, Dkt. 260 |
| Ex. 1-41 | Exhibit to Declaration of Lena T. Wong in Support of InterDigital's Motion for Summary Judgment, Dkt. 234-2 |
| Ex. 42-50 | Exhibit to Declaration of Lena T. Wong in Support of Defendants' Reply In Support of Motion for Summary Judgment, filed herewith |
| Franzinger Ex. | Exhibit to Declaration of Michael Franzinger In Support of ASUS's Summary Judgment Motion Response, Dkt. 260-1 |

**Note**: emphasis in quotations is added unless otherwise stated.

# I.     INTRODUCTION

ASUS chose to file a complaint in this action that is far broader than a contract dispute about a prospective FRAND license.  ASUS asserted multiple ill-founded and overreaching tort claims against InterDigital, including a treble damages antitrust claim, and a fraud claim that has already been rejected as meritless by arbitrators.  While ASUS argues that its claims must be valid because there has been "widespread enforcement of FRAND policies by courts across the country," Opp. at 1, this is a non sequitur.  Courts addressing contract claims for "enforcement of FRAND policies" have routinely rejected, on pretrial motions, exactly the types of collateral tort claims at issue on this motion.  Further, none of those cases "enforce[d] ... FRAND policies" as to a concluded, integrated license agreement to which both parties assented under Delaware law, like the 2008 PLA.  And none of those cases involved a closely related claim based on identical underlying issues that had already been decided against the plaintiff by arbitrators, with ensuing estoppel effects.  In this motion, InterDigital has not sought summary judgment on Count III Breach of Contract for Ongoing Negotiations, because there are (as ASUS admits) disputes of fact for trial on that claim.  But ASUS fails to raise any genuine issues of fact as to all of the other claims on which InterDigital does seek summary judgment.

# II.     ARGUMENT

## A.     The Court Should Apply Judicial Estoppel

The arbitration Tribunal adopted ████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████, and accordingly returned most of ASUS's claims to this Court.  Those representations were critical to ASUS's efforts to avoid arbitration of those claims.  Having avoided arbitration, ASUS now places FRAND compliance front and center.  "This change in position is precisely the kind of 'playing fast and loose with the courts' that the judicial estoppel doctrine is designed to prevent," *Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1050 (9th Cir. 2004). ASUS's arguments to the contrary are baseless.

*First*, ASUS's assertion that InterDigital's argument "rests on statements that ASUS *never* made" is plainly false.  Opp. at 1.  InterDigital's Motion referred to portions of the

1  Tribunal's Interim Award, which cites ASUS's "actual" statements; these virtually identical

2  underlying statements reflect ASUS's prior position that FRAND compliance of the PLA is "not

3  the essence of the cause of action." *See, e.g.*, Ex. 42 at 18:20-25; *id.* at 17:14-15 ("███████

4  ████████████████████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████████████████████

6  ████████████████"). It is thus ASUS, not InterDigital, who mischaracterizes the record.

7      ***Second***, ASUS is incorrect that there is "no evidence" of inconsistent positions. Opp at

8  5. ASUS's previous representations to the Tribunal are directly at odds with ASUS's position

9  here: that InterDigital breached its FRAND commitments by entering into the PLA. As

10 explained in InterDigital's Motion, ASUS's litigation position is evident from the FAC, expert

11 reports, and its fact and expert witness deposition testimony. *See* Mot. at 7-8. Significantly,

12 ASUS ignores that the FAC specifically seeks a "[j]udgment that the 2008 PLA . . . [is] not fair,

13 reasonable and non-discriminatory." FAC ¶ K. Nor has ASUS disputed that ████████████

14 ████████████████████████████████████████████████████████████████████████████ As

15 such, whether the PLA is FRAND compliant is very much the "essence" of ASUS's claims, and

16 is not, as ASUS contends, merely "one piece of evidence" (Opp. at 2) in support of its claims.

17     Despite ASUS's attempts to "parse [its] sentence[s] closely," the "*context* surrounding

18 the statement[s] makes [its] present claim untenable." *Wagner*, 354 F.3d at 1049. In *Wagner*,

19 the Ninth Circuit rejected plaintiffs' efforts to reinterpret a prior statement they made concerning

20 the scope of their claims. Based on the context, the Ninth Circuit concluded that the "district

21 court quite naturally and obviously understood Plaintiffs' declaration to mean that they were not

22 pursuing" a particular claim and that plaintiffs were estopped from later asserting that claim. *Id.*

23 Here, the Tribunal repeatedly ████████████████████████████████████████████████

24 ███████████████████████████. *See, e.g.*, Ex. 42 at 74:10-22; 76:3-5. ASUS made abundantly

25 clear that ████████████████████████ *Id.* at 78:15-23. Regardless of how ASUS "parses"

26 its words, it cannot dispute that it previously represented that none of its claims in this action

27 were ████████████████████████████████ (*id.* at 17:14-15), but now bases numerous

28 claims on an assertion that "████████████████████████████████████████████████

1    ████████████████████████████████████████████" Mot. at 8.

2         This is not the first time ASUS has tried to retreat from its prior statements.  Indeed,

3    ASUS acknowledges its previous effort, ████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████████

6    ██████████████████████████████████████████████████████

7    ████████████████████████████ *See* Mot. at 8.

8         ***Third***, ASUS's contention that it never persuaded the Tribunal that its claims would not

9    "involve allegations" concerning the PLA's FRAND compliance is a red herring.  Opp. at 6.

10   What ASUS persuaded the Tribunal is that FRAND compliance of the PLA would not play a

11   central role in its claims.  The Tribunal's findings, including its ultimate conclusion that most of

12   ASUS's claim are not arbitrable, were based on its understanding of this central concept and

13   reliance on ASUS's representations.  *See, e.g.*, Dkt. 94-3 at 12 ("████████████████████

14   ████████████████████████████████████████████████████████████████

15   ████████████"); *id.* at 25 (████████████████████████████████████

16   ████████████").

17        ***Fourth***, ASUS does not refute that it would derive an unfair advantage from challenging

18   the PLA as non-FRAND compliant in this litigation.  *See Samson v. Nama Holdings, LLC*, 2009

19   WL 9150841, at *18 (C.D. Cal. May 20, 2009) ("no doubt that permitting [parties] to switch

20   positions . . . would unfairly benefit them" where they "were able to remove claims asserted

21   against them from the arbitration"); *see also Sexual Minorities Uganda v. Lively*, 899 F.3d 24, 33

22   (1st Cir. 2018) (party "obtained a significant benefit" in forcing opposing party to "litigate

23   outside its preferred forum").  Nor does ASUS provide any support for its claim that InterDigital

24   "cannot assert prejudice" under these circumstances.  *See Samson*, 2009 WL 9150841, at *18.

25        **B.    Issue Preclusion Bars ASUS From Re-Litigating Issues Decided Against It**

26        ASUS does not and cannot deny that the Tribunal has conclusively adjudicated that the

27   terms of ASUS's PLA ████████████████████████████████████████████████████

28   ████████████████████████████████████.  Instead, ASUS's Opposition attacks a strawman,

1   claiming that there should be no issue preclusion because the Tribunal did not decide "FRAND."

2   But InterDigital's motion did not argue that the Tribunal decided "FRAND."  The Tribunal

3   decided an underlying issue—███████████████████████████████████████████—

4   that ASUS is now seeking to relitigate as part of its FRAND claims in this case.  To the extent

5   ASUS's Opposition refutes a nonexistent argument that the Tribunal decided "FRAND" (*e.g.*, its

6   argument that ████████████████████████████████████████, *see* Opp. at 7), such

7   arguments have no relevance here.  ASUS has admitted that ████████████████████

8   ██████████████████████████████████████████████ Mot. at 12-13; FAC;

9   Exs. 22-23. That is exactly the same issue that ASUS raised in the arbitration ████████████

10  ████████████████████████████████████████████████████████████████

11  ████████████  Mot. at 12; Ex. 19; Ex. 1 at 37.  ASUS cannot escape the inevitable

12  consequence of the fact that it tried and failed in the arbitration to prove that ████████████

13  ████████████████████████████ it is now precluded from doing so here.

14       Applying issue preclusion to the arbitration award also would not violate the court's

15  "exclusive jurisdiction" over "FRAND claims."  Opp. at 6.  ASUS cites no authority for this

16  proposition, and it is not the law.  Arbitration awards are routinely given preclusive effect by

17  courts presiding over non-arbitrable claims; that does not result in any conflicts of jurisdiction as

18  between courts and arbitrators.  Mot. at 10-11.  Rather, it is simply a consequence of the fact that

19  arbitration awards are enforceable as judgments and have the same preclusive effect.  *Id*.

20       The fact that the Tribunal did not decide FRAND claims such as those asserted in this

21  litigation is immaterial.[1]  Opp. at 6.  While that might be relevant if InterDigital sought to apply

22  **claim preclusion**, the fact that different claims or legal theories are presented in the second

23  action is irrelevant to **issue preclusion**.  Mot. at 11; *Howard v. City of Coos Bay*, 871 F.3d 1032,

24  _____

25  [1] ASUS points to a discussion on the record in the arbitration to the effect ████████████

26  ████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████

1   1040-41 (9th Cir. 2017) (issue preclusion applies "even if the issue recurs in the context of a

2   different claim"); *see also Roderick v. Mazzetti & Assocs.*, No. C 04-2436 MHP, 2006 U.S. Dist.

3   LEXIS 46034, at *10-11 (N.D. Cal. July 7, 2006).  In *Roderick*, an arbitrator found that the

4   defendant had not violated fiduciary duties.  In a later action, the plaintiff sought to avoid

5   preclusion by arguing "that this matter involves fiduciary duties under ERISA as opposed to

6   fiduciary duties owed by majority or controlling shareholders." *Id.* at *18.  The court still found

7   the underlying issue to be identical and barred the new claims.  *Id.*  So too here: the assertion of

8   FRAND claims does not change the fact that an underlying factual issue (███████████████████

9   ████████████████████████) has already been decided.  *See Indus. Opp. Partners*

10  *v. Kendrion FAS Controls Hldg.*, No. 13-cv-6622, 2015 U.S. Dist. LEXIS 4032, at *12-13 (N.D.

11  Ill. Jan. 14, 2015) (barring claim for breach of good faith covenant when arbitrator had already

12  decided underlying key factual issue that defendant's pricing decisions were reasonable).

13        It is beyond dispute that the issue on which preclusion is sought has been raised by ASUS

14  in support of its "FRAND claims" here.  In the FAC, ASUS repeatedly pointed to this exact issue

15  under the heading "IDC's Effort To Exploit Market Power By ***Refusing To Provide FRAND***

16  ***License***." *E.g.*, FAC ¶ 51 ("IDC's licensing demands of ASUS are discriminatory.  . . .

17  ████████████████████████████████████████████████████████████████████

18  ████████████████████"); ¶ 52 ("IDC stated that ████████████████████

19  ████████████████████████████████████████████████ . . . And,

20  ████████████████████████████████████████████████████████████████

21  ████████████████████████████████████") ; ¶ 55 ("other IDC

22  licensees are also ████████████████████████████████"); ¶ 58 ("IDC

23  granted Apple a license (prior to the 2008 PLA) ████████████████████████

24  ████████████."); *see also* ¶¶ 104, 107 (the "2008 PLA [] is also unreasonable, unfair, and

25  discriminatory" leading to injury due to "IDC's licenses with other █████████████████

26  ████████████████"). ASUS's argument that the issue decided by the Tribunal says

27  "nothing about IDC's FRAND compliance" is directly contradicted by ASUS's admissions in the

28  FAC, where ASUS describes ████████████████████████████ as central to its

1  FRAND claims.  *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("A

2  statement in a complaint . . . is a judicial admission").  Likewise, ASUS's experts in this case

3  have opined ████████████████████████████████████████████████████████████

4  ████████████████████████████████ Ex. 22-23; Ex. 44 at 198:23-199:25. What ASUS

5  seeks to prove in this case as part of its 3G FRAND claims is the same issue that was decided

6  against it in arbitration.  ASUS is not entitled to a "do-over."

7       Further, ASUS overstates the role of the *Resolution Trust* factors.  Opp. at 8.  In a more

8  recent case, the Ninth Circuit held they "are not applied mechanistically" and that the second

9  through fourth factors are "less conclusive" and "not especially illuminating." *Howard*, 871 F.3d

10  at 1044 (relying primarily on first factor and discounting factors two, three, and four).  Under the

11  first and most important factor, as already demonstrated, there is substantial overlap between the

12  evidence and argument advanced by ASUS in the arbitration and here.  ASUS's expert in the

13  arbitration, Dr. Lynde, opined that █████████████████████████████████████████

14  ████[2] – just as ASUS's experts here have done. Ex. 45.  They opine on the same issue, and

15  concluded that █████████████████████████████████████[3] But as the Tribunal

16  unanimously decided, ███████████████████████████████████████

17  ████████████████████████████████████████████████████

18       ASUS also erroneously argues that the Tribunal "did not consider" ████████████████

19  ██████████████████████████████████████████████████████████ Opp. at

20  9-10.  In fact, InterDigital's expert Dr. Putnam ████████████████████████████████

21  ██████████████████████████████████████████████████████████████

22  ██████████████████████████████████████████████████████████████

23  ██████████████████████████████████████████████████████████████

24  ██████ *E.g.*, Dkt. 135-4 ¶ 66 ("█████████████████████████████████████

25  [2] ████████████████████████████████████████████████████████████████████

26  ███████████████████████████████████████████████████████ Ex 46 at 9.

27  [3] ASUS's argument that ████████████████████████████████████████████

28  ██████████████████████████████████████████████████████████████████

1 ██████████████████").  No evidence was "excluded."  Opp. at. 10.  ASUS's effort to spin

2 the █████████████████████████████████████████████████████

3 ████████ is without basis.  Dkt. 135-4 ¶ 17(f) ("████████████████████████████

4 ████████████████████████████████████████████████████████████").

5        ASUS's arguments on the remaining "less conclusive" factors that are "not especially

6 illuminating" also fail.  *Howard*, 871 F.3d at 1044.  On the second factor, there is some overlap

7 of applicable legal rules: the arbitration ████████████████████, which is also applicable

8 to whether ASUS can undo the PLA notwithstanding the integration clause.  Mot. at 14.  But it is

9 also well established that issue preclusion applies even where the issue is asserted the context of

10 a different legal claim.  *Howard*, 871 F.3d at 1041.  On the third factor, the discovery used to

11 analyze the issue in question overlaps almost entirely in both actions: ████████████████

12 █████████████████████████████████████████[4]  On the fourth factor, the

13 claims in the two actions are closely related, as evidenced by the extremely similar allegations

14 made by ASUS ████████████████████████ (Ex. 19) and the FAC.  *See* Mot. at 12.

15        Finally, the Court should grant summary judgment on the DCFA and the California UCL

16 "fraudulent prong" claim.  ASUS's attempt to avoid preclusion by purporting to "withdraw" the

17 allegations it lost on is unavailing.  Opp. at 12.  It is far too late for ASUS to "withdraw"

18 allegations that have been adjudicated against it in an arbitration award that has now been

19 confirmed as a judgment.  Dkt. 137.  While ASUS points to other allegations in the FAC in an

20 effort to salvage these claims, that is not sufficient to defeat summary judgment.  *Anderson v.*

21 *Liberty Lobby*, 477 U.S. 242, 248 (1986) (party "may not rest upon the mere allegations" of

22 pleadings but "must set forth specific facts showing that there is a genuine issue for trial.").

23 

24 ──────────────────
    [4] ASUS is incorrect in claiming ███████████████████████████████████

25 ████████████████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████████████

27 ████████████████████████████████████████ Further, discovery in
arbitration is always narrower than in litigation, yet arbitration awards are accorded preclusive
effect notwithstanding the different scope of discovery.  *Katz v. Fin. Clearing & Servs. Corp.*,

28 794 F. Supp. 88 (S.D.N.Y 1992).

1    ASUS makes no effort to even argue how the other allegations—*i.e.*, that InterDigital allegedly

2    did not offer FRAND terms—could possibly demonstrate the ***fraudulent*** conduct required for a

3    DCFA or UCL claim.  InterDigital is entitled to summary judgment on these claims.

4            **C.      There Is No Legal Basis to Invalidate the 2008 PLA**

5            ASUS's arguments regarding its Count IV are belied by its judicial admissions.

6    Although ASUS now says it is not seeking to invalidate the PLA, Opp. at 12, its pleadings show

7    otherwise.  FAC ¶ O (seeking judgment that InterDigital's contracts are "void"); ¶ J (seeking

8    judgment "setting" FRAND terms, *i.e.*, changing the PLA's royalty terms for 3G); Dkt. 46-9 at

9    13 (ASUS admitted ███████████████████████████████████████████████████).

10   By its Count IV, ASUS seeks an outcome where the concluded, integrated PLA no longer

11   governs the 3G license granted by InterDigital, and instead some other license will be substituted

12   in its place.  But there is no legal basis on which to discard the PLA, and ASUS cites no

13   precedent for any court ever undoing a concluded license agreement as "non-FRAND."

14           ASUS's arguments against enforcing the integration and merger clause are without merit.

15   ASUS seeks to deny that the PLA is the parties' complete and merged agreement on the subject

16   matter of the agreement, and contends instead that a prior agreement on the same subject (the

17   "ETSI contract") continues to impose other obligations.  But a merger clause operates to bar a

18   party from varying an agreement based on a prior, superseded understanding.  Mot. at 14-15.

19   ASUS also argues that InterDigital seeks to "modify the FRAND agreement between IDC and

20   ETSI."  Not so.  Rather, with respect to the 3G license InterDigital granted in the PLA, the prior

21   "ETSI contract" has been superseded as provided in the broad integration/merger clause agreed

22   to by ASUS, pursuant to which the PLA "supersedes all previous understandings, relating to the

23   subject matter hereof."  ASUS's argument about needing the "assent" of ASUS to "modify" the

24   ETSI contract is thus misplaced.  And the ETSI FRAND Declaration is governed by French law,

25   so the Delaware law cited by ASUS is not even applicable to any alleged "modification."

26           ASUS also points to later ETSI FRAND Declarations submitted by InterDigital after

27   2008 as a basis on which to void or modify the PLA.  Those subsequent declarations are not

28   relevant to the PLA.  By their plain terms, they are forward-looking commitments that

1  InterDigital is "prepared to grant" a license on FRAND terms and conditions—nothing in them

2  applies to or even refers to past licenses that were already granted, such as the 2008 PLA.  While

3  such commitments may apply in the context of a future, as-yet-ungranted license for cellular

4  SEPs, there is nothing in the FRAND Declarations or otherwise that imposes contractual

5  obligations concerning past, already-granted licenses.

6        ASUS also identifies no valid legal basis on which it could void or modify the PLA under

7  a theory that, even if FRAND when signed, the PLA later became "non-FRAND" due to

8  subsequent events.  The ETSI FRAND Declaration has no provision that requires licensors to

9  renegotiate or modify an already-granted license, or that would permit endless, ongoing re-

10  evaluations of FRAND throughout the term of the agreement.  Courts have further held that no

11  "MFL"-like obligations are implied as part of the ETSI FRAND commitment (Mot. at 16-17),

12  and here, ███████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████████

14  ███████████████████████████████  *Id*.  ASUS also erroneously claims that there is no

15  basis for "limiting the FRAND analysis to licenses entered into before the 2008 PLA."  Opp. at

16  15.  The express language of the ETSI IPR Policy Clause 6.1 is clear: the declarant is "prepared

17  to grant" licenses on FRAND terms and conditions. This plainly refers to the "grant" of a license,

18  which occurs at the time the license is concluded; there is nothing that imposes additional

19  ongoing obligations during the term when the "granted" license is in effect.  And ASUS has no

20  response to the logical inconsistency that would result from requiring parties to take into account

21  the effects of future events that have not yet happened when entering into licenses.

22        ASUS also has no adequate response to InterDigital's showing that ██████████████

23  ████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████

25  ████████████████████████  Mot. at 16; Ex. 23. ASUS offers only conclusory attorney

26  argument stating that "ASUS's damages claim is based on other IDC licenses, entered both

27  before and after the PLA, evaluation of IDC's patent portfolio and Dr. Leonard's top-down

28  analysis, among other things"—without citing actual evidence to support this statement.  Opp. at

15. That is not sufficient to raise a genuine issue of fact. *Io Grp., Inc. v. Veoh Networks, Inc*., 586 F. Supp. 2d 1132, 1141 (N.D. Cal. 2008) (party opposing summary judgment may not rest upon mere denials, but must produce admissible evidence).  ASUS was required to disclose its "computation of each category of damages claimed." Fed. R. Civ. P. 26(a)(1)(A)(iii).  It did not disclose any computation of damages ███████████████████████████████, which states that ███████████████████████████████" Ex. 23.  ASUS is thus precluded from relying on any other alleged damages calculation.  Fed. R. Civ. P. 37(c)(1).

        ASUS's reliance on █████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████
████████████████████████████ Dkt. 259-72 (██████████████████
██████████████████████████████████████
███); Dkt. 259-74 ("████████████████████
████████████████████████████████████████████
██████████████"); Dkt. 259-75 ("██████████████████
████████████████████████████████████████████
██████████████████████████████████").  InterDigital already granted a 3G license to ASUS in 2008, so later commitments to be "prepared to grant" a license have no applicability to the 3G PLA.  That stands in contrast to 4G, as to which ASUS is not licensed, and InterDigital remains "prepared to grant" a license on FRAND terms as set forth in the ETSI IPR Policy.  In an effort to argue that InterDigital agreed that it has a FRAND-based obligation to renegotiate 3G terms, ASUS misquotes ████████████████████
████████████████████████  The letter actually said:

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

Franzinger Ex. 20; *compare with* Opp. at 16 (omitting underlined text in quote).  The full and

unfudged quote makes clear that InterDigital stated that ████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

### D.   There Is No Genuine Issue of Fact for Trial on the Sherman Act Claim

*No Relevant Market Definition*.  ASUS is incorrect that a *Broadcom*-based theory

excuses it from proving a valid relevant market, as confirmed by the many cases requiring such

proof.[5]  Mot. at 18-19; *Godo Kaisha IP Bridge 1 v. TCL*, No. 15-634-JFB-SRF, ECF No. 367 at

10-13 (D. Del. Feb. 28, 2018) (failure to define valid relevant market was "fatally deficient");

*Hynix v. Rambus*, 2008 WL 73689, at *1 ("A violation of Section 2 requires proof of a relevant

product market . . .").  As the Supreme Court has held: where "plaintiffs rely exclusively on

direct evidence to prove  . . . anticompetitive effects," they must "first define the relevant

market."  *Ohio v. Am. Express*, 138 S.Ct. 2274, 2284-85 (2018).  The Court further noted that

"plaintiffs argue that we need not define the relevant market in this case because they have

offered actual evidence of adverse effects on competition . . . We disagree."  *Id*. at 2285 n.7.

"Without a definition of [the] market there is no way to measure [the defendant's] ability to

lessen or destroy competition."  *Id*., citing *Walker Process,* 382 U. S. 172, 177 (1965).

ASUS's Opposition submits no factual evidence of a relevant market, as it is required to

do to avoid summary judgment.  *Gen. Bus. Sys. v. N. Am. Philips Corp*., 699 F.2d 965, 971 (9th

Cir. 1983).  The Scott Morton declaration simply repeats the same vague, conclusory allegation

in the FAC.  Franzinger Ex. 36 ¶ 11; FAC ¶ 67.  But a party cannot merely rely on allegations in

its complaint to defeat summary judgment.  ASUS does not deny that when InterDigital sought

discovery of factual evidence supporting the allegation, such as the identity of "patents" and

---

[5] ASUS does not have "direct evidence of exclusion of competition" because of "IDC's success in having its technology incorporated into the standards."  Opp. at 17. Putting aside that ASUS submitted no such evidence, "direct evidence" must show both supracompetitive prices and restriction of output, neither of which ASUS even claims to have shown.  *Rebel Oil*, 51 F.3d at 1434.  *Broadcom* did not hold that merely having patents in a standard is sufficient (and in any event ASUS submitted no proof that any individual patent is standards-essential).

1   "reasonably interchangeable" technologies that ASUS alleged as part of its market definition,

2   ASUS provided nothing.  Ex. 38.  Instead, ASUS argues it is not required to do so.  The cases

3   cited by ASUS demonstrate the opposite.  *Broadcom, Papst, Samsung,*[6] and *Chrimar* involved

4   motions to dismiss, so they addressed only whether allegations in a complaint were sufficient to

5   avoid dismissal.  Plainly, that is not the standard on summary judgment, contrary to what ASUS

6   seems to believe (*see* Opp. at 19 arguing that ASUS "has alleged" relevant markets).  ASUS's

7   description of the *Hynix* case is also incorrect: summary judgment was denied based on extensive

8   ***evidence*** submitted by the plaintiffs of the relevant market.  Plaintiffs' economic expert relied on

9   two technical expert declarations to describe each patented technology for each relevant market

10  at length.  *Hynix*, 2008 WL 73689, at *4 ("For each of the six technology markets, Dr. Gilbert

11  identifies [defendants'] patented technology and various substitute technologies. . . .").  For

12  example, one of the six market definitions described the patented technology as: "fixed CAS

13  latency, setting latency with one or more fuses, setting latency by antifusing, identifying CAS

14  latency with pin voltage, and using an asynchronous DRAM design."  *Id*. at *5.  Here, the Scott

15  Morton declaration does nothing of the kind.  ASUS cannot prove a valid relevant market

16  because it has not offered any facts supporting one: it has not identified a single InterDigital

17  patent that is part of such a market, much less any substitutable technologies for each.[7]  While

18  ASUS claims Dr. Kakaes identified substitutable technologies for two InterDigital patents,

19  ASUS has ***never*** identified those two patents as part of its relevant market definition—not in the

20  FAC, not in its interrogatory response when specifically asked to do so (Ex. 38), and not in the

21  Scott Morton declaration. Dr. Kakaes referenced those two patents in his "FRAND" analysis as

22  examples of patents with allegedly low value; he did not opine on relevant markets.[8]

---

[6] In *Samsung*, the plaintiff was required even at the pleading stage to include a detailed
identification of each patent and substitutable technology, *see* Ex. 39; *see also IP Bridge*.

[7] ASUS incorrectly claims it need not identify any substitutes based on *Broadcom*. Supreme
Court law is to the contrary. *Am. Express*, 138 S.Ct. 2274.  That theory is also foreclosed by
judicial admissions in the FAC, which alleges relevant markets including substitutes as well as
harm to ASUS due to exclusion of substitutes.  FAC ¶¶ 67, 84.

[8] Even if ASUS could make such relevant market assertions for the first time after the close
of discovery, that would limit ASUS's case to markets based on these two patents. Yet Dr.
Kakaes' report undermines such a claim: ████████████████████████████████

(continued...)

1    **No Anticompetitive Conduct**.  While ASUS argues that there are factual disputes about

2    other elements of its *Broadcom* theory, it fails to raise a genuine issue of fact that ETSI FRAND

3    Declarations were intentionally false when made.  *Fanucchi & Limi Farms v. United Agri*

4    *Prods.*, 414 F.3d 1075, 1088 (9th Cir. 2005) ("Affirmative evidence is necessary to avoid

5    summary judgment because mere nonperformance is not enough to show intent to defraud.").

6    ASUS's Opposition is devoted to ███████████████████ (*i.e.,* █████

7    ████████████████████████████████████████████████████

8    █████).[9]  ASUS did not disclose this in response to the interrogatory on this topic, precluding

9    ASUS from relying on it now.  Ex. 38.  And none of it is probative of intent or of anticompetitive

10   conduct.  *TCL v. Ericsson*, 2016 U.S. Dist. LEXIS 140566, at *17 (C.D. Cal. Aug. 9, 2016)

11   ("[T]here needs to be some other conduct by [Defendant] than mere breach of its FRAND

12   obligations.").  As to 3G, the ████████████████████████████████

13   ██████████████████████████████████████████

14   ██████████████████.  The later FRAND Declarations cited by ASUS also could not have

15   been relied on by ETSI in determining 3G, as the standard was closed by then. Mot. at 22.

16   ASUS offers no pre-2008 evidence of intent to deceive.  As to 4G, ASUS's claim that a breach

17   of FRAND means that the defendant necessarily made intentionally false declarations has been

18   rejected in case law.  *TCL*, 2016 U.S. Dist. LEXIS 140566, at *16-17 (rejecting argument that

19   "because TCL has evidence that Ericsson has breached FRAND, TCL has evidence that Ericsson

20   has *necessarily* done so in an anticompetitive way.") (emphasis in original).  As the court found,

21   "Ericsson may have breached FRAND, but TCL has submitted no evidence that Ericsson ever

22   had an intent to do so." *Id*. at *16.  One cannot infer intent to deceive from a breach of FRAND;

23   actual evidence of the defendant's state of mind is required.  ASUS has offered no basis on

24   which it can bootstrap claims of breach of FRAND into an antitrust violation.  Ex. 48 (head of

25   ────────────────────

26       (...continued from previous page)
     ████████████████ Ex. 50.  And Dr. Kakaes confirmed ████████
     ████████████████████████████████

27       [9] The Court should strike the Appendices to Franzinger Ex. 36 as inadmissible. It is not a
28   proper expert opinion but merely purports to summarize (inaccurately) the underlying evidence.

1   USDOJ Antitrust Division: "an antitrust cause of action premised on a failure to abide by

2   FRAND commitments would be inconsistent with Section 2 of the Sherman Act.").

3          Having failed to submit any evidence that InterDigital's FRAND Declarations were

4   intentionally false when made under *Broadcom*, ASUS argues that there was other

5   anticompetitive conduct.  Opp. at 20.  But ASUS cites no legal authority that such actions are

6   anticompetitive, and does not show how they satisfy the elements of a Sherman Act claim.

7          ***No Injury in Fact or Antitrust Injury***.  As to 4G, ASUS does not dispute that it has

8   never entered into a license with InterDigital for 4G patents and has paid no royalties to

9   InterDigital for 4G patents.  ASUS submitted no evidence of "economic damage" as to 4G,

10  which is required to establish injury in fact.  *Gerlinger v Amazon.com*, 2005 U.S. Dist. LEXIS

11  26019, at *7 (N.D. Cal. Oct. 31, 2005), *aff'd*, 526 F.3d 1253, 1255 (9th Cir. 2008).  ASUS's

12  effort to rely on "threatened injury" fails.  ***First***, ASUS has submitted no evidence showing

13  threatened injury for 4G.  ASUS argues that "IDC's actions threaten to force ASUS" to pay

14  excessive, supra-FRAND royalties (Opp. at 22), but it submitted no evidence raising a genuine

15  issue of fact.  There is no factual or legal basis on which InterDigital could even theoretically

16  "force" ASUS into a license against its will, as it is black letter law that contracts require mutual

17  assent.  ASUS has refused to enter into a 4G license and continues to so refuse; there is no

18  threatened injury.  *Adtrader v Google, Inc.*, 2018 U.S. Dist. LEXIS 67180 (N.D. Cal. Apr. 19,

19  2018) (no valid injury where it would be "self-inflicted").  ***Second***, threatened injury could at

20  most support standing for injunctive relief.  *Boardman v. Pac. Seafood Grp.*, 2018 U.S. Dist.

21  LEXIS 81611 (D. Or. May 15, 2018).  ASUS thus cannot seek damages on that basis.

22          ASUS's argument that ██████████████████████████████████████

23  ████████████████████████████████████████████████████████████████████

24  ██████████████████████████████████  And the PLA indisputably ████████████

25  ████████████████████████████████████████████  ASUS's decision to

26  ██████████████████████████████████████████████████

27  ████████████████████████[10]  ASUS's effort to deny the applicability of the *Noerr-*

28  ──────────────────────
        [10] ASUS's newly-raised argument that ████████████████████████████
                                                                                    (continued...)

1    *Pennington* doctrine by stating that its claims are not based on petitioning activity (Opp. at 23) is

2    contradicted by its own Opposition, which averred that ████████████████████████████

3    ████████████████████████████████████████ Opp. at 20.  The *FTC v. Qualcomm*

4    and *Broadcom* cases relied on by ASUS do not even address *Noerr-Pennington*.  And ASUS has

5    pointed to no evidence of an alleged "anticompetitive scheme" beyond the claim that InterDigital

6    made "non-FRAND" offers to ASUS.

7    **E.       The Promissory Estoppel and UCL Claims Fail**

8            Promissory estoppel is not an available claim under French law, which is applicable to

9    the "promise" embodied in the ETSI FRAND Declaration because it is expressly governed by

10   French law.  ASUS cites no case law refuting the courts that have so held, and ASUS's claim,

11   including its French law argument, is the same as those rejected in *Samsung* and *Nokia*.  *See*

12   Mot. at 24.  As to the UCL claim, ASUS submitted no evidence raising a genuine issue of fact as to

13   conduct occurring in California in violation of the UCL.  ASUS did not submit one iota of evidence

14   that ASUS's California subsidiary had any involvement with InterDigital.  Citing a paragraph in the

15   FAC stating only that the subsidiary is located here is insufficient to defeat summary judgment.

16   ASUS's reference ████████████████████████████████████ also falls far

17   short of demonstrating conduct in California as necessary for a UCL claim.  *Sajfr v. BBG Commc'ns,*

18   *Inc.*, 2012 U.S. Dist. LEXIS 15198, at *13–14 (S.D. Cal. Jan 10, 2012).  ASUS's citation of

19   deposition testimony about an allegedly hindered "ability to compete" is unavailing, as it does not

20   even mention California at all.  Opp. at 25.  Further, mere injury in California would not be sufficient

21   in any event to demonstrate UCL applicability.  *Safir* at *13.  ASUS has failed to adduce evidence

22   from which a reasonable jury could find in its favor on the UCL claim.  In addition, ASUS has no

23   response to the settled law in California that the UCL cannot be used to review the fairness of

24   contracts (Mot. at 25)—which is exactly what ASUS seeks to do with respect to the PLA here.

25   _____

26           (...continued from previous page)

27   ████████████████████████████████████████████████████████ and indirect purchaser recovery is not

28   permissible under the Sherman Act in any event. *Ill. Brick v. Ill.*, 431 U.S. 720 (1977).

1   Dated: September 27, 2018

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ David S. Steuer
          David S. Steuer

David S. Steuer
Michael B. Levin
Maura L. Rees
Matthew R. Reed
WILSON SONSINI GOODRICH &
ROSATI
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

Lucy Yen
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800
Facsimile:   (212) 999-5899

*Counsel for Defendants InterDigital
Communications, Inc., InterDigital Technology
Corporation, IPR Licensing, Inc., and InterDigital
Holdings, Inc.*

DEFENDANTS' REPLY ISO MOT. FOR SUMMARY JUDGMENT

-16-

CASE NO.: 15-CV-1716 (BLF)