Brian Nester (*pro hac vice*)
bnester@sidley.com
Michael R. Franzinger (SBN 222155)
mfranzinger@sidley.com
Anna M. Weinberg (*pro hac vice*)
aweinberg@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

Richard A. Cederoth (*pro hac vice*)
rcederoth@sidley.com
David C. Giardina (*pro hac vice*)
dgiardina@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone (312) 853-7000
Facsimile: (312) 853-7036

Mike Bettinger (SBN 122196)
mbettinger@sidley.com
SIDLEY AUSTIN LLP
555 California Street
Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

Attorneys for Plaintiffs
ASUS COMPUTER INTERNATIONAL,
ASUSTEK COMPUTER INCORPORATED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ASUS COMPUTER INTERNATIONAL; and ASUSTEK COMPUTER INCORPORATED, <br><br> Plaintiffs, <br><br> vs. <br><br> INTERDIGITAL, INC.; INTERDIGITAL COMMUNICATIONS, INC.; INTERDIGITAL TECHNOLOGY CORPORATION; IPR LICENSING, INC. and INTERDIGITAL PATENT HOLDING, INC., <br><br> Defendants. | Case No. 15-cv-01716-BLF <br><br> **PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERTS' IMPROPER TESTIMONY** <br><br> Hearing Date: February 14, 2019 <br> Time: <br> Location: Courtroom 3, 5th Floor <br> Judge: Hon. Beth Labson Freeman |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple, Inc. v. Samsung Elecs. Co.*,
  No. 12-cv-00630, 2014 WL 794328 (N.D. Cal. Feb. 25, 2014) ................................................6, 14

*Apple, Inc. v. Samsung Elecs. Co.*,
  No. 11-cv-01846-LHK, 2013 WL 5955666 (N.D. Cal. Nov. 6, 2013) ........................................18

*Applestein v. Medivation, Inc.*,
  561 F. App'x 598 (9th Cir. 2014) ..............................................................................................20

*Bodum USA, Inc. v. A Top New Casting, Inc.*,
  No. 16 C 2916, 2017 WL 6626018 (N.D. Ill. Dec. 28, 2017) ......................................................20

*Chevron Corp. v. Pennzoil Co.*,
  974 F.2d 1156 (9th Cir. 1992) ..................................................................................................17

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)........................................................................................................ *passim*

*Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*,
  285 F.3d 609 (7th Cir. 2002) ......................................................................................................8

*Engquist v. Oregon Dep't of Agric.*,
  478 F.3d 985 (9th Cir. 2007), *aff'd*, 553 U.S. 591 (2008) ........................................................6, 14

*Finjan Inc. v. Blue Coat Sys., Inc.*,
  No. 13-cv-03999-BLF, 2015 WL 4272870 (N.D. Cal. July 14, 2015)............................4, 5, 11, 12

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y 1970), *modified*, 446 F.2d 295 (2nd Cir. 1971).............................15

*In re James Wilson Assocs.*,
  965 F.2d 160 (7th Cir. 1992) ................................................................................................8, 21

*Lucido v. Nestle Purina Petcare Co.*,
  217 F. Supp. 3d 1098 (N.D. Cal. 2016) ......................................................................................18

*Madani v. Equilon Enter. LLC*,
  No. CV-04-10370, 2009 WL 2148664 (C.D. Cal. July 13, 2009)................................................10

*PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*,
  No. C 10-00544 JW, 2011 WL 5417090 (N.D. Cal. Oct. 27, 2011) .......................................15, 16

*Realtek Semiconductor Corp. v. LSI Corp.*,
  No. C-12-03451-RMW, 2014 WL 46997 (N.D. Cal. Jan. 6, 2014) ............................................16

*Scott v. Am. Broad. Co.*,
    878 F.2d 386 (9th Cir. 1989) (Unpub. Disp.) ..........................................................3, 13

*Simplex, Inc. v. Diversified Energy Sys., Inc.*,
    847 F.2d 1290 (7th Cir. 1988) ...........................................................................3, 13

*Smart Mktg. Grp., Inc. v. Publications Int'l, Ltd.*,
    No. 04-C-146, 2014 WL 625321 (N.D. Ill. Feb. 18, 2014) .........................................6

*State Contracting & Eng'g Corp. v. Condotte Am., Inc.*,
    346 F.3d 1057, 1073 (Fed. Cir. 2003) ...............................................................21

*Stathakos v. Columbia Sportswear Co.*,
    No. 15-CV-04543-YGR, 2018 WL 1710075 (N.D. Cal. Apr. 9, 2018) ....................2, 16

*Stobie Creek Investments, LLC v. United States*,
    81 Fed. Cl. 358 (2008) ...................................................................................16

*Tex. Instruments Inc. v. Cypress Semiconductor Corp.*,
    90 F.3d 1558 (Fed. Cir. 1996) ........................................................................16

*TK-7 Corp. v. Estate of Barbouti*,
    993 F.2d 722 (10th Cir. 1993) .........................................................................8

*Tokio Marine & Fire Ins. Co. v. Norfolk & Western Ry. Co.*,
    172 F.3d 44, 1999 WL 12931 (4th Cir. Jan. 14, 1999) (Unpub. Disp.)........................8

*United States v. Brodie*,
    858 F.2d 492 (9th Cir.1988), *overruled sub nom U.S. v. Morales*, 108 F.3d 1031
    (9th Cir. 1997)........................................................................................5, 14

*United States v. Marine Shale Processors*,
    81 F.3d 1361 (5th Cir. 1996) ...........................................................................8

*VirnetX Inc. v. Apple Inc.*,
    No. 6:12-CV-855, 2016 WL 4063802 (E.D. Tex. July 29, 2016) ...........................6, 14

*Weil v. Seltzer*,
    873 F.2d 1453 (D.C. Cir. 1989) ......................................................................3, 13

*White v. Ford Motor Co.*,
    312 F.3d 998 (9th Cir. 2002), *opinion amended*, 335 F.3d 833 (9th Cir. 2003)...........1, 18

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) .........................................................................8

**Other Authorities**

Fed. R. Civ. P. 26(a)(2)(D) ...................................................................................8

ASUS'S MPA ISO MOTION TO STRIKE EXPERT REPORTS,
CASE NO. 5:15-cv-01716-BLF

Fed. R. Civ. Proc. 26(a)(2)(B) ............................................................................................8

Fed R. Evid. 401 & 402 ......................................................................................................2

Fed. R. Evid. 404(a)(1) ...................................................................................................3, 13

Fed. R. Evid. 702 ...................................................................................................... *passim*

Fed. R. Evid. 702(a) ..........................................................................................................16

Fed. R. Evid. 702(c)-(d) ................................................................................................2, 12

Fed. R. Evid. 703 ................................................................................................................8

1    Plaintiffs ASUS Computer Int'l and ASUSTEK Computer Inc. ("ASUS") move to exclude

2    Defendants InterDigital, Inc., InterDigital Communications, Inc., InterDigital Tech. Corp, IPR

3    Licensing, Inc. and InterDigital Patent Holding, Inc. ("IDC") from offering improper legal opinions.

4    Through expert opinion, IDC attempts to stilt far-fetched legal theories and strained FRAND

5    contentions. "A layman, which is what an expert witness is when testifying outside his area of

6    expertise, ought not to be anointed with ersatz authority as a court-approved expert witness for what

7    is essentially a lay opinion." *White v. Ford Motor Co.*, 312 F.3d 998, 1008-09 (9th Cir. 2002),

8    *opinion amended*, 335 F.3d 833 (9th Cir. 2003). As detailed below, IDC's experts improperly opine

9    on legal matters, opine on decisions that are not law even in the jurisdiction in which they originally

10   issued, offer hedonic regression analysis premised (mistakenly) on data that its experts testified

11   would be inappropriate, opine on general economic theory that they do not apply to the facts of this

12   case, and testify outside their expertise. IDC experts each simply reach too far.

13   **A.    Legal Standard**

14   Federal Rule of Evidence 702 provides that a qualified expert may testify if "(a) the expert's

15   scientific, technical, or other specialized knowledge will help the trier of fact to understand the

16   evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the

17   testimony is the product of reliable principles and methods; and (d) the expert has reliably applied

18   the principles and methods to the facts of the case." Fed.R.Evid. 702; *Daubert v. Merrell Dow*

19   *Pharm., Inc.*, 509 U.S. 579, 589-90 (1993). Thus, expert testimony may only be admitted into

20   evidence if (1) the witness qualifies as an expert; (2) the methodology by which the expert reaches

21   his or her conclusions is sufficiently reliable; and (3) the expert's testimony will assist the trier of

22   fact to understand the evidence or determine a fact in issue. *Id.*. IDC must prove, by a preponderance

23   of the evidence, that Dr. Layne-Farrar's, Dr. Putnam's, and Dr. Huber's testimony meets the

24   reliability requirements of Rule 702. *Id.* at 592 n.10; FRE 702, Advisory Committee Notes, 2000

25   Amendment. For the reasons set forth below, several portions of those experts' proffered testimony

26   do not.

27   **B.    Dr. Layne-Farrar's Improper Opinions**

28   ASUS moves to exclude Dr. Layne-Farrar's testimony on third-party technical analyses,

1

ASUS's licensing with third parties, and volume discounts because her testimony fails to satisfy the prerequisites set forth in the Federal Rules of Evidence, as demonstrated below.

**1. Improper Character Evidence Regarding** ███████████████████████

The Court should exclude IDC's attempt to use Dr. Layne-Farrar to introduce improper character evidence on ASUS's licensing with third party SEP holders. At issue in this Motion is ██ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ████████████████████ Ex. 2,[1] Layne-Farrar RR ¶¶ 19, 20, 21, 375-377, Appendixes D, H. She engages in conclusory speculation ███████████████████████████████████████ ███████████████████████████████████████████████ *See* Ex. 2, Layne-Farrar RR ¶ 20 & nn. 14-15. Her opinions on this subject cite no evidence, lack in foundation, are not based on any expert analysis, and are irrelevant to the issues in this case.

Dr. Layne-Farrar's deposition makes clear that she came to her opinions on ASUS's third-party license negotiations ██████████████████████████ She admittedly did not ███ ███████████████████████████ Ex. 1, Layne-Farrar Dep. Tr. at 202:10-20, 203:1-11. She could not determine whether ████████████████████████████████████████████ *Id.* at 195:723. She was unable to say whether ████████████████████████████████████ *Id.* 203:3-11. She could not say ███████████████████████████████████ *See id.* at 183:20-184:8, 192:5-24 ███████████; 192:25-193:10, 198:1-21 ███████████; 198:22-200:13 ███████████; 200:14-24 ███████████. She admitted ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ *Id.* at 202:10-20.

In addition to lacking meaningful evidentiary underpinnings, Dr. Layne-Farrar's opinions are not "the product of reliable principles and methods … applied … reliably to the facts of the case." Fed. R. Evid. 702(c)-(d). Nothing in her training as an economist qualifies her to evaluate whether

---

[1] All "Ex." Citations herein refer to the exhibits attached to the Declaration of Michael R. Franzinger in Support of ASUS's Motion for Summary Judgment. All expert opening reports are abbreviated as "OR", rebuttal reports are "RR", and deposition transcripts are "Dep. Tr.".

1   ████████████████████████████████████████████████████ Her

2   opinions in these sections do not employ economic terms and techniques. They are attorney-style,

3   lay factual argument that should not be given a veneer of credibility by being routed through an

4   expert. *Stathakos v. Columbia Sportswear Co.*, No. 15-CV-04543-YGR, 2018 WL 1710075, at *5

5   n.6 (N.D. Cal. Apr. 9, 2018) ("Opinions on legal issues are properly the subject of attorney

6   argument, not expert testimony.") .

7          Finally, this evidence is inadmissible under other Federal Rules. *See* Fed R. Evid. 401 & 402.

8   It is irrelevant, and thus inadmissible, because the case is about the licensing negotiations between

9   IDC and ASUS, ████████████████████ *See Daubert*, 509 U.S. at 597 (expert testimony

10  must be "relevant to the task at hand"). The licenses with ████████████████

11  ████████████████████████████ and Dr. Layne-Farrar does not analyze how ████

12  ████████████████████████ *See, e.g.*, Ex. 2, Layne-Farrar RR Appendix H, p.

13  260 ████████████████████████████████████████

14  ████ . Rather than addressing any salient issue, the ████████████████████

15  ████████████████████████████████████████████████

16  ████████████████████████ *Id.* ¶¶ 20, 21. This kind of propensity

17  evidence is barred. Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not

18  admissible to prove that on a particular occasion the person acted in accordance with the character or

19  trait."). It also lacks the specificity and repetitiveness to be admissible under Rule 406's "habit"

20  exception, which "refers to the type of nonvolitional activity that occurs with invariable regularity."

21  *Weil v. Seltzer*, 873 F.2d 1453, 1460 (D.C. Cir. 1989) (district court abused discretion by admitting

22  "habit" of "prescrib[ing] steroids to other allergy patients while representing the drugs to be

23  antihistamines or decongestants"); *see also Simplex, Inc. v. Diversified Energy Sys., Inc.*, 847 F.2d

24  1290, 1293-94 (7th Cir. 1988) (affirming exclusion of evidence of a company's "late and inadequate

25  performance of other contracts" and distinguishing "habit" cases as "involv[ing] specific,

26  particularized conduct capable of almost identical repetition"); *Scott v. Am. Broad. Co.*, 878 F.2d

27  386, at *3 (9th Cir. 1989) ("Rule 406 may be invoked only where a high degree of specificity and

28  frequency of uniform response is present.").

1      In summary, ███████████████████████████████ serve no

2 legitimate purpose, but only function to ███████████████████ They do not reflect

3 the professional analysis of an economist. Because all of these opinions are unsupported by genuine

4 facts or data, are not the product of reliable methods used by experts in the field, and are improper

5 and irrelevant propensity evidence, they are inadmissible and she should not be permitted to testify

6 to the opinions in paragraphs 19-21, 375-377, and Appendices D and H of her report. Thus, the

7 Court should exclude Dr. Layne-Farrar from testifying about ███████████████████████

8 ████████

9      **2.   Improper Generalizations Regarding ████████████████████████ to**

10         **IDC's Conduct**

11      Dr. Layne-Farrar's generalized, irrelevant testimony ██████████████ should be

12 excluded. Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony is …

13 relevant to the task at hand." *Daubert*, 509 U.S. at 597. The central issue in this case is whether IDC

14 complied with its FRAND obligations to ETSI, and the analysis of IDC's licensing program,

15 ███████████████████████████, must be viewed through that lens. Yet, Dr. Layne-Farrar opines on

16 the appropriateness of ████████████ as a general licensing practice and in (non-ETSI) patent

17 pools. She provides no discernible link between these opinions and ETSI's FRAND obligations or

18 IDC's specific conduct.

19      First, Dr. Layne-Farrar provides four justifications for ███████████████████████

20 ████████████████████████████████████████████████████████████████

21 ███████ Ex. 2, Layne-Farrar RR ¶¶ 99-110; Ex. 1, Layne-Farrar Dep. Tr. 136:22-138:12, 140:11-

22 142:3, 144:21-145:14, 152:17-25, 155:5-157:8 █████████████████████████; *see id.* 13:5-13

23 █████████████████████████████. According to IDC, Dr. Layne-Farrar opines that economic

24 justification for ████████████ are "(i) welfare enhancement enabling innovators to recoup their

25 R&D investments; (ii) reduction of transaction costs; (iii) reduction of patent license monitoring and

26 enforcement costs; (iv) enhancing wide dissemination of standards via market maker effects; and (v)

27 aligning SDO members' incentives to increase adoption and expand output, benefiting consumers."

28 Dkt No. 258-4 at 25 (citing Dkt No. 258-6, Layne Farrar Decl. ¶¶ 27-32); *see* Ex. 2, Layne-Farrar

RR ¶¶ 99-110. Dr. Layne-Farrar opines that based on these justifications, ███████████ ███████████████████████████████ Ex. 2, Layne-Farrar RR ¶ 109. However, Dr. Layne-Farrar economic theory for justifications is too abstract to aid the trier of fact. *Id.* ¶¶ 99-110; Ex. 1, Layne-Farrar Dep. Tr. 13:5-13, 136:22-138:12, 140:11-142:3, 144:21-145:14, 152:17-25, 155:5-157:8. Dr. Layne-Farrar does not apply the economic justifications to the facts of this case—███████████ ███████████████ Federal Rule of Evidence 702 permits expert testimony only where "the expert has reliably applied the principles and methods to the facts of the case." Fed.R.Evid. 702; *Finjan Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF, 2015 WL 4272870 (N.D. Cal. July 14, 2015) (opinion lacks probative value without being tied to facts of the case) (collecting case law).

Separately, Dr. Layne-Farrar relies ███████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████" Ex. 2, Layne-Farrar RR ¶ 109. But, it is the role of ███████████ in *IDC's ETSI* FRAND-encumbered licensing program that is disputed as violating IDC's FRAND obligations. *See, e.g.*, Ex. 4, Huber Dep. Tr. 63:6-67:4 ████████████████████████████████████ ████████████████████████████████. Failing to tie expert opinions to the facts of this case render those opinions of little probative value. *See Daubert*, 509 U.S. at 591 (question is one of "fit" – "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."); *Finjan Inc.*, 2015 WL 4278270, *8 (N.D. Cal. 2015). Here, Dr. Layne-Farrar's ███████████ opinions (found at, *e.g.*, ¶¶ 99-110 of her report) simply do not fit the facts at issue in this case and therefore must be excluded because they will confuse, rather than help, a jury.

### 3.   Economist's Improper Legal Testimony Regarding Parties Arbitration

Dr. Layne-Farrar's testimony regarding the IDC-ASUS arbitration should be excluded. IDC offers Dr. Layne-Farrar as an economist. In her report, though, Dr. Layne-Farrar ███████████ ████████████████████████████████████████████████████████ ████████████████████ *See, e.g.*, Ex. 2, Layne-Farrar RR ¶¶ 13, 14-17, 31, 218, n.292, 263,

285, 290, 320, 374, 380, 389, 416; Ex. 2, Layne-Farrar Dep. Tr. at 177:2-17. Not only is legal opinion the province of the Court, but also Dr. Layne-Farrar's opinion is legally incorrect.

Dr. Layne-Farrar's report includes numerous examples of improper opinions ███████████ ███████. She opines that ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████ Ex. 2, Layne-Farrar RR ¶ 13. Dr. Layne-Farrar then goes on to detail the ████████████████████████████████ ████████████████████ *Id*. ¶ 15. She interprets the ████████████████████ ███████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████ " *Id*. ¶¶ 16, 290; *see id*. ¶¶ 31, 263. ████████████████████████████

"Expert testimony is not proper for issues of law." *Crow Tribe*, 87 F.3d at 1045. "Experts 'interpret and analyze factual evidence. They do not testify about the law....' " *United States v. Brodie*, 858 F.2d 492, 496 (9th Cir.1988), *overruled sub nom U.S. v. Morales*, 108 F.3d 1031 (9th Cir. 1997) (quoting *United States v. Curtis*, 782 F.2d 593, 599 (6th Cir.1986)); *see also* Fed.R.Evid. 702 ("(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue…"). In setting out the ██████████████ ████████████████████████████████████, Dr. Layne-Farrar crosses into the province of the Court. Additionally, such prior legal opinions are inadmissible evidence and therefore cannot be opined on by experts at trial. *Smart Mktg. Grp., Inc. v. Publications Int'l, Ltd.*, No. 04-C-146, 2014 WL 625321, at *3–4 (N.D. Ill. Feb. 18, 2014) (rejecting prior appellate opinion as evidence and precluding experts from discussing same).

Indeed, by its express language, the ██████████ irrelevant to this proceeding on ASUS's FRAND-based claims. ████████████████████████████████████████ ██████████████████████████████████████ ████████████████████████ Dkt. No. 135-4 ("FA") ¶ 109 (emphasis added). Dr. Layne-Farrar

6

admitted as much at her deposition. Ex. 1, Layne-Farrar Dep. Tr. 28:25-30:17 ("███████████████

██████████████████████████████████████████████████████████").

Dr. Layne-Farrar's mischaracterizations and manipulations of the ███████ demonstrate the prejudice that would befall ASUS and confusion inflicted on the jury if an expert were permitted to testify regarding the ███████. *See VirnetX Inc. v. Apple Inc.*, No. 6:12-CV-855, 2016 WL 4063802, *5 (E.D. Tex. July 29, 2016) ("describing a prior verdict before a jury often prejudices a party," "may have an unfair prejudicial effect when it is discussed in depth with multiple witnesses" and "creates the possibility that the jury will defer to the earlier result and thus will, effectively, decide the case on evidence not before it" (quoting *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1351 (3d Cir. 1975))); *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 1009–10 (9th Cir. 2007), 553 U.S. 591 (2008) (affirming district court's decision to exclude evidence of prior verdict against defendants); *Apple, Inc. v. Samsung Elec. Co.*, No. 12-cv-00630, 2014 WL 794328, *8-*9 (N.D. Cal. Feb. 25, 2014) (excluding expert's testimony on settlement because of risk of prejudice was high and admission would undermine public policy in favor of settlements, which is akin to public policy favoring arbitration). For example, she testified that ████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████ *Compare* Ex. 1, Layne-Farrar Dep. Tr. 29:23- 30:10, *with* FA ¶¶ 9, 67. And she admitted she had no more than a layperson's understanding ██ ██████████████████████████████████████████ Ex. 1, Layne-Farrar Dep. Tr. 32:22-34:3.

Dr. Layne-Farrar's offering of an opinion regarding the parties' ████████████████ ████████████████ is improper and should be excluded.

**4.  Economist's Improper Reliance on ████████████████████ of Experts That Submitted No Report**

Dr. Layne-Farrar improperly presents technical expert opinions of third parties who did not submit expert reports in compliance with Federal Rule of Procedure 26 and whose work was not

7

1   carried out for her or any other IDC expert witness in this case. Accordingly, the Court should find

2   such testimony improper and unreliable.

3       Dr. Layne-Farrar, an economist, relies on ████████████████████████████████

4   ████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████

6   ████████████████████████████ Dr. Layne-Farrar acknowledged she did not have the

7   ████████████████████████████████ Ex. 1, Layne-Farrar Dep. Tr. at 48:10-12

8   (Q:████████████████████████████████████████████████████████

9   ████████████████████████.

10      Based on ██████████████████ Dr. Layne-Farrar opines "████████████████

11  ████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████ Ex. 2 at ¶

13  142. Thus, while ████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████

15  ████████████████████████ *Id.* By her own terms.████████████████████

16      Having Dr. Layne-Farrar present these opinions is also impermissible procedural corner-

17  cutting. To the extent IDC sought to prove there were ████████████████████████████

18  ████████████████████████████ IDC should have submitted expert reports in

19  discovery presenting ████████████████ for that purpose. *United States v. Marine Shale*

20  *Processors*, 81 F.3d 1361, 1370 (5th Cir. 1996) ("the financial and other incentives of litigation

21  [may] pose an unacceptable risk to the objectivity and neutrality" of the non-testifying expert,

22  thereby suggesting "the usefulness of cross-examination"). IDC's ████████████ do not do so.

23      Federal Rule of Civil Procedure 26(a)(2)(B) required the parties to provide a written report

24  with "a complete statement of all opinions the witness will express and the basis and reasons for

25  them…." *See also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir.

26  2001). The Court's April 12, 2018 scheduling order required the parties exchange reports no later

27  than June 12, 2018, under Fed. R. Civ. P. 26(a)(2)(D). Federal Rules of Evidence 703 does not

28  permit an expert witness to circumvent the rules of hearsay by testifying to the opinions of other

ASUS'S MPA ISO MOTION TO STRIKE EXPERT REPORTS,
CASE NO. 5:15-cv-01716-BLF

1   experts. *See Tokio Marine & Fire Ins. Co. v. Norfolk & Western Ry. Co.*, 172 F.3d 44 (4th Cir. 1999)

2   (Unpub. Disp.) ("one expert may not give the opinion of another expert who does not testify"). If

3   IDC wished to ████████████████████ it could have submitted ████████████████████

4   ████████████████████████████████ But IDC chose instead to direct its ██████

5   ████████████████████.[2] Any expert submitting a report would have been subject to cross

6   examination, which is particularly important in expert discovery. As none of the ████████████

7   █████████████████████████████████████████████████████████████

8   ██████████████████████████ Dr. Layne-Farrar prejudices ASUS.

9          Furthermore, "[a] scientist, however well credentialed [s]he may be, is not permitted to be

10  the mouthpiece of a scientist in a different specialty." *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285

11  F.3d 609, 614-615 (7th Cir. 2002) (excluding expert testimony that relied upon undisclosed expert

12  analysis of another where it was clear that the testifying expert "lack[ed] the necessary expertise to

13  determine whether the techniques were appropriately chosen and applied"); *In re James Wilson*

14  *Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992) ("[T]he judge must make sure that the expert isn't being

15  used as a vehicle for circumventing the rules of evidence. . . . [I]t is improper to use an expert

16  witness as a screen against cross-examination."); *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722,

17  732 (10th Cir. 1993) (excluding expert's reliance on opinions of non-testifying expert where there

18  was "no indication in the record that [the expert] had any familiarity with the methods or reasoning

19  used" in reaching the non-testifying expert's opinions). Accordingly, the Court should exclude Dr.

20  Layne-Farrar's testimony on ████████████████████████████, as provided in paragraphs

21  141-146 and footnotes 203 and 401 of her report.[3]

22                  ■. **Economist's Improper Legal Opinions on** ████████████████████

23               ██████████

24          Dr. Layne-Farrar opines on ██████████████████████████

25  ████████████████████████████████████████████████████████████

26  ―――――――――――――――――――
    [2] Dr. Layne-Farrar does not rely on IDC's technical expert reports in the opinions challenged here.
27  [3] ASUS has endeavored to specify each of the instances of the improper opinions in the reports.
    However, this Motion should be understood to seek preclusion of the identified expert subject matter
28  altogether, including any additional instances of the same subject matter not identified by individual
    paragraph number.

1   ███████████████████████████████████████████ For instance, Dr.

2   Layne-Farrar that IDC █████████████████████████████████████

3   ████████████████████████████████ in forming her opinion. Ex.,

4   Layne-Farrar RR ¶ 39 & n.48, *see also id.* ¶¶ 42 (opining █████████

5   63 (opining ██████████████████████████████████████

6   ██████████████████████████████████"); *id.* ¶¶ 70, 151-54; Appendix

7   E (opining ██████████████████).

8        For the reasons detailed in in Section D.1 below, the Court should preclude Dr. Layne-Farrar

9   from opining on ████████████ because (1) it is improper for experts to opine on the law, (2)

10  the ITC ████████████████████████, essentially vacating the

11  decision; (3) █████████████████████████████████ precludes its

12  reliance on them now.

13       C.      **Dr. Putnam's Improper Opinions**

14       IDC offers Dr. Putnam as an economics expert. ASUS moves to exclude Dr. Putnam's expert

15  testimony on ███████████████████████████████████████████

16  █████████████████████ because his testimony fails to satisfy the

17  prerequisites set forth in the Federal Rules of Evidence as demonstrated below.

18           1.   **Economist's Improper Legal Opinions on International Trade Commission**
19               **Decisions**

20       Dr. Putnam expends significant effort grafting onto this case vacated Initial Determinations

21  from IDC's prior ITC investigations to which ASUS was not a party. Ex. 7, Putnam RR at ¶¶ 349,

22  361-87, FRAND Appendix ¶¶ 137-161, 167. As detailed below, the Court should exclude such

23  opinions because (1) it is improper for experts to opine on the law, (2) the ITC did not adopt the

24  ALJ's "initial" decisions on which IDC relies, essentially vacating the decision; (3) IDC's refusal to

25  produce discovery relating to these ITC proceedings precludes its reliance on them now.

26       Dr. Putnam interprets the "initial" determinations in (1) ITC Inv. No. 337-TA-800 (the "800

27  Investigation"); (2) ITC Inv. No 337-TA-868 (the "868 Investigation") and (3) ITC Inv. 337-TA-613

28  (the "613 Investigation"). In these investigations, IDC asserted Samsung, Nokia, Huawei, and ZTE

1   infringed over 10 IDC patents. Dr. Putnam now opines █████████████████████████

2   ███████████████████████████████████████████. Ex. 7, Putnam RR

3   ¶¶ 77-84, 361-385, FRAND Appendix ¶¶138-161; Exhibit 7. For instance, Dr. Putnam opines that

4   the ████████████████████████████████████████ *Id*. at ¶ 367. Dr. Putnam goes on to

5   describe the allegations of the parties, interpret the initial determination's findings and holdings as

6   ███████████████████████████████ *Id.* at ¶ 365-385.

7        Dr. Putnam's opinion exceeds the permissible scope of expert opinion. He improperly opines

8   on the ITC law. "Experts 'interpret and analyze factual evidence. They do not testify about the

9   law....' " *United States v. Brodie*, 858 F.2d 492, 496 (9th Cir.1988) (quoting *United States v. Curtis*,

10  782 F.2d 593, 599 (6th Cir.1986)); *see also* Fed.R.Evid. 702 ("(a) the expert's scientific, technical, or

11  other specialized knowledge will help the trier of fact to understand the evidence or to determine a

12  fact in issue…"). On this basis alone, Dr. Putnam should not opine on the holdings of the 613, 800,

13  and 868 ITC investigations.

14       By way of background, IDC filed multiple complaints against multiple parties, including

15  Nokia, ZTE, Samsung, and LGE ("Respondents"). ASUS was not a party in those investigations and

16  ████████████████████████████ Respondents urged the ITC that Public Interest should

17  preclude an exclusion order prohibiting import of infringing products. In those investigations, the

18  respondents argued that IDC's ETSI's FRAND commitments satisfied the ITC's Public Interest

19  defense, were the Commission to find patent infringement. In all three ITC investigations, the

20  Commission's *final* decision held no party infringed the asserted patents.

21       Important to this case, Dr. Putnam relies on preliminary, Administrative Law Judge (ALJ)

22  "initial determinations." That is important because the ITC did not adopt the ALJ's public interest

23  recommendation in any of the Investigations on which he relies. Specifically, the Commission

24  determined to review either the public interest portion or the entire initial decision in the 613, 800,

25  and 868 investigations, and ultimately determined <u>not</u> to adopt the ALJ's public interest

26  recommendation. **In the 613 Investigation**, the Commission "determined to review the RID's public

27  interest findings," and the Commission's final decision ruled that Commission's "findings of

28  noninfringement render any consideration of public interest issues moot." Ex. 8, *In re Certain 3G*

1   *Mobile Handsets*, 337-TA-613 (Remand), Notice of Comm'n Dec to Review (June 25, 2015)

2   (ordering review of public interest); Ex. 3, *In re Certain 3G Mobile Handsets*, 337-TA-613

3   (Remand), Comm'n Op. at n27, (Sept. 21, 2015). **In the 800 Investigation**, the Commission

4   "determined to review the final ID in its entirety," and in its final decision the Commission took no

5   position on public interest (i.e., RAND). Ex. 15, *In re Certain Wireless Devices With 3G*

6   *Capabilities*, Notice of Comm'n Dec. to Review, 337-TA-800 at 3 (Sept. 4, 2013); Ex. 14, *In re*

7   *Certain Wireless Devices With 3G Capabilities*, 337-TA-800, Comm'n Op. at 40 (Feb. 19, 2014)

8   (not adopting public interest recommendation). **In the 868 Investigation**, after confirming no party

9   infringed a valid patent, the Commission's Final Decision stated "Similarly, the Commission

10   reviews and takes no position on the FRAND issues raised by the respondents concerning their

11   affirmative defenses." Ex. 9, *In re Certain Wireless Devices With 3G And/Or 4G Capabilities*, 337-

12   TA-868, Comm'n Notice at 3 (Aug. 14, 2014).

13          When the Commission orders review of an initial determination (or a subset of it), an initial

14   determination becomes the Commission's determination only if the Commission expressly affirms

15   an issue in the Commission's decision on review. *See* 19 C.F.R. § 210.42(h)(2); *Linear Tech. Corp.*

16   *v. Int'l Trade Com'n*, 292 Fed. Appx. 52, 55 (Fed. Cir. 2008) (when the Commission determined to

17   review an issue but "ended up taking on position on that issue," it "effectively vacat[ed] the ALH's

18   determination" on that issue). The Commission did not affirm or adopt the ALJ's recommendation

19   of public interest in any of IDC's ITC investigations.

20          Not only are these "initial determinations" now vacated, but they also have no binding effect

21   to any district court. *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569

22   (Fed. Cir. 1996) ("ITC decisions are not binding on district courts in subsequent cases brought

23   before them."). This Court has precluded reliance on initial determinations because of their

24   preliminary nature. *See Realtek Semiconductor Corp. v. LSI Corp.*, No. C-12-03451-RMW, 2014

25   WL 46997, at *1 (N.D. Cal. Jan. 6, 2014) (granting motion in limine to preclude plaintiff from

26   referencing the initial determination in an ITC action "because of the non-final nature of the ALJ's

27   decision.").

28          As a practical matter, ████████████████████████████████████████████

1    ██████████████████████████████ IDC has ███████████████████████████████

2    ████████████████████████████████████████████████████ *See* Dkt No. 162 at 1-

3    2. Having ████████████████████████████████████████████████████████████

4    ███████████████████████████████████████████████████ IDC cannot now rely

5    on the "initial" determinations in 868, 800 and 613 Investigations. *See Chevron Corp. v. Pennzoil*

6    *Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (privileges may not be used "both as a sword and a

7    shield.").

8          Accordingly, the Court should exclude opinion testimony from Dr. Putnam about the IDC's

9    ITC 613, 800 and 868 Investigations.

10         **2.   Unreliable** ███████████████████

11         Dr. Putnam conducts ███████████████████████████████████████

12   ███████████████ that is unreliable. Ex. 7, Putnam RR ¶¶ 269-282, Technical Appendix. The

13   ████████████████████████████████████████████████████████████████████████

14   ███████████████

15         Dr. Putnam employs ███████████████████████████████████████████

16   ████████████████ Specifically, he █████████████████████████████████████

17   ████████████████████████████████████ Ex. 7, Putnam RR ¶¶ 269.

18   From his analysis ████████████████████████████████████████████

19   █████████████████████████████████████ *Id.* ████████████████

20   ████████████████████████████████████████████████████████████████████████

21   █████████████ *Id.*

22         Dr. Putnam's ███████████████ is unreliable because it ███████████████

23   ████████████████████████████████████████████████████████████

24   ████████████████████████████████████████ Ex. 10, Putnam Dep. Tr. 175:3-

25   9. He ███████████████████████████████████████████████████. *Id.*

26   175:10-19. Dr. Putnam admits that █████████████████████████████████████████

27   ████████████████████████████████████████████ *Id.* 175:10-19. Dr. Putnam

28   ████████████████████████████████████████████, which is labeled "ASP" ████████████

*See, e.g.*, Ex. 7, Putnam RR, Technical Appendix pp. 9-10 (citing Ex. 11 ███████).[4] The taxonomy document for the IDC dataset defines ASP as the *retail* price. The ASP contains exactly the same ████████████████████████████████████████████: "the average *end-user* (street) price paid…ASP includes all freight, insurance, and other shipping and handling fees… that are included in *vendor or channel pricing*…. Because ASP is an estimate of the final price by the average end users, it includes the *implicit channel markup embedded in the final price*." Ex. 12 at 5725 (emphasis added).

Thus, ██████████████████████████████████████████████████████ ██████ unreliable. *See Univ. Coin*, 2015 WL 12001264, at *12-13 (excluding expert testimony on regression based on unreliable data); ]"); *Intel*, 2010 WL 8591815, at *20–21 (excluding regression where expert used 2 days' data after testifying 6 days' data would be inadequate); *Madani v. Equilon Enter. LLC*, 2009 WL 2148664, at *11 (C.D. Cal. 2009) (similar). "The infirmities in the ███████ ██████ are so fundamental that they do not merely go to the probativeness of Dr. [Putnam's] testimony but go to its admissibility as well." *Univ. Coin*, 2015 WL 12001264, at *12-13. "Any step that renders the analysis unreliable…renders the expert's testimony inadmissible," Fed. R. Evid. 702 Advisory Comm. Note, 2000 amend.

Accordingly, the Court should exclude testimony regardring Dr. Putnam's ██████████ ██████.

### 3. Generalizations Regarding ██████████████ Is Impermissible Expert Opinion

Like Dr. Layne-Farrar, Dr. Putnam too provides generalized testimony about ██████ ██████ that are untethered to the facts at issue here. Federal Rules of Evidence 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony is … relevant to the task at hand." *Daubert*, 509 U.S. at 597. The central issue in this case is whether IDC complied with its FRAND obligations to ETSI, and the analysis of IDC's licensing program, ████████████████ must be viewed through that lens. Yet, Dr. Putnam opines on ████████████████ ████████████████████████████████

---

[4] Due to the size of this raw data, only a sampling is attached to this motion for reference. ___

1    First, Dr. Putnam's opines that █████████████████████████████

2    ████████████████████████████████████████████ *E.g.*, Ex. 7 Putnam

3    CRR ¶¶ 300-313. But none of these instances involve licensing, let alone the ETSI FRAND

4    commitment.

5    Second, Dr. Putnam opines that ██████████████████████████████

6    ████████ Ex. 7, Putnam RR ¶ 306. He then provides ████████████████

7    ████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████

9    ████████████████████████████ *Id*. A trier of fact should not be left to

10   speculate on how they should apply general theories ██████████████ to this case, and lacking

11   support, IDC has a clear intention of peppering the record with vagaries so that counsel can argue for

12   broad, unsupportable speculation. Federal Rule of Evidence 702 permits expert testimony only

13   where "(d) the expert has reliably applied the principles and methods to the facts of the case." Fed.

14   R. Evid. 702; *Finjan Inc. v. Blue Coat Sys., Inc.*, 2015 WL 4278270, at *8 (N.D. Cal. 2015) (opinion

15   lacks probative value without being tied to facts of case) (collecting case law).

16   Similarly, Dr. Putnam identifies ██████████████████████████████

17   ████████████████████████████████████████████████████████████

18   ████████████████████████████████████████ Ex. 7, Putnam RR ¶¶ 317-321.

19   In IDC's ████████████████████████████████████████████

20   ████████████████ *See, e.g.*, Ex. 4, Huber Dep. Tr. 63:6-67:4 ████████████████

21   ██████████████████████████████████████████████████████████.

22   Moreover, that █████████████████████████████████████████████

23   ████████████████████████████████ Ultimately, Dr. Putnam does nothing to

24   tie this analysis to ETSI's FRAND obligations ████████████████████████ at issue in this

25   case. *See Daubert*, 509 U.S. at 591 (question is one of "fit" – "whether expert testimony proffered in

26   the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual

27   dispute."); *Finjan Inc.*, 2015 WL 4278270, *8 (N.D. Cal. 2015).

28

ASUS'S MPA ISO MOTION TO STRIKE EXPERT REPORTS,
CASE NO. 5:15-cv-01716-BLF

**4. Dr. Putnam's Improper Effort to Characterize** ███████████
█████████████████████████████████████████████████████

Like Dr. Layne-Farrar, IDC's counsel has Dr. Putnam engages in conclusory speculation that
█████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████ Ex. 7, Putnam RR
¶ 315; *see also id.* ¶¶ 335, 360.  Thus, Dr. Putnam attempts to cast ASUS ████████████
████ *Id.* He attempts to characterize ████████
█████████████████████████████████████████████████████████
██████████████████████████████ Dr. Putnam engages in conclusory speculation
of █████████████████████████████████████████████████████
█████████████████████████████████████████████████████
████████████████████████ *Id.* ¶ 335. His opinions on this subject are lacking
in foundation, not based on any expert analysis, and irrelevant to the issues in this case.

Deposition testimony in this case, specifically of IDC's expert Dr. Layne-Farrar, makes clear
that Dr. Putnam lacks the foundation necessary to ███████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████ Ex. 1, Layne-Farrar Dep. Tr. at 202:10-20. She could not
say whether ████████████████████████████████████████ *See id.* at
183:20-184:8, 192:12-24 (██████████); 192:25-193:10 (██████); 198:22-199:13 (██████); 200:14-
24 ████████). Dr. Putnam reviewed the same record as Dr. Farrar, and his opinion simply reaches
too far, lacking evidence necessary to make an assessment as ████████████. By definition, his
opinion cannot be "the product of reliable principles and methods … applied … [reliably] to the
facts of the case." Fed. R. Evid. 702(c)-(d).

Even if Dr. Putnam had the foundation required to draw an opinion (which he did not), his
opinion is inadmissible under other Federal Rules. This case is about the licensing negotiations
between IDC and ASUS, ████████████████████. *See Daubert*, 509 U.S. at 597 (expert

testimony must be "relevant to the task at hand"). █████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ *See, e.g.*, Ex. 7, Putnam RR ¶¶ 315, *see also*

*id.* ¶¶ 335, 360. Rather than addressing any salient issue, the discussion of ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.* This kind of propensity

evidence is barred. Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not

admissible to prove that on a particular occasion the person acted in accordance with the character or

trait."). It also lacks the specificity and repetitiveness to be admissible under Rule 406's "habit"

exception, which "refers to the type of nonvolitional activity that occurs with invariable regularity."

*Weil v. Seltzer*, 873 F.2d 1453, 1460 (D.C. Cir. 1989) (district court abused discretion by admitting

"habit" of "prescrib[ing] steroids to other allergy patients while representing the drugs to be

antihistamines or decongestants"); *see also Simplex, Inc. v. Diversified Energy Sys., Inc.*, 847 F.2d

1290, 1293-94 (7th Cir. 1988) (affirming exclusion of evidence of a company's "late and inadequate

performance of other contracts" and distinguishing "habit" cases as "involv[ing] specific,

particularized conduct capable of almost identical repetition"); *Scott v. Am. Broad. Co.*, 878 F.2d

386, at *3 (9th Cir. 1989) (Unpub. Disp.) ("Rule 406 may be invoked only where a high degree of

specificity and frequency of uniform response is present.").

   The Court should exclude Dr. Putnam's testimony ████████████████████████

████████████

   **5.  Economist's Improper Legal Testimony Regarding** █████████████

   As detailed in Section C.3 above, the Court should exclude Dr. Putnam from testifying about

████████████████████████████████ In his report, and mimicking Dr. Layne-Farrar,

Dr. Putnam interprets ████████████████████████████████████████

████████████████████████████████████████ claims of this case. *See,*

*e.g.*, Ex. 7, Putnam RR ¶¶ 14, 52, 89-95, 161, n.185, 194, 229, 359, FRAND appx n.65. At bottom,

Dr. Putnam "analysis" of the ████████████████████████████████████

████████████████████████████████████

1    ███████████████████████████████████ *Id.* ¶ 95. IDC is having Dr.

2    Putnam, serving as an economic expert, supplanting the Court's role by providing legal opinion.

3         For all the reasons detailed in Section ███ for Dr. Layne Farrar, the Court should exclude Dr.

4    Putnam's discussion █████████████ First, as discussed in Section C.3, the ████████

5    ██████████████████████████████████████

6    ██████████████████████ As Dr. Putnam himself is aware, by its express language, ███

7    ████████████████████████████████████████████

8    ████████████████████████████████████████

9    ██████████████████████████████ FA ¶ 109 (emphasis

10   added). Dr. Putnam himself ████████████████████████

11   ██████████████ Ex. 13, at 837:25-838:3.

12        Second, experts are not permitted to opine on the law. *Crow Tribe*, 87 F.3d at 1045. "Experts

13   'interpret and analyze factual evidence. They do not testify about the law....'" *United States v.*

14   *Brodie*, 858 F.2d at 496 (quoting *United States v. Curtis*, 782 F.2d 593, 599 (6th Cir. 1986)); *see*

15   *also* Fed. R. Evid. 702 ("(a) the expert's scientific, technical, or other specialized knowledge will

16   help the trier of fact to understand the evidence or to determine a fact in issue....."). IDC improperly

17   seeks to have its economists duplicate, with the veneer of expert approval, IDC counsel's strained

18   preclusion argument raised in summary judgement.

19        Finally, Dr. Putnam's mischaracterizations and manipulations ███████████████

20   demonstrate the prejudice that would befall ASUS and confusion inflicted on the jury if these

21   experts were permitted to testify regarding the Final Award. *See VirnetX*, 2016 WL 4063802, at *5

22   ("describing a prior verdict before a jury often prejudices a party," "may have an unfair prejudicial

23   effect when it is discussed in depth with multiple witnesses" and "creates the possibility that the jury

24   will defer to the earlier result and thus will, effectively, decide [the] case on evidence not before it"

25   (quoting *Coleman Motor*, 525 F.2d at 1351); *Engquist*, 478 F.3d at 1009–10; *Apple*, 2014 WL

26   794328, *8-*9 (excluding expert's testimony on settlement because of risk of prejudice was high and

27   admission would undermine public policy in favor of settlements, which is akin to public policy

28   favoring arbitration).. For example, blatantly ████████████████████████

1    ████████████████████████████████████ Dr. Putnam now opines about ████████████

2    ████████████████████████████████████████████████████'" Ex. 7,

3    Putnam RR ¶ 14 (emphasis added); *see also* Ex. 10, Putnam Dep. Tr. 192:18-193:12 ████████

4    ████████████████████████████████████████████████████████

5    ████████████ ).

6        Accordingly, the Court should preclude Dr. Putnam from discussing the arbitration between

7    ASUS and IDC.

8        **D.    Dr. Bertram Huber's Improper Opinions**

9        IDC offers Dr. Huber as an expert on the ETSI IPR Policy. ASUS moves to exclude Dr.

10   Huber's testimony on issues outside that topic, namely economics, French law, antitrust and ETSI

11   SEP licensing practices because his testimony fails to satisfy the prerequisites set forth in the Federal

12   Rules of Evidence as demonstrated below.

13       **1.  Dr. Huber Is Not an Expert in Economics, French Law, or Antitrust**

14       The Court should exclude Dr. Huber's testimony outside the scope of his expertise, which is

15   ETSI's IPR policy and history. In purporting to rebut ASUS's experts on French law, economics and

16   antitrust, his report strays into areas well outside of that subject matter. *See* Ex. 6, Huber RR pp. 3-4

17   ████████████████████████████████████████████████████████

18   ████████████████████████████████████████ *id.* ¶¶ 73-83, 85-101, 108-

19   109, 112-114, 116-118, 123-126, 136-138, 158-160, 166-173.[5] A witness providing expert testimony

20   must be "qualified as an expert by knowledge, skill, experience, training, or education" and cannot

21   make expert conclusions outside his area of expertise. FRE 702. During his deposition, Dr. Huber

22   ████████████████████████████████████████████████████████

23   ████████████████████████████. Ex. 4, Huber Dep. Tr. 6:22-8:4, 29:9-21; Ex. 5,

24   Huber OR p.2. His testimony in these areas should be precluded under FRE 702.

25       Although Dr. Huber admittedly ████████████████████████████████

26   ████████████████████████████. Ex. 6, Huber RR ¶¶ 73-101 ████████████

27

28   ─────────────────────
     [5] He also repeatedly references and relies ████████████████████████████
     ████████████████████ Ex. 6. Huber RR ¶¶ 59, 90, 103.

1   ██████████████████████, 158-160 █████████████, 136-138 ██████████████ 166-173

2   █████████████████████████████. Dr. Huber opines ██████████████████████████████

3   ████████████████████████████████████████████████████████████████████████████████

4   *See, e.g., id.* at ¶¶ 73-92, 123. He repeatedly challenges ASUS's experts' opinions as ██████████

5   ██████████████████████████ *See, e.g., id.* at ¶¶ 93-101 (discussing and citing █████████████

6   ████████████████, 173. He proffers opinions of what "similarly situated" means "from an

7   economic perspective." *See, e.g. id.* ¶ 158; *see generally id.* § 6.4. Before Dr. Huber can provide

8   expert testimony ██████████ the Federal Rules of Evidence █████████████████████████████

9   ████████████████████████████████████████████ FRE 702. Yet, both in his report and

10  at deposition, he repeatedly admitted ██████████████████████████████████████████

11  ████████████████ Ex. 4, Huber Dep. Tr. 7:8-8:4; Ex. 6, Huber RR ¶ 168 (██████████████████

12  ████████████████████████████████████████████████). As an expert

13  testifying outside his area of expertise, Dr. Huber should not be "anointed with ersatz authority as a

14  court-approved expert witness for what is essentially a lay opinion." *See White v. Ford Motor Co.*,

15  312 F.3d 998, 1008-09 (9th Cir. 2002).

16      Similarly, Dr. Huber attacks ASUS's █████████████████████████████████████████

17  █████████████████████████████████████████ *See, e.g.*, Ex. 6, Huber RR ¶¶ 111-

18  114; *see generally id.* § 3. But, he admits that he is not an expert ██████████████████████████

19  ████████████████████████ Ex, 4, Huber Dep. Tr. 6:22-7:7. He also ventures ██████

20  ██████████████████████████████████████ *See* Ex. 6, Huber RR ¶¶ 108-

21  109 (asserting ASUS expert ████████████████████████████████████████████████

22  ████████████████████████████████████). But he has not identified

23  any education, training, or experience in █████████████████ *See* Ex. 5, Huber OR at Ex. 1

24  (Dr. Huber's CV).

25      Yet, he improperly provides opinions in response to ASUS's experts in those areas. *Apple,*

26  *Inc. v. Samsung Elecs. Co.*, 2013 WL 5955666, at *3 (N.D. Cal. Nov. 6, 2013) (precluding expert

27  who admitted she was unqualified to testify on certain topics). He should not be allowed to testify in

28

ASUS'S MPA ISO MOTION TO STRIKE EXPERT REPORTS,
CASE NO. 5:15-cv-01716-BLF

1   the areas of ███████████████████████

2              **2.  Dr. Huber Is Not An Expert on** ███████████████████

3          Dr. Huber's testimony on ███████████████████████████ should be

4   excluded because he lacks sufficiently demonstrated "knowledge, skill, experience, training, or

5   education" to opine on that subject. FRE 702. Although he brings experience in ████████████████

6   ███████████████████████████████████████████████ Ex. 6 [Huber

7   RR] ¶ 6, he deviates from his ███████████████████████████████

8   ███████████████████████████████████████████ *Id.* ¶ 50. For example,

9   he █████████████████████████ Ex.6, Huber RR ¶ 154 ████████████████████

10  ████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████

12  ████████████████████████. He also ████████████████████████████

13  ███████████████████████ *Id.* ¶¶ 101, 123. Further, ██████████████████████

14  ████████████████████████████████████ *E.g.,* Ex. 6, Huber RR pp. 3-4, ¶¶ 50, 125,

15  139-157.

16          These opinions are replete with conclusory assertions relying on nothing but self-professed

17  real-life experience. *See, e.g.*, Ex. 5, Huber OR ¶ 67 ("Based on my experience negotiating licenses

18  in this industry…"), 70 ("normal commercial negotiation practice"; "not supportable by … industry

19  practice"), 71 ("in line with general industry practice"); 72 ("the normal approach taken"). He claims

20  without citation that ████████████████████████████████████████████████████

21  ███████████████████████████████████████████████ Ex. 6 [Huber RR]

22  ¶ 56. He asserts that ███████████████████████████████████████████

23  ████████████████████████████████████ *Id.* ¶ 60; *see also id.* ¶¶ 126, 159, 164-167. He

24  devotes an entire section to ████████████████████████████████████████

25  █████████████████ *Id.* § 4.1 (¶¶ 117-123). He does the same in rebutting Dr. Scott Morton's report.

26  *Id.* § 6.3 (¶¶ 139-157); *see also id.* ¶¶ 132-22 ████████████████████████████████

27  ███████████████████████). Again and again, he engages in sweeping generalizations with

28

1   no cited support. *See, e.g.*, *id.* ¶ 164 ███████████████████████████

2   ████████████████████████.

3   The only basis he provides for his opinions on ███████████████████████

4   ███████████████████████ *Id.* ¶ 118. Notably, his description of his

5   qualifications does not identify *any* licensing experience under the IPR policies of ETSI. Ex. 5,

6   Huber OR, § 1.1.

7   Dr. Huber's deposition testimony demonstrates that to the extent he has ██████████

8   ███████████████████ For example, at deposition, he admitted that he ████████████

9   ██████████████████████████████████████████

10   ████████ Ex. 4, Huber Dep. Tr. 19:24-21:18; *see State Contracting & Eng'g Corp. v. Condotte*

11   *Am., Inc.*, 346 F.3d 1057, 1073 (Fed. Cir. 2003) (excluding expert lacking experience determining

12   reasonable royalty for construction-related patents). He further testified that he was not ███████

13   ████████████████████████████████████████████

14   ████████████████████████. Ex. 4, Huber Dep. Tr. 148:22-152:11.

15   Thus, the only potentially ████████████████████████████████████

16   ██████████████████████ *Id.* 95:20-96:2; Ex. 6, Huber

17   RR, Ex. 1 p.1. All █████████████████████████████████████

18   █████████████████████████████████ Beyond this irrelevant,

19   █████████████████ he cites ███████████████████████" as

20   support. Ex. 4, Huber Dep. Tr. 95:3-9. That is far too speculative and imprecise to form the basis of

21   expert opinion. *Applestein v. Medivation, Inc.*, 561 F. App'x 598, 600 (9th Cir. 2014) ("unattributed

22   statement of an un-named colleague who allegedly heard defendants admit that the pills used in the

23   Phase II study were unmatched" was an "uncredited and speculative conclusion[]" of an expert); *see*

24   *also Bodum USA, Inc. v. A Top New Casting, Inc.*, No. 16 C 2916, 2017 WL 6626018, at *10 n.4

25   (N.D. Ill. Dec. 28, 2017) (rejecting as hearsay a witness's testimony that he "heard colleagues had

26   talked to people" who ended up with counterfeit products). Worse yet, he compares ████████████

27   ████████████████████████████████████████████

28

1  ███████████████████ Ex. 4, Huber Dep. Tr. 19:7-23.

2  **E.    Conclusion**

3  For the reasons stated above, ASUS moves to exclude as improper under FRE 702 the

4  testimony of Dr. Ann Layne-Farrar regarding (1) ███████████████ (2) v███

5  ██████ (3) ████████████████████ (4) ████████████████

6  █████████████ and (5) IDC's ██████████████████

7  ASUS also moves to exclude as improper under FRE 702 the testimony of Dr. Jonathan

8  Putnam regarding (1) IDC's ITC Investigations and Initial Determinations, (2) ████████

9  ████████████ (3)████████ (4)████████████████ and (5) █████

10  ███████████

11  Finally, ASUS moves to exclude as improper under FRE 702 the testimony of Dr. Bertram

12  Huber regarding (1) ████████████████████████████

13  █████████

14

15

16  DATED: September 25, 2018

17                                    By: */s/ Michael R. Franzinger*
                                         Michael R. Franzinger

18                                       *Attorney for Plaintiffs*
19                                       ASUS COMPUTER INTERNATIONAL, and
                                         ASUSTEK COMPUTER INCORPORATED
20

21

22

23

24

25

26

27

28