Brian Nester (*pro hac vice*)
bnester@sidley.com
Michael R. Franzinger (SBN 222155)
mfranzinger@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

Richard A. Cederoth (*pro hac vice*)
rcederoth@sidley.com
David C. Giardina (*pro hac vice*)
dgiardina@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone (312) 853-7000
Facsimile: (312) 853-7036

Michael J. Bettinger (SBN 122196)
mbettinger@sidley.com
SIDLEY AUSTIN LLP
555 California Street
Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

Attorneys for Plaintiffs
ASUS COMPUTER INTERNATIONAL,
ASUSTEK COMPUTER INCORPORATED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ASUS COMPUTER INTERNATIONAL; and ASUSTEK COMPUTER INCORPORATED,<br><br>Plaintiffs,<br><br>vs.<br><br>INTERDIGITAL, INC.; INTERDIGITAL COMMUNICATIONS, INC.; INTERDIGITAL TECHNOLOGY CORPORATION; IPR LICENSING, INC. and INTERDIGITAL PATENT HOLDING, INC.,<br><br>Defendants. | Case No. 15-cv-01716 BLF<br><br>**REPLY TO DEFENDANTS' OPPOSITION TO ASUS' MOTION TO EXCLUDE DEFENDANTS' EXPERTS' IMPROPER TESTIMONY**<br><br>Hearing Date: February 14, 2019<br>Time: 9:00 a.m.<br>Location: Courtroom 3, 5th Floor<br>Judge: Hon. Beth Labson Freeman<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. DR. LAYNE-FARRAR'S OPINIONS AT ISSUE SHOULD BE EXCLUDED ..................... 2

    A. Dr. Layne-Farrar's Character Evidence Regarding ASUS's Negotiations with Others Is Inadmissible ................................................................................................. 2

    B. Dr. Layne-Farrar's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Are Too Far Removed from This Case ............................................................................... 4

    C. Dr. Layne-Farrar Should Not Offer Legal Opinions on the Parties' Arbitration ........................................................................................................... 5

    D. Dr. Layne-Farrar Is Not Qualified to Present the ▮▮▮▮▮▮▮▮▮ ▮▮▮▮ .......................................................................................................................... 7

    E. Dr. Layne-Farrar Should Not Offer Legal Opinions on ITC Decisions ............ 9

III. DR. PUTNAM'S OPINIONS AT ISSUE SHOULD BE EXCLUDED ................................ 9

    A. Dr. Putnam Should Not Offer Legal Opinions on ITC Decisions ..................... 9

    B. Dr. Putnam's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ .............................. 10

    C. Dr. Putnam's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Are Too Far Removed from This Case ................................................................................................................. 11

    D. Dr. Putnam's Character Evidence Regarding ASUS's Negotiations with Others Is Inadmissible ............................................................................................ 12

    E. Dr. Putnam Should Not Offer Legal Opinions on the Parties' Arbitration ..... 12

IV. DR. HUBER'S OPINIONS AT ISSUE SHOULD BE EXCLUDED ................................... 13

V. CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Aluisi v. Elliott Mfg. Co.*
   No. 1:04-CV-5373 AW SMS, 2009 U.S. Dist. LEXIS 20180 (E.D. Cal. March 5, 2009) ........................................................................................................................................ 3

*Applied Medical Resources Corp. v. U.S. Surgical Group*
   435 F.3d 1356 (Fed. Cir. 2006) .................................................................................................... 7

*Beloit Corp v. Valmet Oy TVW Paper Mach. Inc.*
   742 F.2d 1421 (Fed. Cir. 1984) ..................................................................................................... 9

*Brennan v. Paul Revere Life Ins. Co.*
   No. 00 C 0725, 2002 U.S. Dist. LEXIS 10505 (N.D. Ill. June 12, 2002) ................................. 3, 12

*Chase v. Consol. Foods Corp.*
   744 F.2d 566 (7th Cir. 1984) ......................................................................................................... 8

*Crow Tribe of Indians v. Racicot*
   87 F.3d 1039 (9th Cir. 1996) .................................................................................................... 6, 9

*Daubert v. Merrell Dow Pharm., Inc.*
   509 U.S. 579 (1993) ........................................................................................................... 2, 5, 11

*Finjan Inc. v. Blue Coat Sys., Inc.*
   No. 13-cv-03999-BLF, 2015 WL 4272870 (N.D. Cal. July 14, 2015) ..................................... 5, 11

*Finjan, Inc. v. Sophos, Inc.*
   No. 14-cv-01197-WHO, 2016 WL 4560071 (N.D. Cal. Aug. 22, 2018) ....................................... 7

*Hangarter v. Provident Life and Accident Ins. Co.*
   373 F.3d 998 (9th Cir. 2004) ......................................................................................................... 6

*IV Solutions, Inc. v. United Healthcare Servs., Inc.*
   No. CV 12-4887 GAF, 2014 WL 5817224 (C.D. Cal. Nov. 10, 2014) ......................................... 2

*Ivera Med. Corp. v. Hospira Inc.*
   No. 14-cv-1345-H-RBB, 2015 WL 11529819 (S.D. Cal. July 21, 2015) ...................................... 7

*Lite On It Corp. v. Toshiba Corp.*
   No. CV 07-04758-SGL(AJWx), 2009 WL 10669760 (C.D. Cal. Mar. 4, 2009) ......................... 10

*Mannick v. Kaiser Found. Health Plan, Inc.*
   No. C 03-5905 PJH, 2006 WL 1626909 (N.D. Cal. June 9, 2006) ............................................... 6

*Microsoft Corp. v. Motorola, Inc.*
    795 F.3d 1024 (9th Cir. 2015) ..................................................................................5

*Nipper v. Snipes*
    7 F.3d 415 (4th Cir. 1993) ........................................................................................7

*Olaf Soot Design, LLC v. Daktronics, Inc.*
    1:15-cv-05024, ECF No. 304 (S.D.N.Y. Dec. 6, 2018) .............................................7

*Sempra Energy v. Marsh USA, Inc.*, No. CV 07-05431 SJO(JCx), 2008 WL 11335050
    (C.D. Cal. Oct. 15, 2008) ..........................................................................................7

*Southland Sod Farms v. Stover Seed Co.*
    108 F.3d 1134 (9th Cir. 1997) ..................................................................................8

*Weil v. Seltzer*
    873 F.2d 1453 (D.C. Cir. 1989) ..........................................................................2, 12

**OTHER AUTHORITIES**

Fed. R. Evid. 404(a)(1) ......................................................................................................12

Fed. R. Evid. 702 ...............................................................................................................11

iii
ASUS REPLY RE: MOTION TO EXCLUDE OPINIONS AND TESTIMONY
CASE NO. 15-CV-01716 BLF

**Table of Abbreviations**

| | |
|---|---|
| Motion or Mot. | Plaintiffs' Motion To Exclude Defendants' Experts' Improper Testimony, ECF No. 278-3 |
| Mot. Ex. | Exhibit to the Weinberg Declaration in Support of the Motion, ECF No. 279 |
| Opposition or Opp. | Defendants' Opposition To ASUS's Motion To Exclude Defendants' Experts' Testimony, ECF No. 326-4 |
| Opp. Ex. | Exhibit to the Rees Declaration in Support of the Opposition, ECF No. 328 |
| InterDigital | Defendants IPR Licensing, Inc.; InterDigital Communications, Inc.; InterDigital Patent Holdings, Inc.; InterDigital Technology Corporation; and InterDigital, Inc. |
| ASUS | Plaintiffs ASUS Computer International and ASUSTeK Computer Incorporated |
| 2008 PLA | 2008 Patent License Agreement between ASUS and InterDigital |
| ETSI | European Telecommunications Standards Institute |
| FRAND | Fair, Reasonable, and Non-Discriminatory |
| SEP | Standard-Essential Patent |
| ITC | United States International Trade Commission |
| ALJ | Administrative Law Judge |
| PTO | United States Patent and Trademark Office |
| DOJ | United States Department of Justice |

I.  INTRODUCTION

The Court should exclude each of InterDigital's experts' opinions at issue in this Motion. The economists' attempts to apply legal precedent will not help the jury. Their opinions about licensing outside the context of ETSI FRAND obligations and ASUS's supposed character traits as a licensee are not tied to the facts of this case. Dr. Putnam's testimony is not based on reliable data where he admitted he used the wrong data. And Dr. Huber is unqualified to speak from overarching "experience" of an industry where the experience he relied upon does not actually encompass what he is speaking about. Each of InterDigital's counter-arguments fails.

InterDigital does not dispute that Drs. Layne-Farrar and Putnam are using character evidence to try to prove action in accordance with that character. Instead, InterDigital tries to claim the benefit of the "habit" and "routine practice" exception, which is clearly inapplicable as it is reserved for reflexive, repetitive behavior. InterDigital's other justification is that it is rebutting a "willing licensee" opinion, but InterDigital's attempted rebuttals need to be based on relevant facts, not propensity evidence.

[redacted] Those opinions are not sufficiently tied to this case's facts. There is also no basis to claim that ASUS's *Daubert* motion needed to be brought during summary judgment proceedings. ASUS did not move for summary judgment on the basis that [redacted]. ASUS's *Daubert* motion separately contends that InterDigital's expert opinion lacks the sufficiency the Federal Rules and court decisions require for a fair trial presentation.

When addressing the arbitration and ITC rulings, InterDigital's expert reports plainly read like legal briefs. Unlike ASUS's economic expert whom they claim to be rebutting, InterDigital's economists opine that particular results should ensue in the present case based on prior legal decisions. That is the role of a lawyer and a judge, not an expert witness. That they get the decisions and their impact wrong only amplifies the reasons these opinions should be excluded.

On third-party essentiality studies, InterDigital attempts to distance Dr. Layne-Farrar's testimony from impermissible uses, but does not say how to avoid the jury relying on these studies

1

for their essentiality shares. InterDigital did not do its own essentiality study, so it should not get to bring in any such studies through the back door, even if it claims they have a different purpose.

For ▇▇▇▇▇▇▇▇▇, InterDigital does not dispute that Dr. Putnam ▇▇▇▇▇▇▇▇▇

Finally, Dr. Huber's proposed testimony is full of generalized pronouncements about how licensing works in the industry based on his putatively vast experience. But his pertinent experience is expressly disclaimed as a basis for his opinions and, for the 4G period, it is wholly outdated too.

## II. DR. LAYNE-FARRAR'S OPINIONS AT ISSUE SHOULD BE EXCLUDED

### A. Dr. Layne-Farrar's Character Evidence Regarding ASUS's Negotiations with Others Is Inadmissible

Dr. Layne-Farrar endeavors to label ASUS as a chronic unwilling licensee, and InterDigital's Opposition does not try to deny that she does so. InterDigital's attempted justifications for it are ineffective, as they do not overcome the bar on propensity evidence or the gaps in factual foundation for the testimony.

Her discussion of whether ASUS obtained licenses from other companies is impermissible character evidence. This case is about the licensing negotiations between InterDigital and ASUS, not other companies and ASUS. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993) (expert testimony must be "relevant to the task at hand"). License negotiations are complex and individualized activities, and Dr. Layne-Farrar's analysis of ASUS's past negotiations does not come close to showing the specificity and repetitiveness to be admissible under Rule 406's "habit" and "routine practice" exception. That rule "refers to the type of nonvolitional activity that occurs with invariable regularity." *Weil v. Seltzer*, 873 F.2d 1453, 1460 (D.C. Cir. 1989); *see also IV Solutions, Inc. v. United Healthcare Servs., Inc.*, No. CV 12-4887 GAF (MRWx), 2014 WL 5817224, at *3 (C.D. Cal. Nov. 10, 2014) (granting motion *in limine* against character evidence in the corporate context). InterDigital tries to claim the benefit of Rule 406, but even the case on which it principally relies requires "a regularly-followed policy or practice that is sufficiently routine and 'automatic' to

2

1  permit its admission under Rule 406[.]" *Brennan v. Paul Revere Life Ins. Co.*, No. 00 C 0725, 2002
2  U.S. Dist. LEXIS 10505, at *11 (N.D. Ill. June 12, 2002); *see also Aluisi v. Elliott Mfg. Co.*, No.
3  1:04-CV-5373 AW SMS, 2009 U.S. Dist. LEXIS 20180, at *22 (E.D. Cal. March 5, 2009) (quoting
4  cases on "the need for regularity in business"; "established procedures"; "the usual custom"; and a
5  "pervasive, consistent pattern") (internal citations omitted); Opp. at 8:13-27 (citing same). Dr.
6  Layne-Farrar cannot establish "routine practice" because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Mot. at 2:13-23. And
8  InterDigital offers nothing beyond proposed expert testimony to try to show such an automatic
9  procedure, if that were even possible on a complicated and varied undertaking like intellectual
10 property licensing.
11        InterDigital also relies on the "relevance" of the "willing licensee" issue, Opp. at 8:3, but that
12 does not make licensing interactions **with third parties** relevant. Rather than addressing any salient
13 issue, the discussion of ASUS's licensing status with other SEP holders is expressly presented for
14 the purpose of casting aspersions on ASUS ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮▮▮▮. Mot. Ex. 2 ¶¶ 20, 21. This kind of propensity evidence is precisely what Rule 404
16 aims to avoid: attempting to offer evidence of conduct in other instances to show that ASUS, in its
17 dealings with InterDigital, acted in accordance with the purported character trait of being an
18 unwilling licensee. Moreover, ASUS's claims ask this Court to determine the rates ASUS must pay
19 InterDigital. Thus the premise that InterDigital's experts' third party licensing discussion is
20 probative of the "unwilling licensee" argument rings hollow. This discussion is intended only to
21 invoke prejudice.
22        InterDigital argues that it is entitled to introduce allegations about ASUS's licensing with
23 third parties because, allegedly, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"
25 Opp. at 6:10-12. This is an apples-to-oranges comparison. Dr. Scott Morton does not rely on
26 ASUS's licenses with other SEP holders to opine that it is a willing licensee of InterDigital, but only
27 to mention that these licenses do not give it any reason not to license from InterDigital. ECF No.
28 276-8 ¶ 109. Dr. Layne-Farrar, meanwhile, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████████████████████████████████████
████████████████████ See Mot. Ex. 2, App'x H. The latter discussion is transparently calculated to prejudice the jury into drawing a conclusion about ASUS vis-à-vis InterDigital based on evidence that does not involve InterDigital.

In addition to the rule on character evidence, her own lack of foundation for this proposed testimony shows why it is inadmissible. ████████████████████████████████████████
████████████████████████ See Mot. Ex. 1 at 183:20-184:8, 192:5-24, 192:25-193:10, 198:1-21, 198:22-200:13, 200:14-24. █████████████████████████████
████████████████████████████████████████ Id. at 202:18-20. These and other admissions show the superficial nature of her conclusions on ASUS's third-party licensing, demonstrating that her opinions on this subject are not based on sufficient facts or data. See Mot. at 2:13-23.

Because Dr. Layne-Farrar's opinions on third-party licensing are unsupported by adequate facts or data and are improper and irrelevant propensity evidence, they are inadmissible. She should not be permitted to testify to these opinions as set forth in paragraphs 19-21 and 375-377 and Appendixes D and H of her report. Mot. at 4:3-8.

**B.   Dr. Layne-Farrar's ████████████████████████ Are Too Far Removed from This Case**

InterDigital's argument on ████████████████████████████ misses the point. It does not connect Dr. Layne-Farrar's opinions on "█████████████████████████████
██████████ to ETSI's FRAND obligations. This is grounds for exclusion, because the subject she addresses—whether ████████████████ is practiced in other contexts, outside of ETSI FRAND-encumbered patent licensing—is not an issue in dispute. Mot. at 4:11-5:22. InterDigital appears to argue that Dr. Layne-Farrar's opinion is sufficiently tied to the facts of this case just because it shows InterDigital has an economic motive ████████████████████████. See Opp. at 9:17-27. But the proposition that InterDigital had a motive to charge ASUS more money says nothing about whether doing so was FRAND.

InterDigital's Opposition does not address Dr. Layne-Farrar's opinions on irrelevant patent pools at all. See Opp. at 9:17-10:12. As set forth in ASUS's Motion, the patent pools are not

4

governed by ETSI's FRAND obligations, and therefore are not sufficiently tied to this case's facts. Mot. at 5:10-22; *see also Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1043 (9th Cir. 2015) (describing patent pools). Failing to tie expert opinions to the facts of a case renders the opinions subject to exclusion. *See Daubert*, 509 U.S. at 591-92; *Finjan Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF, 2015 WL 4272870, at *8 (N.D. Cal. July 14, 2015) (excluding testimony for lack of connection to the facts of the case).

Proedurally, InterDigital misinterprets the situation when it argues that "ASUS's request is untimely and improper" because it is "directed to expert testimony for use in conjunction with a summary judgment motion." Opp. at 9:2-5. ASUS does not seek summary judgment of breach of contract due to a lack of admissible expert testimony. Quite the opposite: ASUS's summary judgment motion argues that InterDigital's ▮▮▮▮▮ is prohibited *even if* all of its proposed expert testimony is allowed in. *See* ECF No. 230-4. Meanwhile, ASUS's *Daubert* motion against irrelevant ▮▮▮▮▮ is only meaningful if ASUS's motion for summary judgment is *denied*. This is the antithesis of a motion "directed to expert testimony for use in conjunction with a summary judgment motion." *See* ECF Nos. 223, 225; *see also* ECF No. 188 (addressing the situation where "the parties file Daubert motions along with their motions for summary judgment"). These two motions, which have independent bases and purposes, are procedurally proper.

C.   **Dr. Layne-Farrar Should Not Offer Legal Opinions on the Parties' Arbitration**

Contrary to InterDigital's claim that Dr. Layne-Farrar's testimony does not "reflect[] ▮▮▮▮▮" Opp. at 10:18-19, a plain reading of her report confirms that it does. *See* Mot. at 6:3-12. Even InterDigital's brief highlights the legal advocacy in Dr. Layne-Farrar's testimony. It describes her opinions as addressing "▮▮▮▮▮▮▮▮▮▮" Opp. at 11:2-23. Each of these opinions interprets the arbitral award (on the fraudulent inducement claim) and applies that decision to this case (involving FRAND issues not addressed in the arbitration).

5

1    The Court does not require expert witness assistance in interpreting and applying U.S. law.
2    *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Experts interpret and analyze
3    factual evidence. They do not testify about the law. . . .") (internal citations omitted); *see also*
4    *Mannick v. Kaiser Found. Health Plan, Inc.*, No. C 03-5905 PJH, 2006 WL 1626909, at *17 (N.D.
5    Cal. June 9, 2006) ("[F]ederal courts typically prohibit experts from interpreting the law for the court
6    or from advising the court about how the law should apply to the facts of a particular case."). While
7    InterDigital claims that Dr. Layne-Farrar "is describing the legal framework relevant to her
8    opinions," it is not as though she is listing out the legal elements that determine the questions she is
9    addressing, or just referring in passing to sources of law. Opp. at 11:26-12:5; *see also Hangarter v.*
10   *Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (addressing expert's
11   "ancillary" "references to California statutory provisions"). She is opining on the scope and impact
12   of the arbitral award.

13   Worse, her interpretation is incorrect. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
14   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
15   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See*
16   ECF No. 135-4, ¶¶ 8-13, 66. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
17   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* ¶ 61. Citations to the Tribunal's rulings are thus not "contrary" to Dr. Scott
18   Morton's opinions regarding ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
19   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See*
20   ECF No. 276-8 ¶¶ 22, 210; Opp. at 11:11-14. Further, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
21   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
22   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
23   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
24   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
25   ▓▓▓▓▓▓▓▓ ECF No. 135-4, ¶ 109.

26   The risk that introducing the arbitration-related testimony will prejudice the jury is
27   accordingly high. "Courts have repeatedly found that admission of the findings and factual
28   determinations of a 'professional factfinder,' such as a judge, can 'unduly' affect a jury, as jurors are

6

likely to defer to his or her findings and determinations rather than consider the issues themselves." *Sempra Energy v. Marsh USA, Inc.*, No. CV 07-05431 SJO(JCx), 2008 WL 11335050, at *2 (C.D. Cal. Oct. 15, 2008) (citations and quotations omitted). Courts therefore frequently exclude prior adjudications as prejudicial. *See Olaf Soot Design, LLC v. Daktronics, Inc.*, 1:15-cv-05024, ECF No. 304 (S.D.N.Y. Dec. 6, 2018) (excluding IPR evidence regarding same patents claimed to be infringed in pending case because "the likelihood of such evidence to confuse the jury and prejudice Defendants is high"); *see also Ivera Med. Corp. v. Hospira Inc.*, No. 14-cv-1345-H-RBB, 2015 WL 11529819, at *1 (S.D. Cal. July 21, 2015) (finding "[t]he prejudicial potential of [IPR institution evidence] substantially outweighs any probative value" when "the institution of the IPR proceeding [was] based on a different standard"); *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-WHO, 2016 WL 4560071, at *14 (N.D. Cal. Aug. 22, 2018) (excluding evidence of denied IPR petitions because of likely confusion over the full context of the prior proceedings and the risk that the jury would allow the PTO decisions to substitute for its own).

InterDigital cites to *Applied Medical Resources Corp. v. U.S. Surgical Group* in an attempt to distinguish cases cited by ASUS. Opp. at 12:14-17, citing 435 F.3d 1356, 1365-66 (Fed. Cir. 2006). However, *Applied Medical* did not hold that prior decisions on legal proceedings between the same parties on related issues should be admitted. Rather, *Applied Medical* was decided on the facts of the case, where the non-movant did not even allege that the admission of evidence regarding the prior verdict would potentially lead to unfair prejudice. Thus, *Applied Medical* is inapplicable here. Prior judicial opinions from previous lawsuits have been found inadmissible even where they involved the same parties as the pending lawsuit, because "judicial findings of fact present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice." *Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir. 1993) (citations and quotations omitted).

Similarly, here, the risk of confusing and prejudicing the jury is high, especially when the prior rulings are overstated as they are in InterDigital's Opposition and Dr. Layne-Farrar's report.

### D. Dr. Layne-Farrar Is Not Qualified to Present the ▓▓▓▓▓

InterDigital makes an important concession in its response to ASUS's motion, representing

that Dr. Layne-Farrar ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Opp. at 12-13. Nonetheless, she is still unqualified to opine on the merits of the studies, including how they do or do not reflect on the merits of the study presented by Dr. Kakaes. Mot. Ex. 1 at 48:10-12 ("Q. … ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓."); Mot. at 8:6-9. Moreover, permitting Dr. Layne-Farrar to introduce the studies at all creates a risk that a jury would misunderstand their purpose and treat them as evidence of SEP holders' shares of essential patents in the relevant standards. *Chase v. Consol. Foods Corp.*, 744 F.2d 566, 571 (7th Cir. 1984) (excluding evidence with some "slight probative value" because of the risk that "the jury would misunderstand it" as being directed to a different purpose). This risk exists even if Dr. Layne-Farrar and InterDigital scrupulously adhere to the limits of her report.

Further, InterDigital puts forth Dr. Layne-Farrar's opinion ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Opp. at 13:1-4. Dr. Layne-Farrar is not an expert in this area, and thus is not capable of evaluating the quality or comparability of the essentiality studies. Her lack of qualifications bars her from rebutting Dr. Kakaes's technical opinions.[1] If Dr. Layne-Farrar's proposed testimony on this issue is nevertheless permitted, InterDigital must be held to its own representation ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. But because it is not clear that it is even possible for InterDigital to maintain the distinction

---

[1] The present situation is distinct from the one identified in ASUS's Response to InterDigital's *Daubert* motion where Dr. Kakaes, a technical expert, relied on technical information gathered by Concur IP implementing Dr. Kakaes's designed method. ECF No. 327-3 at 11:1-4. It is not the fact that Dr. Layne-Farrar's opinions are based on data collected by others, but the fact that the "data" and the "others" are far outside her specialty. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1141-1142 (9th Cir. 1997).

1  between that use and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, exclusion is the safer course of
2  action in order to avoid prejudicing the jury.

    E.  **Dr. Layne-Farrar Should Not Offer Legal Opinions on ITC Decisions**

As in both parties' earlier briefs, the opinions of both of InterDigital's economic experts on the ITC initial determinations are addressed below, focusing on Dr. Putnam. *See* Section III.A, *infra*.

**III.  DR. PUTNAM'S OPINIONS AT ISSUE SHOULD BE EXCLUDED**

    A.  **Dr. Putnam Should Not Offer Legal Opinions on ITC Decisions**

InterDigital claims that Dr. Putnam "merely describes" the parties' arguments and the ALJs' findings from the previous investigations and uses those as a "background" to his expert opinions regarding FRAND and holdout. This greatly underplays the nature of the proposed testimony. Dr. Putnam uses the ALJ's decisions (as he interprets, quotes, and emphasizes them) to present pages of arguments as to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Mot. Ex. 7 ¶¶ 77-84, 361-385, FRAND App'x ¶¶ 138-161. As stated above, the Court does not require expert assistance in interpreting and applying the law. *Crow Tribe*, 87 F.3d at 1045. Further, the testimony Dr. Putnam is supposedly rebutting is Dr. Scott Morton's three-paragraph litigation history summary, which appears in a background section describing who InterDigital is. Opp. at 15. The professed need to rebut that description does not make it open season for an expert to present arguments about the "instructive" value of ITC ALJ decisions on FRAND.

InterDigital next claims that the ALJ's decisions in the 612, 800, and 868 investigations were not vacated, but instead "remained nonfinal decisions pending further appeal proceedings." InterDigital's sole support for this position is *Beloit Corp v. Valmet Oy TVW Paper Mach. Inc.*, 742 F.2d 1421, 1423 (Fed. Cir. 1984). *Beloit*, however, does not stand for this proposition. To the contrary, it states that when the Commission orders review of an issue, its decision—even if that is to take "no position"—supplants the ALJ's determination on that issue and renders it nonappealable. *Id.* at 1422-24 ("issues not decided by the Commission cannot be presented to this court"). Since the Commission chose not to adopt the aspects of the 612, 800, and 868 initial determinations on which

Dr. Putnam relies, they are not binding even on ITC ALJs, much less on anyone else. Allowing them to be presented as authoritative opinions is contrary to this reality. Moreover, while it is certainly possible to cross-examine Dr. Putnam on the fact that a higher authority declined to adopt the initial and recommended determinations he cites, it is not the jury's role to weigh the significance of that fact, and the Court does not have a need for Dr. Putnam's opinions on the law.

Finally, InterDigital argues that Dr. Putnam does not use confidentiality as a "sword" because he does not directly refer to any confidential information in the initial determinations. However, by using the redacted determinations, themselves the product of confidential evidence, Dr. Putnam presents the kind of incomplete picture the sword/shield rule is designed to prevent. *See Lite On It Corp. v. Toshiba Corp.*, No. CV 07-04758-SGL(AJWx), 2009 WL 10669760, at *7 (C.D. Cal. Mar. 4, 2009) (denying reliance on redacted form of evidence because "[p]rivilege cannot be used as 'both a sword and a shield.'").

B.   Dr. Putnam's ▓▓▓

Dr. Putnam's ▓▓▓ is not grounded in reliable assumptions or data. InterDigital's argument that ▓▓▓ is unavailing, because ▓▓▓ is not the issue in dispute. The concern here is with the way Dr. Putnam implemented it. When Dr. Putnam believed ▓▓▓ ▓▓▓ ▓▓▓ Mot. Ex. 10, 175:10-19; *see also id.* 175:3-7 ("▓▓▓ ▓▓▓"). Yet the reality is, he did ▓▓▓ ▓▓▓

InterDigital tries to defuse this admission as merely ▓▓▓ ▓▓▓ and then to argue that Dr. Putnam ▓▓▓ ▓▓▓ ▓▓▓ Opp. at 18:11-12. This is *ex post* attorney argument, not opinion disclosed in any expert report, much less a timely one. InterDigital has also never sought to supplement Dr. Putnam's report with an opinion that ▓▓▓. Thus, it is not based on anything Dr. Putnam stated or designed; it is simply an after-the-fact argument that ▓▓▓

1  █████████████████████████████████
2  ██████████. Such opinions should not see the light of a courtroom.

   **C.   Dr. Putnam's ██████████████████ Are Too Far Removed from This Case**

InterDigital's claim that "Dr. Putnam's opinions █████████████████
████████████████████████" does not actually establish relevance. *See* Opp. at 20:8-9. Like Dr. Layne-Farrar, Dr. Putnam provides ██████
█████████████ untethered to the facts at issue. His opinions cite frequent flyer programs and product sales (not licensing, much less FRAND licensing) by electronic component suppliers. Mot. Ex. 7 ¶¶ 300-313; Mot. at 15:1-3. His "simplified examples" (Opp. at 20:15) purporting to translate these efficiencies to the licensing context are based only on hypotheticals and not the facts of the present case. Mot. at 15:6-9. Federal Rule of Evidence 702 permits expert testimony only where "the expert has reliably applied the principles and methods to the facts of the case"—which Dr. Putnam has not done with his proposed testimony about the merits of ████████████ outside the FRAND context.

As with Dr. Layne-Farrar, moreover, InterDigital does not even attempt to justify Dr. Putnam's reliance on ██████████████████████████████. *See* Mot. at 15:16-27; Opp. at 20:1-22:2; Mot. Ex. 7, ¶¶ 317-321. This proposed testimony will not aid in resolving the issues in dispute, but merely misdirect the factfinder. *See Daubert*, 509 U.S. at 591 (question is one of "fit"— "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute"); *Finjan*, 2015 WL 4272870, at *8 (N.D. Cal. 2015); Mot. at 15:23-27. Therefore, the Court should exclude Dr. Putnam's testimony.[2]

---

[2] As above, InterDigital again appears to misapply the rule pertaining to filing deadlines for *Daubert* motions. It is not a blanket requirement to file *Daubert* motions with summary judgment motions just because they relate to the same substantive issue in the case. *See* Opp. at 20:4-5. If it were,

D.  **Dr. Putnam's Character Evidence Regarding ASUS's Negotiations with Others Is Inadmissible**

Like Dr. Layne-Farrar, Dr. Putnam relies on ███████████████████ ███████████████████████████████████████████." Mot. Ex. 7, ¶ 315. Dr. Putnam misbrands ASUS as an unwilling licensee toward InterDigital based on interactions with those third parties, irrespective of their differing facts and circumstances. *See id.* ¶ 335; Mot. at 16:9-12. His ███████████████████████████ in this context is a dead giveaway that he aims to use this testimony as improper propensity evidence. *See, e.g.*, Mot. Ex. 7, ¶ 360 (citing ████████ ████████████████████████████████ as support for his ████████████ ██████████████████████████████████████████████████████████████ ███████████████████████); Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."). And InterDigital again does not dispute that this is his purpose, but relies on the inapposite "habit"/"routine practice" exception. *See* Opp. at 21:22-25; *Weil*, 873 F.2d at 1460 (limiting the exception "to the type of nonvolitional activity that occurs with invariable regularity"); *Brennan*, 2002 U.S. Dist. LEXIS 10505, at *10-11. Furthermore, while InterDigital claims that Dr. Putnam has adequate foundation to opine on ASUS's third-party licensing because he "reviewed Dr. Layne-Farrar's report" (Opp. at 21:16-17), that same information left Dr. Layne-Farrar unable to comment on ████████████████████████████████████████ ██████████████████████████████ *See* Mot. at 2:14-23, 16:14-23. Therefore, the Court should exclude Dr. Putnam's testimony on licensing with third parties.

E.  **Dr. Putnam Should Not Offer Legal Opinions on the Parties' Arbitration**

InterDigital claims that Dr. Putnam ████████████████████████████████ contending it is an appropriate role for an economic expert ██████████████████ ████████████████████████████████████████████████████████████

---

InterDigital's *Daubert* motions relating to the 2008 PLA and the Sherman Act claim—i.e., each one of its motions, in whole or in part—would also be untimely. *See* ECF Nos. 233-4, 276-4.

1  ▓▓▓ Opp. at 22:8-9. That explanation by itself demonstrates Dr. Putnam's engagement in legal
2  advocacy. Dr. Putnam, however, does not stop at ▓▓▓
3  Instead, as InterDigital's Opposition confirms, ▓▓▓
4  ▓▓▓
5  ▓▓▓ Opp. at 22:16-19. In addition to being beyond Dr. Putnam's professional
6  competence, this testimony suffers from factual defects similar to Dr. Layne-Farrar's: ▓▓▓
7  ▓▓▓
8  ▓▓▓. *See* Opp. at 22:12-19; ECF No. 135-4, ¶ 12. As
9  discussed in Section II.C above, this testimony is outside the province of an expert; it is misleading
10 as to the scope and impact of the arbitration; and it imposes upon a jury the undue weight of a
11 "professional factfinder." Thus, courts have excluded this type of prior judicial determination as
12 prejudicial, particularly when it was based on different standards and (limited) evidence.

### IV. DR. HUBER'S OPINIONS AT ISSUE SHOULD BE EXCLUDED

14 Dr. Huber's proposed testimony strays beyond his professed expertise and experience.
15 Despite being a German intellectual property lawyer turned consultant (*see* Mot. Ex. 5 at 3), he
16 overtly and transparently undertakes to rebut expert opinions on French law, economic calculations
17 of FRAND rates, and competition economics and law. Referring to economic papers, he concludes
18 that ▓▓▓ and the existence of royalty
19 stacking. Mot. Ex. 6, ¶¶ 75, 76-83, 85-101. He discusses opinions and statements from the U.S. ITC,
20 FTC, Trade Representative, DOJ, PTO, and Court of Appeals for the Federal Circuit. *Id.* ¶¶ 76, 81,
21 89, 91. He sets forth his (inaccurate) understanding of Professor Stoffel-Munck's analysis and argues
22 it "▓▓▓." *Id.* ¶ 108. He purports to apply or
23 distinguish provisions of the French civil code. *Id.* ¶¶ 111-115. This is all from a witness who admits
24 he is not an expert on French law, antitrust, or economics. Mot. Ex. 4, 6:22-8:4, 29:9-21. As with the
25 other experts subject to this motion, Dr. Huber should not be a vehicle for *de facto* legal briefing.
26 Even in his putative area of expertise, Dr. Huber's range is limited, either by deliberate
27 choice or by lack of applicable experience. First, for the 1995-2009 period, Dr. Huber cannot have it
28 both ways. ▓▓▓

1   ███████████. *See* Mot. Ex. 4 at 148:22-149:19.
2   ████████████████
3   ████. *Id.* at 150:21-151:8. ████████████
4   ████████████████
5   *Id.*; *see also id.* at 149:22-150:7. Second, for the period after 2009, Dr. Huber's outdated industry
6   experience undisputedly does not stretch to the time frame relevant to 4G. This is not simply a
7   matter of the "specificity" of his qualifications; it concerns whether his experience actually
8   encompasses, at all, the subject about which he claims to speak from broad knowledge. As Dr.
9   Huber himself asserted, timing matters. *See* Mot. Ex. 4 [Huber Dep.] at 148:4-21 ████
10  ████████████████
11  ████████████████
12  ███.").[3]

13  **V.    CONCLUSION**

14          InterDigital's experts' slanted rendition of prior legal proceedings and their attempts to paint
15  ASUS as a chronic bad actor create a substantial risk of prejudice. A jury should not be encouraged
16  to decide the case on events that occurred outside the relevant facts or on rulings from outside this
17  Court. Nor would a jury learn anything of value from an unreliable ████████ or
18  from irrelevant generalizations about licensing practices. InterDigital's experts should be limited to
19  presenting opinions within their specialties that meet a minimum threshold of reliability. Their
20  testimony at issue should be excluded as described above and in ASUS's opening brief.

---

25  [3] IDC has no response to ASUS's challenges to Dr. Huber's reliance on "████████
26  ████████████" or his commentary on ████████████
27  ████████████ *See* Mot. at 22-23; Opp. at 22-25.

Dated: December 19, 2018

By: */s/ Michael R. Franzinger*
Michael R. Franzinger

*Attorney for Plaintiffs*
ASUS COMPUTER INTERNATIONAL, and,
ASUSTEK COMPUTER INCORPORATED