1  [*Counsel listed on signature page*]

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11  | | |
ASUS COMPUTER INTERNATIONAL; and ASUSTEK COMPUTER INCORPORATED | | Case No. 15-cv-1716 (BLF)

12                                                    **JOINT PRETRIAL STATEMENT AND**
         Plaintiffs,                                  **ORDER**

13

14  vs.                                               Pretrial Conference Date:  April 4, 2019
                                                      Time:  1:30 p.m.
15  INTERDIGITAL, INC.; INTERDIGITAL              **Judge: Hon. Beth Labson Freeman**
    COMMUNICATIONS, INC; INTERDIGITAL
16  TECHNOLOGY CORPORATION; IPR
    LICENSING, INC.; and INTERDIGITAL
17  PATENT HOLDINGS, INC.,

18         Defendants.

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   THE ACTION ................................................................................................................. 1

   A.   The Parties ........................................................................................................ 1

   B.   Substance of the Action ................................................................................... 1

   C.   Relief Sought .................................................................................................... 7

   D.   Federal Jurisdiction and Venue ....................................................................... 8

II.  FACTUAL BASIS OF THE ACTION ........................................................................... 9

   A.   Undisputed Facts .............................................................................................. 9

   B.   Disputed Facts ................................................................................................ 10

III. DISPUTED LEGAL ISSUES ...................................................................................... 14

IV.  ESTIMATE OF TRIAL TIME .................................................................................... 21

V.   TRIAL ALTERNATIVES AND OPTIONS ................................................................ 21

   A.   Settlement Discussion .................................................................................... 21

   B.   Amendments or Dismissals ............................................................................ 21

   C.   Bifurcation or Separate Trial of Issues ......................................................... 21

VI.  TRIAL MANAGEMENT ............................................................................................ 26

   A.   Witnesses ....................................................................................................... 26

   B.   Rule 50 Motions ............................................................................................ 27

   C.   Exhibits .......................................................................................................... 27

   D.   Lodging of Certain Appendix Materials with the Court Electronically ........ 27

   E.   Trial Logistics ................................................................................................ 28

VII. ADDITIONAL ISSUES ............................................................................................... 32

   A.   Presentation of Rebuttal Evidence ................................................................ 32

   B.   Confidentiality at Trial .................................................................................. 34

   C.   Determination of French Law ........................................................................ 35

   D.   Stipulated Motions in Limine ........................................................................ 35

VIII. APPENDICES .............................................................................................................. 35

IX.     BINDING EFFECT OF THE JOINT PRETRIAL STATEMENT AND ORDER ............... 36

Pursuant to Judge Freeman's Standing Order Re Final Pretrial Conference – Jury Trial, Plaintiffs ASUS Computer International and ASUSTeK Computer Incorporated (collectively, "ASUS") and Defendants InterDigital, Inc., InterDigital Communications, Inc., InterDigital Technology Corporation, IPR Licensing, Inc. and InterDigital Patent Holdings, Inc. (collectively, "IDC" or "InterDigital"), submit this joint pretrial statement and order.

## I.     THE ACTION

### A.     The Parties

The plaintiffs are ASUS Computer International and ASUSTeK Computer Incorporated.

The defendants that have been served and have appeared are InterDigital, Inc., InterDigital Communications, Inc., InterDigital Technology Corporation, IPR Licensing, Inc. and InterDigital Patent Holdings, Inc.

### B.     Substance of the Action

The claims, counterclaims, and defenses that remain to be decided, and the elements of each are identified below.[1]

The following claims were pled in ASUS's First Amended Complaint ("FAC") (ECF 108-6), with examples of ASUS's contentions set forth after each element.[2]

<u>Count I (Violation of Section Two of the Sherman Act).</u>

[Element 1] The alleged market is a relevant antitrust market.  ASUS contends that Cellular Technology Markets are relevant antitrust markets. Cellular Technology Markets are the technologies competing to provide the functionalities of 4G cellular standards, together with all other technologies that could have been used in alternative cellular standards to perform the same or reasonably interchangeable functionalities, including the alternative of not standardizing the feature at all.

---

[1] To further illuminate the issues, the proponent of the claim, counterclaim, or defense includes further discussion on the elements below.

[2] The Court dismissed Counts II, IV, and V of the FAC on summary judgment.  ASUS reserves its rights of appeal.  Count VII was resolved in arbitration.

1    [Element 2] InterDigital possessed monopoly power in that market.  ASUS contends that

2    InterDigital possessed monopoly power in Cellular Technology Markets by virtue of 3GPP and

3    ETSI adopting InterDigital's patented technology into the 4G standards.

4     [Element 3] InterDigital willfully acquired its monopoly power in that market by engaging

5    in anticompetitive conduct.  ASUS contends that InterDigital submitted false declarations to ETSI

6    stating that InterDigital agreed to license its patents on FRAND terms, and that 3GPP and ETSI

7    would not have otherwise adopted InterDigital's patented technology into the 4G standards.

8    [Element 4] ASUS was injured in its business or property because of InterDigital's

9    anticompetitive conduct.  ASUS contends it incurred unnecessary litigation expense and paid

10   InterDigital significantly more in royalties for ASUS's 4G products than it would have under a

11   FRAND license due to InterDigital's false FRAND commitments and ownership of a standard-

12   essential patent portfolio.

13       Count III (Breach of Contract Resulting from Ongoing Negotiations)

14   [Element 1] InterDigital did not fulfill its obligation to be prepared to grant irrevocable

15   licenses to its patents disclosed to ETSI to the extent that the patents so disclosed are or become and

16   remain essential, on fair, reasonable and nondiscriminatory terms and conditions.  ASUS contends

17   that InterDigital was obligated to offer it a 4G license with fair, reasonable terms and conditions on

18   par with those it granted to ASUS's competitors, including Samsung, and InterDigital has not done

19   so.

20   [Element 2] ASUS was harmed by InterDigital's failure to perform this obligation.  ASUS

21   contends that InterDigital's failure to offer ASUS a 4G FRAND license resulted in unnecessary

22   litigation expense and ASUS paying InterDigital significantly more in royalties for ASUS's 4G

23   products than it would have under a FRAND license.

24       Count VI (Waiver)

25   [Element 1] InterDigital voluntarily and intentionally gave up its rights to obtain

26   compensation for its essential patents for the 4G cellular network other than at reasonable rates and

27   on non-discriminatory terms.  ASUS contends that InterDigital voluntarily and intentionally

28   informed ETSI and the telecommunications industry that InterDigital would license its 4G-essential

patents on FRAND terms and conditions, thereby waiving any right it may have had to obtain other remedies against 4G standards implementers such as ASUS.

Count VIII (Violation of the Delaware Consumer Fraud Act)[3]

[Element 1] Within the state of Delaware, InterDigital acted, used or employed any deception, fraud, false pretense, false promise, misrepresentation, or concealed, suppressed, or omitted any material fact, in connection with the sale, lease or advertisement of InterDigital's 4G standard essential patents. ASUS contends that InterDigital, by and through its employees located in Delaware and/or its corporate entities incorporated in Delaware, falsely committed to licensing its 4G standard essential patents on FRAND terms.

[Element 2] InterDigital intended that others rely upon such concealment, suppression or omission. ASUS contends that InterDigital intended that 3GPP, ETSI, and the telecommunications industry rely on InterDigital's false representations.


InterDigital's Answer and Counterclaim (ECF 111-2) asserts the following counterclaim:

Declaratory judgment that ASUS's tort claims are preempted or invalid. This counterclaim relates to ASUS's claims for violations of the Delaware Consumer Fraud Act and the Sherman Act. The elements of InterDigital's counterclaim include: (1) the existence of an actual and immediate controversy between InterDigital and Counter-defendants on the issue of the applicability of the Sherman Act and Delaware Consumer Fraud Act to InterDigital's patent enforcement activities;[4] (2) InterDigital's patent enforcement activities, including its efforts to negotiate with ASUS over a license to InterDigital's 4G essential patents, were undertaken in good faith and were not objectively and subjectively baseless; (3) InterDigital has the right to pursue good faith patent enforcement activities under the First Amendment to the U.S. Constitution, the Patent Clause of the U.S.

---

[3] During the summary judgment process, ASUS withdrew the portion of Count VIII that overlapped with the fraudulent inducement claim that was arbitrated.

[4] The Court granted summary judgment against ASUS on the California Unfair Competition Law claim. InterDigital preserves its declaratory judgment counterclaim as to this cause of action in the event of appeal.

Constitution, and Title 35 of the U.S. Code, and is entitled to immunity from tort claims based on such activity; and (4) Asustek's claims for violations of the Sherman Act and the Delaware Consumer Fraud Act impermissibly burden InterDigital's Constitutional and statutory rights, and therefore are invalid or preempted as applied.

InterDigital also asserts a number of defenses in its Answer and Counterclaim (ECF 111-2) that remain to be decided. Three of InterDigital's remaining defenses are legal and will be tried to the jury. The rest of InterDigital's remaining defenses are equitable, and thus will not be tried to the jury, but instead will be decided by the Court in the event of a liability verdict.

Statute of Limitations (Fifth Defense in InterDigital's Answer and Counterclaim). This legal defense is based on the Delaware statute of limitations. This defense applies to ASUS's claim for violation of the Delaware Consumer Fraud Act and has the following elements: (1) the applicability of a three-year statute of limitations; and (2) claimed harm by ASUS occurring before April 15, 2012 (*i.e.*, three years before ASUS initiated this action).

Claims/Damages Barred by the 2008 PLA (Twenty-Seventh in InterDigital's Answer and Counterclaim). This legal defense is based on the provisions of the 2008 PLA. This defense applies to ASUS's claims for violation of the Sherman Act, violation of the Delaware of the Consumer Fraud Act, and breach of contract. This defense has the following elements: (1) the mutual agreement in the 2008 PLA that the royalties owed and paid to InterDigital are "non-refundable"; (2) ASUS's request for a refund of royalties owed and paid to InterDigital under the 2008 PLA; and (3) whether ASUS's claims for damages are barred by the 2008 PLA, which does not allow for any refund of royalties paid.

*Noerr-Pennington* (Twelfth Defense in InterDigital's Answer and Counterclaim). This legal defense is based on the *Noerr-Pennington* doctrine. This defense applies to ASUS's claims for violation of the Sherman Act (and any other claims premised on the violation of the Sherman Act). This defense has the following elements: (1) InterDigital's patent enforcement activities, including its efforts to negotiate a 4G license with ASUS, were undertaken in good faith; and (2) ASUS's claims curb InterDigital's right to engage in good faith patent enforcement activity and should therefore be barred.

1     Unclean hands (First Defense in InterDigital's Answer and Counterclaim). This equitable

2  defense applies to all of ASUS's claims against InterDigital. This defense has the following

3  elements: (1) ASUS has acted with unclean hands in its negotiations with InterDigital by failing to

4  negotiate in good faith and refusing to accept a license to InterDigital's essential 4G patents on

5  FRAND terms and conditions; (2) ASUS's misconduct relates to the claims raised by ASUS in this

6  litigation seeking relief for InterDigital's alleged failure to license essential 4G patents on FRAND

7  terms and conditions; and (3) ASUS's forfeiture of its right to have the Court consider its claims and

8  grant any equitable relief.

9     Waiver (Second Defense in InterDigital's Answer and Counterclaim). This equitable defense

10  applies to all of ASUS's claims against InterDigital. This defense has the following elements:

11  (1) ASUS's  voluntary and intentional action indicating that it is refusing to accept a license to

12  InterDigital's 4G essential patents on FRAND terms and conditions, and that it agreed to pay "non-

13  refundable" royalties for a license to InterDigital's 3G patents; and (2) through such intentional

14  conduct ASUS has relinquished its rights to obtain claimed damages and requested relief based on

15  InterDigital's alleged failure to offer a 4G license on FRAND license terms and conditions.

16     Estoppel (Third Defense in InterDigital's Answer and Counterclaim). This equitable defense

17  applies to all of ASUS's claims against InterDigital. This defense has the following elements: (1)

18  ASUS made false or misleading representations about its intention to accept a license to

19  InterDigital's 4G essential patents on FRAND terms and conditions and its intention to pay "non-

20  refundable" royalties for a license to InterDigital's 3G patents; (2) ASUS intended for InterDigital to

21  rely on ASUS's false or misleading representations; (3) InterDigital relied on ASUS's false or

22  misleading representations; (4) InterDigital was harmed by ASUS's false or misleading

23  representations; and (5) ASUS should thus be estopped from obtained any claimed damages and

24  requested relief.

25     Laches (Fourth Defense in InterDigital's Answer and Counterclaim). This equitable defense

26  applies to all of ASUS's claims against InterDigital. This defense has the following elements: (1)

27  ASUS unreasonably delayed in asserting its claims against InterDigital; and (2) ASUS's

28  unreasonable delay prejudiced InterDigital.

Unjust Enrichment (Eighth Defense in InterDigital's Answer and Counterclaim).  This equitable defense applies to ASUS's claims for violation of the Sherman Act, violation of the Delaware Consumer Fraud Act, and breach of contract.  This defense has the following elements: (1) ASUS received a benefit from the use of InterDigital's 4G technology; (2) InterDigital has not fairly and adequately compensated for ASUS's use of InterDigital's 4G technology; (3) ASUS has unjustly retained the benefits of using InterDigital's 4G technology without paying fair and adequate compensation to InterDigital to the loss of InterDigital; and (4) InterDigital should be compensated for any such unjust enrichment.

Preemption (Ninth Defense in InterDigital's Answer and Counterclaim) and Conflict with U.S. Constitution and U.S. Code (Twentieth Defense in InterDigital's Answer and Counterclaim).  These equitable defenses apply to any claim by ASUS premised on InterDigital's patent enforcement efforts, including any effort to license its 4G technology to ASUS.  Patent enforcement conduct has been recognized to be privileged under the U.S. Constitution's right to petition, and the Federal Circuit has also held that tort claims may be preempted when they conflict with the U.S. Constitution or federal patent law.  These defenses have the following elements:  (1) ASUS's claims relate to InterDigital's patent enforcement efforts; and (2) ASUS's claims adversely affect InterDigital's rights under the First Amendment to the U.S. Constitution, the Patent Clause of the U.S. Constitution, and Title 35 of the U.S. Code as applied in this action.

Setoff (Sixteenth Defense in InterDigital's Answer and Counterclaim).  This equitable defense applies to any claims for which ASUS is seeking damages.  This defense has the following elements:  (1) proof of recoverable damages by ASUS; and (2) whether the amount ASUS owes to compensate InterDigital for the use of InterDigital's 4G patents should reduce any damages recoverable and proven by ASUS.

Res Judicata/Judicial Estoppel (Eighteenth Defense in InterDigital's Answer and Counterclaim).  This equitable defense would apply to any ASUS claim related to the representations at issue.  This defense has the following elements:  (1) a statement made by ASUS in a prior proceeding; (2) on which it prevailed; and (3) InterDigital would be prejudiced if ASUS were

1  not estopped from taking a different position or permitted to proceed as if it had not made those

2  representations.

3      **C.**    **Relief Sought**

4      ASUS seeks the following relief:

5          A.  Judgment in favor of ASUS and against InterDigital;

6          B.  Judgment that InterDigital is liable for breach of contract;

7          C.  Judgment that InterDigital is liable for violation of Section 2 of the Sherman Act;

8          D.  Judgment that InterDigital is liable for waiver;

9          E.  Judgment that InterDigital is liable for violations of Delaware Consumer Fraud Act;

10         F.  Judgment that ASUS is entitled to a fair, reasonable and non-discriminatory license

11           from InterDigital;

12         G.  Judgment that InterDigital specifically perform its contractual obligation to grant a

13           license on fair, reasonable and non-discriminatory terms;

14         H.  Judgment setting the proper fair, reasonable and non-discriminatory terms for

15           InterDigital's cellular and wireless patent portfolio;

16         I.  Judgment that the offers InterDigital made to ASUS are not fair reasonable and non-

17           discriminatory;

18         J.  Judgment that each of InterDigital's patents declared to be essential or potentially

19           essential to standard setting bodies is unenforceable;

20         K.  Judgment against InterDigital for damages in the amount of excess royalties ASUS

21           has paid InterDigital;

22         L.  Judgment against InterDigital for interest for the amount of excess royalties ASUS

23           has paid InterDigital;

24         M.  Judgment that InterDigital has monopolized the Cellular Markets and Wireless

25           Markets in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;

26         N.  Treble damages pursuant to Section 4 of the Clayton Act;

27         O.  Judgment against InterDigital for the amount of damages ASUS proves;

28

---

P.   Such further equitable relief as necessary or appropriate, including full restitution to ASUS and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by InterDigital from ASUS, its customers, and its potential customers as a result of such unfair business acts and practices;

Q.   Judgment granting ASUS its expenses, costs and attorneys' fees; and

R.   Any other and further relief as the Court deems just and proper.

With respect to damages, ASUS seeks $58.3 million in damages for excess royalties for 4G products through the fourth quarter of 2018.  Such damages are applicable to ASUS's claims for violation of the antitrust laws, breach of contract with regard to 4G negotiations, and violation of the Delaware Consumer Fraud Act.  Under the Clayton Act, any damages for a violation of the antitrust laws are subject to trebling, and ASUS may further seek its expenses, costs and attorneys' fees, to be determined post-trial.

InterDigital seeks the following relief:

- Declaratory judgment that Asustek's statutory tort claims are invalid or preempted as-applied under the First Amendment to the U.S. Constitution, the Patent Clause of the U.S. Constitution, and Title 35 of the U.S. Code;

- Denial of all relief and/or remedies requested by Plaintiffs;

- Entry of judgment in favor of InterDigital and against Counter-defendants, assessing the costs of this action and attorneys' fees against Counter-defendants; and

- Award of any other relief the Court may deem just and proper.

**D.   Federal Jurisdiction and Venue**

The parties agree that the Court has federal question jurisdiction over this action pursuant to 15 U.S.C. § 15 and 28 U.S.C. §§ 1331 and 1337.  The parties do not dispute that the Court currently has supplemental jurisdiction over the state law claims asserted in this action pursuant to 28 U.S.C. § 1367.  ASUS asserts, and InterDigital denies, that the Court also has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332 because this is an action between the citizens of different states and because the value of the injunctive relief, the value of ASUS' rights that this action will protect and enforce, and the extent of injury to be prevented exceed $75,000, exclusive of

1    interest and costs.  The Court has jurisdiction over InterDigital's counterclaim pursuant to 28 U.S.C.

2    §§ 1331, 1338, 1367, and 2201-02.

3          InterDigital denies that ASUS has Article III standing and that the Court has subject matter

4    jurisdiction because ASUS has suffered no injury sufficient to confer standing on its remaining

5    claims, and because ASUS is seeking an advisory opinion and/or relief that has been or will be

6    mooted.

7          ASUS submits that venue is proper in this District pursuant to Section 12 of the Clayton Act,

8    15 U.S.C. § 22, and 28 U.S.C. §§ 1391(b) (d).  ASUS submits that parties have both irrevocably

9    consented to exclusive jurisdiction and venue of the state and federal courts in the San Jose Division

10   of the United States District Court for the Northern District of California.  ECF 108-2 § 6.10.

11   InterDigital submits that consistent with the limitations of the 2008 PLA, the parties have both

12   irrevocably consented to exclusive jurisdiction and venue of the state and federal courts in the San

13   Jose Division of the United States District Court for the Northern District of California.  *Id.*

14   Furthermore, all defendants are subject to personal jurisdiction in California and in this District, and

15   ASUS Computer International's principal place of business is in this District.

16   **II.    FACTUAL BASIS OF THE ACTION**

17         **A.    Undisputed Facts**

18         The parties agree that, for the purposes of this case, the following facts are undisputed and

19   may be incorporated into the trial record by stipulation of the parties:

20   • InterDigital has made a contractual commitment as follows:  To the extent that

21      InterDigital's patents listed in IPR Information Statements are or become and remain

22      essential in respect of an ETSI work item, standard, or technical specification identified

23      in the IPR Information Statement, InterDigital is prepared to grant irrevocable licenses to

24      ASUS under such essential patents on fair, reasonable and nondiscriminatory terms and

25      conditions.

26   • ASUS has the right to enforce that contractual obligation.

27   • The parties are obligated to negotiate in good faith.

28

- InterDigital submitted statements to ETSI identifying LTE (4G) patents as to which it had a present belief that the patents may be or may become essential, and made FRAND licensing declarations to the extent patents are or become and remain essential, on at least 9/16/2010, 10/31/2011, 11/30/2012, 11/26/2013, 9/26/2014, and 12/11/15.

## B.    Disputed Facts

The following facts regarding ASUS's claims are disputed and will be litigated at trial:

- Count I (Violation of Section Two of the Sherman Act)
    - Whether the alleged market is a relevant antitrust market.
    - Whether InterDigital possessed monopoly power in that market.
    - Whether InterDigital willfully acquired its monopoly power in that market by engaging in anticompetitive conduct.
    - Whether ASUS was injured in its business or property because of InterDigital's anticompetitive conduct.
    - Whether ASUS proved any damages.

- Count III (Breach of Contract Resulting from Ongoing Negotiations)
    - To the extent that InterDigital's 4G patents listed in IPR Information Statements are or become and remain essential in respect of an ETSI work item, standard, or technical specification identified in the IPR Information Statement, whether InterDigital breached a contractual commitment to be prepared to grant irrevocable licenses to ASUS under such essential patents on fair, reasonable and nondiscriminatory terms and conditions.
    - Whether ASUS has acted as an unwilling licensee or engaged in "hold out."
    - Whether ASUS was harmed by InterDigital's failure to perform its obligation.
    - Whether ASUS proved any damages.

- Count VI (Waiver)
    - Whether InterDigital voluntarily and intentionally gave up its rights to obtain compensation for its essential patents for 4G cellular network wireless standards other than at reasonable rates and on non-discriminatory terms.

1          o   Whether ASUS proved any damages.

2     •   Count VIII (Violation of the Delaware Consumer Fraud Act)

3          o   Whether InterDigital acted, used or employed any deception, fraud, false pretense,

4              false promise, misrepresentation, or concealed, suppressed, or omitted any

5              material fact, in connection with the sale, lease or advertisement of licenses to

6              InterDigital's 4G standard essential patents.

7          o   Whether InterDigital intended that others rely upon such concealment,

8              suppression or omission.

9          o   Whether ASUS proved any damages.

10    The following facts regarding InterDigital's defenses barring ASUS's claims for relief are

11    disputed and will be litigated at trial[5]:

12        InterDigital's Legal Defenses

13    •   Statute of Limitations (Fifth Defense in InterDigital's Answer and Counterclaim)

14         o   Whether the Delaware Consumer Fraud Act claim has a three-year statute of

15             limitations.

16         o   Whether any portion of ASUS's claimed harm occurred before April 15, 2012.[6]

17    •   Claims/Damages Barred by the 2008 PLA (Twenty-Seventh Defense in InterDigital's

18        Answer and Counterclaim)

19         o   Whether the parties mutually agreed in the 2008 PLA that the royalties owed and

20             paid to InterDigital are "non-refundable."

21         o   Whether ASUS is requesting a refund of royalties owed and paid to InterDigital

22             under the 2008 PLA.

---

[5] ASUS believes InterDigital is asserting an unreasonable number of defenses for trial. ASUS does not consent that these defenses remain viable for trial in light of the Court's Summary Judgment Order, the completed arbitration, or InterDigital's disclosures in this litigation.  InterDigital responds that it is presenting a reasonable number of defenses, has reduced substantially the number of defenses from those originally asserted in its Answer to ASUS's FAC, and notes that only a very limited number of its defenses are legal defenses for the jury to weigh.

[6] ASUS would further add that the "discovery rule" applies and would identify the issue of when it knew or reasonably should have known of such harm as a disputed fact.

- Whether ASUS's claims for damages are barred by the 2008 PLA, which does not allow for any refund of royalties paid.
- *Noerr-Pennington* (Twelfth Defense in InterDigital's Answer and Counterclaim)
  - Whether InterDigital's patent enforcement activities were undertaken in good faith.
  - Whether ASUS's claims curb InterDigital's right to engage in good faith patent enforcement activity and should therefore be barred.

InterDigital's Equitable Defenses

- Unclean Hands (First Defense in InterDigital's Answer and Counterclaim)
  - Whether ASUS negotiated in bad faith with InterDigital.
  - Whether ASUS's misconduct relates to the claims raised by ASUS in this litigation seeking damages for InterDigital's alleged failure to license InterDigital's 4G essential patents on FRAND terms and conditions.
- Waiver (Second Defense in InterDigital's Answer and Counterclaim)
  - Whether ASUS has engaged in voluntary and intentional action indicating that it is refusing to accept a 4G license on FRAND terms and conditions.
  - Whether ASUS has relinquished its rights to obtain claimed damages and requested relief based on InterDigital's alleged failure to offer a 4G license on FRAND license terms and conditions.
- Estoppel (Third Defense in InterDigital's Answer and Counterclaim)
  - Whether ASUS made false or misleading representations about its intention to accept a license to InterDigital's 4G essential patents on FRAND terms and conditions.
  - Whether ASUS intended for InterDigital to rely on ASUS's false or misleading representations that it intended to accept a license to InterDigital's 4G essential patents on FRAND terms and conditions.

- o   Whether InterDigital relied on ASUS's false or misleading representations that it intended to accept a license to InterDigital's 4G essential patents on FRAND terms and conditions.
- o   Whether InterDigital was harmed by ASUS's false or misleading representations.

- Laches (Fourth Defense in InterDigital's Answer and Counterclaim)
  - o   Whether ASUS unreasonably delayed in asserting its claims against InterDigital.
  - o   Whether InterDigital has been prejudiced by such delay.

- Unjust Enrichment (Eighth Defense in InterDigital's Answer and Counterclaim)
  - o   Whether ASUS received a benefit from the use of InterDigital's 4G essential patents.
  - o   Whether InterDigital has been fairly and adequately compensated for ASUS's use of InterDigital's 4G essential patents.
  - o   Whether and to what extent ASUS unjustly retained the benefits of using InterDigital's 4G essential patents without paying fair and adequate compensation to InterDigital to the loss of InterDigital.

- Preemption (Ninth Defense in InterDigital's Answer and Counterclaim) and Conflict with U.S. Constitution and U.S. Code (Twentieth Defense in InterDigital's Answer and Counterclaim)
  - o   Whether ASUS's claims relate to InterDigital's patent enforcement efforts.
  - o   Whether ASUS's claims adversely affect InterDigital's rights under the First Amendment to the U.S. Constitution, the Patent Clause of the U.S. Constitution, and Title 35 of the U.S. Code as applied in this action.

- Setoff (Sixteenth Defense in InterDigital's Answer and Counterclaim)
  - o   Whether ASUS has proven any recoverable damages.
  - o   Whether InterDigital is entitled to setoff against any damages ASUS proves, is awarded, and recovers by amounts owed to InterDigital for ASUS's prior unlicensed use.

- Res Judicata/Judicial Estoppel (Eighteenth Defense in InterDigital's Answer and Counterclaim)
    - o Whether ASUS made any statements in a prior proceeding on which it prevailed.
    - o Whether InterDigital would be prejudiced if ASUS were not estopped from taking a different position or permitted to proceed as if it had not made those representations.

## III.   DISPUTED LEGAL ISSUES

- FRAND rate setting:
    - o ASUS Contention:  ASUS seeks determination of a FRAND rate for InterDigital's declared 4G standard-essential patents.  *See* Expert Report of Pr. Philippe Stoffel-Munck, Ph.D. (Apr. 25, 2018) ("Stoffel-Munck Expert Report"), ¶¶ 82-90, 119-131; *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1045 (9th Cir. 2015) (affirming district court's RAND rate setting determination); *TCL Comm'ns Tech. Holdings Ltd. v. Telefonaktiebolaget LM Ericsson*, No. 8:14-cv-00341-JVS-DFM, Dkt. 1962 (C.D. Cal. Sept. 14, 2018) (setting FRAND rate for cellular telecommunications patent portfolio).  In prevailing on a motion for summary judgment, InterDigital represented to this Court and the parties that this "is a case where the parties can't agree on a license and they go to the Court to resolve issues on the license" (ECF 324-3 at 38:25-39:2), and this judicially estops InterDigital from seeking otherwise now.  InterDigital's position would have the parties' dispute go unresolved, thwarting its FRAND commitment and indeed its obligations under its FRAND contract.  ETSI specifies that "In the absence of agreement among the parties, national courts have sole authority to resolve IPR disputes."  ETSI Guide on IPR, Dispute Resolution § 4.3.  This Court can determine the FRAND terms, as ASUS's complaint requests, without requiring a predicate finding of breach.  The FRAND rate determination is not merely (as InterDigital characterizes it) a specific performance order, but rather a process

14

1   of interpreting what InterDigital's obligation is.  InterDigital's proposal not

2   only contradicts its prior concession that it is the Court's role to set a rate, but

3   also seeks to avoid fully defining its obligation before the jury has to decide

4   whether it breached that obligation.

5   o   InterDigital Contention:  ASUS has asserted no declaratory judgment claim in

6   this case, and accordingly it has not demonstrated a basis for a "FRAND rate

7   setting proceeding" – at least where liability under the claims at issue in this

8   case has not been established first.  The ETSI commitment does not relate to

9   "declared" SEPs; rather it applies only to disclosed patents to the extent such

10  patents are or become and remain essential.  ASUS's breach of contract claim

11  must be decided by the jury under the Seventh Amendment because ASUS is

12  seeking the legal remedy of damages, and no remedies can be determined in

13  the absence of an antecedent liability finding.  *Cf. Microsoft Corp. v.*

14  *Motorola, Inc.*, 795 F.3d 1024, 1045 (9th Cir. 2015) (affirming district court's

15  RAND rate setting determination because Motorola consented to

16  determination of rate by court and waived jury trial right); *TCL Commc'ns*

17  *Tech. Holdings Ltd. v. Telefonaktiebolaget LM Ericsson*, No. 8:14-cv-00341-

18  JVS-DFM, ECF 1962 (C.D. Cal. Sept. 14, 2018) (setting FRAND rate for

19  cellular telecommunications patent portfolio by stipulation of the parties as

20  remedy for declaratory judgment claims and expressly declining to reach

21  breach of contract claim in a bench trial where plaintiff sought no damages,

22  and accordingly no jury trial right existed).  Further, InterDigital's argument

23  at the October 11, 2018 summary judgment hearing is not inconsistent with its

24  position here.  The statements by counsel for InterDigital simply mention that

25  this dispute involves "parties [who] can't agree on a license" and who have

26  "[gone] to the court to resolve issues on the license."  *See* ECF 324-3 at 38:25-

27  39:2.  This says nothing as to what issues should be decided by the court

28  versus a jury.  Indeed, the topic of "setting" FRAND rates never even came

15

1    up, and InterDigital certainly never represented that a FRAND rate setting

2    proceeding would be appropriate here – especially where there is no

3    declaratory judgment claim, where there has been no liability finding, and in

4    the absence of consent by both parties.  *See* ECF 324-3 at 39:6-9.

5    • Nature of FRAND obligation:

6         o ASUS Contention:  ASUS contends that to satisfy its commitment to be

7           prepared to grant licenses on FRAND terms and conditions, a standard-

8           essential patent declarant must make a FRAND-compliant license offer and

9           cannot refuse to license a potential licensee on terms similar to the potential

10          licensee's competitors, or whether the licensor need only negotiate in good

11          faith. *See* Stoffel-Munck Expert Report, ¶¶ 18-97; *Microsoft Corp. v.*

12          *Motorola, Inc.*, 854 F.Supp.2d 993, 999 (W.D. Wash. 2012); *Realtek*

13          *Semiconductor Corp. v. LSI Corp.*, No. 12-cv-3451, 2014 WL 2738226 at *6

14          (N.D. Cal. 2014).

15        o InterDigital Contention:  InterDigital contends that the express, written

16          FRAND commitment applies to disclosed patents only "to the extent" they

17          "are or become and remain essential," and that the commitment to be

18          "prepared to grant" a license on FRAND terms and conditions requires

19          negotiation in good faith toward such a license.  Good faith negotiation is a

20          mutual obligation of both the licensor and licensee.  *See* Corrected Rebuttal

21          Expert Report of Prof. Yves-Marie Laithier; *In the Matter of Certain Wireless*

22          *Devices With 3G Capabilities*, Inv. No. 337-TA-800, Initial Determination,

23          2013 WL 3961230, at *232 (June 28, 2013) (ETSI FRAND commitment

24          "imposes on both negotiating parties a duty to negotiate in good faith."); *TCL*

25          *Commc'ns Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. CV

26          15-2370 JVS (DFMX), 2018 WL 4488286, at *55 (C.D. Cal. Sept. 14, 2018)

27          (finding ETSI FRAND commitment imposes "mutual duty of the parties to

28          negotiate in good faith"); *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No.

6:18-cv-00243-JRG, ECF No. 457 (E.D. Tex. Feb. 15, 2019) (jury verdict finding that licensee "breached its duty to negotiate with Ericsson in good faith for a license to Ericsson's cellular standard-essential patents"); *Unwired Planet Int'l Ltd. v. Huawei Techs. Co.*, No. EWHC 711 (Pat), at ¶ 160 (UK, Apr. 5, 2017) (finding good faith "obligation applicable to the implementer").

- Specific performance:
  - o ASUS Contention:  InterDigital should be ordered to make a license available to ASUS on FRAND terms determined by the Court.  *See* Stoffel-Munck Expert Report, ¶¶ 119-131; *Realtek Semiconductor Corp. v. LSI Corp.*, No. 12-cv-3451, 2014 WL 2738226 at *6 (N.D. Cal. 2014) (finding that "upon Realtek's request for a license, to be in compliance with its RAND commitment, LSI must offer a license to the [] patent on RAND terms, including a royalty rate as determined by the jury."); *TCL Comm'ns Tech. Holdings Ltd. v. Telefonaktiebolaget LM Ericsson*, No. 8:14-cv-00341-JVS-DFM, Dkt. 1962 at 115 (C.D. Cal. Sept. 14, 2018) (determining the remedy for FRAND violation should be an injunction setting forth license terms at the court-determined FRAND rate).  InterDigital obligated itself to do more than merely negotiate in good faith when it contractually agreed to extend to ASUS and others FRAND terms and also to have Courts resolve disputes over such terms.
  - o InterDigital Contention:  ASUS must first prove liability for a breach of contract before it can obtain a remedy, and then must prove entitlement to the remedy sought.  *See Realtek Semiconductor, Corp. v. LSI Corp.*, No. C-12-3451, 2014 WL 2738226, at *6 (N.D. Cal. June 16, 2014) (denying permanent injunction where no irreparable harm proven by plaintiff).  In this case, ASUS cannot prove entitlement to the remedies sought.  *See* Corrected Rebuttal Expert Report of Prof. Yves-Marie Laithier.

- Injunction regarding InterDigital's use of FRAND-committed patents:

  - <u>ASUS Contention</u>:  Under French contract law, antitrust law, or the doctrine of waiver, InterDigital should be barred from seeking remedies other than FRAND royalties (including injunctions and exclusion orders) for alleged infringement of its FRAND-committed patents.  *See* Stoffel-Munck Expert Report, ¶¶ 139-148; *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 889 (9th Cir. 2012) (affirming district court's injunction preventing RAND-committed patent holder from enforcing injunction); *Realtek Semiconductor Corp. v. LSI Corp.*, No. 12-cv-3451, 2014 WL 2738226 at *2 (N.D. Cal. 2014) (court issued preliminary injunction to prevent RAND-committed patent holder from enforcing ITC exclusion order or injunctive relief).

  - <u>InterDigital Contention</u>:  ASUS must first prove liability on a claim before it can obtain a remedy.  Then, in order to obtain injunctive relief, ASUS must establish entitlement to such a remedy under applicable legal standards, including under the *eBay* factors and standing.  Such a remedy as requested by ASUS is also not proper under French law.  *See* Corrected Rebuttal Expert Report of Prof. Yves-Marie Laithier; *Realtek Semiconductor*, 2014 WL 2738226, at *6 (denying permanent injunction where no imminent irreparable harm proven by plaintiff, as required by *eBay*); *In re Qualcomm Antitrust Litig.*, No. 17-MD-2733-LHK, 2018 WL 4110498, *12 (N.D. Cal. Aug. 29, 2018) (denying injunction against enforcement of patent exclusion order where "Plaintiff's claim of an imminent injury is too speculative").

- Contract Interpretation Under French Law

  - <u>ASUS Contention</u>:  Under French law, the clear meaning of a contract's black-letter language controls. In the absence of a clear meaning, the Court tries to discover the genuine common intent of the parties to the contract. If there was not a common understanding as to a given point, such as in an association with a constantly changing and non-unanimous membership, the

1  court should determine what the understanding of reasonable persons of the

2  same kind as the parties would have been. In construing a contract, the Court

3  considers the meaning that is most consistent with the purpose of the contract

4  as well as the one that is most consistent with the other terms of the contract.

5  Further, an interpretation that causes the contract to comply with the law (e.g.,

6  competition law) is preferred over one that would contravene the law. In the

7  case of the IPR Declaration to ETSI, these interpretive methods establish that

8  the declarant has not merely committed to observe its pre-existing legal

9  obligation to be a good-faith negotiator, but rather to undertake to grant a

10  FRAND license. *See* Stoffel-Munck Expert Report, ¶¶ 18-97.

11  o  <u>InterDigital Contention</u>:  Under French law, contracts are interpreted based on

12  the common intent of the parties to a contract.  Ambiguous terms must be

13  construed according to the rules of the French Civil Code.  With respect to an

14  association, the meeting of the minds, as expressed by the by laws, is

15  controlling, regardless of what minority members may believe.  The basic

16  guiding rule is what the parties wanted when entering into the agreement.

17  Circumstances to be taken into account include the nature of the contract, the

18  status of the parties (professional or consumer), their technical skill, their

19  knowledge of the sector, their business experience, the meaning commonly

20  given to terms within the trade concerned, the previous practices between the

21  parties (in any) and usages of trade.  *See* Corrected Rebuttal Expert Report of

22  Prof. Yves-Marie Laithier.

23  • Litigation Expenses as Harm or Injury In Fact

24  o  <u>ASUS Contention</u>:  ASUS disclosed in the original Joint Pretrial Statement

25  filed March 21, 2019 that it "may further seek its expenses, costs and

26  attorneys' fees," and its amended discussion of the elements of its claims now

27  restates that position.  ASUS's claim of harm and injury in fact does not

28  depend exclusively on litigation expenses.  However, even if it did, such

19

1    expenses are an injury ASUS suffered by having to bring suit to obtain a

2    FRAND license, and are appropriately cognizable as such.  *See Apple Inc. v.*

3    *Motorola Inc.*, 886 F. Supp. 2d 1061, 1081-83 (W.D. Wis. 2012) (denying

4    motion for summary judgment premised on unavailability of litigation

5    expenses as remedy for FRAND violation); *Huawei Techs. Co. v. Samsung*

6    *Elecs. Co.*, No. 3:16-cv-02787-WHO, Order Denying Motion to Strike Jury

7    Demand, Dkt. No. 454, slip op. at 3-5 (N.D. Cal. Feb. 17, 2019) (finding

8    expert fees a sufficient damages basis to set a trial for FRAND violation).

9         o   InterDigital Contention:  ASUS cannot rely on "litigation expenses" incurred

10            in this case to show harm or injury in fact.  This argument should be precluded

11            as untimely as ASUS identified it as a basis for "harm" or "injury in fact" for

12            the first time in its amendment to the joint pretrial statement on March 26,

13            2019.  ASUS's prior discussion of "expenses, costs and attorneys' fees" came

14            solely in the context of remedies for its Sherman Act claim.  Further, "same

15            case" litigation expenses are not permitted items of harm or injury.  *Steel Co.*

16            *v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Obviously, however,

17            a plaintiff cannot achieve standing to litigate a substantive issue by bringing

18            suit for the cost of bringing suit.  The litigation must give the plaintiff some

19            other benefit besides reimbursement of costs that are a byproduct of the

20            litigation itself."); *Summit Valley Indus. v. United Bhd. of Carpenters &*

21            *Joiners*, 456 U.S. 717, 726 (1982) ("The American Rule precludes courts

22            from awarding attorney's fees incurred during prior proceedings in the same

23            case.").  *Apple v. Motorola* and *Huawei v. Samsung* are inapposite given that,

24            in both cases, the plaintiff included litigation expenses from defending against

25            patent infringement claims asserted by the defendant in its alleged damages,

26            and thus was not solely seeking expenses from asserting its own claims.

27            InterDigital has not sued ASUS for patent infringement and no such patent

28            infringement defense litigation expenses are at issue here.  Assertions of

20

1                injury or harm based on expenses from one's own filing of a lawsuit are

2                clearly precluded by Supreme Court case law.

## IV.   ESTIMATE OF TRIAL TIME

The parties estimate that they will need a total of 18 hours per side for testimony at trial.  The parties' witness lists include time for 10 ASUS fact witnesses, 7 ASUS expert or consultant witnesses, 9 InterDigital or former InterDigital fact witnesses, and 7 InterDigital expert witnesses. These witnesses include those who may be called by deposition.

<u>ASUS estimate for FRAND rate determination</u>:  Under ASUS's proposal for bifurcation or separate trial of issues, which the parties address in section V.C below, ASUS estimates that the parties will need 10 hours per side for the FRAND rate determination proceeding, which will involve a subset of the identified witnesses.

<u>InterDigital response</u>:  As stated (*see* sections III and V.C), InterDigital objects to ASUS's bifurcation proposal as without legal basis.  Further, as a case management matter, ASUS had ample opportunity at prior case management conferences, including the one on February 14, 2019, to raise its bifurcation proposal.  ASUS never did, and its belated proposal is untimely and should be considered waived.

## V.   TRIAL ALTERNATIVES AND OPTIONS

### A.   Settlement Discussion

The parties have discussed settlement.  Magistrate Judge Susan van Keulen held a settlement conference on February 14, 2019.  The case did not settle.  The parties are continuing to explore and discuss the possibility of a settlement.

### B.   Amendments or Dismissals

The parties do not propose any amendments to the pleadings or dismissals of parties, claims, or defenses.

### C.   Bifurcation or Separate Trial of Issues

#### ASUS's Statement

The Court stated at the *Daubert* hearing that it understood it "was a judicial responsibility to set the FRAND rate."  (*Daubert* Hrg. Tr. at 36:25-37:1.)  ASUS agrees that is a question for the

1  Court, and it believes the proper procedure for addressing that question is the one Judge Robart

2  conducted in *Microsoft v. Motorola*, 795 F.3d 1024, 1033 (9th Cir. 2015).  Similarly, Judge Selna in

3  *TCL* determined the appropriate FRAND rate for ETSI essential patents.  *TCL Comm'ns Tech.*

4  *Holdings Ltd. v. Telefonaktiebolaget LM Ericsson*, No. 8:14-cv-00341-JVS-DFM, Dkt. 1962 (C.D.

5  Cal. Sept. 14, 2018) (setting FRAND rate for cellular telecommunications patent portfolio).

6          In *Microsoft*, Judge Robart conducted a bench trial to determine a RAND rate for Motorola's

7  patent portfolio, and then proceeded to a jury trial on the plaintiff's breach of contract claim.  Judge

8  Robart reasoned that "[w]ithout a clear understanding of what RAND means, it would be difficult or

9  impossible to figure out if Motorola breached its obligation to license its patents on RAND terms."

10  *Id.*  The Ninth Circuit commented favorably on this procedure in affirming the district court's use of

11  it.  *Id.* at 1038-39 ("Judge Robart began by determining, quite reasonably, that the true RAND

12  royalty rate for Motorola's SEPs was an important fact for the jury to consider in determining

13  whether Motorola breached it good faith obligations under the RAND agreements.").

14          InterDigital has acknowledged that, with regard to 4G licensing, this "is a case where the

15  parties can't agree on a license and they go to the Court to resolve issues on the license."  (ECF 324-

16  3 at 38:25-39:2.)  That is exactly what the FRAND rate setting procedure is meant to accomplish.

17  InterDigital's quarrel is only with the timing of that determination. But InterDigital requested

18  through a case management conference statement and during the February 14, 2019 case

19  management conference that the Court resolve all issues in this litigation, not just the FRAND terms.

20          InterDigital now acknowledges too that the Court should construe its contract with ETSI.  Its

21  claim of a constitutional right to avoid a rate determination before the jury trial therefore rings

22  hollow.  InterDigital can only justify this position by proposing a partial construction of the contract

23  that stops short of figuring out the most important obligation at issue, the FRAND rate.  This makes

24  little sense when InterDigital's proposed procedure would deprive the jury of the "clear

25  understanding of what [F]RAND means" that the Court's rate determination would provide.  *Id.* at

26  1033.  InterDigital's suggestion that the jury first determine breach and the Court later determine the

27  FRAND rate puts the proverbial cart before the horse.  Waiting until after the jury trial for the Court

28  to make its FRAND rate determination would unnecessarily squander part of the value of the Court's

1   ruling.  Furthermore, it would do so without any compensating efficiency benefit:  there would still

2   be two proceedings scheduled, only in the opposite order from what ASUS proposes.  InterDigital's

3   proposed bifurcation too risks inconsistent outcomes, where the jury presumes one FRAND rate in

4   determining breach, while the Court ultimately determines another.  What is more, the damages for

5   the breach claim depend, in part, on what the FRAND rate is, and the jury should be provided with

6   that rate before determining damages, as the 9th Circuit approved in *Microsoft*.  Indeed, given that

7   the Court's determination of a FRAND rate could guide the parties toward settlement, under ASUS's

8   proposed procedure the jury trial may even become unnecessary in the end.  The Court should

9   therefore determine the 4G FRAND rate before the jury trial.[7]

10          **InterDigital's Statement**

11          InterDigital objects to ASUS's proposal of an initial bench trial to set a FRAND rate for

12   ASUS's 4G capable products and does not consent to proceeding in this manner.

13          First, ASUS's proposal is untimely.  ASUS raised the concept of an initial "bench trial to set

14   a FRAND rate" for the first time in March 2019.  However, since the filing of this lawsuit in 2015,

15   both parties have contemplated a jury trial.  Both parties made timely jury demands, and ASUS did

16   not propose a bench trial in the initial case management conference.  ECF 115-2 (Joint Case

17   Management Conference Statement with no request for bench trial); ECF 122 (docket text entry for

18   Case Management Order indicating "Jury Selection set for 5/6/2019 09:00 AM before Hon. Beth

19   Labson Freeman. Jury Trial set for 5/6/2019 . . . . ").  Further, ASUS remained silent on its proposal

20   for an initial bench trial at the most recent February 14, 2019 Case Management Conference, during

21   which the question of a bench versus jury trial was squarely before the Court and the subject of the

22   parties' meet and confer discussions and argument at the conference.  Instead, ASUS maintained that

23   it continues to seek damages, a legal remedy, and therefore is entitled to a jury trial.[8]  *See* ECF 370

24   (February 2019 Joint Case Management Conference Statement in which ASUS references its "right

25   _____

[7] InterDigital below now contemplates that there can be no rate set for a 4G license, unless it is

26   "incremental" on top of the 2008 PLA's rate.  But InterDigital has never identified a FRAND rate
for 4G licensing, either incremental to or in place of that of the PLA.

27   [8] InterDigital does not concede that ASUS can prove any damages in light of the summary judgment
order, but ASUS has affirmed that it continues to seek damages.

28

to a jury trial").  Moreover, ASUS said nothing about any proposal to bifurcate.  On the issue of sequencing, InterDigital expressly raised at the Case Management Conference that first, ASUS "would have to prove liability" and only after a liability finding, would ASUS "present to the court for a remedy."  2/14/2019 Hr'g Tr. at 37:22-25.  Yet ASUS did not at that time make any suggestion that it advocated the opposite procedure of an initial bench trial to determine a "FRAND rate" prior to a liability finding.  If ASUS wished to propose a bifurcated trial structure with an initial "bench trial to set a FRAND rate" for "ASUS's 4G capable products," it should have done so long before now, given that the parties are on the eve of trial and are in the midst of preparing pretrial submissions in contemplation of a jury trial to commence on May 6, as ordered by the Court.  Switching at the eleventh hour from a trial on liability to a FRAND rate setting exercise would prejudice InterDigital, as its pretrial preparations have not contemplated such a trial.  If the *Microsoft v. Motorola* bench trial is a guide to the type of trial contemplated by ASUS's proposal — following which Judge Robart issued a 207-page Findings of Facts and Conclusions of Law — that is far different from the trial the parties have been contemplating for the last several years.  It would potentially involve additional fact and expert testimony that would not necessarily be part of a more straightforward jury trial on liability and damages.  ASUS's proposal is thus not only untimely but highly prejudicial.

Second, ASUS's proposal is contrary to law.  Despite InterDigital's belief that ASUS has not suffered and cannot prove any damages, ASUS continues to claim damages, maintain that ASUS's claims are legal rather than equitable, and argue that the parties have a right to a jury trial under the Seventh Amendment.  *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477 (1962) (right to jury trial exists for a "claim for a money judgment" which is "wholly legal in its nature" and indeed "it would be difficult to conceive of an action of a more traditionally legal character" than "an action on a debt allegedly due under a contract").  ASUS's admission that its proposal is based on the *Microsoft v. Motorola* case demonstrates why an initial bench trial cannot be employed here to determine the "FRAND" issues underlying ASUS's claims on which it seeks damages.  In *Microsoft v. Motorola*, the Ninth Circuit rejected Motorola's challenge to Judge Robart's structure of an initial bench trial to "set a FRAND rate" followed by a jury trial on breach of contract based on a ground that does not

1   exist here:  Motorola affirmatively consented to holding an initial rate-setting bench trial prior to a

2   jury trial, thereby waiving its Seventh Amendment jury trial right.  The Ninth Circuit held as

3   follows:

4            Microsoft contends that Motorola affirmatively consented to a
         bench-trial determination of the RAND royalty rate for each SEP
5         portfolio, thereby waiving any argument that the court lacked the
         authority to decide the RAND rate itself.  We agree.
6

7                              . . . .

8            [T]he very fact that the court's findings of fact and conclusions
         of law overlap with the issues in the breach of contract trial could give
9         rise to a Seventh Amendment problem if Motorola did not waive its
         right to a jury trial on those findings.  *See Toyota Motor Sales, U.S.A.,*
10        *Inc. v. Tabari,* 610 F.3d 1171, 1184 (9th Cir. 2010) (citing *Dollar Sys.,*
         *Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir. 1989)).
11        Once the court made those findings, they became law of the case.  *See*
         *id.*  But a court must generally avoid ordering proceedings in a manner
12        that creates "the risk that findings made in the bench trial w[ill]
         become the law of the case and prevent a jury from determining the
13        common issues."  *Id.*

14   *Microsoft v. Motorola*, 795 F.3d at 1038, 1053.  InterDigital has not so consented.  ASUS's

15   reference to an out-of-context snippet of unrelated discussion at the summary judgment hearing does

16   not even mention a bench versus jury trial, much less evidence a clear waiver of a Seventh

17   Amendment right to a jury.

18          Thus, in accordance with the Seventh Amendment and controlling federal law, the Court

19   should first hold a jury trial on the legal claims, to be followed by a Court determination of any

20   appropriate equitable claims over which the Court has jurisdiction.  "[W]here there are issues

21   common to both the equitable and legal claims, 'the legal claims involved in the action must be

22   determined prior to any final court determination of [the] equitable claims.'"  *Dollar Sys., Inc. v.*

23   *Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir. 1989), quoting *Dairy Queen,* 369 U.S. at 479

24   (footnote omitted).  "Otherwise, 'prior non-jury trial of the equitable claims may infringe the right to

25   jury trial on the legal claims because of the collateral estoppel or res judicata effect of a prior judicial

26   determination of issues common to the two sets of claims."  *Id.*, quoting *Calnetics Corp. v.*

27   *Volkswagen of Am., Inc.*, 532 F.2d 674, 690 (9th Cir.), cert. denied, 429 U.S. 940 (1976) (citation

28   omitted).  Clearly, there is very significant overlap between a "FRAND rate determination" and the

1   legal claims on which ASUS seeks damages, as all of ASUS's claims are dependent on an assertion

2   that InterDigital breached a FRAND commitment.  ASUS's proposed trial sequencing would violate

3   the Seventh Amendment, and should be rejected.

4        Third, ASUS's proposal seeking a determination of a new "FRAND rate" for "4G capable

5   products" is without basis.  ASUS is already paying 3G royalties on what ASUS calls "4G capable

6   products" under the 2008 PLA because the products in question are actually **3G/4G** capable products

7   that utilize **both** 3G related patents and 4G related patents.  ASUS's inclusion of 4G technology in

8   addition to the 3G technology in these products does not change its obligation to pay royalties for 3G

9   patents under the PLA, under which "non-refundable" royalties are due on all units that are

10  "designed to operate in accordance with one or more 3G Licensed Standards."  ASUS's bench trial

11  proposal would have the Court set a new "FRAND rate" covering both 3G patents and 4G patents

12  that would supersede and void ASUS's royalty obligations for 3G patents under the PLA.  Such an

13  outcome is precluded by the Court's summary judgment order, which rejected ASUS's challenges to

14  the PLA both as a matter of judicial estoppel and because there is no legal basis on which to find that

15  the PLA became "non-FRAND" based on subsequent events.  Even if one accepted ASUS's

16  incorrect theory that a precursory "FRAND rate setting" bench trial occurring before a liability

17  determination could be appropriate here, at most, the purpose of such a trial would be to determine

18  the royalties owed by ASUS for InterDigital's 4G essential patents not already covered by the 2008

19  PLA.  Any determination regarding FRAND terms for InterDigital's 4G essential patents would

20  need to be made without abrogating the royalties that have been paid, and continue to be owed, for a

21  license to InterDigital's 3G patents included in the 2008 PLA, which ASUS is not permitted to

22  challenge.

23  **VI.   TRIAL MANAGEMENT**

24       **A.   Witnesses**

25       The parties wish to discuss with the Court how to handle the testimony of witnesses who may

26  be called by both sides.  In particular, InterDigital wishes to confirm that witnesses who are called

27  live will be allowed to complete all testimony in one sitting, including a scope of cross-examination

28  (or redirect, as the case may be) that exceeds the scope of the initial examination.  ASUS would like

1   to consider that issue with a full understanding of the Court's preferences regarding the presentation

2   of witnesses, for example, witnesses the parties have identified to be called live and whose Rule

3   30(b)(6) depositions have also been designated.

4   **B.      Rule 50 Motions**

5   For efficiency and avoidance of repetition, ASUS proposes that the Court defer receiving

6   Rule 50 motions until after all the evidence has been submitted.

7   InterDigital does not agree to an alteration of Federal Rule of Civil Procedure 50.

8   **C.      Exhibits**

9   The parties respectfully request certain amendments to the Court's Standing Order re Final

10  Pretrial Conference - Jury Trial regarding trial exhibits.  The Court's Standing Order specifies that

11  the exhibits should be pre-marked for identification with numbers by means of exhibit tags affixed to

12  the back of the last page of each exhibit, and that the plaintiff's tags shall be yellow and the

13  defendant's tags shall be green.  Also, the Court's Standing Order specifies that the parties shall

14  submit two complete copies plus the original set of exhibits for use by the Judge and chambers staff.

15  If it is acceptable to the Court, the parties request permission to submit *digital* versions of all

16  exhibits, rather than hard copies, in advance of trial.  To the extent either party intends to use any

17  exhibit at trial, the party seeking to use the exhibit will provide two (or more) paper copies of the

18  exhibit for use by the Judge and chambers staff.  As specified by the Court's Standing Order, such

19  copies will be in three-ring binders with the exhibits separated by tabs denoting the exhibit numbers.

20  Exhibit tags will also be affixed on the front page of each exhibit in the binder; ASUS's tags will be

21  yellow, and InterDigital's tags will be green.  These exhibit binders will be provided prior to each

22  witness's testimony.

23  Further, the parties propose to lodge with their exhibit lists an indication of the exhibits that

24  both parties have placed on their lists.  The parties hereby reserve all objections to exhibits, whether

25  or not they appear as duplicates on the exhibit lists.

26  **D.      Lodging of Certain Appendix Materials with the Court Electronically**

27  Part C of the Court's Standing Order re Final Pretrial Conference - Jury Trial provides for the

28  filing of certain materials as appendices to this Joint Pretrial Statement.  Because of the considerable

---

27

size of the following items, and the confidential nature of many of these documents, the parties have delivered a USB flash drive containing the following materials, with the Court's chambers copy of their Joint Pretrial Statement:

- Expert witness CVs and expert reports
- Deposition designations
- Discovery response designations

If the Court would prefer that these materials be filed in the public docket (subject to any motion to seal), or lodged with the Court in a different manner, the parties will do so.

### E.   Trial Logistics

1.    The parties agree that a single version of duplicate exhibits (including both substantively identical documents produced by a party or parties under different production numbers and a single document marked in one or more depositions) may be used.  The parties further agree that more legible copies of a marked deposition exhibit may be substituted for a marked deposition exhibit, and that the parties may affix the deposition exhibit number to the front of the more legible version of the document.

2.    Legible copies of documents may be offered and received into evidence to the same extent as an original unless a genuine question is raised as to the authenticity of the original, or in the circumstances it would be unfair to admit the copy in lieu of the original.

3.    Unless otherwise agreed by the parties during trial, the following procedures shall apply to the identification of witnesses and exhibits for a party's direct examination prior to the witness's testimony and/or use of exhibits at trial, or the witness's deposition testimony that will be played or read prior to playing a video of or reading the deposition testimony at trial (other than for impeachment of a witness), and demonstrative exhibits that will be used at trial:

a) The parties will identify specific witnesses that they intend to call live on direct via email, and the order in which they will be called, by 6:00 p.m. Pacific time one calendar day before the direct examination is expected to take place (e.g., if a party intends to call a witness on Monday, the witness must be disclosed to the other party by 6 p.m. on the preceding Sunday);

b)  By no later than 6:30 p.m. Pacific time one calendar day before a witness is expected to testify using demonstrative exhibits, the offering party shall provide a color PDF or PowerPoint copy of any demonstrative exhibits to be used for the first time in connection with the witness (e.g., if a party intends to use demonstrative exhibits on Monday, the offering party shall provide a copy to the other party by 6:30 p.m. on the preceding Sunday);

c)  By no later than 8:00 p.m. Pacific time one calendar day before the witnesses are expected to first testify and the demonstrative exhibits are expected to first be used, the party receiving the identifications of the witnesses and demonstrative exhibits shall inform the offering party of any objections (e.g., for a witness disclosed to testify on Monday, objections must be disclosed to the offering party by 8 p.m. on the preceding Sunday);

d)  By no later than 9:00 p.m. Pacific time (or such later time agreed upon by the parties) one calendar day before the witnesses are expected to first testify and the demonstrative exhibits are expected to first be used, the parties shall meet and confer to resolve any objections (e.g., for a witness disclosed to testify on Monday, the meet and confer shall take place by 9 p.m. on the preceding Sunday);

e)  By no later than 6:30 p.m. Pacific time two calendar days before the offering party intends to play or read deposition testimony at trial (other than for impeachment of a witness), the offering party will provide to the other party via email a list of the specific pages and lines of each transcript, together with a clip report of the video deposition testimony to be played, it intends to play or read, and the designated testimony will be from the offering party's deposition designations as identified in connection with this Joint Pretrial Statement and Order (e.g., if a party intends to call a witness via deposition testimony on Monday, the testimony must be disclosed to the other party by 6:30 p.m. on the preceding Saturday);

f)  By no later than 6:00 p.m. Pacific time one calendar day before the deposition designations are expected to be first read or played, the party receiving the deposition designations and the identification of any exhibits to be offered through the deposition designations shall inform the offering party of lines from the depositions to counter-designate for each transcript, together with a clip report of the video deposition testimony counter-designated, and the

1    counter-designated testimony will be from the offering party's deposition designations as

2    identified in connection with this Joint Pretrial Statement and Order (e.g., for a witness

3    disclosed to testify on Monday, counter-designations must be disclosed to the offering party

4    by 6 p.m. on the preceding Sunday);

5    g)  By no later than 8:00 p.m. Pacific time (or such later time agreed upon by the parties) one

6        calendar day before the depositions designations are expected to first be read or played, the

7        parties shall meet and confer to resolve any objections, including objections to counter-

8        designations and/or counter-counter designations (e.g., for a witness disclosed to testify on

9        Monday, the meet and confer shall take place by 8 p.m. on the preceding Sunday);

10   h)  The parties shall identify by email any objected-to trial exhibits on their final exhibit lists that

11       they intend to use in their respective opening statements by 6:00 pm Pacific time one

12       calendar day before opening statements.  The parties shall make objections, if any, to the

13       disclosed trial exhibits by 8:00 p.m. Pacific time that day and shall promptly meet and confer

14       on any such objections by 9:00 p.m. Pacific time that day (or such later time agreed upon by

15       the parties).

16   i)   The parties agree that demonstratives to be used in their respective opening statements shall

17       be disclosed by 6:00 p.m. Pacific time one calendar day before opening statements.  The

18       parties shall make objections, if any, to the disclosed opening demonstratives by 8:00 p.m.

19       Pacific time that day and shall promptly meet and confer on any such objections by 9:00 p.m.

20       Pacific time that day (or such later time agreed upon by the parties).

21   j)   Any continuing disputes shall be raised with the Court as appropriate before each trial day

22       commences.

23   k)  <u>ASUS Position</u>:  ASUS does not believe InterDigital's proposal stated in item (l)

24       immediately below is necessary or warranted.

25   l)   <u>InterDigital Position</u>:  In addition to the above, InterDigital proposes that the Court adopt the

26       following procedure for the identification of exhibits that will be used by an offering party

27       through witnesses presented for direct examination or via deposition designation.  Given the

28

number of potential exhibits at issue, this procedure will facilitate the resolution of objections and is fair to both parties.

> (1)  By no later than 6:30 p.m. Pacific time one calendar day before the offering party intends to offer an exhibit through that party's direct examination of a witness, the offering party will identify that exhibit and the intended sponsoring witness to the other party via email (e.g., if a party intends to call a witness on Monday, any exhibits intended to be offered through that witness must be disclosed to the other party by 6:30 p.m. on the preceding Sunday);

> (2) By no later than 6:30 p.m. Pacific time two calendar days before the offering party intends to offer an exhibit through a witness whose deposition testimony will be played or read, the offering party will identify that exhibit and the intended sponsoring witness to the other party via email (e.g., if a party intends to play a video of or read deposition testimony on Monday, any exhibits intended to be offered through that witness must be disclosed to the other party by 6:30 p.m. on the preceding Saturday); and

> (3) The parties will identify objections to exhibits and meet and confer regarding those objections on the same schedule set forth above for demonstrative exhibits.

4.      The above notice provisions shall not apply to any demonstrative exhibits created live at trial while a witness is testifying.  The notice provisions of the immediately preceding paragraph shall also not apply to a demonstrative exhibit prepared in advance of the witness examination that consists only of the enlargement, highlighting, ballooning, or excerption of trial exhibits, demonstratives, or testimony.  However, the underlying trial exhibit, demonstrative, or testimony itself must still be disclosed in accord with the above notice provisions and no such enlargement, highlighting, ballooning, or exception shall be permitted to be shown to the jury until after the underlying trial exhibit has been admitted, the underlying demonstrative has been used, or the underlying testimony has been heard by the jury, except as part of opening statements.

5.      If a party presents a witness by deposition at trial, the party offering the testimony will play or read the designated portion of the testimony and the opposing party's counter-designations and any counter-counter-designations, omitting objections or colloquy where

1  appropriate, in the order in which the testimony appears in the transcript.  The time for such

2  designations shall be allocated to the party that designated them.

3  **VII.    ADDITIONAL ISSUES**

4  **A.    Presentation of Rebuttal Evidence**

5  **ASUS's Statement**

6  Addressing InterDigital's objection to rebuttal evidence as stated below, ASUS provides the

7  following concise explanation of its basis for identifying rebuttal witnesses.

8  ASUS has identified potential rebuttal witnesses who may be called to rebut evidence and

9  argument introduced in InterDigital's case.  For instance, InterDigital identified 11 defenses in this

10  submission.  The notion that ASUS must predict, or address, all of InterDigital's 11 defenses in its

11  opening case is not only novel, but also unsupportable and inefficient.  Indeed, depending on the

12  nature of InterDigital's responsive case, ASUS may have to call witnesses that differ than those it

13  has preliminarily identified.

14  A rebuttal case is intended to rebut the defenses and counter-evidence that InterDigital may

15  attempt to raise in its case.  ASUS is not "saving" some evidence; it is preserving its right to put on a

16  rebuttal case, as is typically done by those carrying the burden.  ASUS intends to use rebuttal

17  evidence according to its "proper function"—namely, "to contradict, impeach or defuse the impact

18  of the evidence offered by an adverse party."  *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-

19  CV-04236-BLF, 2016 WL 4272430, at *1 (N.D. Cal. Aug. 15, 2016).

20  By way of example, Vincent Hong may be called to rebut allegations made by InterDigital

21  witnesses on topics for which he has knowledge, such as negotiations between ASUS and

22  InterDigital.  Rudi Bekkers, Gregory Leonard, Jacques deLisle, and Fiona Scott Morton are all

23  expert witnesses who submitted rebuttal expert reports addressing issues raised by InterDigital's

24  experts.  InterDigital did not move to strike or raise any other objection to the service of their

25  rebuttal reports.  Indeed, the Leonard and Scott Morton rebuttal reports were expressly authorized by

26  InterDigital as a compromise resolution to a discovery dispute.  These experts may be called to

27  testify on rebuttal as to the subject matter of their rebuttal expert reports.

28

**InterDigital's Statement**

InterDigital objects to ASUS's stated intent to call in rebuttal the following five witnesses: Vincent Hong, Rudi Bekkers, Gregory Leonard, Jacques deLisle and Fiona Scott Morton.  Mr. Hong is a fact witness whom ASUS also intends to call during its case-in-chief.  The other four individuals are expert witnesses, three of whom ASUS also intends to call in its case-in-chief (the one witness ASUS intends to call only in rebuttal is Professor deLisle).

The admission of rebuttal evidence is rare and subject to several limitations.  <u>First</u>, the so-called rebuttal testimony must relate to topics that plaintiff could not have foreseen as being offered during defendant's case.  *See, e.g., Daly v. Far Eastern Shipping Co. PLC*, 238 F.  Supp. 2d 1231, 1238 (W.D. Wash. 2003) ("Rebuttal evidence is admissible only where the need for it could not have been foreseen at the time the plaintiff presented its case-in-chief.  . . . When a party knows that a contested matter is in the case, yet fails to address it in a timely fashion, he scarcely can be heard to complain that the trial court refused to give him a second nibble at the cherry.") (internal quotation omitted)); *Braun v. Lorillard, Inc.*, 84 F.3d 230, 237 (7th Cir. 1996) ("The plaintiff who knows that the defendant means to contest an issue that is germane . . . must put in his evidence on the issue as part of his case in chief.  Otherwise the plaintiff could reverse the order of proof, in effect requiring the defendants to put in their evidence before the plaintiff put in his.").  <u>Second</u>, the so-called rebuttal testimony may not be cumulative of the testimony the expert offers during plaintiff's case-in-chief.  *See, e.g., Evans v. Multnomah County*, 492 F. App'x 756, 760 (9th Cir. 2012) (affirming exclusion of proffered rebuttal testimony that "would be cumulative of the testimony [plaintiff] presented in his case-in-chief").  <u>And third</u>, plaintiff may not use rebuttal evidence "merely to bolster the plaintiff's case-in-chief." *Estate of Brutsche v. City of Fed. Way*, 300 F. App'x 552, 553 (9th Cir. 2008); *see also Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir. 1991) ("Rebuttal must be kept in perspective; it is not to be used as a continuation of the case-in-chief.").

Here, it appears ASUS improperly intends to "save" some of its expert witnesses's testimony—and perhaps some of Mr. Hong's fact testimony—for rebuttal.  This is impermissible.  ASUS should not be allowed to present in rebuttal any evidence germane to issues it already knows are in dispute.  Rather, ASUS should be required to present such evidence during its case-in-chief.

33

1   This is true regardless of whether ASUS's experts' reports were purportedly submitted in "rebuttal"

2   to the reports of InterDigital's experts; ASUS's recitation of the "proper function" of rebuttal

3   opinions in the context of expert reports is inapposite in the context of presentation at trial.

4   Moreover, only if InterDigital introduces unforeseen evidence in its case should ASUS be allowed to

5   present rebuttal evidence at all, and then such rebuttal evidence should not be cumulative of the

6   evidence ASUS presented during its case-in-chief and it should not merely bolster ASUS's case-in-

7   chief.

8          InterDigital believes that the parties would benefit from the Court's guidance in this regard

9   during the Final Pretrial Conference.

10         **B.      Confidentiality at Trial**

11         The parties anticipate that highly confidential business information, including highly

12   confidential information of third parties, may be introduced as evidence at trial.  Particularly in cases

13   involving confidential patent licenses with multiple parties, it is appropriate to avoid public

14   disclosure of the financial terms of such licenses.  *FTC v. Qualcomm Inc.*, No. 17-0220-LHK, ECF

15   1012 (N.D. Cal. Dec. 17, 2018); *Apple Inc. v. Qualcomm Inc.*, No. 17-00108-GPC, ECF 1030 (S.D.

16   Cal. Mar. 14, 2019).  In order to minimize the need for closure of the courtroom, the parties will

17   endeavor as far as possible to structure their opening statements, witness examinations, and closing

18   arguments so that confidential information is confined to a single discrete section.  To the extent

19   exhibits reflect such confidential information and have not been sealed pursuant to the procedure

20   below, the parties propose to turn off monitors facing the public and refer to confidential information

21   in documents during questioning without verbally stating the information on the record.

22         In order to afford third parties the opportunity to assert confidentiality objections, the parties

23   propose the following procedure for sealing motions.  By April 12, the parties will notify third

24   parties of any exhibits on their exhibit lists and any of their deposition designations that implicate the

25   third parties' confidential information.  By April 19, parties and third parties will file any motions to

26   seal confidential information pursuant to the "compelling reasons" standard applicable to trial.

27

28

1

### C.       Determination of French Law

2

The ETSI FRAND commitment at issue in this case is governed by French law.  Pursuant to

3

Fed. R. Civ. P. 44.1, the Court shall determine the applicable foreign law as a ruling on a question of

4

law.  Accordingly, resolution of disputed issues of French law should occur before trial in the

5

context of jury instructions.  To assist the Court in determining French law, the parties propose that

6

they will cite the expert reports and/or deposition testimony submitted by their French law experts in

7

support of their proposed jury instructions.  Because the jury will not make any determinations on

8

questions of law, there will be no need for the parties' French law experts to testify at trial, and the

9

parties would mutually withdraw their French law experts from their witness lists.

10

### D.       Stipulated Motions in Limine

11

The parties have reached the following stipulations regarding exclusion:

12

ASUS will not use prejudicial terms about InterDigital's business model such as "patent

13

troll," "pirate," "shakedown," "extortion," or similar derogatory terms in relation to InterDigital or

14

otherwise during the trial.

15

To the extent ASUS witnesses require the assistance of a translator while testifying,

16

InterDigital will not make any disparaging comment about their need for or use of translation.  For

17

the sake of clarity, this stipulation will not prohibit InterDigital from exploring the witness's

18

proficiency in English, work and education background, and prior business communications in the

19

English language.

20

## VIII.   APPENDICES

21

The parties have submitted the appendices identified below together with their initial Joint

22

Pretrial Statement and Order (ECF 382), and incorporate them by reference herein:

23

24

25

26

27

28

| Appendix A | ASUS's Witness List |
| Appendix B | InterDigital's Witness List |
| Appendix C | ASUS's Exhibit List |
| Appendix D | InterDigital's Exhibit List |
| Appendix E | Duplicates Exhibit List |
| Appendix F | ASUS's Deposition Designations (Designations themselves to be lodged separately with the Court by USB) |
| Appendix G | InterDigital's Deposition Designations (Designations themselves to be lodged separately with the Court by USB) |
| Appendix H | ASUS's Discovery Designations (Responses themselves to be lodged separately with the Court by USB) |
| Appendix I | InterDigital's Discovery Designations (Responses themselves to be lodged separately with the Court by USB) |

**IX.    BINDING EFFECT OF THE JOINT PRETRIAL STATEMENT AND ORDER**

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues of fact and law remaining to be litigated, this order shall supplement the pleadings and govern the course of trial of this action, unless modified to prevent manifest injustice.

36

1    Dated:  March 26, 2019                     Respectfully submitted,

2

3    By: /s/ Brian R. Nester_____      By: s/ David S. Steuer_____

4           Brian R. Nester                          David S. Steuer

5
     Brian R. Nester (*pro hac vice*)          David S. Steuer, State Bar No. 127059
6    bnester@sidley.com                        dsteuer@wsgr.com
     Michael R. Franzinger (SBN 222155)        Michael B. Levin, State Bar No. 172329
7    mfranzinger@sidley.com                    mlevin@wsgr.com
     SIDLEY AUSTIN LLP                         Maura L. Rees, State Bar No. 191698
8    1501 K Street, N.W.                       mrees@wsgr.com
     Washington, D.C.  20005                   Matthew R. Reed, State Bar No. 196305
9    Telephone:  (202) 736-8000                mreed@wsgr.com
     Facsimile:  (202) 736-8711                WILSON SONSINI GOODRICH & ROSATI
10                                             Professional Corporation
     Michael J. Bettinger (SBN 269141)         650 Page Mill Road
11   mbettinger@sidley.com                     Palo Alto, California 94304-1050
     SIDLEY AUSTIN LLP                         Telephone:  (650) 493-9300
12   555 California Street                     Facsimile:  (650) 565-5100
     Suite 2000
13   San Francisco, California  94104          Lucy Yen, State Bar No. 224559
     Telephone:  (415) 772-1200                lyen@wsgr.com
14   Facsimile:  (415) 772-7400                WILSON SONSINI GOODRICH & ROSATI
                                               Professional Corporation
15   Richard A. Cederoth (*pro hac vice*)      1301 Avenue of the Americas, 40th Floor
     rcederoth@sidley.com                      New York, New York 10019-6022
16   David C. Giardina (*pro hac vice*)        Telephone:  (212) 999-5800
     dgiardina@sidley.com                      Facsimile:  (212) 999-5899
17   SIDLEY AUSTIN LLP
     One South Dearborn                        Attorneys for Defendants
18   Chicago, IL 60603                         *InterDigital, Inc.;*
     Telephone:  (312) 853-7000                *InterDigital Communications, Inc.;*
19   Facsimile:  (312) 853-7036                *InterDigital Technology Corporation;*
                                               *IPR Licensing, Inc.; and*
20                                             *InterDigital Patent Holdings, Inc.*
     Attorneys for Plaintiffs
21   *ASUS Computer International, and*
     *ASUSTeK Computer Incorporated*

22

23

24

25        IT IS SO ORDERED.

26        Dated:  _____          _____
                                            BETH LABSON FREEMAN
27                                          UNITED STATES DISTRICT JUDGE

28

                                    37

**<u>Attorney Attestation</u>**

I hereby attest, pursuant to Local Rule 5-1(i)(3), that the concurrence in the filing of this document has been obtained from the signatory indicated by the "conformed" signature of (/s/) of David S. Steuer within this e-filed document

*/s/ Michael Franzinger*