1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT CALIFORNIA

SAN JOSE DIVISION

ASUS COMPUTER INTERNATIONAL; and
ASUSTEK COMPUTER INCORPORATED

          Plaintiffs,

vs.

INTERDIGITAL, INC.; INTERDIGITAL
COMMUNICATIONS, INC;
INTERDIGITAL TECHNOLOGY
CORPORATION; IPR LICENSING, INC.,
and INTERDIGITAL PATENT HOLDINGS,
INC.,

          Defendants.

Case No. 15-cv-1716 (BLF)

**PROPOSED JURY INSTRUCTIONS**

**Judge: Hon. Beth Labson Freeman**

**PRELIMINARY STATEMENT**

The parties prepared these proposed jury instructions over the past several weeks subject to their joint request in the pretrial statement that French law issues be addressed by citing expert reports of the parties' French law experts.  In light of the Court's comments at the case management conference today, the parties will promptly meet and confer about alternative means for addressing the questions of French law applicable to the breach of contract claim, and will be prepared to discuss this issue further at the pretrial conference on April 4, 2019.

1

**TABLE OF CONTENTS**

2   **INSTRUCTIONS ON THE TRIAL PROCESS** .................................................................. 1

3   STIPULATED JURY INSTRUCTION NO. 1: DUTY OF JURY ................................... 2

4   STIPULATED JURY INSTRUCTION NO. 2: CLAIMS AND DEFENSES .............................. 3

5   STIPULATED JURY INSTRUCTION NO. 3: BURDEN OF PROOF – PREPONDERANCE OF
6       THE EVIDENCE .............................................................................................. 4

7   STIPULATED JURY INSTRUCTION NO. 4: BURDEN OF PROOF – CLEAR AND
        CONVINCING ................................................................................................. 5

8   STIPULATED JURY INSTRUCTION NO. 5: WHAT IS EVIDENCE ....................................... 6

9   STIPULATED JURY INSTRUCTION NO. 6: WHAT IS NOT EVIDENCE .............................. 7

10  STIPULATED JURY INSTRUCTION NO. 7: DIRECT AND CIRCUMSTANTIAL EVIDENCE
11      .............................................................................................................................. 8

12  STIPULATED JURY INSTRUCTION NO. 8: RULING ON OBJECTIONS ............................. 9

13  STIPULATED JURY INSTRUCTION NO. 9: CREDIBILITY OF WITNESSES .................... 10

14  STIPULATED JURY INSTRUCTION NO. 10: TAKING NOTES ........................................... 11

15  **INSTRUCTIONS ON TYPES OF EVIDENCE** ...................................................... 12

16  STIPULATED JURY INSTRUCTION NO. 11: STIPULATIONS OF FACT .......................... 13

17  STIPULATED JURY INSTRUCTION NO. 12: DEPOSITION IN LIEU OF LIVE TESTIMONY
        .............................................................................................................................. 14

18  STIPULATED JURY INSTRUCTION NO. 15: FOREIGN LANGUAGE TESTIMONY ........ 17

19  STIPULATED JURY INSTRUCTION NO. 16: IMPEACHMENT EVIDENCE ..................... 18

20  STIPULATED JURY INSTRUCTION NO. 17: EXPERT OPINION ....................................... 19

21  STIPULATED JURY INSTRUCTION NO. 18: CHARTS AND SUMMARIES RECEIVED IN
22      EVIDENCE ...................................................................................................... 20

23  STIPULATED JURY INSTRUCTION NO. 19: CHARTS AND SUMMARIES NOT RECEIVED
        IN EVIDENCE .................................................................................................. 21

24  **INSTRUCTIONS CONCERNING DELIBERATIONS** ............................................. 22

25  STIPULATED JURY INSTRUCTION NO. 20: DUTY TO DELIBERATE ............................. 23

26  STIPULATED JURY INSTRUCTION NO. 21: CONSIDERATION OF EVIDENCE—CONDUCT
27      OF JURY ........................................................................................................ 24

28  STIPULATED JURY INSTRUCTION NO. 22: COMMUNICATION WITH THE COURT ... 26

STIPULATED JURY INSTRUCTION NO. 23: RETURN OF VERDICT ................................ 27

**INSTRUCTIONS ON THE PARTIES' CLAIMS AND DEFENSES**.................................... 28

STIPULATED INSTRUCTION NO. 24: PATENT LAW ........................................................ 29

DISPUTED JURY INSTRUCTION NO. 25: BREACH OF CONTRACT—OBLIGATION TO
        LICENSE PATENTS ON "FRAND" TERMS  OFFERED BY ASUS........................... 31

DISPUTED JURY INSTRUCTION NO. 25: BREACH OF CONTRACT OFFERED BY
        INTERDIGITAL................................................................................................... 34

DISPUTED JURY INSTRUCTION NO. 26: BREACH OF CONTRACT—DAMAGES  OFFERED
        BY ASUS.......................................................................................................... 38

DISPUTED JURY INSTRUCTION NO. 26: BREACH OF CONTRACT—DAMAGES OFFERED
        BY INTERDIGITAL ........................................................................................... 40

DISPUTED JURY INSTRUCTION NO. 27: WAIVER  OFFERED BY ASUS ........................ 42

DISPUTED JURY INSTRUCTION NO. 27: WAIVER OFFERED BY INTERDIGITAL ....... 44

DISPUTED JURY INSTRUCTION NO. 28: CONSUMER FRAUD ACT OFFERED BY ASUS46

DISPUTED JURY INSTRUCTION NO. 28: DELAWARE CONSUMER FRAUD ACT OFFERED
        BY INTERDIGITAL ........................................................................................... 49

DISPUTED JURY INSTRUCTION NO. 29: CONSUMER FRAUD ACT—DAMAGES OFFERED
        BY ASUS .......................................................................................................... 51

DISPUTED JURY INSTRUCTION NO. 29: DELAWARE CONSUMER FRAUD ACT—
        DAMAGES OFFERED BY INTERDIGITAL ................................................................. 52

DISPUTED JURY INSTRUCTION NO. 30: STATUTE OF LIMITATIONS OFFERED BY ASUS
        .................................................................................................................... 53

DISPUTED JURY INSTRUCTION NO. 30: STATUTE OF LIMITATIONS OFFERED BY
        INTERDIGITAL................................................................................................... 55

DISPUTED JURY INSTRUCTION NO. 31: GENERAL PURPOSE OF ANTITRUST AND
        PATENT LAWS OFFERED BY ASUS .......................................................................... 57

DISPUTED JURY INSTRUCTION NO. 31: GENERAL PURPOSE OF ANTITRUST AND
        PATENT LAWS OFFERED BY INTERDIGITAL.......................................................... 58

STIPULATED JURY INSTRUCTION NO. 32: MONOPOLIZATION--ELEMENTS ............ 60

DISPUTED JURY INSTRUCTION NO. 33: MONOPOLIZATION—RELEVANT MARKET
        OFFERED BY ASUS ................................................................................................. 61

DISPUTED JURY INSTRUCTION NO. 33: MONOPOLIZATION—RELEVANT MARKET
        OFFERED BY INTERDIGITAL ................................................................................... 65

DISPUTED JURY INSTRUCTION NO. 34: MONOPOLIZATION—EXISTENCE OF
        MONOPOLY POWER OFFERED BY ASUS ............................................................... 70

DISPUTED JURY INSTRUCTION NO. 34: MONOPOLIZATION—EXISTENCE OF
    MONOPOLY POWER OFFERED BY INTERDIGITAL.............................................. 73

DISPUTED JURY INSTRUCTION NO. 35: MONOPOLIZATION—WILLFUL ACQUISITION
    OF MONOPOLY  POWER THROUGH ANTICOMPETITIVE ACTS OFFERED BY
    ASUS .............................................................................................................................. 78

DISPUTED JURY INSTRUCTION NO. 35: MONOPOLIZATION—WILLFUL ACQUISITION
    OF MONOPOLY POWER THROUGH ANTICOMPETITIVE ACTS OFFERED BY
    INTERDIGITAL............................................................................................................. 80

DISPUTED JURY INSTRUCTION NO. 36: IN THE ALTERNATIVE MONOPOLIZATION—
    ANTICOMPETITIVE BEHAVIOR IN STANDARD SETTING OFFERED BY ASUS84

DISPUTED JURY INSTRUCTION NO. 36: IN THE ALTERNATIVE MONOPOLIZATION—
    ANTICOMPETITIVE BEHAVIOR IN STANDARD SETTING OFFERED BY
    INTERDIGITAL............................................................................................................. 87

DISPUTED JURY INSTRUCTION NO. 37: INTENT OFFERED BY ASUS.......................... 90

DISPUTED JURY INSTRUCTION NO. 37: INTENT OFFERED BY INTERDIGITAL ......... 91

DISPUTED JURY INSTRUCTION NO. 38: MONOPOLIZATION—BUSINESS JUSTIFICATION
    OFFERED BY ASUS .................................................................................................... 92

DISPUTED JURY INSTRUCTION NO. 38: MONOPOLIZATION—BUSINESS JUSTIFICATION
    OFFERED BY INTERDIGITAL ................................................................................... 94

DISPUTED JURY INSTRUCTION NO. 39: MONOPOLIZATION—INTERSTATE OR FOREIGN
    COMMERCE  OFFERED BY ASUS ............................................................................ 96

DISPUTED JURY INSTRUCTION NO. 39: MONOPOLIZATION—INTERSTATE AND
    FOREIGN COMMERCE OFFERED BY INTERDIGITAL ........................................... 98

DISPUTED JURY INSTRUCTION NO. 40: MONOPOLIZATION—DAMAGES OFFERED BY
    ASUS ........................................................................................................................... 100

DISPUTED JURY INSTRUCTION NO. 40: MONOPOLIZATION—INJURY AND DAMAGES
    OFFERED BY INTERDIGITAL ................................................................................. 102

DISPUTED JURY INSTRUCTION NO. 41: MONOPOLIZATION—RIGHT TO PETITION
    OFFERED BY ASUS .................................................................................................. 105

DISPUTED JURY INSTRUCTION NO. 41: MONOPOLIZATION—RIGHT TO PETITION
    OFFERED BY INTERDIGITAL ................................................................................. 106

DISPUTED JURY INSTRUCTION NO. 42: CLAIMS BARRED BY 2008 PLA OFFERED BY
    ASUS ........................................................................................................................... 108

DISPUTED JURY INSTRUCTION NO. 42: CLAIMS BARRED BY 2008 PLA OFFERED BY
    INTERDIGITAL........................................................................................................... 110

STIPULATED JURY INSTRUCTION NO. 43: DAMAGES ON MULTIPLE LEGAL THEORIES
    ...................................................................................................................................... 111

# INSTRUCTIONS ON THE TRIAL PROCESS

**STIPULATED JURY INSTRUCTION NO. 1:**
**DUTY OF JURY[1]**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

---

[1] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 1.4.

**STIPULATED JURY INSTRUCTION NO. 2:**
**CLAIMS AND DEFENSES[2]**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

Plaintiff ASUS asserts that InterDigital has (i) breached its contract to license its 4G patents on fair, reasonable, and non-discriminatory ("FRAND") terms; (ii) waived its ability to license its 4G patents on terms other than FRAND terms; (iii) violated the U.S. antitrust laws; and (iv) violated the Delaware Consumer Fraud Act.  ASUS has the burden of proving these claims.

Defendant InterDigital denies those claims.  Defendant InterDigital further asserts that Plaintiffs' claims are barred because (i) ASUS's claim under the Delaware Consumer Fraud Act is barred by the applicable statutes of limitations, and (ii) ASUS is barred from seeking royalties paid under the 2008 PLA.

Plaintiff ASUS denies InterDigital's claims.

---

[2] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 1.5.

1
2

**STIPULATED JURY INSTRUCTION NO. 3:**
**BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE[3]**

3    When a party has the burden of proving any claim or affirmative defense by a preponderance

4    of the evidence, it means you must be persuaded by the evidence that the claim or affirmative

5    defense is more probably true than not true.

6    You should base your decision on all of the evidence, regardless of which party presented it.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

28

---

[3] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 1.6.

**STIPULATED JURY INSTRUCTION NO. 4:**
**BURDEN OF PROOF – CLEAR AND CONVINCING**

[*InterDigital objects that Waiver is an equitable claim to be decided by the Court following trial and should not be submitted to the jury.  The below instruction is submitted provisionally and without waiving InterDigital's objection.*]

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.  ASUS must prove its Waiver claim by clear and convincing evidence.

Authority:  Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 1.7.

**STIPULATED JURY INSTRUCTION NO. 5:**
**WHAT IS EVIDENCE[4]**

The evidence you are to consider in deciding the facts consists of:

(1) the sworn testimony of any witness;

(2) the exhibits which are received into evidence;

(3) any facts to which the lawyers have agreed; and

(4) any facts that I have instructed you to accept as proved.

---

[4] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 1.9.

**STIPULATED JURY INSTRUCTION NO. 6:**
**WHAT IS NOT EVIDENCE[5]**

In reaching your verdict, you may consider only evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.

I will list them for you:

1.      Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the Court's ruling on it.

3.      Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4.      Anything you may see or hear when the Court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

---

[5] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 1.10.

**STIPULATED JURY INSTRUCTION NO. 7:**
**DIRECT AND CIRCUMSTANTIAL EVIDENCE[6]**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

---

[6] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 1.12.

**STIPULATED JURY INSTRUCTION NO. 8:**
**RULING ON OBJECTIONS[7]**

There are rules of evidence that control what can be received into evidence.  When a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it was not permitted by the rules of evidence, that lawyer may object.  If I overruled the objection, the question was answered or the exhibit received.  If I sustained the objection, the question was not answered, and the exhibit not received.  Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I ordered that evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

---

[7] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 1.13.

1

**STIPULATED JURY INSTRUCTION NO. 9:**
**CREDIBILITY OF WITNESSES[8]**

2

3          In deciding the facts in this case, you may have to decide which testimony to believe and

4    which testimony not to believe.  You may believe everything a witness says, or part of it, or none of

5    it.

6          In considering the testimony of any witness, you may take into account:

7          1. the opportunity and ability of the witness to see or hear or know the things testified to;

8          2. the witness's memory;

9          3. the witness's manner while testifying;

10         4. the witness's interest in the outcome of the case, if any;

11         5. the witness's bias or prejudice, if any;

12         6. whether other evidence contradicted the witness's testimony;

13         7. the reasonableness of the witness's testimony in light of all the evidence; and

14         8. any other factors that bear on believability.

15         Sometimes a witness may say something that is not consistent with something else he or she

16   said.  Sometimes different witnesses will give different versions of what happened.  People often

17   forget things or make mistakes in what they remember.  Also, two people may see the same event

18   but remember it differently.  You may consider these differences, but do not decide that testimony is

19   untrue just because it differs from other testimony.

20         However, if you decide that a witness has deliberately testified untruthfully about something

21   important, you may choose not to believe anything that witness said.  On the other hand, if you think

22   the witness testified untruthfully about some things but told the truth about others, you may accept

23   the part you think is true and ignore the rest.

24         The weight of the evidence as to a fact does not necessarily depend on the number of

25   witnesses who testify.  What is important is how believable the witnesses were, and how much

26   weight you think their testimony deserves

27

28   [8] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 1.14.

**STIPULATED JURY INSTRUCTION NO. 10:**
**TAKING NOTES[9]**

You may have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

---

[9] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 1.18.

11

1

## INSTRUCTIONS ON TYPES OF EVIDENCE

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED JURY INSTRUCTION NO. 11:**
**STIPULATIONS OF FACT[10]**

The parties have agreed to certain facts to be placed in evidence.  You should treat these facts as having been proved:

- InterDigital has made a contractual commitment as follows:  To the extent that InterDigital's patents listed in IPR Information Statements are or become and remain essential in respect of an ETSI work item, standard, or technical specification identified in the IPR Information Statement, InterDigital is prepared to grant irrevocable licenses to ASUS under such essential patents on fair, reasonable and nondiscriminatory terms and conditions.
- ASUS has the right to enforce that contractual obligation.
- The parties are obligated to negotiate in good faith.
- InterDigital submitted statements to ETSI identifying LTE (4G) patents as to which it had a present belief that the patents may be or may become essential, and made FRAND licensing declarations to the extent patents are or become and remain essential, on at least 9/16/2010, 10/31/2011, 11/30/2012, 11/26/2013, 9/26/2014, and 12/11/15.

---

[10] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 2.2; Joint Pretrial Statement II.A.

**STIPULATED JURY INSTRUCTION NO. 12:**
**DEPOSITION IN LIEU OF LIVE TESTIMONY[11]**

You heard some witnesses testify by deposition.  A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

---

[11] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 2.4.

1
2

**STIPULATED JURY INSTRUCTION NO. 13:**
**USE OF INTERROGATORIES[12]**

3

4        Evidence was presented to you in the form of answers of one of the parties to written

5  interrogatories submitted by the other side.  These answers were given in writing and under oath

6  before the trial in response to questions that were submitted under established court procedures.  You

7  should consider the answers, insofar as possible, in the same way as if they were made from the

8  witness stand.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

28

---

[12] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 2.11.

1
2

**STIPULATED JURY INSTRUCTION NO. 14:**
**USE OF REQUESTS FOR ADMISSION[13]**

3
4

        Evidence was presented to you in the form of admissions to the truth of certain facts.  These

admissions were given in writing before the trial, in response to requests that were submitted under

established court procedures. You must treat these facts as having been proved.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

[13] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 2.12.

**STIPULATED JURY INSTRUCTION NO. 15:**
**FOREIGN LANGUAGE TESTIMONY[14]**

You have heard testimony of a witness who testified in the Chinese language.  Witnesses who do not speak English or are more proficient in another language may have chosen to testify through an official court interpreter.  Although some of you may know the Chinese language, it is important that all jurors consider the same evidence.  Therefore, you must accept the interpreter's translation of the witness's testimony.  You must disregard any different meaning.

You must not make any assumptions about a witness or a party based solely on the use of an interpreter to assist that witness or party.

---

[14] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 2.8.

**STIPULATED JURY INSTRUCTION NO. 16:**
**IMPEACHMENT EVIDENCE[15]**

The evidence that a witness lied under oath or gave different testimony on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

---

[15] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 2.8.

18

**STIPULATED JURY INSTRUCTION NO. 17:**
**EXPERT OPINION[16]**

Some witnesses, because of education or experience, provided their expert opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

---

[16] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 2.13.

**STIPULATED JURY INSTRUCTION NO. 18:**
**CHARTS AND SUMMARIES RECEIVED IN EVIDENCE[17]**

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the testimony or other admitted evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

---

[17] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 2.15.

**STIPULATED JURY INSTRUCTION NO. 19:**
**CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE[18]**

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

---

[18] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 2.14.

1

**INSTRUCTIONS CONCERNING DELIBERATIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED JURY INSTRUCTION NO. 20:**
**DUTY TO DELIBERATE[19]**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

---

[19] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 3.1.

**STIPULATED JURY INSTRUCTION NO. 21:**
**CONSIDERATION OF EVIDENCE—CONDUCT OF JURY[20]**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the Court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

The law requires these restrictions to ensure the parties have a fair trial based on only the evidence that each party has had an opportunity to address.  Witnesses here in Court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper

---

[20] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 3.2.

communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in Court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the Court immediately.

**STIPULATED JURY INSTRUCTION NO. 22:**
**COMMUNICATION WITH THE COURT[21]**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Bailiff, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the Court.

---

[21] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 3.3.

**STIPULATED JURY INSTRUCTION NO. 23:**
**RETURN OF VERDICT**[22]

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the Court that you are ready to return to the courtroom.

---

[22] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 3.5.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INSTRUCTIONS ON THE PARTIES' CLAIMS AND DEFENSES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### STIPULATED INSTRUCTION NO. 24:
### PATENT LAW[23]

Although ASUS's claims in this case are for alleged breach of contract, antitrust, and consumer fraud, the case does involve patents and conduct relating to those patents. Therefore, I will give you some information about patents and how patents fit into this case. I will first explain what a patent is and how one is obtained.

U.S. Patents are granted by the United States Patent and Trademark Office (sometimes called the "PTO"). A valid and enforceable United States patent gives the patent owner the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patent holder's permission. Other countries outside the United States have their own patent offices, and inventors can seek to separately obtain patents in other countries as well. In general, patents provide rights in the country where they are obtained. A violation of the patent owner's rights is called infringement.

To obtain a U.S. patent, one must file an application with the PTO. The process of obtaining a patent is called patent prosecution. The PTO is an agency of the federal government and employs trained examiners who review applications for patents. The application includes what is called a specification, which must contain a written description of the claimed invention. The specification concludes with one or more numbered sentences. These are called the patent claims.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable. If the examiner rejects the claims, the applicant has an opportunity to respond and sometimes changes the claims or submits new claims. This process, called "patent prosecution," may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent. When the patent is eventually granted by the PTO, the claims define the boundaries of that patent's protection and give notice to the public of those boundaries.

---

[23] N.D. Cal. Model Patent Instruction A.1; *HTC Corp. v Telefonaktiebolaget LM Ericsson*, No. 18-CV-0243-JRG (E.D. Tex. Feb. 15, 2019); *Hynix v. Rambus*, 06-0244-RMW, ECF 1254 (N.D. Cal. Mar. 25, 2008).

Once granted, a patent is presumed to be valid.  However, the fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent.

A patent owner may decide to give others permission to use its invention.  That permission is called a license.  The recipient of a license is called a licensee.  Typically, in exchange for permission to use the invention in a patent, the licensee will pay the patent owner.  In that context the patent owner is called the licensor, and the payments made by the licensee to the licensor are called royalties.

1

2

**DISPUTED JURY INSTRUCTION NO. 25:**
**BREACH OF CONTRACT—OBLIGATION TO**
**LICENSE PATENTS ON "FRAND" TERMS**
**OFFERED BY ASUS[24]**

3

4

I will now instruct you on how to determine whether ASUS has proved its breach of contract

5

claim. A breach is a failure to perform a contract.

6

InterDigital entered into a contract with ETSI.  ASUS is entitled to enforce the contract.

7

The terms of the contract included that *InterDigital must be prepared to grant irrevocable*

8

*licenses to its 4G LTE patents on fair, reasonable and nondiscriminatory ("FRAND") terms and*

9

*conditions*.

10

The term "fair, reasonable" means the terms and royalty that the parties would have settled

11

upon before the technology had been incorporated into a standard, and before potential licensees had

12

committed to implementing that standard.

13

The term "nondiscriminatory" requires licensors to offer similar rates to firms which are

14

similarly situated.  Sales volume alone does not justify giving lower rates to otherwise similar firms.

15

In order to demonstrate breach of this contract, ASUS must prove by a preponderance of the

16

evidence that (1) InterDigital did not fulfill this contract, and that (2) ASUS was harmed as a result

17

of InterDigital's breach.

18

ASUS's Argument.  ASUS's proposed instruction is simple, clear, and based on the

19

instruction given to the jury in *Microsoft Corp. v. Motorola, Inc.*, Case 2:10-cv-01823-JLR, Dkt. 908

20

at 19 (W.D. Wash. Sept. 4, 2013).  The *Microsoft* judgment was affirmed on appeal by the Ninth

21

Circuit.  795 F.3d 1024 (9th Cir. 2015).

22

ASUS's proposed instruction adds concise, straightforward guidance on the interpretation of

23

the terms "fair, reasonable" and "nondiscriminatory" that is supported by precedent.  *See Microsoft*,

24

795 F.3d at 1031, 1040 (noting that the purpose of RAND is to "mitigate the risk that a SEP holder

25

will extract more than the fair value of its patented technology"; affirming RAND determination that

26

[24] *See Microsoft Corp. v. Motorola, Inc.*, Case 2:10-cv-01823-JLR, Dkt. 908 at 19 (W.D. Wash.

27

Sept. 4, 2013) (breach of contract jury instruction); Stoffel-Munck Expert Report (4/25/2018), ¶¶ 14-
16, 18-90, 97-118 (ASUS notes that its proposal is based on well-settled law and does not depend on

28

Prof. Stoffel-Munck's opinions).

1   "sought to approximate the royalty rates upon which the parties would have agreed by setting up a

2   hypothetical negotiation between the parties"); *TCL Commc'ns Tech. Holdings Ltd. v.*

3   *Telefonaktiebolaget LM Ericsson*, No. 8:14-cv-00341-JVS-DFM, 2018 WL 4488286, at *33 (C.D.

4   Cal. Sept. 14, 2018) ("Sales volume alone does not justify giving lower rates to otherwise similar

5   firms."). To the extent the Court in the present case further interprets the FRAND commitment,

6   ASUS reserves the right to propose modifications to this instruction.

7        InterDigital's proposed instruction contains several objectionable features. First, while the

8   language "to the extent that patents InterDigital disclosed to ETSI are or become and remain

9   essential to a cellular standard" does appear in InterDigital's ETSI declarations, the language is not

10  relevant to this case. InterDigital includes the language only because it apparently plans to argue

11  that ASUS must prove specific patents that InterDigital declared as essential to ETSI are in fact

12  essential *before* those patents can be subject to a FRAND commitment. InterDigital has no support

13  for interpreting its FRAND commitment in that nonsensical manner. It would leave parties in

14  licensing negotiations in the dark about which patents were subject to a FRAND commitment until

15  after patent-by-patent litigation, defeating the very purpose of the FRAND commitment. Further,

16  InterDigital has repeatedly admitted its own belief that it has patents essential to 4G, underscoring

17  that there is no material dispute here.

18       Second, a reference to the "totality of the particular facts…leading up to the license"

19  erroneously implies that the jury should weigh all facts equally, which is contrary to the fundamental

20  principle that "it is for [the jury] to decide how much weight to give to any evidence." At best, the

21  reference is redundant to the general instruction on the jury's consideration of the evidence. The

22  reference is also misleading because in this case there is no concluded "license" the jury will

23  evaluate, only license offers.

24       Third, the statement that "there is no fixed or required methodology for setting or calculating

25  the terms of a FRAND license rate" is not part of the elements of a breach of contract claim, and is

26  biased and designed to support InterDigital's apparent position that FRAND is a largely meaningless

27  concept that requires only good faith negotiations. The statement misleadingly implies that there is

28  no fixed standard for evaluating FRAND compliance, contrary to numerous legal decisions that have

1    provided standards for evaluating FRAND compliance.  *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*,

2    795 F.3d 1024 (9th Cir. 2015) (affirming RAND determination).

3         Fourth, there is no legal basis for imposing on ASUS the requirement to affirmatively prove

4    it acted in good faith as an element of its breach of contract claim.  InterDigital has not cited, and

5    cannot cite, any legal precedent for doing so.  For example, in *Microsoft*, the plaintiff did <u>not</u> need to

6    prove it acted in good faith as an element of its breach of contract claim.  *See Microsoft Corp. v.*

7    *Motorola, Inc.*, Case 2:10-cv-01823-JLR, Dkt. 908 at 19 (W.D. Wash. Sept. 4, 2013).  While ASUS

8    does not dispute that it had an obligation to act in good faith, any alleged breach of that obligation

9    would at most give rise to an affirmative claim by InterDigital for breach of contract, upon which

10   InterDigital (not ASUS) would bear the burden of proof.  That is exactly what happened in *Microsoft*

11   and in the *HTC* case cited by InterDigital.  InterDigital's attempt to shift the burden of proof on good

12   faith is directly contrary to established law, without precedent, and should be rejected.

13        Fifth, InterDigital's proposed exclusion of litigation expenses as harm is unsupported.  ASUS

14   disclosed in the original Joint Pretrial Statement filed March 21, 2019 that it "may further seek its

15   expenses, costs and attorneys' fees," and its amended discussion of the elements of its claims now

16   restates that position.  ASUS's claim of harm and injury in fact does not depend exclusively on

17   litigation expenses.  However, even if it did, such expenses are an injury ASUS suffered by having

18   to bring suit to obtain a FRAND license, and are appropriately cognizable as such.  *See Apple Inc. v.*

19   *Motorola Inc.*, 886 F. Supp. 2d 1061, 1081-83 (W.D. Wis. 2012) (denying motion for summary

20   judgment premised on unavailability of litigation expenses as remedy for FRAND violation);

21   *Huawei Techs. Co. v. Samsung Elecs. Co.*, No. 3:16-cv-02787-WHO, Order Denying Motion to

22   Strike Jury Demand, Dkt. No. 454, slip op. at 3-5 (N.D. Cal. Feb. 17, 2019) (finding expert fees a

23   sufficient damages basis to set a trial for FRAND violation).

24        Finally, the abstract reference to "all of the conditions for performance of this obligation

25   occurred" in InterDigital's proposed instruction is vague and confusing.

26

27

28

**DISPUTED JURY INSTRUCTION NO. 25:**
**BREACH OF CONTRACT**
**OFFERED BY INTERDIGITAL**

InterDigital made written contractual declarations to ETSI.  ETSI is a standards setting organization that is one of the member organizations of 3GPP.  3GPP adopted the 3G and 4G (also called LTE) cellular communications standards.

InterDigital's commitment to ETSI was as follows: to the extent that patents InterDigital disclosed to ETSI are or become and remain essential to a cellular standard, InterDigital would be prepared to grant licenses on fair, reasonable, and non-discriminatory (FRAND) terms and conditions under such essential patents.  ETSI defines an essential patent as one that is necessarily infringed when making products complying with a standard.

ASUS is entitled to enforce the FRAND commitment that InterDigital made to ETSI.

Whether or not a license is FRAND will depend upon the totality of the particular facts and circumstances existing during the negotiations and leading up to the license.

There is no fixed or required methodology for setting or calculating the terms of a FRAND license rate.

The ETSI FRAND commitment requires the essential patent owner to negotiate in good faith toward a license on FRAND terms and conditions with manufacturers of standardized products.  The manufacturer seeking a license has a mutual obligation to negotiate in good faith toward a license on FRAND terms and conditions.

In order to demonstrate breach, ASUS must prove by a preponderance of the evidence that all of the conditions for performance of this obligation occurred, that InterDigital did not fulfill this obligation, that ASUS was harmed, and that this harm was caused by InterDigital's failure to perform this obligation.

In determining whether ASUS was actually harmed, you may not include as harm any litigation expenses that ASUS paid in pursuing this lawsuit.

Authority:  *HTC Corp. v Telefonaktiebolaget LM Ericsson*, No. 18-CV-0243-JRG (E.D. Tex. Feb. 15, 2019); *Apple v. Samsung*, No. 11-1846-LHK, ECF 1903, (N.D. Cal. Aug. 21, 2012); Rebuttal Expert Report of Prof. Yves-Marie Laithier ¶¶ 38-65, 113, 121-25;  *Steel Co. v. Citizens for*

34

1   *a Better Env't*, 523 U.S. 83, 107 (1998); *Summit Valley Indus. v. United Bhd. of Carpenters &*

2   *Joiners*, 456 U.S. 717, 726 (1982).

3                                **InterDigital's Position:**

4          The instruction should reflect the actual contractual language at issue.  ASUS's instruction

5   omits the important condition set forth in the ETSI declaration that the commitment is conditioned

6   on the essentiality the patents to be licensed; the commitment does not extend to non-essential

7   patents ("***To the extent*** that the IPR(s) disclosed in the attached IPR Information Statement Annex

8   ***are or become, and remain ESSENTIAL*** in respect of the ETSI Work Item, STANDARD and/or

9   TECHNICAL SPECIFICATION identified in the attached IPR Information Statement Annex . . . .").

10  *See* Dkt. No. 107-7 (example of ETSI declaration).  Judge Koh gave an instruction including this

11  language in the *Apple v. Samsung* case: "Samsung declared that it would be prepared to grant

12  irrevocable licenses under those IPRs on fair, reasonable and nondiscriminatory ("FRAND") terms

13  and conditions ***to the extent the IPRs remain essential to the UMTS standard***."  ASUS claims that

14  this is an "interpretation" of the declaration that it disagrees with, but in fact it is literal language

15  from the declaration that is clearly a condition that defines when the FRAND commitment applies.

16  ASUS submitted an entire expert report (Dr. Kakaes) purporting to describe the scope of essential

17  patents for ETSI LTE standards, so it can hardly dispute the relevance of such informaiton.

18         The instruction should also include additional information about the nature of the ETSI

19  FRAND commitment as set forth in the jury instructions given in the recent *HTC v. Ericsson* trial.

20  *See* Exhibit 9 (jury charge from HTC v. Ericsson trial).  This includes that (1) whether or not a

21  license is FRAND will depend upon the totality of the particular facts and circumstances existing

22  during the negotiations and leading up to the license; and (ii) there is no fixed or required

23  methodology for setting or calculating the terms of a FRAND license rate.

24         ASUS's proposed definitions of "fair and reasonable" and "non-discriminatory" should not

25  be included in an instruction to the jury.  ASUS cites no jury instructions in other cases where these

26  definitions have been included; these definitions do not appear in any form jury instruction, or in

27  the instructions from other cases such as *Apple v. Samsung*, No. 11-1846-LHK, ECF 1903 (N.D.

28  Cal. Aug. 21, 2012); *Hynix v. Rambus*, 06-0244-RMW, ECF 1254 (N.D. Cal. Mar. 25, 2008), *HTC*

                                      35

1   *v. Ericsson*, No. 18-CV-0243-JRG (E.D. Tex. Feb. 15, 2019); *Microsoft Corp. v. Motorola, Inc.*,

2   Case 2:10-cv-01823-JLR, Dkt. 908 at 19 (W.D. Wash. Sept. 4, 2013); or *Realtek Semiconductor*

3   *Corp. v. LSI Corp.*, No. 12-cv-3451, Dkt. 323 at 20 (N.D. Cal. 2014).  ASUS's proposed

4   instruction on "fair and reasonable" is not supported by authority.  The *Microsoft v. Motorola* case

5   did not address the ETSI FRAND commitment at all, and instead addressed an entirely different

6   standards-setting organization (ITU).  795 F.3d 1024 (9th Cir. 2015).  The discussion of "non-

7   discriminatory" in *TCL v. Ericsson* is from a district court case that is not binding on this  Court

8   and that is currently on appeal to the Federal Circuit.

9          It is also well established in the law that the ETSI FRAND commitment requires the parties,

10   including the prospective licensee, to negotiate in good faith toward a license on FRAND terms and

11   conditions.   *In the Matter of Certain Wireless Devices With 3G Capabilities*, Inv. No. 337-TA-800,

12   Initial Determination, 2013 WL 3961230, at *232 (June 28, 2013) (ETSI FRAND commitment

13   "imposes on both negotiating parties a duty to negotiate in good faith"); *TCL Commc'ns Tech.*

14   *Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. CV 15-2370 JVS (DFMX), 2018 WL

15   4488286, at *55 (C.D. Cal. Sept. 14, 2018) (finding ETSI FRAND commitment imposes "mutual

16   duty of the parties to negotiate in good faith"); *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No.

17   6:18-cv-00243-JRG, ECF No. 457 (E.D. Tex. Feb. 15, 2019) (jury verdict finding that licensee

18   "breached its duty to negotiate with Ericsson in good faith for a license to Ericsson's cellular

19   patents"); *Unwired Planet Int'l Ltd. v. Huawei Techs. Co.*, EWHC 711 (Pat) (UK 2017) at ¶ 160

20   (finding good faith "obligation applicable to the implementer"); *see also* Joint Pretrial Statement,

21   ECF 404 (stipulation that "[t]he parties are obligated to negotiate in good faith.").   This requirement

22   exists pursuant to French law (the governing law of the ETSI FRAND commitment), which imposes

23   a good faith obligation on both negotiating parties.  Rebuttal Laithier Report ¶¶ 36-56, 73, 76-80, 95.

24   In the *Apple v. Samsung* case in this district, where Apple asserted a nearly identical breach of

25   contract claim, Judge Koh instructed the jury: "In order to demonstrate breach of this provision,

26   Apple must prove that all of the conditions for performance of this obligation occurred . . ."  No. 11-

27   CV-01846-LHK, ECF No. 1901.

28          ASUS's proposed instruction No. 21 omits the requirement that the conditions for

36

1  InterDigital's performance of its obligation to ETSI (such as ASUS's obligation to negotiate in good

2  faith as a willing licensee) must have first occurred before InterDigital can be found to have

3  breached that obligation.  *See* Final Jury Instructions at 98, *Apple, Inc. v. Samsung Elecs. Co.*, No.

4  11-CV-01846-LHK (N.D. Cal. Aug. 21, 2012), ECF No. 1903.  ASUS's French law expert agrees

5  that no breach occurs when the prospective licensee is unwilling to enter into a negotiated license.

6  Dkt. No. 258-54 (Stoffel Munck Dep. 132: 9-19).

7          InterDigital's instruction also clarifies that ASUS's litigation expenses incurred in pursuing

8  this case cannot constitute "harm" for purposes of this claim.  *Steel Co. v. Citizens for a Better Env't*,

9  523 U.S. 83, 107 (1998) ("Obviously, however, a plaintiff cannot achieve standing to litigate a

10 substantive issue by bringing suit for the cost of bringing suit. The litigation must give the plaintiff

11 some other benefit besides reimbursement of costs that are a byproduct of the litigation itself.");

12 *Summit Valley Indus. v. United Bhd. of Carpenters & Joiners*, 456 U.S. 717, 726 (1982) ("The

13 American Rule precludes courts from awarding attorney's fees incurred during prior proceedings in

14 the same case.").  To the extent ASUS relies on cases such as *Apple Inc. v. Motorola Inc*., 886 F.

15 Supp. 2d 1061, 1081-83 (W.D. Wis. 2012) and *Huawei Techs. Co. v. Samsung Elecs. Co*., No. 3:16-

16 cv-02787-WHO, Order Denying Motion to Strike Jury Demand, Dkt. No. 454, slip op. at 3-5 (N.D.

17 Cal. Feb. 17, 2019), those cases addressed damages demands that included litigation expenses

18 incurred in defending against patent infringement claims asserted by the other party. They did not

19 address the question of whether harm can be based solely on same-case litigation expenses incurred

20 in asserting one's own claims.  Same-case litigation expenses cannot be considered injury or harm

21 because if that were permissible, injury and harm could always be demonstrated, because the

22 plaintiff will always incur some litigation expenses in asserting its claims.  That would make the

23 injury or harm requirement a nullity, which would contravene the requirement in federal courts that a

24 plaintiff must show injury in order to have Article III standing.

25          ASUS's proposed instruction also conflates the harm and causation elements of breach of

26 contract, which would confuse the jury as to the proper elements of a breach of contract claim.

27

28

1

2

**DISPUTED JURY INSTRUCTION NO. 26:**
**BREACH OF CONTRACT—DAMAGES**
**OFFERED BY ASUS[25]**

3

It is the duty of the court to instruct you as to the measure of damages.  By instructing you on

4

damages the court does not mean to suggest for which party your verdict should be rendered.

5

If you find for the ASUS on ASUS's breach of contract claim, you must determine ASUS's

6

damages. ASUS has the burden of proving damages by a preponderance of the evidence. Damages

7

means the amount of money that will reasonably and fairly compensate ASUS for any injury you

8

find was caused by InterDigital.

9

It is for you to determine what damages, if any, have been proved.  Your award must be

10

based upon evidence and not upon speculation, guesswork or conjecture.

11

12

ASUS's Argument.  ASUS's instruction is based directly on the Ninth Circuit's Model

13

Instruction 5.1.  The court in *Realtek Semiconductor Corp. v. LSI Corp.*, No. 12-cv-3451, Dkt. 323 at

14

20 (N.D. Cal. 2014) used the same instruction.  The instruction is simple, clear, and neutral.

15

InterDigital's instruction is objectionable because it contains a legally incorrect limitation on

16

damages.  InterDigital's instruction would limit ASUS's damages solely to "expenditures related to

17

negotiating with InterDigital."  InterDigital cites no legal precedent for imposing such a limitation.

18

InterDigital's only basis for its proposed limitation is its expert's cursory, unclear discussion of an

19

inapposite point of French law.  InterDigital's expert opines that a French Supreme Court decision

20

where one party exercised its "right to break off unilaterally pre-contractual negotiations" could not

21

obtain damages for "loss of a chance" to make a "profit" out of a hoped-for contract.  Rebuttal

22

Expert Report of Prof. Yves-Marie Laithier, ¶ 141.  That point of law, even if correct, is irrelevant.

23

ASUS is not seeking damages based on "pre-contractual" negotiations, but instead based on breach

24

of a *concluded* contract (InterDigital's contract with ETSI to license its patents on FRAND terms).

25

InterDigital has stipulated to the existence of this contract.  *See* Pretrial Stmt. Sec. II.A.  In addition,

26

ASUS is not seeking damages based on exercising some putative "right to break off unilaterally pre-

27

28

---

[25] Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 5.1; *Realtek Semiconductor Corp. v. LSI Corp.*, No. 12-cv-3451, Dkt. 323 at 20 (N.D. Cal. 2014) (final jury instruction on breach of contract damages); Stoffel-Munck Expert Report (4/25/2018), ¶¶ 17, 119-148.

1    contractual negotiations."  Furthermore, ASUS is not claiming that it lost a chance to make a "profit"

2    out of a hoped-for contract.  InterDigital's expert also cites a rule codified on April 20, 2018, but

3    does not opine that the rule applies retroactively, and does not explain how damages based on

4    "benefits which were expected from the contract" are dispositive here.  In short, InterDigital

5    provides insufficient legal justification for including a stringent damages limitation in the jury

6    instructions, particularly after it has already failed to preclude ASUS's 4G damages claim on which

7    it did not move for summary judgment.

8        ASUS's French law expert Prof. Stoffel-Munck explains that French contract law has a broad

9    conception of damages, based on the principle of compensating all reasonably foreseeable losses.

10   Prof. Stoffel-Munck's opinion is consistent with U.S. precedent.  Stoffel-Munck Expert Report

11   (4/25/2018), ¶¶ 17, 119-148.  For example, the court in *Apple, Inc. v. Motorola Mobility, Inc.*, 886

12   F.Supp.2d 1061, 1082 (W.D. Wis. 2012) analyzed French contract law, and stated that it was

13   undisputed that "French law allows recovery for damages that are the immediate and direct and

14   foreseeable result of breach."  *See also* Ex. XX (Barry Nicholas, French Law of Contract (2d ed.

15   1992)) at 224-25.  ASUS's claimed damages in this case fit squarely within that principle.  ASUS

16   further notes that ASUS's proposed jury instruction does not depend on any opinion of Prof. Stoffel-

17   Munck.  Rather, ASUS cites Prof. Stoffel-Munck's opinions here as rebuttal to InterDigital's

18   reliance on its French law expert for unwarranted additions to the jury instructions.

19       In short, ASUS's instruction accords with the Ninth Circuit model and prior instructions in

20   FRAND cases, and is well-supported by settled principles of French law.  InterDigital's proposed

21   stringent damages limitations is based solely on its own expert's cursory, unclear discussion of an

22   inapposite point of French law and should be rejected.

23

24

25

26

27

28

1

**DISPUTED JURY INSTRUCTION NO. 26:**
**BREACH OF CONTRACT—DAMAGES**
**OFFERED BY INTERDIGITAL**

2

3       It is the duty of the court to instruct you as to the measure of damages.  By instructing you on

4  damages the court does not mean to suggest for which party your verdict should be rendered.

5       If you find for ASUS on ASUS's breach of contract claim, you must determine whether

6  ASUS has proven damages. ASUS has the burden of proving damages by a preponderance of the

7  evidence.

8       The amount of damages is meant to put ASUS back in the situation in which it would have

9  been if it had not entered into license negotiations with InterDigital. That is, ASUS can recover for

10  its expenditures related to negotiating with InterDigital.  This does not include the expenditure it

11  would have incurred anyway (even if InterDigital had fulfilled its duties), but the expenditure wasted

12  as a direct result of the breach.

13       It is for you to determine what damages, if any, have been proved.  Your award must be

14  based upon evidence and not upon speculation, guesswork or conjecture.

15

16       Authority:  Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 5.1; *Realtek*

17  *Semiconductor Corp. v. LSI Corp.*, No. 12-cv-3451, Dkt. 323 at 20 (N.D. Cal. 2014) (final jury

18  instruction on breach of contract damages); Rebuttal Expert Report of Prof. Yves- Marie Laithier, ¶¶

19  17, 137-43.

20                         **InterDigital's Position:**

21       Under French law, damages for a breach of an obligation to negotiate in good faith consist of

22  the expenditures of the plaintiff that were wasted due to the breach.  Rebuttal Expert Report of Prof.

23  Yves- Marie Laithier, ¶¶ 134-43.  Expectation damages based on the contract the parties would have

24  entered into had they concluded negotiations are not a proper measure of damages.  This long-

25  existing principle has been codified in Article 1112 of the new French Civil Code, which states:  "In

26  case of fault committed during the negotiations, the reparation of the resulting loss is calculated so as

27  to compensate neither the loss of benefits which were expected from the contract that was not

28  concluded nor the loss of a chance to obtain these benefits."  *Id*.  Therefore, the appropriate measure

40

of damages for breach of the ETSI IPR Licensing Declaration, which is governed by French law, is reliance losses (as opposed to expectation losses).  Reliance losses under French law put the claimant back "in the situation in which he would have been if he had not entered into negotiations with the party who committed the wrong."  Corrected Rebuttal Expert Report of Prof. Yves- Marie Laithier ¶¶ 137-43.

1

2

**DISPUTED JURY INSTRUCTION NO. 27:**
**WAIVER**
**OFFERED BY ASUS[26]**

3

I will now instruct you on how to determine whether ASUS has proved its waiver claim.

4

5

To prove waiver, ASUS must prove by clear and convincing evidence that by entering into a

contract with ETSI, InterDigital intentionally gave up its right to obtain a remedy for use of its

6

7

declared essential patents other than compensation on fair, reasonable, and non-discriminatory

("FRAND") terms.

8

9

10

ASUS's Argument.  ASUS's instruction is a simple, standard waiver instruction based on the

11

legal standard and the California model instruction.  *Lynch v. California Coastal Comm.*, 3 Cal.5th

12

470, 475 (Cal. 2017); Judicial Council of California Civil Jury Instructions (2019 Edition), No. 336.

13

InterDigital's instruction has two objectionable aspects.  First, InterDigital contends that

14

waiver is an equitable claim to be decided by the Court.  That contention is inconsistent with the

15

authority that InterDigital relies upon for its instruction.  *See* Judicial Council of California Civil

16

Jury Instructions (2019 Edition), No. 336 (citing numerous cases for the proposition that waiver is a

17

question of fact for the jury); *DuBeck v. California Physicians' Service* (2015) 234 Cal.App.4th

18

19

1254, 1265 ("Waiver is ordinarily a question for the trier of fact."); *Shenzhenshi Haitiecheng Science*

20

*and Tech. Co., Ltd. v. Rearden, LLC*, No. 15-cv-00797-SC, 2015 WL 6082028, at *3 (N.D. Cal. Oct.

21

15, 2015) ("waiver is normally a question of fact for the jury."); *Lynch*, 3 Cal. 5th at 476 ("Whether

22

a waiver or forfeiture has occurred is often a factual question").

23

24

Second, InterDigital's instruction includes the phrase "for its patents that ASUS has proven

25

to be essential to the 4G LTE cellular standard."  That phrase inaccurately suggests that ASUS must

26

27

28

---

[26] *Lynch v. California Coastal Comm.*, 3 Cal.5th 470, 475 (Cal. 2017); Judicial Council of California Civil Jury Instructions (2019 Edition), No. 336

prove certain InterDigital patents to be essential to the 4G LTE cellular standard before a FRAND

commitment applies.  InterDigital cites no legal authority supporting such a requirement at all, much

less as an element of a waiver claim.  That phrase also misstates ASUS's waiver claim, which

applies to all of the 4G patents that InterDigital declared to be essential to ETSI, not to a subset

"proven to be essential."

**DISPUTED JURY INSTRUCTION NO. 27:**
**WAIVER**
**OFFERED BY INTERDIGITAL**

[*InterDigital objects that Waiver is an equitable claim to be decided by the Court following trial and should not be submitted to the jury.  The below instruction is submitted provisionally and without waiving InterDigital's objection*].

I will now instruct you on how to determine whether ASUS has proved its waiver claim.

To establish waiver, ASUS must prove by clear and convincing evidence that InterDigital freely and knowingly gave up rights to obtain compensation, other than on FRAND terms, for its patents that ASUS has proven to be essential to the 4G LTE cellular standard.


Authority:  Judicial Council of California Civil Jury Instructions (2019 Edition), No. 336.

**InterDigital's Position:**

ASUS does not appear to be seeking damages for its waiver claim, so it is not a claim with a jury trial right.  *Teutscher v. Woodson*, 835 F.3d 936, 943 (9th Cir. 2016) (the "more important factor" in determining right to jury trial is whether relief sought is legal or equitable).  Waiver is also described by courts as "equitable."  *See Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Neville Chemical Co.*, 358 F.3d 661, 672 (9th Cir. 2004) (describing waiver as a "traditional equitable defense" that is unavailable in claim brought under federal statute).  While there is a Judicial Council model jury instruction for waiver, such instructions may be used for equitable claims with an advisory jury, so the existence of a model jury instruction for a claim does not control whether it is legal or equitable.

To the extent this claim is submitted to the jury, this instruction properly states the elements of waiver, which must be proven by clear and convincing evidence, *see Marcotte v. Micros Sys.*, No. C 14-01372 LB, 2014 U.S. Dist. LEXIS 128054, at *30–31 (N.D. Cal. Sept. 11, 2014), and it should be adopted here.

While ASUS claims that its waiver claim applies to "all of the 4G patents that InterDigital declared to be essential to ETSI," it is unclear what patents this is meant to apply to, as InterDigital's disclosures to ETSI listed patents that "may be, or may become" essential; they do not include any

1    patents InterDigital has "declared to be essential" to 4G LTE standards.  It is also unclear on what

2    basis ASUS could argue that a FRAND commitment exists as to patents merely because they were

3    disclosed to ETSI, as the ETSI licensing declaration includes the express, unambiguous condition

4    that the commitment applies "[*t)o the extent* that the IPR(s) disclosed in the attached IPR

5    Information Statement Annex are or become, and remain ESSENTIAL in respect of the ETSI Work

6    Item, STANDARD and/or TECHNICAL SPECIFICATION identified in the attached IPR

7    Information Statement Annex . . . .").  *See* Dkt. No. 107-7 (example of ETSI declaration).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**DISPUTED JURY INSTRUCTION NO. 28:**
**CONSUMER FRAUD ACT[27] OFFERED BY ASUS**

3

4

5

6

7

Under the Consumer Fraud Act, if a person makes a false representation or conceals an important fact from another in connection with the advertising or sale of any merchandise, and intends that the other person will rely on it, the person making the false representation may be liable. This is so even if the person making the representation was unaware that it was false or that an important fact had been concealed. This is known as negligent misrepresentation.

8

9

10

11

If you find that InterDigital falsely represented, even if by negligence, to ETSI that InterDigital was prepared to grant licenses to its 4G LTE patents on FRAND terms, and that InterDigital intended that others rely on its representation, then InterDigital is liable for negligent misrepresentation.

12

13

14

ASUS's Argument.  ASUS's instruction is based directly on the Delaware Civil Pattern Jury Instructions, Instruction 16.5 and should be adopted for that reason.

15

16

17

18

19

20

21

22

23

InterDigital's instruction should not be adopted because it adds several requirements to the model instruction that are contrary to law.  First, the phrase "within the state of Delaware" that appears twice in InterDigital's instruction is not in the model instruction, is not the law, and is not an issue for the jury.  The Delaware Consumer Fraud Act applies if "there is a sufficient connection to the State of Delaware" including if the alleged misrepresentation "commenced in Delaware" or if the deceptive conduct "arose, was directed and emanated from Delaware," even if the actual representations did not occur in Delaware.  *See Lony v. E.I. du Pont de Nemours and Co. Inc.*, 821 F.Supp. 956, 961-62 (D.Del. 1993); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 248 n.15 (D.Del. 2002); *Yarger v. ING Bank*, 285 F.R.D. 308, 322 (D.Del. 2012).  In addition, these cases

24

25

26

27

28

[27] Delaware Civil Pattern Jury Instructions, Instruction 16.5; 6 Del. C. § 2511 (merchandise includes intangibles); *Teamsters Local 237 Welfare Fund v. AstraZeneca Pharm. LP*, 136 A.3d 688, 693 (Del. 2016) (stating that under the DCFA, "an unlawful practice ... is committed regardless of actual reliance by the plaintiff."); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) (stating that "[t]he defendant need not have intended to misrepresent or to make a deceptive or untrue statement," and that "the statute does not require proof" that "any misrepresentation [was] made with the intent to induce action or inaction by the plaintiff.").

1    make clear that the connection to Delaware is a standing issue, not a triable issue of fact for the jury.

2    *See Lony*, 821 F.Supp. at 961.  The case *Marshall v. Priceline.com Inc.*, No. 05C-02-195 WCC,

3    2006 Del. Super. LEXIS 447, at *6 (Del. Super. Oct. 31, 2006) cited by InterDigital does not alter

4    that conclusion.  The *Marshall* case is unpublished and the language cited by InterDigital is *dicta*.  In

5    *Marshall*, the plaintiffs were "non-citizens of Delaware," and the complaint did not assert that any

6    fraudulent act occurred in Delaware, but instead "merely speculate[d]" that other class members

7    might be victims of such conduct.  *Id.*  Moreover, the *Marshall* case relies on *Lony* for its bright-line

8    language, but as discussed above the *Lony* case makes clear that there is no such bright-line rule.

9    *See Lony*, 821 F.Supp. at 961-62.

10       Second, InterDigital omits the sentence "This is so even if the person making the

11    representation was unaware that it was false or that an important fact had been concealed. This is

12    known as negligent misrepresentation."  This sentence is present in the model instruction, is based

13    directly on a Delaware Supreme Court decision, and clarifies an important aspect of the law for the

14    jury.  *See Stephenson v. Capano Dev., Inc.,* 462 A.2d 1069, 1074 (Del. 1983) (stating that "[t]he

15    defendant need not have intended to misrepresent or to make a deceptive or untrue statement," and

16    that "the statute does not require proof").  The instruction would be misleading and incomplete

17    without this sentence.

18       Third, InterDigital adds the phrase "where the misrepresentation must occur prior to the sale

19    and not after."  This temporal requirement is not in the model instruction, is not based on the

20    statutory language, and is contrary to law.  The court in *Lony* addressed this issue, finding that "It

21    seems clear that an after sale statement may be viewed as [meeting the statutory requirement of

22    being] 'in connection with the sale of merchandise.' Although such after the sale statements may be

23    the exception rather than the rule, the Court concludes that a misrepresentation made after the sale

24    may be found by a trier of fact to be 'in connection with the sale.'" *Lony*, 821 F.Supp. at 962.  The

25    cases cited by InterDigital are not to the contrary.  The *Gershman's* case, for instance, states that

26    "post-sale representations *which are not connected to the sale or advertisement of the vehicle* do not

27    constitute consumer fraud under the Act."  558 A.2d at 1074.  In other words, there is no bright-line

28    temporal requirement, only a required connection to the sale of advertisement of the goods that is

already stated in ASUS's instruction based on the model instruction.

Fourth, InterDigital adds the phrase "ASUS was a victim of the unlawful conduct."  This addition is not in the model instruction and is contrary to the statutory language.  The DCFA statute itself states that "*whether or not* any person has in fact been misled, deceived or damaged thereby," misrepresentations are an unlawful practice.  6 Del. C. § 2513; *see also Teamsters Local 237 Welfare Fund v. AstraZeneca Pharm. LP*, 136 A.3d 688, 693 (Del. 2016) (stating that under the DCFA, "an unlawful practice ... is committed regardless of actual reliance by the plaintiff.").  InterDigital's addition appears to be based on the *Lynn* case it cites, but that Superior Court case concerns a motion for class certification and evaluates the DCFA through the lens of whether "common issues predominate over individual issues."  *See* 163 A.3d at 113.  Furthermore, the "victim" language is vague and confusing, as it does not explain what a "victim" means.  ASUS's victimhood is properly addressed by the damages instruction on the DCFA, and should not be imported into the liability instruction.

Finally, InterDigital adds the requirement that "InterDigital's unlawful conduct caused an injury to ASUS resulting in an actual, ascertainable monetary loss."  This addition is not in the model instruction and is directly contrary to the statutory language quoted above.  6 Del. C. § 2513. It is unclear upon what authority InterDigital relies for this proposed language.  In short, InterDigital provides no basis to deviate from Delaware's model instruction.

**DISPUTED JURY INSTRUCTION NO. 28:**
**DELAWARE CONSUMER FRAUD ACT**
**OFFERED BY INTERDIGITAL**

Under the Delaware Consumer Fraud Act, if a person engages in conduct within the state of Delaware consisting of a false representation or concealment of an important fact, in an intentional or negligent manner, in connection with the advertising or sale of any merchandise and intends that the other person will rely on it, the person making the false representation may be liable.

In order to establish a violation of the Delaware Consumer Fraud Act, ASUS must prove by a preponderance of the evidence all of the following elements:  (1) within the state of Delaware, InterDigital made a false statement of fact with the knowledge that the statement was untrue, or negligently made a misrepresentation of fact in connection with advertising or sale of a license under InterDigital's 4G essential patents, where the misrepresentation must occur prior to the sale and not after; (2) InterDigital intended that ASUS rely on its representation; (3) ASUS was a victim of the unlawful conduct; and (4) InterDigital's unlawful conduct caused an injury to ASUS resulting in an actual, ascertainable monetary loss.

Authority:  Delaware Civil Pattern Jury Instructions, Instruction 16.5; 6 Del. C. § 2511; *Teamsters Local 237 Welfare Fund v. Astrazeneca Pharms. LP*, 136 A.3d 688 (Del. 2015); *Lynn v. Philip Morris United States*, 163 A.3d 91, 112 (Del. Super. Ct. 2017); *Lee v. Picture People, Inc.*, No. : K10C-07-002 (RBY), 2012 Del. Super. LEXIS 159, at *26 (Super. Ct. Mar. 19, 2012); *Norman Gershman's Things to Wear, Inc. v. Mercedes-Benz of N. Am.,* Inc., 558 A.2d 1066, 1074 (Del. Super. Ct. 1989); *RHA Constr., Inc. v. Scott Eng'g, Inc.*, 2013 Del. Super. LEXIS 301, *11, 2013 WL 3884937.

## **InterDigital's Position:**

ASUS's proposed instruction omits that the conduct constituting the fraud must have occurred in Delaware.  *Marshall v. Priceline.com Inc.*, No. 05C-02-195 WCC, 2006 Del. Super. LEXIS 447, at *6 (Del. Super. Oct. 31, 2006) ("The statute itself indicates there was no intent of the legislature to create any extraterritorial effects.  As such, the courts have consistently ruled that the DCFA is only applicable if the fraudulent conduct occurs within Delaware.").

49

1   Further, ASUS's proposed instruction does not separate out the elements that the jury must

2   find in order to find InterDigital liable under the Delaware Consumer Fraud Act, which would cause

3   prejudice to InterDigital and would likely confuse the jury.  InterDigital's proposed instruction

4   correctly lays out all elements required to prove a claim and establish damages under Delaware law.

5   First, "[t]o prove a claim under the DCFA, the consumer must establish that the merchant made a

6   false statement with the knowledge that the statement was untrue, or the merchant negligently made

7   a misrepresentation."  *Ridley v. Bayhealth Med. Ctr., Inc.*, No. N17C-04-306 JRJ, 2018 Del. Super.

8   LEXIS 138, at *10 (Del. Super. Ct. Mar. 20, 2018), citing *Stephenson v. Capano Development, Inc.*,

9   462 A.2d 1069, 1072 (1983).  The misrepresentation must occur prior to the sale and not after.  *Lee*

10  *v. Picture People, Inc.*, No. : K10C-07-002 (RBY), 2012 Del. Super. LEXIS 159, at *26 (Super. Ct.

11  Mar. 19, 2012) (post-sale representations not covered by DCFA).  The misrepresentation also must

12  be a statement of fact rather than opinion.  *RHA Constr., Inc. v. Scott Eng'g, Inc.*, 2013 Del. Super.

13  LEXIS 301, at *11 (Super. Ct. July 24, 2013) ("Generally, fraud cannot be predicated upon the mere

14  expression of opinion . . . nor upon mere representations of matters of estimate or judgment.")

15  Second, "the defendant must have intended that others rely on the omission or concealment."

16  *Teamsters Local 237 Welfare Fund v. Astrazeneca Pharms. LP*, 136 A.3d 688, 693 (Del. 2016).

17  Third, "the plaintiff was a 'victim' of the unlawful conduct."  *Id*.  The plaintiff also must prove "a

18  causal relationship exists between the defendant's unlawful conduct and the plaintiff's ascertainable

19  loss."  *Id*.  "In addition to causation, Plaintiff also must prove actual loss, or 'fact of injury,' in order

20  to sustain claims for violation of the DCFA ."  *Lynn v. Philip Morris United States*, 163 A.3d 91,

21  112 (Del. Super. Ct. 2017).   ASUS's instruction, which omits any mention of causation and injury,

22  is thus not proper.

23   ASUS's instruction incorrectly states that a DCFA claim can be premised on finding that

24  "InterDigital falsely represented, even if by negligence, to ETSI that InterDigital was prepared to

25  grant licenses to its 4G LTE patents on FRAND terms."  This could mislead the jury into believing

26  that such a statement qualifies as a pre-sale misrepresentation of fact in connection with advertising

27  or sale of a license under InterDigital's 4G essential patents (the DCFA standard for a representation

28  to which the statute can apply.).

**DISPUTED JURY INSTRUCTION NO. 29:**
**CONSUMER FRAUD ACT—DAMAGES[28] OFFERED BY ASUS**

If you find that InterDigital is liable for negligent misrepresentation, then ASUS is entitled to damages that will put it in the same financial position that would have existed if InterDigital had not made misrepresentations. Your award should reflect the difference in value between the royalties ASUS provisionally paid to InterDigital for its 4G products, and the royalties ASUS would have paid under the license terms InterDigital represented that it would provide.

ASUS's Argument. ASUS's instruction is based directly on the Delaware Civil Pattern Jury Instructions, Instruction 22.17 and should be adopted for that reason.

InterDigital's instruction should not be adopted because is confusing and contrary to law. First, InterDigital's instruction states that the jury "may" award damages, but under Delaware law such damages should be awarded; they are not optional. *Stephenson v. Capano Dev.*, *Inc.*, Del. Supr., 462 A.2d 1069, 1076 (1983) ("We need not decide a precise formula, except to hold that the plaintiff *is entitled* to recover all damages which are a direct and proximate result of the false advertising.") (emphasis added).

Second, InterDigital's instruction confusingly states that "Such damages should reflect the difference between the actual value of the purchased item and the represented value." The terms "purchased item" and "represented value" are undefined and do not match the facts of this case. ASUS did not "purchase" an "item" and InterDigital did not "represent" its "value." Instead of confusing the jury with such unclear, inapplicable terms, the instruction must be tailored to the facts of this case as in ASUS's instruction. The model Delaware instruction was expressly designed to be so tailored.

---

[28] Delaware Civil Pattern Jury Instructions, Instruction 22.17; *Stephenson v. Capano Dev.*, *Inc.*, Del. Supr., 462 A.2d 1069, 1076 (1983) (applying benefit-of-the-bargain rule).

**DISPUTED JURY INSTRUCTION NO. 29:**
**DELAWARE CONSUMER FRAUD ACT—DAMAGES**
**OFFERED BY INTERDIGITAL**

If you find that InterDigital made misrepresentations of fact that injured ASUS, then you may award damages in an amount proved by ASUS, if any.  The measure of damages is to put ASUS in the same financial position that would have existed if InterDigital's representations had been true.  Such damages should reflect the difference between the actual value of the purchased item and the represented value.

Authority:  Delaware Civil Pattern Jury Instructions, Instruction 22.17; *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1076 (Del. 1983).

### **InterDigital's Position:**

The Delaware Civil Pattern Jury Instructions properly state the law in Delaware for calculating damages under the benefit of the bargain rule, *see also Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1076 (Del. 1983), and should be adopted here.  ASUS's proposed instruction, referring to the "value" of "royalties ASUS provisionally paid to InterDigital for its 4G products" is without basis, as there is no license agreement between InterDigital under which ASUS has paid any royalties for InterDigital's 4G standards-essential patents.  The jury instruction should simply reflect the applicable law of damages, which in the case of fraud, represents the difference between the actual value of the item purchased and the value as represented by the defendant.

1

**DISPUTED JURY INSTRUCTION NO. 30:**
**STATUTE OF LIMITATIONS**
**OFFERED BY ASUS**

2

3      [*ASUS contends that no instruction regarding the statute of limitations should be given, as*

4    *there is no basis for including that issue in the trial.  The below instruction is given provisionally in*

5    *the event the Court finds an instruction warranted.*]

6

7        InterDigital contends that ASUS's Delaware Consumer Fraud Act claim is limited by the

8    statute of limitations.  A party must bring a claim under the Delaware Consumer Fraud Act within 3

9    years of knowing or having reason to know of the alleged harm.  The statute of limitations may be a

10   partial defense, allowing recovery for damages that took place after the date set by law but

11   preventing recovery for damages that took place before the date set by law.

12       To succeed on this defense, InterDigital must prove that (a) a portion of ASUS's claimed

13   harm occurred prior to April 15, 2012, and (b) prior to April 15, 2012, ASUS knew or had reason to

14   know that InterDigital violated the Delaware Consumer Fraud Act.

15

16       <u>ASUS's Argument.</u>  Delaware applies the "time of discovery rule" to statutory fraud claims,

17   "delaying the start of the limitations period until the plaintiff has reason to know that a wrong has

18   been committed."  *Eames v. Nationwide Mut. Ins. Co.*, No. Civ.A. 04-1324-KAJ, 2006 WL

19   2506640, *4 (D.Del. Aug. 29, 2006) (internal quotes omitted); *Pack & Process, Inc. v. Celotex*

20   *Corp.*, 503 A.2d 646, 650–51 (Del. 1985).  InterDigital has not identified its basis for claiming that

21   ASUS had reason to know that InterDigital violated the DCFA prior to April 15, 2012.

22   InterDigital's Answer merely alleges that "Plaintiff is not entitled to relief under the applicable

23   statutes of limitations," without any supporting factual allegations.  *See* Dkt. 112 at 16.  Accordingly,

24   InterDigital has not justified the inclusion of an instruction on this issue.

25       If an instruction on the statute of limitations is given, it should accurately reflect the law by

26   applying the "time of discovery rule."  The instruction should state that InterDigital must prove that

27   (a) a portion of ASUS's claimed harm occurred prior to April 15, 2012, and (b) prior to April 15,

28   2012, ASUS knew or had reason to know that InterDigital violated the Delaware Consumer Fraud

1    Act.

2           InterDigital cites the case *SmithKline Beecham Pharm. Co. v. Merck & Co.*, 766 A.2d 442,

3    450 (Del. 2000) for the proposition that the statute of limitations in 10 Del. C. § 8106 is not a

4    "discovery statute" and the limitation period begins to run from the time the cause of action accrues.

5    The *SmithKline* case, however, dealt with a claim for intentional interference with contract or

6    prospective business relations—not statutory fraud.  In contrast, the *Eames* and *Pack* cases cited

7    above deal specifically with statutory fraud (the DCFA in the case of *Eames*) and apply the "time of

8    discovery rule" even where 10 Del. C. § 8106 supplied the applicable statute of limitations.  *See*

9    *Pack*, 503 A.2d at 651.  Moreover, *SmithKline* strongly suggests that it would reach the same result

10   as *Eames* and *Pack* via the doctrine of tolling.  The primary case relied on by *SmithKline*—*In re*

11   *Dean Witter P'ship Litig.*, No. CIV. A. 14816, 1998 WL 442456, at *5 (Del. Ch. July 17, 1998),

12   aff'd, 725 A.2d 441 (Del. 1999)—contains an extensive discussion of tolling and observes that the

13   statute of limitations is tolled if there were "no observable or objective factors to put a party on

14   notice of an injury" and plaintiffs were blamelessly ignorant.  That tolling standard is nearly

15   identical to the time of discovery rule.  In any event, the *Eames* and *Pack* cases are directly on point

16   and controlling.

1

2

**DISPUTED JURY INSTRUCTION NO. 30:**
**STATUTE OF LIMITATIONS**
**OFFERED BY INTERDIGITAL**

3       InterDigital contends that ASUS's Delaware Consumer Fraud Act claim was not filed within

4   the time required by law.  A party must bring a claim under the Delaware Consumer Fraud Act

5   within 3 years of the alleged harm.  The statute of limitations may be a partial defense, allowing

6   recovery for damages that took place after the date set by law but preventing recovery for damages

7   that took place before the date set by law.

8       To succeed on this defense, InterDigital must prove that any portion of ASUS's claimed

9   harm occurred before April 15, 2012.  Any claimed harm which occurred prior to April 15, 2012 is

10  barred by the statute of limitations.

11

12      Authority:  10 Del. C. § 8106(a) ("[N]o action based on a statute . . . shall be brought after

13  the expiration of 3 years from the accruing of the cause of such action"); *see Reid v. Spazio*, 970

14  A.2d 176, 180 n.7 (Del. 2009) (describing Section 8106 as "providing a three-year statute of

15  limitations of general applicability").

16                                    **InterDigital's Position:**

17      Section 8106 of the Delaware Code is the applicable statute of limitations for actions brought

18  under the Delaware Consumer Fraud Act, and because InterDigital asserts the three-year statute of

19  limitations as an affirmative defense, an instruction is appropriate here.

20      ASUS's proposal does not correctly state the law.  Section 8106 "is not a 'discovery statute,'

21  and the limitations period begins to run from the time the cause of action accrues."  *SmithKline*

22  *Beecham Pharms. Co. v. Merck & Co.*, 766 A.2d 442, 450 (Del. 2000).  "This is so 'even if the

23  plaintiff is ignorant of the cause of action.'"  *Id.*, citing *In re Dean Witter Partnership Litig.*, C.A.

24  No. 14816, 1998 Del. Ch. LEXIS 133 at *15 (July 17, 1998).   To prevent its claims from being

25  barred, the plaintiff must demonstrate a basis for tolling the statute, such as that defendant

26  fraudulently concealed the basis for its claims.  *SmithKline,* 766 A.2d  at 450.

27      ASUS's argument based on discovery of the claim is not applicable in this circumstance.

28  The date of accrual has only been "construed to mean the date of discovery where the injury was

55

inherently unknowable and the injured party had relied upon the professional expertise of the wrongdoer and was blamelessly ignorant. When these factual requisites are met, the limitations period commenced to run when the person had reason to know that a wrong had been committed." *Pack & Process, Inc. v. Celotex Corp.*, 503 A.2d 646, 650 (Del. Super. Ct. 1985) (internal citations, quotations omitted).  ASUS's instruction fails to include any requirement that it prove it injury was "inherently unknowable" and it "relied on the professional expertise of the wrongdoer" and it was "blamelessly ignorant" (none of which are applicable in this case).

**DISPUTED JURY INSTRUCTION NO. 31:**
**GENERAL PURPOSE OF ANTITRUST AND PATENT LAWS**
**OFFERED BY ASUS**

[*ASUS contends that no instruction regarding the general purpose of antitrust and patent laws should be given.*]

<u>ASUS's Argument.</u>  InterDigital's proposed instruction will only serve to confuse the jury by hinting at a non-existent "patent law" defense to an antitrust violation, within a theoretical discourse on the policies behind antitrust law and patent law that is not appropriate for the jury.  The final two sentences of the proposed instruction, in particular, are problematic.  Those sentences suggest that in deciding ASUS's antitrust claim, the jury must evaluate whether ASUS's claim is based on InterDigital exercising the "right to exclude" and whether InterDigital's challenged conduct goes "beyond the scope of patent rights."  There is no legal support for imposing such vague, confusing, undefined limitations on ASUS's antitrust claim in the guise of a background instruction about the policies of the antitrust laws and patent laws.  And there is no reason to add further complexity to the already lengthy and complex instructions on antitrust law.

1

2

3

**DISPUTED JURY INSTRUCTION NO. 31:**
**GENERAL PURPOSE OF ANTITRUST AND PATENT LAWS**
**OFFERED BY INTERDIGITAL**

4

5

6

7

   The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace.  The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress. The patent laws complement the antitrust laws in promoting competition by encouraging innovation and the development of new technologies.

8

9

10

11

12

13

14

15

16

17

18

   The basic purpose of both sets of laws is to promote innovation, industry, and competition. In general, the antitrust laws seek to promote competition by prohibiting the abuse of monopoly power and restraints on trade that unduly interfere with the competitive process. The patent laws seek to promote competition by encouraging people to invest in scientific research and product development.  These investments can lead to new and better products, better ways of making things, new jobs, and entirely new industries.  But a patent necessarily involves a restraint of trade: the right to seek to exclude others from using the patented invention for the limited duration of the patent. This right to exclude is not by itself an antitrust violation.  However, if the patent owner engages in anticompetitive conduct beyond the scope of the patent rights, its conduct may constitute an antitrust violation.

19

20

   Authority:  *Hynix v. Rambus*, 06-0244-RMW, ECF 1254 (N.D. Cal. Mar. 25, 2008).

   <u>**InterDigital's Position:**</u>

21

22

23

24

25

26

27

28

   This instruction is based on an instruction given in the *Hynix v. Rambus* case, which is derived from the Model Jury Instructions published by the ABA Section of Antitrust Law (2016) – Patents, Instruction No. 2.  It provides an overview of the purpose of the Sherman Act and the relation of patent laws to antitrust laws.  *See Hynix v. Rambus*, 06-0244-RMW, ECF 1254 (N.D. Cal. Mar. 25, 2008).  Introductory instructions on the purpose of antitrust and patent laws are appropriate and will provide the jury with context for the remainder of the instructions related to ASUS's Sherman Act claims.  These instructions will also impart to the jury the importance the public

interests of promoting innovation as well as promoting competition.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STIPULATED JURY INSTRUCTION NO. 32:**
**MONOPOLIZATION--ELEMENTS[29]**

I will now instruct you on how to decide whether ASUS has proven that InterDigital has violated the federal antitrust laws. ASUS alleges that it was injured by InterDigital's unlawful monopolization of technology markets for the 4G cellular standard.

To prevail on this claim, ASUS must prove each of the following elements by a preponderance of the evidence:

**First**, the alleged technology market is a relevant antitrust market;

**Second**, that InterDigital possessed monopoly power in that market;

**Third**, that InterDigital willfully acquired or maintained its monopoly power in that market by engaging in anticompetitive conduct;

**Fourth**, that InterDigital's conduct occurred in or affected interstate or foreign commerce; and

**Fifth**, that InterDigital's anticompetitive conduct was a substantial factor in causing injury to ASUS's business or property.

If you find that ASUS has failed to prove any of these elements, then you must find for InterDigital and against ASUS on this claim.  If you find that ASUS has proved all of these elements by a preponderance of the evidence, then you must find for ASUS and against InterDigital on this claim.

---

[29] Ninth Circuit Manual of Model Civil Jury Instructions, Section 14 (recommend sources for antitrust jury instructions); American Bar Association Antitrust Section, Model Jury Instructions in Civil Antitrust Cases (A.B.A., Chicago, Ill., 2016) at 102; *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n.9 (1969).

1

2

**DISPUTED JURY INSTRUCTION NO. 33:**
**MONOPOLIZATION—RELEVANT MARKET[30]**
**OFFERED BY ASUS**

3

4        Before it can be determined whether a person has monopolized a field of competition in a

5   particular line of trade or commerce, the "relevant market" must be defined.  The relevant market

    ASUS claims applies in this action is as follows: worldwide markets for technologies covered by
6
    IDC patents incorporated into the 4G cellular standards by ETSI, together with all other options that
7
    ETSI could have used in alternative 4G cellular standards to provide the same or reasonably
8
    interchangeable functionalities, including the alternative of not standardizing a given feature at all.
9
    ASUS must prove by a preponderance of the evidence that this market is a relevant antitrust market.
10
         In determining whether this market is a relevant antitrust market, you should consider: (1) a
11
    technology market and, (2) a geographic market.
12
         First, technology markets can be relevant antitrust markets.  Technology markets, for the
13
    purposes of an antitrust claim, consist of markets for technologies covered by patents incorporated
14
    into a standard, together with other options the standard setting organization could have used to
15
    provide the same or reasonably interchangeable functionalities.  ASUS is not required to define the
16
    technology market by listing individual patents.
17
         Second, the relevant geographic market generally consists of the area or areas in which
18
    InterDigital and other companies compete in licensing their patents. In some instances, the
19
    geographic market may be national or international, under other circumstances it may be as small as
20
    a single metropolitan area. The geographic market selected must both correspond to the commercial
21
    realities of the industry and be economically significant.
22

23        ASUS's Argument.  ASUS's instruction is based on a model instruction recommended by the
24

25   ───────────────
[30] Ninth Circuit Manual of Model Civil Jury Instructions, Section 14 (recommend sources for
26   antitrust jury instructions); Kevin F. O'Malley, et al., 3A Federal Jury Practice and Instructions, ch.
     150 Antitrust—Private Action (6th ed. 2012) at 85-86; Dkt. 341 (MSJ Order) at 21; *Broadcom Corp.*
27   *v. Qualcomm Inc.*, 501 F.3d 297, 316 (3d Cir. 2007) (stating that "even if Qualcomm's WCDMA
     technology was the only candidate for inclusion in the standard, it still would not have been selected
28   by the relevant SDOs absent a FRAND commitment").

1    Ninth Circuit, adapted for this case to reflect the fact that the relevant antitrust market in this case is

2    a technology market, not a product market.   As the Court ruled on summary judgment, "other courts

3    [] have confirmed that technology markets may serve as 'relevant markets' for Sherman Act claims

4    in the context of essential patents adopted by standard setting organizations."  Dkt. 341 at 21

5    (citations omitted).  The Court further ruled that "Plaintiff is not necessarily required to define the

6    relevant market by listing individual patents."  *Id.*   ASUS's proposed instruction includes that

7    concept as well, to prevent InterDigital from misleading the jury with a legally-irrelevant argument

8    that ASUS must prove particular patents are essential or constitute the relevant market.  Overall,

9    ASUS's proposed instruction is simple, clear, and based on the model instruction adapted for this

10   case.

11        InterDigital's proposed instruction has numerous problems.  First, it is not adapted to fit the

12   facts of this case and as a result will be confusing to the jury.  The instruction refers to the "user's

13   point of view," the perspective of a "consumer," and "actual behavior of users."  The jury will

14   assume that the user and consumer refer to the end-user of a product.  However, the relevant "user"

15   and "consumer" in this case is ETSI, which choose what technology to adopted into the standard.

16   The instruction also refers to "marketing efforts of licensors."  The facts of this case do not involve

17   "marketing efforts of licensors," so it is unclear to what that phrase refers.

18        Second, InterDigital's proposed instruction is not tailored to fit the facts of this case because

19   it lists a number of irrelevant factors that the jury is instructed to consider.  The Ninth Circuit advises

20   courts to review model instructions "carefully before use in a particular case."  Ninth Circuit Manual

21   of Model Civil Jury Instructions, Introduction.[31]  The Federal Circuit has also cautioned against "rote

22   reference" to a list of factors in FRAND cases and against "parrot[ing]" all "factors to the

23   jury…without considering their relevance to the record created at trial."  *See Ericsson, Inc. v. D-Link*

24   *Systems, Inc.*, 773 F.3d 1201, 1230-32 (Fed. Cir. 2014).  Listing irrelevant factors will only confuse

25   the jury by suggesting that proof must be presented for each factor.  Despite that guidance,

26   InterDigital's instruction parrots a list of factors used in two other cases without considering their

27   relevance here.  None of the factors are relevant here except the first one, and that factor is relevant

28   ───────────────
     [31] Available at:  http://www3.ce9.uscourts.gov/jury-instructions/node/105

1    only if phrased in terms of ETSI and 3GPP rather than "users."  InterDigital has not shown that

2    either party will present evidence regarding the other listed factors.

3          Third, InterDigital's instruction contains a paragraph stating that "ASUS must identify an

4    InterDigital patent that is essential to the ETSI 4G cellular standard."  There is no such legal

5    requirement.  The Court already expressly rejected this argument on summary judgment, stating that

6    "Plaintiff is not necessarily required to define the relevant market by listing individual patents."

7    Dkt. 341 at 21.  InterDigital cannot point to a single case, much less a well-established precedent,

8    that requires an antitrust plaintiff to prove *essentiality* of patents (much less individual patents) to

9    establish the existence of an antitrust market.  InterDigital relies upon jury instructions in *Hynix v.*

10   *Rambus*, 06-0244-RMW, ECF 1254 (N.D. Cal. Mar. 25, 2008) and *Apple v. Samsung*, No. 11-1846-

11   LHK, ECF 1989 (N.D. Cal. Aug. 21, 2012), but neither case identifies any *requirement* of defining

12   the relevant market based either on technology groups (*Hynix*) or individual patents (*Apple*).  The

13   plaintiffs' choices in two cases on how to argue their cases does not establish a legal requirement

14   that ASUS is bound to argue its case in the same manner.

15         InterDigital also cites *United States v. Microsoft Corp.*, 253 F.3d 34, 52 (D.C. Cir. 2001), but

16   that decision concerned the government's efforts to break up Microsoft Corp., and the decision

17   affirmed the district court's definition of the relevant market as "the licensing of all Intel-compatible

18   PC operating systems worldwide."  *Id.* (finding that the district court "properly defined the relevant

19   market.").  That definition of the relevant market is simple and broad; it supports ASUS's definition

20   in this case and certainly does not impose any requirement that the relevant market must be defined

21   in granular detail or with reference to specific patents.  In the irrelevant portion of the decision

22   quoted by InterDigital, the appeals court faulted the district court for conducting no independent

23   analysis on an attempted monopolization claim, but instead simply assuming that monopolizing one

24   market (operating systems) indicated attempted monopolization of an entirely different market."

25   *Microsoft*, 253 F.3d at 80-81.  The appeals court further emphasized that "determination of a

26   relevant market is a factual question[.]" *Id.* at 81.

27         InterDigital mentions *Godo Kaisha IP Bridge 1 v. TCL*, No. 15-634-JFB-SRF, ECF No.367

28   at 10-12 (D. Del. Feb. 28, 2018) at 10-12, but in that case the relevant market definition was

1    deficient in a basic way—it "improperly aggregates all three telecommunications standards [2G, 3G,

2    and 4G] together[.]"  In addition, the court noted that the Third Circuit had previously accepted a

3    definition of the relevant market as "the market for Qualcomm's proprietary WCDMA technology,"

4    a broad definition that directly refutes InterDigital's position that the relevant market must be

5    defined in terms of specific patents or specific technology groups.  *Id.* at 12.

6         Fourth, InterDigital's instruction erroneously states that "ASUS [must] prove[] *both* a

7    relevant technology market and a relevant geographic market."  There is no such legal requirement.

8    The law, at most, requires proving the relevant market—not separately proving a technology market

9    and a geographic market.  *See* American Bar Association Antitrust Section, Model Jury Instructions

10   in Civil Antitrust Cases (A.B.A., Chicago, Ill., 2016) at 106 (stating that "In some cases, courts have

11   stated that when proving market power through direct evidence, there is no need to define the

12   relevant market.").  Accordingly, the Ninth Circuit's recommended model instructions state that the

13   technology market and the geographic market are "aspects" of the relevant market that the jury

14   should "consider."  *Id.*

15        Overall, InterDigital's instruction overemphasizes the precision with which the relevant

16   market must be defined, and attempts to erect numerous barriers for proving the market that are not

17   supported by the law and that are inconsistent with the basic notion of a relevant market.  *See*

18   *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1476 (9th Cir. 1997) ("Definition of the relevant market

19   cannot be performed with mathematical accuracy; it is simply the recognition of a field in which

20   meaningful competition is said to exist."), *aff'd*, 525 U.S. 299 (1999), and *overruled on other*

21   *grounds* by *Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012).  ASUS's instruction accurately

22   states the law, and it is for the jury to determine if ASUS presented sufficient evidence of the

23   relevant market.

24

25

26

27

28

**DISPUTED JURY INSTRUCTION NO. 33:**
**MONOPOLIZATION—RELEVANT MARKET**
**OFFERED BY INTERDIGITAL**

ASUS must prove by a preponderance of the evidence that InterDigital had monopoly power in one or more relevant markets. Defining the relevant market is essential to determining whether InterDigital had monopoly power because whether a company has monopoly power depends on the contours of the market.

There are two aspects you must consider in determining whether ASUS has met its burden of proving the relevant market or markets. The first is the existence of a relevant technology market. The second is the existence of a relevant geographic market.

A "technology" refers to an invention or process for accomplishing something, and is sometimes covered by a patent.  The basic idea of a relevant technology market is that the technologies within it are reasonable substitutes for each other from the user's point of view; that is, the technologies compete with each other.  In other words, the relevant technology market includes the technologies that a consumer believes are reasonably interchangeable or reasonable substitutes for each other.  This is a practical test with reference to actual behavior of users and marketing efforts of licensors.  Technologies need not be identical or precisely interchangeable as long as they are reasonable substitutes.

There are a number of factors you may consider in determining whether various technologies were reasonable substitutes for each other:

• whether potential users of the technologies would have considered alternatives to the InterDigital technologies for the 4G standards during the time period before the relevant 4G standards were adopted;

• the relationship between the prices and performance of one technology and another;

• the perceptions of either the industry or the public as to whether the technologies were in separate markets;

• the views of ASUS and InterDigital regarding who were competitors of InterDigital in supplying alternative technologies;

• the existence or absence of different end uses for the technologies.

65

The relevant geographic market is the area in which the InterDigital technologies face competition from other technologies to which customers can reasonably turn. When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one area have substantial effects on prices or sales in another area, which would tend to show that both areas are in the same relevant geographic market. The geographic market may be as large as global or nationwide, or as small as a single town or even smaller.

The relevant market ASUS claims applies in this action is as follows: worldwide markets for each technology covered by an InterDigital patent essential to ETSI 4G cellular standards, together with other available alternative technologies that ETSI could have used in alternative 4G cellular standards to provide the same or reasonably interchangeable functionalities.

In order to prove the existence of a relevant technology market, ASUS must identify an InterDigital patent that is essential to the ETSI 4G cellular standard.  Demonstrating essentiality of a patent requires proof that it is not possible on technical (but not commercial) grounds, to make products which comply with the 4G cellular standard without infringing that patent.  Simply including a patent on a disclosure of patents that may be, or may become, essential, is not sufficient to prove essentiality.  ASUS must demonstrate that each market includes a particular element of a 4G cellular standard technology as to which InterDigital has obtained patents and any technologies that are reasonable substitutes for that patented technology.  InterDigital contends that ASUS has not demonstrated that there are reasonable substitutes for its patented technologies.

If, after considering all the evidence, you find that ASUS has proven both a relevant technology market and a relevant geographic market, then you must find that ASUS has met the relevant market requirement and you must consider the remaining elements of its unlawful monopolization claims.

If you find that ASUS has failed to prove either a relevant technology market or a relevant geographic market, then you must find for InterDigital and against ASUS on ASUS's unlawful monopolization claim.

Authority:  *Apple v. Samsung*, No. 11-1846-LHK, ECF 1903 (N.D. Cal. Aug. 21, 2012);

1  *Hynix v. Rambus*, 06-0244-RMW, ECF 1254 (N.D. Cal. Mar. 25, 2008).

2  **InterDigital's Position:**

3  As set forth in the *Hynix v. Rambus* jury instructions, a technology market requires proof of

4  the defendant's patents that are essential to a standard, as well as reasonable substitutes for each such

5  technology.  InterDigital's proposed instruction also  incorporates the ETSI IPR Policy's definition

6  of "essential," as that is the relevant definition for purposes of the 4G standards at issue in this case

7  ("that it is not possible on technical (but not commercial) grounds, to make products which comply

8  with the 4G cellular standard without infringing that patent," *see* Dkt. No. 231-6, ETSI IPR Policy at

9  § 15-6).

10  ASUS's proposed instruction is legally incorrect in asserting that "ASUS is not required to

11  define the technology market by listing individual patents."  One cannot assess the existence of

12  reasonable substitutes without identification of the specific standardized technology involved.  For

13  example, the *Hynix v. Rambus* jury instruction set forth the following DRAM technologies asserted

14  to comprise relevant markets: "(1) the market for latency technology; (2) the market for burst length

15  technology; (3) the market for data acceleration technology; (4) the market for clock synchronization

16  technology; (5) the market for precharge technology; and (6) the market for write latency

17  technology."  *Hynix v. Rambus*, 06-0244-RMW, ECF 1254 (N.D. Cal. Mar. 25, 2008).  While ASUS

18  refused to identify any specific 4G standard technologies comprising relevant markets during the

19  pretrial phase, it must do so at trial in order to carry its burden of proof.[32]  Simply asserting that all

20  of the thousands of technologies present in a cellular standard comprise undefined "technology

21  markets," without identifying any reasonable substitutes, does not suffice as proof of a relevant

22  market on which to find liability for an antitrust claim at trial.  *See United States v. Microsoft Corp.*,

23  253 F.3d 34, 81 (2001) (judgment  on § 2 claim reversed for failure to prove a relevant antitrust

24  market where there were no facts found "defining what a browser is or what products might

25  constitute substitutes," as plaintiffs offered no evidence of "(1) what constitutes a browser (*i.e.*, what

26  are the technological components of or functionalities  provided by a browser) and (2) why certain

27  _____

28  [32] InterDigital reserves the right to object at trial to the admission of evidence that ASUS failed to disclose during pretrial discovery.

1    other products are not reasonable substitutes (*e.g.*, browser shells or viewers for individual internet

2    extensions, such as Real Audio Player or Adobe Acrobat Reader).”); *see also Godo Kaisha IP*

3    *Bridge 1 v. TCL*, No. 15-634-JFB-SRF, ECF No.367 at 10-12 (D. Del. Feb. 28, 2018) at 10-12

4    (rejecting argument that “defining the relevant market in a standard essential patent context does not

5    require anything more than showing that the patent was declared essential by an SSO”).

6           There is no exemption from the law that a relevant antitrust market must be defined with

7    “analytical rigor,” *see Microsoft*, 253 F.3d at 81, simply because plaintiff’s claims involve industry

8    standard setting.  In the *Hynix v. Rambus* case, plaintiffs were required to prove each technology

9    market with reference to the specific technologies and their available substitutes.  *Hynix v. Rambus*,

10   06-0244-RMW, ECF 1254 (N.D. Cal. Mar. 25, 2008).  Likewise, in *Apple v. Samsung*, the jury

11   instructions on breach of FRAND contract identified two specific patents disclosed to the standard-

12   setting organization:  “Samsung has submitted declarations to ETSI in which Samsung identified the

13   ’516 and ’941 patents, or related patents or applications, as IPRs that it believed may be considered

14   essential . . . .  In those declarations, Samsung declared that it would be prepared to grant irrevocable

15   licenses under those IPRs on fair, reasonable and nondiscriminatory (‘FRAND’) terms and

16   conditions to the extent the IPRs remain essential to the UMTS standard.” *Apple v. Samsung*, No.

17   11-1846-LHK, ECF 1903.  Thus, the jury considered only these two patents in connection with an

18   alleged breach of a FRAND commitment, which in turn formed the basis of the antitrust claim.  This

19   is clear from Apple’s post-trial JMOL motion seeking to overturn the non-liability verdict in favor of

20   Samsung on the antitrust claim, in which Apple argued:

21          First, Apple proved the relevant antitrust markets. Dr. Ordover
            testified that the relevant technology markets “center[] on the
22          technologies that Samsung sponsored into the standard, and all the
            other technologies that could have performed the features on which
23          those technologies read.” (Tr. 3581:25-3582:8.)  **He identified the
            technologies that compete in those markets based on Dr. Kim’s**
24          **and Dr. Knightly’s testimony about alternatives to the ’516 and**
            **’941 patents.** (Tr. 3582:3-8; Tr. 3432:2-13 (Kim) (’516 alternatives);
            Tr. 3460:15-25 (Knightly) (’941 alternatives).)
25

26          *Apple v. Samsung*, No. 11-1846-LHK, ECF 1989 (N.D. Cal. Aug. 21, 2012) (emphasis

27   added).  As these appear to be the only two cases in which a Sherman Act claim based on alleged

28   standards-setting fraud has been tried to a jury, ASUS’s proposed instruction allowing it to prove a

relevant market without ever identifying specific technologies or their substitutes would be unprecedented.

**DISPUTED JURY INSTRUCTION NO. 34:**
**MONOPOLIZATION—EXISTENCE OF MONOPOLY POWER**[33]
**OFFERED BY ASUS**

"Monopoly power" is the power to control prices or exclude competition.

When a patented technology is incorporated into a standard, adoption of the standard may create monopoly power by eliminating alternatives to the patented technology.

<u>ASUS's Argument.</u>  ASUS's proposed instruction is based directly on the Supreme Court's definition of monopoly power, and on application of that definition in the standard-setting organization context as recognized by the Ninth Circuit in *Microsoft* and the Third Circuit in *Broadcom*.  The Supreme Court defines monopoly power as "as "the power to control prices or exclude competition."  *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997) (same).  The Ninth Circuit's recommended model jury instructions use the same definition in instructing the jury on this element.  Kevin F. O'Malley, et al., 3A Federal Jury Practice and Instructions, ch. 150 Antitrust—Private Action (6th ed. 2012) at 84.

In the context of standard-setting organizations, the Ninth Circuit has recognized that "[o]nce a standard becomes widely adopted, SEP holders obtain substantial leverage over new product developers, who have little choice but to incorporate SEP technologies into their products."  *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1031 (9th Cir. 2015).  Similarly, the Third Circuit found that "[a] standard, by definition, eliminates alternative technologies.  *When a patented technology is incorporated in a standard, adoption of the standard eliminates alternatives to the*

---

[33] Ninth Circuit Manual of Model Civil Jury Instructions, Section 14 (recommend sources for antitrust jury instructions); Kevin F. O'Malley, et al., 3A Federal Jury Practice and Instructions, ch. 150 Antitrust—Private Action (6th ed. 2012) at 84; *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007) ("A standard, by definition, eliminates alternative technologies.  When a patented technology is incorporated in a standard, adoption of the standard eliminates alternatives to the patented technology.") (internal citation omitted); *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1031 (9th Cir. 2015) ("Once a standard becomes widely adopted, SEP holders obtain substantial leverage over new product developers, who have little choice but to incorporate SEP technologies into their products.").

1    *patented technology.*"  *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007)

2    (emphasis added).  This simple principle is highly relevant in this case, and is a basis for ASUS's

3    allegation of monopoly power.

4          InterDigital's proposed instruction turns a simple issue into an excessively complex one, and

5    improperly recites numerous factors and considerations designed for cases involving sales of goods

6    to consumers that do not apply to this case.  *See* Ninth Circuit Manual of Model Civil Jury

7    Instructions, Introduction (advising courts to review model instructions "carefully before use in a

8    particular case.");[34] *Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1230-32 (Fed. Cir. 2014)

9    (cautioning against "rote reference" to a list of factors in FRAND cases and against "parrot[ing]" all

10   "factors to the jury…without considering their relevance to the record created at trial.").  For

11   example, the concept of charging prices above competitive levels in the relevant market has little

12   relevance to this case—the relevant market is technology markets where InterDigital's patented

13   technology competed with other technologies for adoption into the standard.  InterDigital's

14   technology was adopted; other technologies were not and consequently have no "prices" and earn no

15   "profits."  Despite that, InterDigital's instruction focuses on prices and profits and even confusingly

16   defines exclusion of competition in terms of price increases.  InterDigital's instruction erroneously

17   requires proof of both price maintenance *and* exclusion of competition, when the correct standard

18   requires proof of either.  *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966).

19         InterDigital's proposed instruction on indirect proof also improperly recites numerous

20   irrelevant considerations that are not designed for a case about anticompetitive conduct in standard-

21   setting organizations.  As the *Microsoft* and *Broadcom* courts make clear, by definition adoption of

22   InterDigital's technology into the standard gives it a 100% market share and there is no trend—it

23   stays at 100%.  For the same reason there is no "entry or exit" by competitors.  The barrier to entry is

24   caused by the standard-setting organization adopting the technology and not others, not by

25   "specialized marketing practices" or "reputation of the companies," and certainly not "brand name

26   recognition" of consumer products.  For the same reason the number and size of competitors is

27   irrelevant—they are simply prohibited from competing in the relevant market by the standard setting

28   ―――――――――――――
     [34] Available at:  http://www3.ce9.uscourts.gov/jury-instructions/node/105

1  organization.

2      In brief, InterDigital's instruction improperly complicates a simple issue with an excessively

3  long and complex instruction designed for consumer products cases, which will only confuse the

4  jury.

**DISPUTED JURY INSTRUCTION NO. 34:**
**MONOPOLIZATION—EXISTENCE OF MONOPOLY POWER**
**OFFERED BY INTERDIGITAL**

If you find that ASUS has proven a relevant market, then you should determine whether InterDigital has monopoly power in that market. Monopoly power is the power to control prices and exclude competition in a relevant antitrust market.  In determining whether InterDigital has monopoly power in a relevant market, you may consider whether there is direct evidence that InterDigital has monopoly power.

**DIRECT PROOF**

In order to provide direct proof of monopoly power, ASUS as the burden of proving that defendant has the ability to raise or maintain the prices that it charges for goods or services in the relevant market above competitive levels. ASUS must prove that InterDigital has the power to do so by itself -- that is, without the assistance of, and despite competition from, any existing or potential competitors.

ASUS must also prove that InterDigital has the power to maintain prices above a competitive level for a significant period of time. If InterDigital attempted to maintain prices above competitive levels, but would lose so much business to other competitors that the price increase would become unprofitable and would have to be withdrawn, then InterDigital does not have monopoly power.

Similarly, ASUS must prove that InterDigital has the ability to exclude competition. For example, if InterDigital attempted to maintain prices above competitive levels, but new competitors could enter the relevant market or existing competitors could expand their sales and take so much business that the price increase would become unprofitable and would have to be withdrawn, then InterDigital does not have monopoly power.

The ability to earn high profit margins or a high rate of return does not necessarily mean that InterDigital has monopoly power. Other factors may enable a company without monopoly power to sell at higher prices or earn higher profit margins than its competitors, such as the ability to offer superior products or services. However, an ability to sell at higher prices or earn higher profit margins than other companies for similar goods or services over a long period of time may be evidence of monopoly power. By contrast, evidence that InterDigital would lose a substantial

73

amount of sales if it raised prices substantially, or that InterDigital's profit margins were low compared to its competitors, erratic, and/or decreasing, might be evidence that InterDigital does not have monopoly power.

**INDIRECT PROOF**

If you do not find there is direct evidence of monopoly power, there are a number of factors you may consider as indirect evidence of monopoly power:

**Market Share**

The first factor that you should consider is InterDigital's market share. A market share above 50 percent may be sufficient to support an inference that a defendant has monopoly power, but in considering whether a defendant has monopoly power it is also important to consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors. Along with a defendant's market share, these factors should inform you as to whether the defendant has monopoly power. The likelihood that a company has monopoly power is stronger the higher that company's share is above 50 percent.

A market share below 50 percent is ordinarily not sufficient to support a conclusion that a defendant has monopoly power. However, if you find that the other evidence demonstrates that InterDigital does, in fact, have monopoly power despite having a market share below 50 percent, you may conclude that InterDigital has monopoly power.

**Market Share Trend**

Another factor you may consider is the trend in InterDigital's market share. An increasing market share may strengthen an inference that a company has monopoly power, particularly where that company has a high market share, while a decreasing share might show that a company does not have monopoly power.

**Barriers to Entry**

You may also consider whether there are barriers to entry into the relevant market. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely

74

1   way. Barriers to entry might include, among other things, intellectual property rights (such as patents

2   or trade secrets), specialized marketing practices, and the reputation of the companies already

3   participating in the market (or the brand name recognition of their products). Evidence of low or no

4   entry barriers may be evidence that defendant does not have monopoly power, regardless of

5   defendant's market share, because new competitors could enter easily if the defendant attempted to

6   raise prices for a substantial period of time. By contrast, evidence of high barriers to entry along with

7   high market share may support an inference that defendant has monopoly power.

8   **Entry and Exit by Other Companies**

9   The history of entry and exit in a relevant technology market may be helpful to consider.

10  Entry of new competitors or expansion of existing competitors may be evidence that InterDigital

11  lacks monopoly power. On the other hand, departures from a technology markets, or the failure of

12  firms to enter the market, particularly if prices and profit margins are relatively high, may support an

13  inference that InterDigital has monopoly power.

14  **Number and Size of Competitors**

15  You may consider whether InterDigital's competitors are capable of effectively competing.

16  In other words, you should consider whether the financial strength, market shares and number of

17  competitors act as a check on the defendant's ability to price its products. If InterDigital's

18  competitors are vigorous or have large or increasing market shares, this may be evidence that

19  InterDigital lacks monopoly power. On the other hand, if you determine that InterDigital's

20  competitors are weak or have small or declining market shares, this may support an inference that

21  InterDigital has monopoly power.

22  **CONCLUSION**

23  If you find that InterDigital has monopoly power in the relevant market, then you must

24  consider the remaining elements of ASUS's monopolization claim.  If you find that InterDigital does

25  not have monopoly power, then you must find for InterDigital and against ASUS on this claim.

26

27  Authority:  *Apple v. Samsung*, No. 11-1846-LHK, ECF 1903 (N.D. Cal. Aug. 21, 2012);

28

1  *Hynix v. Rambus*, 06-0244-RMW, ECF 1254 (N.D. Cal. Mar. 25, 2008).

2  **InterDigital's Position:**

3  InterDigital's proposed instruction follows the instructions given in *Apple v. Samsung* and

4  *Hynix v. Rambus* in this district, which are in turn based on the American Bar Association, Model

5  Jury Instructions in Civil Antitrust Cases (2016), Section 2 of Sherman Act, Instruction Nos. 7-8.

6  This instruction properly states the law and addresses the relevant issues of both direct and indirect

7  proof of monopoly power.  The proposed instruction incorporates sections from *Apple v. Samsung*

8  and *Hynix v. Rambus* instructions, both cases where the antitrust claims were based on alleged

9  technology markets in the context of patents and standards-setting.  Thus, ASUS's argument that

10  these instructions are "inapplicable" in the technology market context and instead relate to only to

11  product markets is incorrect.  While the instruction appears complex, it is not purporting to list

12  elements that the jury must find; rather, it gives explanation and examples as to how the jury should

13  assess the monopoly power question, which will be more helpful to the jury than a short, conclusory

14  statement with no explanation.

15  ASUS's proposed instruction is incorrect in stating:  "When a patented technology is

16  incorporated into a standard, adoption of the standard may create monopoly power by eliminating

17  alternatives to the patented technology."  ASUS's claimed authority for this statement is inapposite.

18  The *Microsoft v. Motorola* case did not involve any antitrust or Sherman Act claims, and monopoly

19  power is not discussed in the decision.  *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1031 (9th

20  Cir. 2015).  The Third Circuit *Broadcom* case discusses monopoly as susceptible to both direct and

21  indirect proof, as more fully explained in InterDigital's instruction.  *Broadcom Corp. v. Qualcomm*

22  *Inc.*, 501 F.3d 297, 307 (3d Cir. 2007).[35]   Even ASUS's quote from that case says only that

23  "adoption of the standard eliminates alternatives to the patented technology," but not that this is

24  necessarily equivalent to a finding of monopoly power for purposes of a Sherman Act claim.

25  Further, as an appeal of a motion to dismiss, the *Broadcom* case addresses only what allegations are

26  sufficient to state a claim, not the legal elements required to be proved at trial.

27

28
[35] InterDigital maintains its objection that *Broadcom v. Qualcomm* is an out-of-circuit case that does not correctly state federal antitrust law and should not be followed.

ASUS's formulation of "eliminating alternatives to [a] patented technology" would not alone prove monopoly power, and the jury must consider the other factors applicable to demonstration of monopoly power in order to make this determination.  The Court should decline to use ASUS's proposed instruction as it would be prejudicial to InterDigital by suggesting to the jury that standardization always results in monopoly power.

**DISPUTED JURY INSTRUCTION NO. 35:**
**MONOPOLIZATION—WILLFUL ACQUISITION OF MONOPOLY**
**POWER THROUGH ANTICOMPETITIVE ACTS**
**OFFERED BY ASUS**[36]

The mere possession of monopoly power is not sufficient to support a finding of monopolization, unless it is also determined that monopoly power was willfully and intentionally acquired and maintained. A person who acquires monopoly power through normal growth and development, as a consequence of having a superior product, or business acumen, or through historical accident, is not guilty of monopolization as defined in this charge.

You may find that InterDigital willfully acquired or maintained monopoly power if you find that: (1) InterDigital made an intentionally false promise to license its 4G LTE patents on FRAND terms; (2) ETSI relied on InterDigital's promise when including InterDigital's technology in the 4G LTE standard; and (3) InterDigital breached its promise.

<u>ASUS's Argument.</u>  ASUS's proposed instruction is based directly on the Ninth Circuit's recommended model instruction, *see* Kevin F. O'Malley, et al., 3A Federal Jury Practice and Instructions, ch. 150 Antitrust—Private Action (6th ed. 2012) at 72, and on the legal standard for proving anticompetitive acts in the standard-setting organization context as set forth in *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007).  ASUS's proposed instruction presents a simple, clear, neutral statement of the law that is directly on point for this case.

InterDigital's instruction should be rejected because it again tries to make a simple issue into an excessive complex one, laden with irrelevant considerations including even "access to raw materials."  InterDigital's instruction appears to be largely based on the ABA model instruction, but that instruction is excessively long and complicated, has many irrelevant examples, and was designed for consumer products cases.  For instance, InterDigital's instruction focuses on evidence about charging prices and benefits to consumers.  Both of those concepts are not relevant to this case

---

[36] Ninth Circuit Manual of Model Civil Jury Instructions, Section 14 (recommend sources for antitrust jury instructions); Kevin F. O'Malley, et al., 3A Federal Jury Practice and Instructions, ch. 150 Antitrust—Private Action (6th ed. 2012) at 72; *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007).

1    for the reasons explained in ASUS's argument regarding the preceding instruction.  The Ninth

2    Circuit's other recommended model instruction—Kevin F. O'Malley, et al., 3A Federal Jury Practice

3    and Instructions, ch. 150 Antitrust—Private Action (6th ed. 2012) at 72—has a much simpler, more

4    general instruction that provides a much better fit for this case.

5              InterDigital's instruction erroneously instructs the jury—twice—that a company that obtains

6    a patent cannot commit anticompetitive conduct ("Firm B developed and patented a new method…it

7    therefore is not anticompetitive conduct….You may not find that a company willfully acquired or

8    maintained monopoly power…because of economic or technological efficiency, including efficiency

9    resulting from scientific research; or by obtaining a valid and enforceable patent.").  That instruction

10   runs directly contrary to the *Broadcom* standard.  *See* Dkt. 341 at 22 (citing *Broadcom* and *Apple*

11   cases for the standard).  It would be highly misleading and legally erroneous to suggest to the jury in

12   this case that obtaining a patent immunizes it from antitrust liability.

13             InterDigital's instruction states that "[e]vidence of fraudulent intent in the context of

14   statements made to standards-setting organizations is not sufficient to establish unlawful

15   anticompetitive or exclusionary conduct."  This statement also runs directly contrary to the

16   *Broadcom* standard and should be rejected.  The *Broadcom* standard states that evidence of

17   fraudulent intent, together with two other elements, *is* sufficient to establish anticompetitive conduct.

18   *Broadcom*, 501 F.3d at 314; Dkt. 341 (MSJ Order) at 22.

19             Finally, InterDigital's proposed instruction that anticompetitive conduct must make it "very

20   difficult or impossible for competitors to compete" does not appear to be supported by legal

21   authority from the Supreme Court or Ninth Circuit.

22

23

24

25

26

27

28

### DISPUTED JURY INSTRUCTION NO. 35:
### MONOPOLIZATION—WILLFUL ACQUISITION OF MONOPOLY POWER THROUGH ANTICOMPETITIVE ACTS
### OFFERED BY INTERDIGITAL

The next element ASUS must prove is that InterDigital willfully acquired monopoly power through anticompetitive acts or practices. Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. In addition, you should distinguish the acquisition of monopoly power through anticompetitive acts from the acquisition of monopoly power by supplying better technology, possessing superior business skills, or because of luck, which is not unlawful.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals—or the achievement of these goals—unlawful, long as a company does not use anticompetitive means to achieve these goals.

In determining whether InterDigital's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

For example, suppose there are five firms that develop technologies for generating electricity and that these technologies comprised a relevant technology market. Suppose also that Firm A developed a process technology that generated electricity at a lower price than its competitors. If Firm A grew its market share and achieved monopoly power because its technology was cheaper, it

would not be unlawful for Firm A to achieve monopoly power in this way. Developing more efficient processes and developing the ability to sell profitably at lower prices is competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct even if it has a negative effect on competitors.

Similarly, in the same example, suppose Firm B developed and patented a new method for generating electricity and utilities so preferred Firm B's process that Firm B achieved monopoly power. It would not be unlawful for Firm B to achieve monopoly power in this way. Firm B "built a better mousetrap," which is competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct.

By contrast, in the same example, suppose not only that Firm C develops electricity technologies, but also that Firm C operates the electricity grid and that there are barriers to entry such that no other firm will be able to create a competing electricity grid. Suppose also that Firm C altered its grid in such a way that only Firm C's electricity technologies could supply electricity to the electrical grid, and that the alteration does not improve the efficiency of Firm C's grid or provide any benefits to competition or consumers — the only effect of the alteration is to exclude competing electricity generation technologies from the marketplace. If Firm C thereby prevented its technology competitors from competing and achieved monopoly power, it would be unlawful for Firm C to achieve monopoly power in the electricity generation technology market in this way.

As these examples show, the acts or practices that result in the acquisition or maintenance of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or commercial success. They must represent conduct that has made it very difficult or impossible for competitors to compete and whose anticompetitive harm outweighs any legitimate business reason for the conduct. You may not find that a company willfully acquired or maintained monopoly power if it has acquired that power solely through the exercise of superior foresight and skill; or because of natural advantages such as unique geographic access to raw materials or markets; or because of economic or technological efficiency, including efficiency resulting from scientific research; or by obtaining a valid and enforceable patent; or because changes in cost or taste have driven out all but one supplier.  Evidence of fraudulent intent in the context of

1    statements made to standards-setting organizations is not sufficient to establish unlawful

2    anticompetitive or exclusionary conduct.

3         If you find that ASUS has proven that it is more likely than not that InterDigital willfully

4    acquired or maintained monopoly power through anticompetitive acts, then you must consider

5    whether ASUS has proven the remaining elements of their monopolization claim. If, however, you

6    find that ASUS did not prove this element, then you must find for InterDigital and against ASUS on

7    this claim.

8

9         Authority:  *Apple v. Samsung*, No. 11-1846-LHK, ECF 1903 (N.D. Cal. Aug. 21, 2012);

10   *Hynix v. Rambus*, 06-0244-RMW, ECF 1254 (N.D. Cal. Mar. 25, 2008); *Rambus Inc. v. F.T.C.*, 522

11   F.3d 456, 466 (D.C. Cir. 2008); *Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934,

12   955 (N.D. Cal. 2018).

13                          **InterDigital's Position:**

14        InterDigital's proposed instruction with respect to willful acquisition of monopoly power

15   through anticompetitive acts is based on similar instructions in *Apple v. Samsung* and *Hynix v.*

16   *Rambus*, which in turn are based on the American Bar Association, Model Jury Instructions in Civil

17   Antitrust Cases (2016), Section 2 of Sherman Act, Instruction No. 9.  This instruction properly states

18   the legal principles governing willful acquisition of monopoly power and anticompetitive conduct.

19   In particular, it imparts to the jury the important principle that possession of monopoly power alone

20   is not unlawful; rather, anticompetitive acts to obtain monopoly power are required.  *See, e.g.,*

21   *Verizon Commc'ns. V. Law Offices of Curtis V. Trinko*, 540 U.S. 398, 407-08 (2004) ("The mere

22   possession of monopoly power, and the concomitant charging of monopoly prices, is not only not

23   unlawful; it is an important element of the free-market system."); *United States v. Grinnell Corp.*,

24   384 U.S. 563, 570--71 (1966).  This instruction is based on instructions given in cases where the

25   antitrust claim was based on alleged technology markets (*Apple v. Samsung* and *Hynix v. Rambus*)

26   so it is especially relevant to this case.  ASUS's objection that it includes more general examples

27   (like "access to raw materials") is not well-founded, as these examples are meant to explain the

28   relevant concepts via analogies that will be readily understood by the jury.

ASUS's proposed instruction is objectionable because it relies on the *Broadcom v. Qualcomm* standard, which is derived from an out-of-circuit case that is not binding on this Court and that does not correctly state federal antitrust law.  InterDigital's instruction is preferable because it follows the American Bar Association model instructions and is the same type of instruction given in the *Hynix v. Rambus* case in this district involving alleged "standards setting fraud." InterDigital's instruction also incorporates case law holding that evidence of fraudulent intent in the context of statements made to standards-setting organizations is not sufficient to establish unlawful anticompetitive or exclusionary conduct.  *Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 955 (N.D. Cal. 2018); *citing Rambus Inc. v. F.T.C.*, 522 F.3d 456, 466 (D.C. Cir. 2008).

**DISPUTED JURY INSTRUCTION NO. 36:**
**IN THE ALTERNATIVE[37]**
**MONOPOLIZATION—ANTICOMPETITIVE BEHAVIOR IN STANDARD SETTING**
**OFFERED BY ASUS**

[*ASUS contends that this instruction should not be given.*]

ASUS's Argument.  ASUS's prior proposed instruction on "monopolization—willful acquisition of monopoly power through anticompetitive acts" covers the subject matter of this instruction and should be adopted for the reasons explained above.

InterDigital's proposed additional instruction is objectionable because it transforms a simple issue into a complex one, with confusing and potentially misleading background discussion, legally incorrect edits to the *Broadcom* standard, and irrelevant instructions on "clearly defined expectations" that have no relevance here.

InterDigital's proposed background discussion of standard-setting organizations (first paragraph of its proposed instruction) is unnecessary, and potentially will confuse the jury into believing that that portion of the instruction sets out a legal standard for evaluating ASUS's claim.  If the Court decides to include such a background discussion in the jury instructions, it should be clearly identified as "background information" and the instructions should state that "This information is background only and does not contain the legal requirements for ASUS's claims."  Otherwise, the jury could believe that it must base its decision on whether "consumer welfare" has been enhanced, which is not the applicable standard for ASUS's claim.  *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007).

InterDigital's proposed instruction modifies the *Broadcom* standard in legally incorrect ways. To begin with, InterDigital presents no reason to modify the standard at all—the standard fits precisely with the facts of this case as the Court recognized in its summary judgment ruling.  Dkt. 341 at 21.  That fact aside, the concept of "clearly defined expectations" is not part of the *Broadcom* standard and has no relevance in this case.  The "clearly defined expectations" requirement was present in the *Hynix v. Rambus* case because in that case, the plaintiff alleged that the defendant

---

[37] As indicated below, this instruction is proposed "in the alternative" by InterDigital.

committed an antitrust violation by failing to disclose patent applications even though there was no express written duty or contract to do so.  *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1348 (Fed. Cir. 2011).  The scope of Rambus's disclosure duty was hotly contested, and the court tasked the jury with resolving the issue.  In the present case, it is undisputed—a stipulated fact—that InterDigital submitted IPR declarations and committed to be prepared to grant licenses under its essential IPR on FRAND terms.  Presenting an undisputed fact as a contested issue in the jury instructions, and including detailed elements about how to prove the undisputed fact, makes no sense.  Accordingly, the discussion of "clearly defined expectations" and elements for proving that issue should not be included in the jury instructions.

InterDigital's proposed instruction includes the phrase "knew to be false at the time the promise was made."  That phrase is not part of the *Broadcom* standard, and is not present in the *Hynix* or *Apple* instructions that InterDigital cites.  At best, the phrase is redundant with the phrase "intentionally false promise" that is already present in the instructions.  Therefore, it should not be included.

InterDigital's proposed instruction includes the phrase "as to which the IPR in the relevant market(s) was essential."  This unclear phrase appears to be another attempt to demand ASUS prove that specific InterDigital patents are essential to 4G standards.  As previously explained, that is not a requirement.  This phrase does not appear in the *Hynix* or *Apple* instructions that InterDigital cites, and InterDigital does not appear to provide any legal support for such an instruction.  Therefore, it should not be included.

Finally, InterDigital's proposed instruction includes the statement "you may consider InterDigital's course of conduct as a whole and its overall effect, rather than focusing on a particular aspect of InterDigital's licensing conduct in isolation."  This statement is vague, confusing, and lacks legal support.  The *Broadcom* standard directs the jury to focus on InterDigital's promises to ETSI to license its patents on FRAND terms, and whether those promises were false.  This statement will potentially mislead the jury into not focusing on that conduct, and instead "considering" some other undefined "course of conduct as a whole" and its undefined "overall effect."  The instruction fails to explain what course of conduct it references, and what effects on what entities are relevant.

The jury should not be launched out to sea in that manner.

**DISPUTED JURY INSTRUCTION NO. 36:**
**IN THE ALTERNATIVE[38]**
**MONOPOLIZATION—ANTICOMPETITIVE BEHAVIOR IN STANDARD SETTING**
**OFFERED BY INTERDIGITAL**

ASUS alleges that InterDigital willfully acquired monopoly power in a relevant antitrust market based on anticompetitive behavior in connection with the 4G standard-setting process at 3GPP. A standard can enhance consumer welfare by ensuring interoperability of products and devices and making multiple sources of supply available to consumers. The ideal standard-setting process can allow members of a standard setting-organization to make an objective comparison among competing technologies before a standard is adopted.  Based on the available information, a rational standard-setting organization can select the best technology (considering its cost and its performance) and can include that technology in the standard.  To the extent the industry has invested in a standard and cannot easily transfer that investment to an alternative standard, the process of standardization may eliminate alternative technologies.  When a patented technology is incorporated into such a standard, adoption of the standard may eliminate alternatives to the patented technology.  Nonetheless, "winning" the competition between technologies to be included in the standard may enhance consumer welfare and not be anticompetitive, even if the technology is covered by a patent.

Disruption of a standards-setting process, however, may be anticompetitive.  As to ASUS's claims that during the standard-setting process InterDigital concealed its true intentions not to meet the commitment it had made to license its essential IPR on fair, reasonable, and non-discriminatory ("FRAND") terms, you may find that InterDigital willfully acquired or maintained monopoly power in a relevant antitrust market through anticompetitive acts if: (1) ETSI members shared a clearly

---

[38] As set forth in InterDigital's summary judgment motion, InterDigital contends that *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007) is not a correct interpretation of federal antitrust law, and the Court should not follow it.  Without waiving this argument, InterDigital submits this proposed instruction to be given in addition to Instruction No. 35 above as a more accurate statement of the *Broadcom* theory than ASUS's proposed instruction, if the Court decides to give an instruction based on *Broadcom*.

1  defined expectation that participants who submitted FRAND declarations were required to be

2  prepared to grant licenses under their essential IPR on FRAND terms; (2) InterDigital made an

3  intentionally false promise to comply with its FRAND commitment that InterDigital knew to be

4  false at the time the promise was made; (3) ETSI members relied on InterDigital's FRAND

5  commitments when they adopted 4G standards as to which the IPR in the relevant market(s) was

6  essential; and (4) InterDigital thereafter did not comply with its commitment to be prepared to grant

7  licenses under its essential patents on FRAND terms and conditions.

8      In determining whether ETSI members shared such clearly defined expectations, you may

9  consider, among other factors: (1) the expectations of individual ETSI members; (2) any behavior by

10  ETSI members with respect to disclosing or not disclosing such information; (3) oral information

11  communicated or discussed at ETSI meetings or in ETSI minutes; (4) any written rules of ETSI

12  made available to members; (5) customs of the industry; and (6) the purpose of ETSI.

13      In determining whether ASUS has proved that InterDigital willfully acquired monopoly

14  power, you may consider InterDigital's course of conduct as a whole and its overall effect, rather

15  than focusing on a particular aspect of InterDigital's licensing conduct in isolation.

16

17      Authority:  *Apple v. Samsung*, No. 11-1846-LHK, ECF 1903 (N.D. Cal. Aug. 21, 2012);

18  *Hynix v. Rambus*, 06-0244-RMW, ECF 1254 (N.D. Cal. Mar. 25, 2008).

19                    **InterDigital's Position:**

20      InterDigital does not believe that an instruction based on *Broadcom v. Qualcomm* is

21  appropriate, as this is an out-of-circuit case that is not binding on this Court, and that does not

22  correctly state federal antitrust law.  *See Huawei Techs., Co. v. Samsung Elecs. Co*., 340 F. Supp. 3d

23  934, 955 (N.D. Cal. 2018); *Rambus Inc. v. F.T.C*., 522 F.3d 456, 466 (D.C. Cir. 2008).  However, if

24  the Court is inclined to give such an instruction, without waiving its position that no such instruction

25  should be given and that InterDigital's previous proposed instruction should be given instead, the

26  alternative language above is a more accurate statement of the *Broadcom* theory than ASUS's

27  proposed instruction.  The language above is based on the *Apple v. Samsung* case in this district, and

28  gives a more complete explanation of the theory that anticompetitive conduct can be shown through

1   fraudulent statements to a standards-setting organization (which, again, InterDigital does not

2   concede but includes only in the alternative if the Court elects to instruct the jury according to

3   ASUS's *Broadcom* theory and rejects InterDigital's proposed instruction above).

4       A claim based on a false promise requires the promise to be false when made, which should

5   be made clear in the jury instruction.  "[W]here allegedly fraudulent misrepresentations are promises

6   made in a contract, a party claiming fraud must prove fraudulent intent at the time of contract

7   execution; evidence of a subsequent, willful breach cannot sustain the claim." *U.S. ex rel. O'Donnell*

8   *v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 658 (2d Cir. 2016); *see also Fanucchi & Limi*

9   *Farms v. United Agri Prods.*, 414 F.3d 1075, 1088 (9th Cir. 2005) ("mere nonperformance is not

10   enough to show intent to defraud.") Simply failing to perform a contract does not show that there

11   was an intent at the time of the promise not to perform.  *TCL v. Ericsson*, No. 14-0341, 2016 U.S.

12   Dist. LEXIS 140566, at *17 (C.D. Cal. Aug. 9, 2016) ("[a]s the Broadcom court made the

13   'intentionally false promise' and subsequent 'breach of that promise' two separate elements, it is

14   clear that there needs to be some other conduct by [Defendant] than mere breach of its FRAND

15   obligations").

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED JURY INSTRUCTION NO. 37:**
**INTENT**
**OFFERED BY ASUS[39]**

Intent ordinarily may not be proved directly because there is no way of understanding or scrutinizing the operations of the human mind.  But you may infer a person's intent from surrounding circumstances.  You may consider any statement made or act done or omitted by a party whose intent is in issue, and all other facts and circumstances that indicate the party's state of mind.

You may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.  It is for you to decide what facts the evidence has established.


ASUS's Argument.  ASUS's instruction reproduces verbatim the Ninth Circuit's recommended instruction on intent.  Kevin F. O'Malley, et al., 3A Federal Jury Practice and Instructions, ch. 150 Antitrust—Private Action (6th ed. 2012) at 83.  This instruction will help the jury understand how to evaluate the intent elements in the preceding instruction.  Contrary to InterDigital's argument, there is nothing in this instruction specific to criminal antitrust claims or attempted monopolization.  The instruction is general and applies equally well to intentionally false promises for purposes of a *Broadcom* antitrust claim.

---

[39] Ninth Circuit Manual of Model Civil Jury Instructions, Section 14 (recommend sources for antitrust jury instructions); Kevin F. O'Malley, et al., 3A Federal Jury Practice and Instructions, ch. 150 Antitrust—Private Action (6th ed. 2012) at 83.

**DISPUTED JURY INSTRUCTION NO. 37:**
**INTENT OFFERED BY INTERDIGITAL**

[*InterDigital contends that this instruction should not be given. ASUS's proposed instruction is based on an instruction about intent for purposes of criminal antitrust claims or the intent element of attempted monopolization; it is inapposite to this case where the relevant intent is an intent to commit fraud as an allegedly anticompetitive act.*]

1
2

### DISPUTED JURY INSTRUCTION NO. 38:
### MONOPOLIZATION—BUSINESS JUSTIFICATION
### OFFERED BY ASUS

3

[*ASUS contends that this instruction should not be given.*]

4

5
6

<u>ASUS's Argument.</u>  The Court should reject InterDigital's proposed instructions as vague, confusing, irrelevant, and legally incorrect.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

First, this instruction is not based on a model instruction and is not part of the *Broadcom* standard.  *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007).  The *Broadcom* standard includes no exception for "pro-competitive business justifications."  InterDigital cites *City of Vernon v. Southern California Edison Co.*, 955 F.2d 1361, 1366 (9th Cir. 1992), *Image Technical Service, Inc. v. Eastman Kodak Co.*, 903 F.2d 612, 620 n.9 (9th Cir. 1990), and *Calculators Hawaii, Inc. v. Brandt, Inc.*, 724 F.2d 1332, 1339 (9th Cir. 1983) in support of its instruction.  Each of these cases is inapposite.  *Vernon* involved an essential facility claim where an element of the claim was "inten[t] to harm or restrain competition."  *Image* and *Calculators* involved refusal to deal claims where an element was "specific intent to monopolize."  The *Calculators* case in turn relies on *California Computer Prod., Inc. v. Int'l Bus. Machines Corp.*, 613 F.2d 727, 735 (9th Cir. 1979) and 7th Circuit case (*Lektro*) regarding the specific intent element of an attempted monopolization claim. But specific intent is not an element of a monopolization claim.  *Times-Picayune Publishing Co. v. United States*, 345 U.S. 594, 626 (1953).  Accordingly, the cases cited by InterDigital at most show that InterDigital's "business justifications" could be a defense to the *intent* element of an *attempted* monopolization claim, but there is no attempted monopolization claim here.  Giving the instruction would therefore be legally erroneous.

23
24
25
26
27
28

Second, at best the instruction is redundant with ASUS's proposed instruction on anticompetitive conduct.  That instruction states that "[t]he mere possession of monopoly power is not sufficient to support a finding of monopolization, unless it is also determined that monopoly power was willfully and intentionally acquired and maintained. A person who acquires monopoly power through normal growth and development, as a consequence of having a superior product, or business acumen, or through historical accident, is not guilty of monopolization as defined in this

charge."  Thus, the instruction already instructs the jury to consider "pro-competitive" justifications

for InterDigital's conduct.  Requiring the jury to consider the same issue twice, with two separate

and redundant instructions is unnecessary and would be confusing.

Third, the instruction makes no sense.  The instruction *assumes* the jury has found that

InterDigital deceived ETSI into adopting its patented technology into the standard with *intentionally*

*false* promises pursuant to the *Broadcom* standard.  The instruction would then allow InterDigital to

present evidence that making intentionally false promises to ETSI had "pro-competitive" business

justifications.  InterDigital does not identify any legal authority for the proposition that deceiving

standard-setting organizations by making intentionally false promises can have pro-competitive

business justifications.  InterDigital also does not identify any relevant facts from this case that could

support such a finding.

Finally, the instruction is hopelessly vague.  The instruction tasks the jury with weighing the

"procompetitive benefit of InterDigital's conduct" against "the anticompetitive harm of that

conduct."  The instruction contains no guidance about how the jury should quantify or "weigh" such

benefits and harm.  The instruction also implies that any purported "business justification" can

suffice to defeat ASUS's antitrust claim.  InterDigital does not present legal support for that

proposition.

## DISPUTED JURY INSTRUCTION NO. 38:
## MONOPOLIZATION—BUSINESS JUSTIFICATION
## OFFERED BY INTERDIGITAL

If you find that ASUS has shown that more likely than not that InterDigital's conduct was anticompetitive, then you must consider whether InterDigital's conduct also had a legitimate, procompetitive business justification. To be legitimate, the justification must not be pretextual.

Any procompetitive justification must be a form of competition on the merits because it involves, for example, conduct that increased efficiency or benefitted competition. A procompetitive business purpose is one that benefits competition such as by promoting efficiency or quality or offering a better product or service. If you find that InterDigital presented evidence of a procompetitive business justification, ASUS may rebut that showing by demonstrating that the justification was not the reason for InterDigital's conduct or that the justification does not on balance have procompetitive benefits.

If you determine that InterDigital had a procompetitive justification for its conduct, you must determine whether the anticompetitive effect of InterDigital's conduct outweighed the procompetitive benefits of that conduct. When you evaluate this balance, you may consider whether less restrictive means were available to InterDigital to accomplish the alleged procompetitive benefit of its conduct, and whether those other means would have been less harmful to competition. If the anticompetitive effect of InterDigital's conduct outweighs the procompetitive benefit, the proffered legitimate business justification for the conduct in question is not a defense to ASUS's monopolization claims. If, on the other hand, the procompetitive benefit of InterDigital's conduct outweighs the anticompetitive harm of that conduct, then you must find for InterDigital on the monopolization claim.


Authority:  *Hynix v. Rambus*, 06-0244-RMW, ECF 1254 (N.D. Cal. Mar. 25, 2008).

### **InterDigital's Position:**

A similar instruction was given in the *Hynix v. Rambus* case in this district.  This instruction is appropriate to inform the jury of the legal standard with respect to procompetitive business justification.  *See City of Vernon v. Southern California Edison Co.*, 955 F.2d 1361, 1366 (9th Cir.

1992 ("the plaintiff . . . ultimately has the burden of proving that the defendant acted without a legitimate business justification"); *Image Technical Service, Inc. v. Eastman Kodak Co.*, 903 F.2d 612, 620 n.9 (9th Cir. 1990) ("The plaintiff bears the burden of proving lack of legitimate business justification in a Section 2 claim."); *Calculators Hawaii, Inc. v. Brandt, Inc.*, 724 F.2d 1332, 1339 (9th Cir. 1983) ("It was [plaintiff's] burden to prove that [defendant's] acts 'were predatory and not predominantly motivated by legitimate business purposes.'").

1

2

**DISPUTED JURY INSTRUCTION NO. 39:**
**MONOPOLIZATION—INTERSTATE OR FOREIGN COMMERCE**
**OFFERED BY ASUS[40]**

3

4

     The federal antitrust laws apply only to conduct that affects interstate or foreign commerce.

5

The term "interstate commerce" refers to business transacted across state lines or between persons or

6

corporations having their residences or businesses in different states.  It differs from interstate

7

commerce, which is business done within a single state.  The term "foreign commerce" refers to

8

transactions in goods or services between one or more persons in the United States and one or more

9

persons in a foreign nation.

10

     There can be no violation of the law unless you determine that the activities of InterDigital as

11

challenged by ASUS have actually occurred in interstate or foreign commerce.  It is not necessary

12

that the disputed transactions be shown to be interstate or foreign transactions in and of themselves

13

so long as such transactions are shown to have affected interstate or foreign commerce in a

14

substantial way.

15

     <u>ASUS's Argument</u>.  ASUS believes that the existence of conduct at issue in interstate or

16

foreign commerce should be submitted to the jury as an undisputed fact.  It is unclear on what basis

17

InterDigital disputes that the challenged conduct occurred in interstate or foreign commerce.

18

InterDigital is a U.S. company that submitted IPR declarations to ETSI, a European organization.

19

The effect of ETSI's adoption of InterDigital's patents into the standard impacted not only ASUS—a

20

foreign firm with a California subsidiary—but also numerous other foreign and domestic firms that

21

entered into license agreements with InterDigital and that import millions of dollars of

22

telecommunications products into the U.S. annually.  InterDigital has not articulated a basis to

23

challenge that its conduct affected interstate or foreign commerce.  ASUS notes the interstate or

24

foreign commerce requirement of the Sherman Act claim was not disputed in the *Hynix* or *Apple*

25

26

27

28

---

[40] Ninth Circuit Manual of Model Civil Jury Instructions, Section 14 (recommend sources for antitrust jury instructions); Kevin F. O'Malley, et al., 3A Federal Jury Practice and Instructions, ch. 150 Antitrust—Private Action (6th ed. 2012) at 82; American Bar Association Antitrust Section, Model Jury Instructions in Civil Antitrust Cases (A.B.A., Chicago, Ill., 2016) at 11.

96

1    cases cited by InterDigital.

2         In the alternative, ASUS proposes the above instruction.  ASUS's instruction is based on the

3    Ninth Circuit's recommended model instructions.  *See* Kevin F. O'Malley, et al., 3A Federal Jury

4    Practice and Instructions, ch. 150 Antitrust—Private Action (6th ed. 2012) at 82; American Bar

5    Association Antitrust Section, Model Jury Instructions in Civil Antitrust Cases (A.B.A., Chicago,

6    Ill., 2016) at 11.

7         InterDigital's instruction is objectionable because it omits an explanation of "interstate

8    commerce" and focuses on "foreign commerce" using the complicated framework of the Foreign

9    Trade Improvements Act of 1982.  InterDigital, however, has not shown that discussion of that

10   complicated framework is necessary in this case.  The FTAIA does not apply to interstate commerce

11   or import commerce. *See United States v. Hui Hsiung*, 778 F.3d 738, 755 (9th Cir. 2015) (explaining

12   that "import trade" "falls outside the scope of the FTAIA").

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED JURY INSTRUCTION NO. 39:**
**MONOPOLIZATION—INTERSTATE AND FOREIGN COMMERCE**
**OFFERED BY INTERDIGITAL**

The Sherman Act applies only to conduct or restraints that affect interstate or foreign commerce.  Foreign commerce refers to transactions in goods and services between one or more persons in the United States and one or more persons in a foreign nation.

To sustain its claim, ASUS must prove that the challenged conduct had a direct, substantial, and reasonably foreseeable effect on commerce within the United States, on imports into the United States, or on the export opportunities of a United States person.  It is not necessary that the challenged conduct occur within the United States.  It is necessary, however, that the effect of the challenged conduct be felt by persons or firms within the United States.  It is also necessary that the effect within the United States be more than indirect, remote, or unpredictable.  An effect on exports or export opportunities of a United States firm, however, may be sufficient even if the effect was felt mostly by persons or firms outside the United States.

In determining whether the effect within the United States of the challenged conduct was reasonably foreseeable, you may consider a number of factors, including the defendant's intent and the likely or probable consequences of the challenged conduct.  No one factor, however, is conclusive on this issue.

Authority:  American Bar Association, Model Jury Instructions in Civil Antitrust Cases (2016), Sherman Act – General, Instruction No. 5; Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a; *F. Hoffman LaRoche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004).

**<u>InterDigital's Position:</u>**

ASUS's proposed instruction does not correctly explain the standard for antitrust claims based on foreign commerce and the domestic injury exception.   The challenged conduct in this case relates to dealings between InterDigital (an American company) and ASUS (a Taiwanese company).  Accordingly, this case involves the standard for foreign commerce, as described in the ABA Model Jury Instruction as "transactions in goods and services between one or more persons in the United States and one or more persons in a foreign nation."  While ASUS joined its California subsidiary as

1    a party in this case, there are no claims in the case relating to that subsidiary and ASUS has never

2    contended that the subsidiary negotiated or interacted with InterDigital at all.  In fact, ASUS's claim

3    for unfair competition under California Code of Civil Procedure § 17200 was dismissed on summary

4    judgment due to ASUS's inability to show any conduct relevant to its claims in California,

5    notwithstanding the joinder of the California subsidiary as a plaintiff.  ECF No. 341 (summary

6    judgment order) ("Plaintiffs have simply presented no evidence that Defendants' alleged conduct

7    occurred in California, or that ASUS's California subsidiary had any involvement with Defendants,

8    or that Defendants suffered harm in California due to Defendants' alleged conduct.").

9         Under the Foreign Trade Antitrust Improvements Act of 1982 (FTAIA), the Sherman Act

10   "[shall not apply to conduct involving trade or commerce (other than import trade or import

11   commerce) with foreign nations" unless certain conditions are present.  15 U.S.C. § 6a.  Because this

12   case involves trade or commerce with persons in foreign nations, ASUS must prove FTAIA's

13   conditions for applicability of the Sherman Act in this situation.  *See F. Hoffman LaRoche Ltd. v.*

14   *Empagran S.A.*, 542 U.S. 155, 174-75 (2004).   In *Empagran*, the Supreme Court held that a plaintiff

15   asserting a claim based on foreign commerce must show that the domestic effect of the conduct at

16   issue gave rise to its antitrust claim in order to seek relief under the U.S. antitrust laws.  542 U.S. at

17   174-75.  Thus, where a foreign purchaser suffered harm that does not have the requisite effect on

18   U.S. domestic commerce, the Sherman Act does not apply to the purchaser's claims.  *Id.* at 158.  The

19   instruction proposed by InterDigital properly explains to the jury that ASUS must show a "direct,

20   substantial, and reasonably foreseeable effect" on U.S. commerce in order to assert a Sherman Act

21   claim.

22

23

24

25

26

27

28

**DISPUTED JURY INSTRUCTION NO. 40:**
**MONOPOLIZATION—DAMAGES**
**OFFERED BY ASUS[41]**

If you should find from a preponderance of the evidence in the case that ASUS is entitled to a verdict, the law provides ASUS is to be fairly compensated for all damages, if any, to ASUS's business or property proximately caused by the conduct of the InterDigital.

Damage is proximately cause by an act, or a failure to act, whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage, and that injury or damage was either a direct result or a reasonably probable consequence of the act or omission.

In arriving at the amount of the award, you can include any damages suffered by ASUS because of excessive royalty payments—royalty payments that ASUS would not have made, but for the unlawful conduct of InterDigital or any other amount proximately caused by InterDigital.

If you should find from a preponderance of the evidence in the case that damage to ASUS's business, or property, such as excessive royalty payments, was proximately caused by InterDigital's illegal conduct, then the circumstance that the precise amount of ASUS's damages may be difficult to ascertain should not affect ASUS's recovery, particularly if InterDigital's wrongdoings have caused the difficulty in determining the precise amount.

You are not allowed to award ASUS purely speculative damages.

In arriving at the amount of any damages sustained by ASUS, you are entitled to consider any evidence in the case bearing upon the issue.

ASUS's Argument.  ASUS's proposed instruction is based directly on the Ninth Circuit's recommended model, is simple, understandable, and should be adopted.  *See* Kevin F. O'Malley, et al., 3A Federal Jury Practice and Instructions, ch. 150 Antitrust—Private Action (6th ed. 2012) at 86, 94.

---

[41] Ninth Circuit Manual of Model Civil Jury Instructions, Section 14 (recommend sources for antitrust jury instructions); Kevin F. O'Malley, et al., 3A Federal Jury Practice and Instructions, ch. 150 Antitrust—Private Action (6th ed. 2012) at 86, 94.

1    InterDigital's proposed instruction is not based on a Ninth Circuit model instruction.  It is

2    unnecessarily lengthy and potentially confusing to the jury.  Furthermore, it confusingly refers to

3    effects on consumers, when in this case the "consumer" is ETSI, and the anticompetitive effects

4    focus on competitors to InterDigital in cellular technology markets.

5    InterDigital complains that ASUS's instruction omits important injury and causation

6    requirements.  That is incorrect.  ASUS's proposed jury instruction on monopolization already

7    accounts for the injury and causation requirements of antitrust law.  The monopolization instruction

8    requires proof "that InterDigital's anticompetitive conduct was a substantial factor in causing injury

9    to ASUS's business or property."  This statement requires that ASUS was injured, that InterDigital

10   caused the injury, and that the injury be a result of InterDigital's anticompetitive conduct.  ASUS's

11   proposed instruction on anticompetitive conduct defines anticompetitive conduct in more detail, and

12   ensures that the jury must find antitrust injury to render a verdict in favor of ASUS.

13   In contrast, InterDigital's proposed damages instruction simply reformulates and repeats the

14   injury and causation requirements present in the monopolization instruction in a more verbose,

15   confusing way, which would result in the jury instructions confusingly setting forth *two different*

16   formulations of the injury and causation requirements in two different instructions.  ASUS submits

17   that the Court should not do that.

18   InterDigital's proposed exclusion of litigation expenses as injury is unsupported.  ASUS

19   disclosed in the original Joint Pretrial Statement filed March 21, 2019 that it "may further seek its

20   expenses, costs and attorneys' fees," and its amended discussion of the elements of its claims now

21   restates that position.  ASUS's claim of harm and injury in fact does not depend exclusively on

22   litigation expenses.  However, even if it did, such expenses are an injury ASUS suffered by having

23   to bring suit to obtain a FRAND license, and are appropriately cognizable as such.  *See Apple Inc. v.*

24   *Motorola Inc.*, 886 F. Supp. 2d 1061, 1081-83 (W.D. Wis. 2012) (denying motion for summary

25   judgment premised on unavailability of litigation expenses as remedy for FRAND violation);

26   *Huawei Techs. Co. v. Samsung Elecs. Co.*, No. 3:16-cv-02787-WHO, Order Denying Motion to

27   Strike Jury Demand, Dkt. No. 454, slip op. at 3-5 (N.D. Cal. Feb. 17, 2019) (finding expert fees a

28   sufficient damages basis to set a trial for FRAND violation).

**DISPUTED JURY INSTRUCTION NO. 40:**
**MONOPOLIZATION—INJURY AND DAMAGES**
**OFFERED BY INTERDIGITAL**

If you find that InterDigital has violated the federal antitrust laws as alleged by ASUS, you must then decide if ASUS is entitled to recover damages from InterDigital.

ASUS is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation.

First, ASUS must prove that it was in fact injured as a result of InterDigital's alleged violation of the antitrust laws.  In determining whether ASUS suffered injury in fact, you may not include as injury any litigation expenses that ASUS paid in pursuing this lawsuit.

Second, ASUS must prove that InterDigital's alleged illegal conduct was a material cause of ASUS's injury. This means that ASUS must prove that some damages occurred as a result of InterDigital's alleged antitrust violation, and not some other cause.  ASUS is not required to prove that InterDigital's alleged antitrust violation was the sole cause of its injury; nor need ASUS eliminate all other possible causes of injury.  However, if you find that the ASUS's injury was caused primarily by something other than the alleged antitrust violation, then you must find that ASUS has failed to prove that it is entitled to recover damages from InterDigital.

Third, ASUS must prove that its injury is the type of injury that the antitrust laws were intended to prevent. If ASUS's injury was caused by a reduction in competition or acts that would otherwise harm consumers, then ASUS's injury is an "antitrust injury."  On the other hand, if ASUS's injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then ASUS's injuries are not antitrust injuries, and ASUS may not recover damages for those injuries under the antitrust laws.

If ASUS can establish that it was in fact injured by InterDigital's conduct, that InterDigital's conduct was a material cause of its injuries, and that its injuries were "antitrust injuries" - the type that the Sherman Act was intended to prevent - then ASUS is entitled to recover damages for the injuries to its business or property.

If you find that ASUS has suffered injury to its business or property, you must determine whether ASUS has proven that it is entitled to damages for such injury. The amount of any such

1    damages is the amount of damages that ASUS has proven at trial with reasonable certainty.

2

3    Authority:  *Apple v. Samsung*, No. 11-1846-LHK, ECF 1903 (N.D. Cal. Aug. 21, 2012);

4    *Hynix v. Rambus*, 06-0244-RMW, ECF 1254 (N.D. Cal. Mar. 25, 2008); *Steel Co. v. Citizens for a*

5    *Better Env't*, 523 U.S. 83, 107 (1998); *Summit Valley Indus. v. United Bhd. of Carpenters & Joiners*,

6    456 U.S. 717 (1982).

7    **InterDigital's Position:**

8    InterDigital's proposed instruction is based on instructions given in the *Apple v. Samsung* and

9    *Hynix v. Rambus* cases in this district.  It properly instructs the jury on the elements of injury and

10   causation, *see, e.g.,* 15 U.S.C. § 15; *Atl. Richfield Co. v. USA Petrol Co.*, 495 U.S. 328, 334-46

11   (1990), and provide an explanation of antitrust injury, a required element of ASUS's claim.  *See*

12   *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977).  ASUS's proposed jury

13   fails to account for specific considerations in determining damages in an antitrust case, *e.g.*, the

14   requirement to apportion damages from lawful conduct.  *See, e.g., City of Vernon v. S. Cal. Edison*

15   *Co.*, 955 F.2d 1361, 1372 (9th Cir. 1985).

16   ASUS's instruction improperly includes the incorrect statement that:  "In arriving at the

17   amount of the award, you can include any damages suffered by ASUS because of excessive royalty

18   payments—royalty payments that ASUS would not have made, but for the unlawful conduct of

19   InterDigital or any other amount proximately caused by InterDigital."   The Court's summary

20   judgment order precludes ASUS from including any damages based on "excessive royalty

21   payments" under the PLA, both due to judicial estoppel, and because there is no legal basis on which

22   to void the PLA's royalty provisions based on arguments that the PLA later became "non-FRAND."

23   ECF No. 341.  Under the summary judgment order, ASUS's antitrust claims are limited to claims

24   based on offers for a license to InterDigital's 4G essential patents, and because 4G essential patents

25   are not covered by the PLA, ASUS has paid no royalties at all with respect to 4G patents

26   ("excessive" or otherwise).  The Court should reject ASUS's proposed instruction which would

27   mislead the jury into believing that royalties paid under the PLA are a proper subject of damages.

28   InterDigital's instruction also clarifies that ASUS's litigation expenses incurred in pursuing

this case cannot constitute "harm" for purposes of this claim. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Obviously, however, a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit. The litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself."); *Summit Valley Indus. v. United Bhd. of Carpenters & Joiners*, 456 U.S. 717, 726 (1982) ("The American Rule precludes courts from awarding attorney's fees incurred during prior proceedings in the same case."). To the extent ASUS relies on cases such as *Apple Inc. v. Motorola Inc*., 886 F. Supp. 2d 1061, 1081-83 (W.D. Wis. 2012) and *Huawei Techs. Co. v. Samsung Elecs. Co*., No. 3:16-cv-02787-WHO, Order Denying Motion to Strike Jury Demand, Dkt. No. 454, slip op. at 3-5 (N.D. Cal. Feb. 17, 2019), those cases addressed damages demands that included litigation expenses incurred in defending against patent infringement claims asserted by the other party. They did not address the question of whether harm can be based solely on same-case litigation expenses incurred in asserting one's own claims. Same-case litigation expenses cannot be considered injury or harm because if that were permissible, injury and harm could always be demonstrated, because the plaintiff will always incur some litigation expenses in asserting its claims. That would make the injury or harm requirement a nullity, which would contravene the requirement in federal courts that a plaintiff must show injury in order to have Article III standing.

1
2

**DISPUTED JURY INSTRUCTION NO. 41:**
**MONOPOLIZATION—RIGHT TO PETITION**
**OFFERED BY ASUS**

3

[*ASUS contends that no instruction on this issue should be given.*]

4

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

<u>ASUS's Argument.</u>  InterDigital's proposed instruction is contrary to law and irrelevant to the facts of this case.  The instruction is contrary to law because it is well-settled that InterDigital's contractual FRAND commitment limits rights to sue (and to threaten to sue) that InterDigital might have absent that commitment.  For instance, the court in *Realtek Semiconductor, Corp. v. LSI Corp.*, 946 F. Supp. 2d 998, 1006 (N.D. Cal. 2013) held that "the act of seeking injunctive relief (here, at the ITC before proposing a RAND license to Realtek) is inherently inconsistent and a breach of defendants' promise to license the patents on RAND terms."  The court further found that "Defendants' conduct in this case (bringing the ITC action before offering a license) is even more glaringly inconsistent with its RAND obligations than Motorola's request for an injunction at the district court after offering a license to Microsoft in the Motorola case," and "Realtek is harmed as a result of the breach because the pending threat of an exclusion order gives defendants inherent bargaining power in any RAND licensing negotiation that may now take place."  *Id.* at 1006-07.  In other words, InterDigital's proposed instruction is contrary to law because suing and threatening to sue can be "inherently inconsistent" with FRAND obligations.  Therefore, if any instruction on the "right to petition" is given, the jury should be instructed that suing and threatening to sue can be "inherently inconsistent" with FRAND obligations.

21
22
23
24
25
26

InterDigital's proposed instruction is also irrelevant to the facts of this case because ASUS does not allege that InterDigital's actions "pursuing litigation to enforce intellectual property rights, by itself, violates the antitrust laws."  ASUS does allege that InterDigital's threats against ASUS were inconsistent with InterDigital's FRAND obligations and gave InterDigital improper bargaining power in the parties' negotiations, but as explained above that argument directly follows from settled law.

27
28

1

**DISPUTED JURY INSTRUCTION NO. 41:**
**MONOPOLIZATION—RIGHT TO PETITION**
**OFFERED BY INTERDIGITAL**

2

3       The right to bring a lawsuit and to make speech incidental to legal proceedings are freedoms

4  protected by the U.S. Constitution. You may not infer that pursuing litigation to enforce intellectual

5  property rights, by itself, violates the antitrust laws or other laws.

6       InterDigital asserts that its patent enforcement efforts did not violate the law because it was

7  trying in good faith to enforce valid legal rights. Unless ASUS proves that InterDigital's actions with

8  respect to pursuing patent enforcement legal actions were objectively baseless and undertaken as a

9  sham without regard to the merits in order to use the litigation process to harm a competitor, such

10  actions on the part of InterDigital cannot be found to be anticompetitive.

11

12       Authority:  Judicial Council of California Civil Jury Instructions (2019 Edition), No. 3430;

13  *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc*., 508 U.S. 49, 56 (1993); *Cal.*

14  *Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972); *E. R.R. Presidents*

15  *Conference v. Noerr Motor Freight, Inc*., 365 U.S. 127, 138 (1961); *C.R. Bard, Inc. v. M3 Sys*., 157

16  F.3d 1340, 1369 (Fed. Cir. 1998).

17                    **InterDigital's Position:**

18       This instruction properly informs the jury that petitioning conduct, including good faith

19  patent enforcement, is not subject to antitrust liability unless ASUS proves that such actions by

20  InterDigital were shams (*i.e.,* objectively baseless and subjectively motivated to harm a competitor).

21  *Noerr-Pennington* and the legal standards for making the requisite determinations. *See Prof'l Real*

22  *Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) ("Those who petition

23  government for redress are generally immune from antitrust liability."); *California Motor Transport*

24  *Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972) ("The right of access to the courts is indeed but

25  one aspect of the right of petition."); *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,

26  365 U.S. 127, 138 (1961) ("The right of petition is one of the freedoms protected by the Bill of

27  Rights…..").  Patent enforcement activity is subject to a presumption of good faith.  *C.R. Bard, Inc.*

28  *v. M3 Sys*., 157 F.3d 1340, 1369 (Fed. Cir. 1998).

1      ASUS's objection that the *Noerr-Pennington* defense is "inherently inconsistent with

2   FRAND commitments" is taken from cases in which no antitrust claim was asserted.  Instead, those

3   cases were discussing breach of contract claims.  InterDigital does not seek to assert this defense

4   with respect to the ***breach of contract*** claim, where InterDigital agrees it would not be applicable.

5   Rather, it is limited only to the Sherman Act tort claim.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**DISPUTED JURY INSTRUCTION NO. 42:**
**CLAIMS BARRED BY 2008 PLA**
**OFFERED BY ASUS**

3

[*ASUS contends that no instruction on this issue should be given.*]

4

5

<u>ASUS's Argument.</u>  InterDigital's proposed instruction is objectionable on several grounds.

6

First, InterDigital provides no legal basis for presenting such an instruction to the jury.

7

InterDigital cites no authority for the proposition the 2008 PLA extinguished ASUS's claim to

8

damages for its breach of contract claim, antitrust claim, and Delaware Consumer Fraud Act claim in

9

this case.  The closest applicable legal doctrine appears to be that of waiver.  That is, InterDigital

10

effectively alleges that in entering the 2008 PLA, ASUS provided an *advance* waiver of *unknown,*

11

*future* claims that arose in the course of negotiations between the parties in the 2011-2015 time

12

frame.  However, the 2008 PLA contains no language whatsoever that supports finding such a

13

waiver, much less the clear and convincing, unambiguous evidence required by law.  *See Reeder v.*

14

*Sanford School, Inc.*, Del. Super., 397 A.2d 139, 141 (1979) (claims in waiver and estoppel must be

15

shown by clear and convincing evidence); *Riverbend Community LLC v. Green Stone Engineering,*

16

*LLC*, 55 A.3d 330 (Del. 2012) (general release of unknown claims must be clear and unambiguous);

17

*E.I. DuPont de Nemours and Co. v. Florida Evergreen Foliage*, 744 A.2d 457,460-61 (Del. 1999)

18

(same); 2008 PLA § 6.10 (2008 PLA is governed by Delaware law).  InterDigital thus fails to

19

articulate any legal basis showing how its purported contractual defense interacts with ASUS's later-

20

arising claims based on a separate contract, a Delaware statute, and federal antitrust law.

21

InterDigital therefore has no legal basis to present its "defense" to a jury.

22

Second, even setting aside the first point above, the language of the 2008 PLA alone shows

23

that InterDigital's proposed instruction has no legal basis.  InterDigital quotes only a snippet of

24

Section 3.1 of the PLA regarding "non-refundable" payments, but fails to quote Section 3.5 of the

25

PLA that addresses the same issue in more detail.  Namely, Section 3.5 states that "In the event of an

26

overpayment of royalties under this Agreement, Licensee may offset future royalty payments due

27

under this Agreement against the amount of such overpayment."  Accordingly, even accepting the

28

incorrect premise that the 2008 PLA extinguished ASUS's unknown future claims, at most the 2008

PLA would require those damages to offset future royalty payments rather than eliminate the damages entirely as the proposed instruction instructs the jury.

Third, InterDigital's proposed instruction fails to assign the burden of proof to InterDigital. An instruction on a party's defense that does not assign the burden of proof is facially infirm. Because InterDigital's purported defense appears to be based on waiver and/or release, InterDigital would need to prove with clear and convincing, unambiguous evidence that ASUS waived unknown future claims.  Because the 2008 PLA is not susceptible to such a construction as a matter of pure contract interpretation, the jury should not be instructed on this issue.

In short, InterDigital's proposed instruction lacks any legal basis, is foreclosed by the 2008 PLA itself, and is facially infirm.

1

2

**DISPUTED JURY INSTRUCTION NO. 42:**
**CLAIMS BARRED BY 2008 PLA**
**OFFERED BY INTERDIGITAL**

3

4

5

6

7

8

9

10

11

InterDigital and ASUS entered into a patent license agreement ("PLA") in 2008 pursuant to which ASUS was licensed to InterDigital's 2G and 3G patents.  ASUS agreed in the PLA that ASUS "shall pay" to InterDigital   a "non-refundable" royalty on each Sale of a Licensed Product, including a royalty for "3G Licensed Terminal Units," which includes Terminal Units designed to operate in accordance with a 3G Licensed Standard.  Based on ASUS's affirmative, voluntary agreement, ASUS is not entitled to recover any damages representing refunds, or partial refunds, of royalties paid under the PLA.  If you find that InterDigital is liable for any damages, you must not include in your damages calculation any amounts based on non-refundable royalties paid under the PLA.

12

Authority:  ECF 108-2, PLA § 3.1; Summary Judgment Order (ECF 341).

13

**InterDigital's Position:**

14

15

16

17

18

19

Under Section 3.1 of the PLA, the parties agreed that royalties paid by ASUS pursuant to the PLA would be non-refundable.  Under the Court's summary judgment order,  ASUS may not argue that the PLA is non-FRAND, and further cannot void the PLA based on an argument that it became non-FRAND based on subsequent events. An instruction here is appropriate to explain to the jury that ASUS is not entitled to damages for any amounts based on non-refundable royalties paid under the PLA, due to ASUS's affirmative, voluntary agreement to pay such royalties.

20

21

22

23

24

25

26

27

28

**STIPULATED JURY INSTRUCTION NO. 43:**
**DAMAGES ON MULTIPLE LEGAL THEORIES**

ASUS seeks damages from InterDigital under more than one legal theory. However, each item of damages may be awarded only once, regardless of the number of legal theories alleged.

You will be asked to decide whether InterDigital is liable to ASUS under the following legal theories: Breach of Contract, Delaware Consumer Fraud Act, Sherman Act.

The damages asserted by ASUS are recoverable only once under all of the above legal theories.

*[The parties agree on the next sentence subject to modification based on the verdict form adopted by the Court]* If you decide that ASUS is entitled to different amounts of damages under its Breach of Contract, Delaware Consumer Fraud Act, and Sherman Act claims, your verdict form should list the highest amount.

Authority: Judicial Council of California Civil Jury Instructions (2019 Edition), No. 3934